Danielle E. Karst (D.C. Bar No. 481881)
Timothy J. Mulreany (Maryland Bar No. 8812160123)
**COMMODITY FUTURES TRADING COMMISSION**
Three Lafayette Centre
1155 21st Street, N.W.
Washington, D.C. 20581
Telephone:   (202) 418-6158 (Karst)
Telephone:   (202) 418-5306 (Mulreany)
Facsimile:    (202) 418-5523
dkarst@cftc.gov
tmulreany@cftc.gov

```
┌─────────────────────────────────────┐
│ ___ FILED        ___ RECEIVE         │
│ ___ ENTERED      ___ SERVED          │
│              COUNSEL/PARTIES OF RECORD│
│    ┌──────────────────────┐          │
│    │                      │          │
│    │     SEP 30 2019       │          │
│    │                      │          │
│    └──────────────────────┘          │
│       CLERK US DISTRICT COURT        │
│        DISTRICT OF NEVADA            │
│ BY:_____ DEPUTY   │
└─────────────────────────────────────┘
```

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEVADA**

| | |
|---|---|
| COMMODITY FUTURES TRADING COMMISSION, | Case No.  **2:19-cv-01697-KJD-DJA** |
| Plaintiff, | **COMPLAINT FOR INJUNCTIVE RELIEF, RESTITUTION, DISGORGEMENT AND CIVIL MONETARY PENALTIES UNDER THE COMMODITY EXCHANGE ACT** |
| v. | |
| DAVID GILBERT SAFFRON a/k/a DAVID GILBERT and CIRCLE SOCIETY, CORP., | |
| Defendants. | |

Plaintiff, Commodity Futures Trading Commission ("CFTC" or "Commission"), by and through its attorneys, alleges as follows:

## I.   SUMMARY

1.     From at least December 2017 through the present (the "Relevant Period"), David Gilbert Saffron a/k/a David Gilbert ("Saffron"), has engaged in a fraudulent scheme to solicit Bitcoin and United States Dollars ("USD") from members of the public to participate in a pooled investment vehicle ("commodity pool" or "Pool") for trading commodity interests, including trading binary options contracts on foreign currency ("forex") and cryptocurrency pairs.

2.     During the early stages of his activity, Saffron individually created a business entity, Circle Society, Corp. ("Circle Society"), on or about September 6, 2018, and used this entity to perpetuate his fraud.  Beginning on or about September 6, 2018 through the present,

Saffron, individually and as principal and agent of Circle Society (collectively, "Defendants"), has fraudulently solicited members of the public to participate in a commodity pool operated by Circle Society.

3.      During the Relevant Period, Saffron, and from September 6, 2018 through the present, Defendants, by and through Saffron, have accepted at least $11 million worth of Bitcoin and USD (Bitcoin, together with USD, "funds") from no fewer than fourteen members of the public to participate in their unregistered commodity pool, which Defendants referred to as the "System" or as one of the purported Circle Society investment plans.  Rather than using pool participants' funds to trade in binary options contracts as promised, Defendants have misappropriated participants' funds (including by retaining participants' funds in Saffron's personal E-Wallet and by using funds to pay other participants) and lied to participants in order to conceal Defendants' misappropriation.

4.      In furtherance of their fraudulent scheme, Defendants have made material omissions and misrepresentations in solicitations to actual and prospective pool participants, including misrepresenting Saffron's experience and track record and misrepresenting that pool participants' funds would be pooled and invested in, among other things, binary options trading for the benefit of participants.

5.      Contrary to Defendants' representations, Defendants have misappropriated certain pool participants' funds by soliciting funds for trading and then retaining such funds in Saffron's personal E-Wallet instead of using them to trade on behalf of the Pool as promised.  Defendants did not conduct trading on behalf of participants as promised.  Defendants also misappropriated some portions of participants' funds by providing Bitcoin to earlier-in-time participants using the Bitcoin of later-in-time participants to perpetuate their fraud, in the nature of a "Ponzi" scheme.

6.     Saffron acted and continues to act at all times during the Relevant Period as a commodity pool operator ("CPO") without being registered with the CFTC, as required by the Commodity Exchange Act ("Act").  From September 6, 2018 through the present, Circle Society acted and continues to act as a CPO without being registered with the CFTC, and Saffron acted and continues to act as an associated person ("AP") of CPO Circle Society without being registered with the CFTC, as required by the Act.

7.     By this conduct, and the conduct further described herein, Defendants have engaged, are engaging and/or are about to engage in acts and practices in violation of Sections 4c(b), 4k(2), 4m(1), and 4o(1)(A)-(B) of the Act, 7 U.S.C. §§ 6c(b), 6k(2), 6m(1), 6o(1)(A)-(B) (2012), and CFTC Regulations ("Regulation(s)") 4.20(a)(1), (b) and (c), and 32.4, 17 C.F.R. §§ 4.20(a)(1), (b), (c), and 32.4 (2019).

8.     The acts and omissions described herein have all been done by Saffron in the scope of his employment or office at Circle Society during the September 6, 2018 through the present timeframe.  Therefore, Circle Society is liable for all acts and omissions described herein, pursuant to Section 2(a)(1)(B) of the Act, 7 U.S.C. § 2(a)(1)(B) (2012), and Regulation 1.2, 17 C.F.R. § 1.2 (2019).

9.     Saffron was a controlling person of Circle Society and did not act in good faith or knowingly induced Circle Society's violations of the Act and Regulations described herein during the September 6, 2018 through the present timeframe.  Therefore, Saffron is liable for Circle Society's violations of the Act and Regulations, pursuant to Section 13(b) of the Act, 7 U.S.C. § 13c(b) (2012).

10.     Accordingly, pursuant to Section 6c of the Act, 7 U.S.C. § 13a-1 (2012), the CFTC brings this action to enjoin Defendants' unlawful acts and practices and to compel their

compliance with the Act and the Regulations promulgated thereunder.  In addition, the CFTC

seeks civil monetary penalties and remedial ancillary relief, including, but not limited to, trading

and registration bans, restitution, disgorgement, rescission, pre- and post-judgment interest, and

such other and further relief as the Court deems necessary and appropriate.

11.     Unless restrained and enjoined by this Court, Defendants will likely continue to

engage in acts and practices alleged in this Complaint and similar acts and practices, as described

below.

## II.      JURISDICTION AND VENUE

12.     This Court possesses jurisdiction over this action pursuant to 28 U.S.C. § 1331

(2012) (codifying federal question jurisdiction) and 28 U.S.C. § 1345 (2012) (providing that U.S.

district courts have original jurisdiction over civil actions commenced by the United States or by

any agency expressly authorized to sue by act of Congress).  In addition, Section 6c of the Act,

7 U.S.C. § 13a-1 (2012), provides that U.S. district courts possess jurisdiction to hear actions

brought by the CFTC for injunctive relief or to enforce compliance with the Act whenever it

shall appear that such person has engaged, is engaging, or is about to engage in any act or

practice constituting a violation of any provision of the Act or any rule, regulation, or order

thereunder.

13.     Venue lies properly with this Court pursuant to Section 6c(e) of the Act, 7 U.S.C.

§ 13a-1(e) (2012), because Defendants resided and transacted business in this District, and

certain transactions, acts, practices, and courses of business alleged in this Complaint occurred,

are occurring, or are about to occur in this District.

4

### III.   THE PARTIES

14.     Plaintiff **Commodity Futures Trading Commission** is an independent federal regulatory agency charged by Congress with the administration and enforcement of the Act, 7 U.S.C. §§ 1-26 (2012), and the Regulations promulgated thereunder, 17 C.F.R. pts. 1–190 (2019).

15.     Defendant **David Gilbert Saffron** is a citizen of the Commonwealth of Australia and sometimes uses the alias "David Gilbert." Saffron's last known residence is in Las Vegas, Nevada. Saffron has never been registered with the CFTC in any capacity.

16.     Defendant **Circle Society, Corp.** is a Nevada corporation based in Henderson, Nevada. Circle Society, Corp. was incorporated by Saffron on September 6, 2018, with a purported office at 2450 St. Rose Parkway, Suite 120, Henderson, Nevada. Circle Society, Corp. has never been registered with the CFTC in any capacity.

### IV.   STATUTORY BACKGROUND

17.     Through Section 4c(b) of the Act, 7 U.S.C § 6c(b) (2012), Congress has given the CFTC jurisdiction and plenary rulemaking authority over all commodity option transactions.

18.     Binary options are "options," as defined by Section 1a(36) of the Act, 7 U.S.C. § 1a(36) (2012), and binary options on commodity futures and "commodities," as defined by Section 1a(9) or (19) of the Act, 7 U.S.C. § 1a(9), (19) (2012), are commodity option transactions pursuant to Section 4c(b) of the Act, 7 U.S.C § 6c(b) (2012), and Regulation 32.2, 17 C.F.R. § 32.2 (2019).

19.     7 U.S.C. § 6c(b) makes it unlawful for any person to offer to enter into, enter into, or confirm the execution of any transaction involving any commodity regulated under the Act which is of the character of, or is commonly known as, *inter alia*, an "option," "bid," "offer,"

"put," or "call," contrary to any rule, regulation, or order of the CFTC prohibiting any such transaction or allowing any such transaction under such terms and conditions as the CFTC shall prescribe.

20.     Section 2(c)(2)(B)(i)(I) and (II), 7 U.S.C. § 2(c)(2)(B)(i)(I), (II) (2012), provides in relevant part that the Act applies to, and the CFTC shall have jurisdiction over, an agreement, contract or transaction in foreign currency ("forex") that is an option and is offered to, or entered into with, a person that is not an eligible contract participant ("ECP"), unless the counterparty, or the person offering to be the counterparty, of the person is one of the enumerated exceptions not applicable here.

21.     An ECP is defined by 7 U.S.C. § 1a(18)(A)(xi) (2012), in relevant part, as an individual who has amounts invested on a discretionary basis, the aggregate of which is in excess of $10,000,000, or $5,000,000 and who enters into the agreement, contract or transaction to manage the risk associated with an asset owned or a liability incurred, or reasonably likely to be owned or incurred, by the individual.

## V.     FACTS

### A.     The Fraudulent Scheme

22.     During the Relevant Period, Saffron, and from September 6, 2018 through the present, Defendants, by and through Saffron, solicited at least $11 million worth of funds from no fewer than fourteen participants for the purpose of participating in a commodity pool, which purportedly traded binary options contracts on forex and cryptocurrency pairs, among other things.  Defendants knowingly and falsely represented to actual and prospective pool participants that Saffron was an experienced trader producing consistent, high rates of return, including for well-known investors such as Mark Cuban.

23.     Saffron used various business entities and trade names, including "Bitcoin Wealth Management," "Omnicron Trust" (or alternatively, "Omicron Trust"), and "Circle Society" to perpetuate his fraud.  Defendants solicited and continue to solicit actual and prospective participants through in-person meetings, word-of-mouth, instant messaging services such as Telegram, podcasts, and websites operated by Saffron including *https://circlesociety.com*.

24.     In a January 2018 video recording of Saffron's presentation to actual and prospective participants, Saffron performed a hypothetical trading demonstration on a laptop computer using a "BinBot Pro" trading platform and stated in pertinent part:

> The more bots I have running, the more money it is for the bank.  Literally, it's like printing money.  Every thirty seconds, you're making on average anywhere between 1 and 400 fiat [currency], or you're making 1 and 400 Bitcoin.

25.     Saffron claimed in his solicitations to actual and prospective participants that he used "BinBot Pro" to trade forex and cryptocurrency options pairs.  In his solicitations, Saffron failed to advise actual and prospective customers that "BinBot Pro" is a forex and cryptocurrency trading platform, and that it is unlawful to use it in the United States.  Saffron failed to advise actual and prospective customers that the "BinBot Pro" website contains a disclaimer stating in relevant part:  "BinBot Pro nor its agents or partners are not registered and do not provide any services on the US territory [sic]."

26.     Similarly, in a January 2018 audio recording of another presentation to actual and prospective participants, Saffron stated in pertinent part:

> The System basically is any money you put in, within seven calendar days— seven days from when you put it in—you get your outlay back.  So whatever you put in, you get your outlay back, fourteen days after that you get two-to-one on your money.  Okay, so you're getting three-to-one on whatever position you have; it can go from one Bitcoin all the way to 10,000 Bitcoin, whatever it is.  And I deal with all ranges.
>
> My personal portfolio as you've seen has over $717 million . . . company

portfolio is about $2 billion.  My liquid outlay per day is anywhere between $2 million and $5 million . . . I know who to call, and I just know how to do things, but I don't know this town yet because I'm integrated in Los Angeles.  So you guys know this town.  Perfect.  Now I can make you all damn rich.

Test the System out at first; I'll give you a three-day outlay return, just to show you it works.  So three days, you'll have your full return, outlay and two-to-one.  Any money you give me, half a Bitcoin, $1,000, $2,000, $500 whatever you have I will triple it in three days and hand it back to you.  Then, you can go to your people and go, 'this works.'  Any person you bring to me, I'll give you one-to-one on whatever they put in.  So you bring someone who has three Bitcoin, he puts three Bitcoin in, fourteen days and then seven-day outlay return, and then another fourteen days, seven days on that outlay return, he gets his money, you get yours.  Okay?  Very simple.

[Question by Prospective Participant]:  How . . . you're probably overwhelmed with people bringing you clients at this point?

[Saffron's Answer]:  Yes, I am.  I don't want a client list from you.  You're going to deal with the clients, okay.  A client comes to you and goes, 'how the f**k do I get in this?'  I want fifty Bitcoins to go to this guy.  Okay.  You go, 'I've got Jim who is putting in fifty Bitcoins.'  I set up a wallet for Jim, send you a wallet address.  He can check it on the computer its zero transactions.  It's his personal wallet.  He puts in the fifty Bitcoin.  I send you a contract back, it says fifty Bitcoin received 12:04 pm.  Fifty Bitcoin would be deposited back into wallet address on Friday, whatever date and fifty Bitcoin will be given to you as your commission.  It's one-to-one.  So understand the concept of that, okay that's money, millions within a month.

27.     As noted above in the January 2018 audio recording, Saffron falsely guaranteed actual and prospective participants a return of three hundred percent (300%) on their investment in three weeks.  On an annualized, compounded basis, this equals a rate of return on investment in excess of 186 million percent (186,000,000%).

28.     To induce actual and prospective participants to give Defendants their assets to purportedly pool and trade on their behalf, Defendants encouraged participants to recommend and refer others to participate in the fraudulent scheme.  Defendants sometimes promised actual and prospective participants a "referral fee" of one Bitcoin for every Bitcoin they induced their friends and acquaintances to invest.  At other times, Defendants promised actual and prospective

participants a "referral fee" equal to twenty percent (20%) of the assets invested by their friends and acquaintances.

29.     Most recently, Defendants have solicited participants through the Circle Society website, *https://circlesociety.com* ("Website"). Through the Website, Defendants offer participants various investment plans such as "Weekly BTC," "Year of the Pig," and "The Power of 3." The plans vary by amount required to be invested and guarantee rates of return within a specified time period. For example, the Website states that "The Power of 3" provides "Returns 300% in 45 days! business days" and "Year of the Pig" provides "Returns 188% in 38 days! business days."

30.     Through the Circle Society website, participants can transfer their Bitcoin to Circle Society from the participants' own cryptocurrency wallets. Participants who deposit Bitcoin through the Website are able to log into the Website to view their purported account balance with Circle Society, denominated in Bitcoin.

31.     At Defendants' instruction, pool participants provided at least $11 million in funds to Defendants via a Bitcoin wallet address controlled by Saffron and/or through the Circle Society website. Some participants also provided USD to Saffron directly.

32.     Defendants misappropriated pool participants' funds by soliciting funds for trading on behalf of the Pool and then holding participants' funds in Saffron's personal E-Wallet instead of segregating the funds in a pool account and using the funds to trade on behalf of the Pool.

33.     At no time did Defendants create or operate the Pool as an entity cognizable as a legal entity separate from the pool operator. As a result, at no time were any funds from pool participants received in the Pool's name because a separate pool was never created.

34.     During the Relevant Period, Saffron, and from September 6, 2018 through the present, Defendants, by and through Saffron, failed to maintain pool funds separately from Saffron's own funds. Defendants commingled pool participants' funds with personal funds of Saffron. As described above, pool participants deposited funds into a Bitcoin wallet address controlled by Saffron and/or through the Circle Society website. Defendants then held these funds in Saffron's personal E-Wallet instead of segregating them in a pool account.

**B.     Material Omissions and Misrepresentations of Material Facts**

35.     In furtherance of the fraudulent scheme, Defendants knowingly made and continue to make material omissions of fact in solicitations and other communications with actual and prospective pool participants, including by failing to disclose that:

    a.   Defendants misappropriated pool participants' funds by soliciting funds for trading and then retaining participants' funds in Saffron's personal E-Wallet instead of segregating the funds in a pool account and using the funds to trade on behalf of the Pool;

    b.   Defendants were not registered with the CFTC as required by the Act and were therefore operating an unlawful business enterprise; and

    c.   Purported "returns" paid to some pool participants were in fact the principal deposits of other participants and were not generated by profitable trading.

36.     Similarly, Defendants misrepresented and continue to misrepresent material facts in their solicitations and other communications with actual and prospective pool participants, including by mispresenting that:

    a.   Pool participants' funds would be pooled and used to trade binary options contracts, among other things, for the benefit of participants;

b.  Guaranteed profits would be paid to participants (*e.g.*, up to a 300% return every three weeks); and

c.  Guaranteed referral fees would be paid to participants in the amount of one Bitcoin for every Bitcoin and/or equal to twenty percent (20%) of the assets invested by their friends and acquaintances.

## C.   Defendants' Misappropriation and Refusal to Return Participants' Funds

37.   As described above, Defendants misappropriated participants' funds by soliciting funds for trading and then holding participants' funds in Saffron's personal E-Wallet instead of segregating the funds in a pool account and using them for trading on behalf of the Pool. Defendants did not disclose to actual and prospective participants that they misappropriated and used their funds for Saffron's personal use.

38.   The Bitcoin tendered by participants to Defendants were held in Saffron's personal E-Wallet and were never placed in any cryptocurrency or other trading accounts for the benefit of the Pool.  Similarly, at least some of the USD tendered by participants to Defendants were converted to Saffron's personal use and not placed in any cryptocurrency or other trading accounts for the benefit of the Pool.

39.   Defendants did not use the funds solicited and accepted from participants to trade on behalf of the Pool as promised.

40.   Defendants also misappropriated some portions of participants' funds by providing Bitcoin to certain participants as purported trading "profits," in order to create the illusion that the Pool was trading, and trading profitably.  For example, in early-January 2018, one participant provided Saffron with ten Bitcoin (worth approximately $150,000 at the time), and Saffron returned thirty Bitcoin (worth approximately $450,000 at the time) to this participant

as purported "profits" within twenty-four hours. This participant then touted these results to induce other members of the public to invest with Saffron.

41.     Other pool participants made and continue to make repeated demands on Defendants for the return of their funds. None of the participants received any "profits" within three weeks or at any other time. The majority of participants have been unable to obtain a return of any of their funds.

42.     Defendants attempted to perpetuate the fraud and conceal their misappropriation of participants' funds by making false statements to participants. Saffron made and continues to make, individually and as the agent of Circle Society, numerous representations to participants as to why Defendants are not paying profits as promised, including but not limited to: (a) computer shutdowns due to "solar flares"; (b) withdrawal delays at various cryptocurrency exchanges; and (c) transactions being "jammed up" or "frozen in cycle." Upon information and belief, these representations are false.

**D.     Failure to Register**

43.     During the Relevant Period, Saffron acted and continues to act in a capacity as a CPO by soliciting, accepting, and receiving funds from the public while engaged in a business that is of the nature of an investment trust, syndicate, or similar form of enterprise, for the purpose of, among other things, trading in commodity futures, without being registered with the CFTC as a CPO.

44.     From September 6, 2018 through the present, Circle Society acted and continues to act in a capacity as a CPO by soliciting, accepting, and receiving funds from the public while engaged in a business that is of the nature of an investment trust, syndicate, or similar form of enterprise, for the purpose of, among other things, trading in commodity futures, without being

registered with the CFTC as a CPO.

45.    From September 6, 2018 through the present, Saffron acted and continues to act in a capacity as an AP of Circle Society by, in his capacity as a partner, officer, employee, consultant or agent of the CPO (Circle Society), soliciting or supervising the solicitation of funds for participation in the Pool, without being registered with the CFTC as an AP of a CPO.

## VI.    VIOLATIONS OF THE COMMODITY EXCHANGE ACT AND CFTC REGULATIONS

### COUNT ONE
**Violations of Section 4c(b) of the Act, 7 U.S.C. § 6c(b) (2012), and Regulation 32.4, 17 C.F.R. § 32.4 (2019)**
**(Options Fraud—Defendants Saffron and Circle Society)**

46.    The allegations set forth in the preceding paragraphs are re-alleged and incorporated herein by reference.

47.    7 U.S.C. § 6c(b) makes it unlawful for any person to offer to enter into, enter into, or confirm the execution of, any transaction involving any commodity regulated under the Act which is of the character of, or is commonly known to the trade as, inter alia, an "option," "bid," "offer," "put," or "call," contrary to any rule, regulation, or order of the CFTC prohibiting any such transaction or allowing any such transaction under such terms and conditions as the CFTC shall prescribe.  Through 7 U.S.C. § 6c(b), Congress has given the CFTC jurisdiction and plenary rulemaking authority over all commodity option transactions.

48.    17 C.F.R. § 32.4, promulgated in part pursuant to 7 U.S.C. § 6c(b), provides that, in or in connection with an offer to enter into, the entry into, or the confirmation of the execution of, any commodity option transaction, it shall be unlawful for any person, directly or indirectly: (a) to cheat or defraud or attempt to cheat or defraud any other person; (b) to make or cause to be made to any other person any false report or statement thereof or cause to be entered for any

person any false record thereof; or (c) to deceive or attempt to deceive any other person by any means whatsoever.

49.     As described herein, Defendants cheated or defrauded, or attempted to cheat or defraud, and deceived, or attempted to deceive, other persons in connection with Defendants' offers to enter into commodity option contracts by, among other things: (a) failing to advise participants that they were misappropriating participants' funds; (b) failing to advise participants that they were not trading their funds as promised; (c) failing to advise participants that they were not earning "profits" of up to 300% every three weeks; (d) misrepresenting that participants' funds would be pooled and used to trade binary options trading, among other things, for the benefit of the Pool; and (e) falsely guaranteeing "profits" of up to 300% every three weeks along with referral fees.

50.     The foregoing acts, omissions, and failures by Saffron occurred within the scope of his employment, agency, or office with Circle Society during the September 6, 2018 through the present timeframe.  Therefore, Circle Society is liable for Saffron's violations of 7 U.S.C. § 6c(b) and 17 C.F.R. § 32.4, pursuant to Section 2(a)(1)(B) of the Act, 7 U.S.C. § 2(a)(1)(B) (2012), and Regulation 1.2, 17 C.F.R. § 1.2 (2019).

51.     Saffron held and exercised direct and indirect control over Circle Society and either did not act in good faith or knowingly induced Circle Society's violations of 7 U.S.C. § 6c(b) and 17 C.F.R. § 32.4 during the September 6, 2018 through the present timeframe.  As a controlling person of Circle Society, Saffron is liable for Circle Society's violations of 7 U.S.C. § 6c(b) and 17 C.F.R. § 32.4 pursuant to Section 13(b) of the Act, 7 U.S.C. § 13c(b) (2012).

52.     Each misrepresentation, omission of material fact, false statement, and misappropriation, including but not limited to those specifically alleged herein, is alleged as a

separate and distinct violation of 7 U.S.C. § 6c(b) and 17 C.F.R. § 32.4.

## COUNT TWO
### Violations of Section 4*o*(1)(A)-(B) of the Act, 7 U.S.C. § 6*o*(1)(A)-(B) (2012)
### (Fraud by a CPO—Defendants Saffron and Circle Society; Fraud by an AP of a CPO—Defendant Saffron)

53.    The allegations set forth in the preceding paragraphs are re-alleged and incorporated herein by reference.

54.    During the Relevant Period, Saffron acted and continues to act as a CPO, as defined by Section 1a(11) of the Act, 7 U.S.C. § 1a(11) (2012), by soliciting, accepting, or receiving funds or property (in the form of Bitcoin) from the public while engaged in a business that is of the nature of an investment trust, syndicate, or similar form of enterprise, for the purpose of trading in commodity interests, including, in relevant part, commodity options authorized under Section 4c of the Act, 7 U.S.C. § 6c.

55.    From September 6, 2018 through the present, Circle Society acted and continues to act as a CPO, as defined by Section 1a(11) of the Act, 7 U.S.C. § 1a(11) (2012), by soliciting, accepting, or receiving funds or property (in the form of Bitcoin) from the public while engaged in a business that is of the nature of an investment trust, syndicate, or similar form of enterprise, for the purpose of trading in commodity interests, including, in relevant part, commodity options authorized under 7 U.S.C. § 6c.

56.    An AP of a CPO is defined by Regulation 1.3, 17 C.F.R. § 1.3 (2019), as any person who is associated with a CPO as a partner, officer, employee, consultant, or agent (or any natural person occupying a similar status or performing similar functions), in any capacity which involves (i) the solicitation of funds, securities, or property for a participation in a commodity pool or (ii) the supervision of any person or persons so engaged.  From September 6, 2018

through the present, Saffron acted and continues to act as an AP of CPO Circle Society by soliciting funds or property (in the form of Bitcoin) for the Pool.

57.  7 U.S.C. § 6o(1)(A)-(B) prohibits CPOs and APs of CPOs, whether registered with the CFTC or not, from using the mails or any means or instrumentality of interstate commerce, directly or indirectly, from employing devices, schemes or artifices to defraud any actual or prospective participant, or engaging in transactions, practices, or courses of business which operate as a fraud or deceit upon any actual or prospective participant.

58.  As alleged herein, Defendants employed or are employing a device, scheme, or artifice to defraud actual and prospective participants or engaged or are engaging in transactions, practices, or a course of business which operated or operates as a fraud or deceit upon any actual or prospective participant, including without limitation:  misappropriation of participants' funds and misrepresenting and/or omitting material facts in solicitations and communications with participants, all in violation of 7 U.S.C. § 6o(1)(A)-(B).

59.  The foregoing acts, omissions, and failures by Saffron occurred within the scope of his employment, agency, or office with Circle Society during the September 6, 2018 through the present timeframe.  Therefore, Circle Society is liable for Saffron's violations of 7 U.S.C. § 6o(1)(A)-(B) pursuant to 7 U.S.C. § 2(a)(1)(B) and 17 C.F.R. § 1.2.

60.  Saffron held and exercised direct and indirect control over Circle Society and either did not act in good faith or knowingly induced Circle Society's violations of 7 U.S.C. § 6o(1)(A)-(B) during the September 6, 2018 through the present timeframe.  As a controlling person of Circle Society, Saffron is liable for Circle Society's violations of 7 U.S.C. § 6o(1)(A)-(B), pursuant to 7 U.S.C. § 13c(b).

61.     Each act of fraudulent solicitation, misappropriation and false statement, including but not limited to those specifically alleged herein, is alleged as a separate and distinct violation of 7 U.S.C. § 6o(1)(A)-(B).

## COUNT THREE
**Violations of Regulation 4.20(a)(1), (b), and (c), 17 C.F.R. § 4.20(a)(1), (b), (c) (2019)**
**(Failure to Operate Commodity Pool as a Separate Legal Entity, Failure to Receive Funds in the Pool's Name, and Commingling of Pool Funds)**

62.     The allegations set forth in the preceding paragraphs are re-alleged and incorporated herein by reference.

63.     17 C.F.R. § 4.20(a)(1) requires a CPO to operate his or her commodity pool as an entity cognizable as a legal entity separate from that of the pool operator, with certain specified exceptions not applicable here.

64.     During the Relevant Period, Saffron, and from September 6, 2018 through the present, Circle Society, while acting as CPOs, violated 17 C.F.R. § 4.20(a)(1) by failing to operate the commodity pool as a legal entity separate from themselves.

65.     17 C.F.R. § 4.20(b) provides:  "All funds, securities or other property received by a commodity pool operator from an existing or prospective pool participant for the purchase of an interest or as an assessment (whether voluntary or involuntary) on an interest in a pool that it operates or that it intends to operate must be received in the pool's name."

66.     During the Relevant Period, Saffron, and from September 6, 2018 through the present, Circle Society, while acting as CPOs, violated 17 C.F.R. § 4.20(b) by receiving funds from existing or prospective pool participants for the purchase of an interest in the Pool without receiving the same in the Pool's name.

67.     17 C.F.R. § 4.20(c) provides, "[n]o commodity pool operator may commingle the property of any pool that it operates or that it intends to operate with the property of any other

person."

68.     During the Relevant Period, Saffron, and from September 6, 2018 through the present, Circle Society, while acting as CPOs, violated 17 C.F.R. § 4.20(c) by commingling pool funds with the personal funds of Saffron.

**COUNT FOUR**
**Violations of Section 4m(1) and 4k(2) of the Act, 7 U.S.C. §§ 6m(1), 6k(2)(2012)**
**(Failure to Register as a CPO—Defendants Saffron and Circle Society; Failure to Register as an AP of a CPO—Defendant Saffron)**

69.     The allegations set forth in the preceding paragraphs are re-alleged and incorporated herein by reference.

70.     7 U.S.C. § 6m(1) makes it unlawful for any CPO, unless registered with the CFTC, to make use of the mails or any means or instrumentality of interstate commerce in connection with its business as a CPO.

71.     During the Relevant Period, Saffron acted as a CPO by engaging in a business that was in the nature of a commodity pool, investment trust, syndicate, or similar enterprise, and in connection therewith, solicited, accepted, or received from others, funds, securities, or property, either directly or otherwise, for the purpose of trading in commodity interests, including without limitation, commodity options, while failing to register with the CFTC as a CPO in violation of 7 U.S.C. § 6m(1).  During the Relevant Period, Saffron was not exempt from registration as a CPO.

72.     From September 6, 2018 through the present, Circle Society acted as a CPO by engaging in a business that was in the nature of a commodity pool, investment trust, syndicate, or similar enterprise, and in connection therewith, solicited, accepted, or received from others, funds, securities, or property, either directly or otherwise, for the purpose of trading in commodity interests, including without limitation, commodity options, while failing to register

with the CFTC as a CPO in violation of 7 U.S.C. § 6m(1).  From September 6, 2018 through the present, Circle Society was not exempt from registration as a CPO.

73.     7 U.S.C. § 6k(2) makes it unlawful for any person to be associated with a CPO as an officer or agent (or any person occupying a similar status or performing similar functions), in any capacity that involves the solicitation of funds, securities, or property for participation in a commodity pool, unless such person is registered with the CFTC as an AP of a CPO.

74.     From September 6, 2018 through the present, Saffron was associated with CPO Circle Society as an officer or agent in a capacity that involved the solicitation of funds, securities, or property for participation in a commodity pool, while failing to register with the CFTC as an AP of the CPO Circle Society in violation of 7 U.S.C. § 6k(2).  From September 6, 2018 through the present, Saffron was not exempt from the requirement to register as an AP of a CPO.

75.     The foregoing acts, omissions, and failures by Saffron occurred within the scope of his employment, agency, or office with Circle Society during the September 6, 2018 through the present timeframe.  Therefore, Circle Society is liable for Saffron's violations of 7 U.S.C. § 6k(2), pursuant to 7 U.S.C. § 2(a)(1)(B) and 17 C.F.R. § 1.2.

76.     Saffron held and exercised direct and indirect control over Circle Society and either did not act in good faith or knowingly induced Circle Society's violations of 7 U.S.C. § 6m(1) during the September 6, 2018 through the present timeframe.  As a controlling person of Circle Society, Saffron is liable for Circle Society's violations of 7 U.S.C. § 6m(1), pursuant to 7 U.S.C. § 13c(b).

77.     Each instance during the Relevant Period in which Saffron acted as an unregistered CPO, including but not limited to those specifically alleged herein, is alleged as a separate and distinct violation of 7 U.S.C. § 6m(1).

78.     Each instance from September 6, 2018 through the present in which Circle Society acted as an unregistered CPO, including but not limited to those specifically alleged herein, is alleged as a separate and distinct violation of 7 U.S.C. § 6m(1).

79.     Each instance from September 6, 2018 through the present in which Saffron acted as an AP of Circle Society, including but not limited to those specifically alleged herein, is alleged as a separate and distinct violation of 7 U.S.C. § 6k(2).

## VII.   **RELIEF REQUESTED**

WHEREFORE, the CFTC respectfully requests that this Court, as authorized by Section 6c of the Act, 7 U.S.C. § 13a-1 (2012), and pursuant to its own equitable powers, enter:

A.     An order finding that Defendants violated Sections 4c(b), 4m(1), and 4o(1)(A)-(B) of the Act, 7 U.S.C. §§ 6c(b), 6m(1), 6o(1)(A)-(B) (2012), and Regulations 4.20(a)(1), (b) and (c), and 32.4, 17 C.F.R. §§ 4.20(a)(1), (b), (c), 32.4 (2019);

B.     An order finding that Saffron violated Section 4k(2) of the Act, 7 U.S.C. § 6k(2) (2012);

C.     An order of permanent injunction restraining, enjoining and prohibiting Defendants and any other person or entity in active concert with them, from engaging in conduct in violation of 7 U.S.C. §§ 6c(b), 6m(1), 6o(1)(A)-(B) and 17 C.F.R. §§ 4.20(a)(1), (b), (c), 32.4;

D.     An order of permanent injunction restraining, enjoining and prohibiting Saffron and any other person or entity in active concert with him, from engaging in conduct in violation of 7 U.S.C. § 6k(2) (2012);

E.   An order of permanent injunction prohibiting Defendants and any other person or entity in active concert with them from, directly or indirectly:

1) Trading on or subject to the rules of any registered entity (as that term is defined by Section 1a(40) of the Act, 7 U.S.C. § 1a(40) (2012));

2) Entering into any transactions involving "commodity interests" (as that term is defined in Regulation 1.3, 17 C.F.R. § 1.3 (2019)), for accounts held in the name of Defendants or for accounts in which Defendants have a direct or indirect interest;

3) Having any commodity interests traded on Defendants' behalf;

4) Controlling or directing the trading for, or on behalf of any other person or entity, whether by power of attorney or otherwise, in any account involving commodity interests;

5) Soliciting, receiving, or accepting any funds from any person for the purpose of purchasing or selling of any commodity interests;

6) Applying for registration or claiming exemption from registration with the CFTC in any capacity, and engaging in any activity requiring such registration or exemption from registration with the CFTC, except as provided for in Regulation 4.14(a)(9), 17 C.F.R. § 4.14(a)(9) (2019); and

7) Acting as a principal (as that term is defined in Regulation 3.1(a), 17 C.F.R. § 3.1(a) (2019)), agent, or any other officer or employee of any person registered, exempted from registration, or required to be registered with the CFTC except as provided for in Regulation 4.14(a)(9), 17 C.F.R. § 4.14(a)(9) (2019);

F.      An order requiring Defendants, as well as any successors thereof, to disgorge, pursuant to such procedures as the Court may order, all benefits received including, but not limited to, salaries, commissions, loans, fees, revenues, and trading profits derived, directly or indirectly, from acts or practices which constitute violations of the Act and Regulations as described herein, including pre-judgment and post-judgment interest;

G.      An order requiring Defendants, as well as any successors thereof, to make full restitution, pursuant to such procedures as the Court may order, to every person or entity who sustained losses proximately caused by Defendants' violations described herein, including pre-judgment and post-judgment interest;

H.      An order directing Defendants, as well as any successors thereof, to rescind, pursuant to such procedures as the Court may order, all contracts and agreements, whether implied or express, entered into between them and any of the participants whose funds were received by Defendants as a result of the acts and practices that constituted violations of the Act and Regulations, as described herein;

I.      An order directing Defendants, as well as any successors thereof, to pay a civil monetary penalty, to be assessed by the Court, in an amount not to exceed the penalty prescribed by Section 6c(d)(1) of the Act, 7 U.S.C. § 13a-1(d)(1) (2012), as adjusted for inflation pursuant to the Federal Civil Penalties Inflation Adjustment Act Improvements Act of 2015, Pub. L. 114-74, tit. VII, § 701, 129 Stat. 584, 599-600, *see* 17 C.F.R. § 143.8 (2019), or subsequent annually adjusted amounts, for each violation of the Act and Regulations, as described herein;

J.      An order directing that Defendants, and any successors thereof, make an accounting to the Court of all of their assets and liabilities, together with all funds they received from and paid to participants and other persons in connection with commodity interests and all

disbursements for any purpose whatsoever of funds received from commodity interests, including salaries, commissions, interest, fees, loans, and other disbursement of money or property of any kind from at least December 2017 to the date of such accounting;

K.     An order requiring Defendants, and any successors thereof, to pay costs and fees as permitted by 28 U.S.C. §§ 1920 and 2413(a)(2) (2012); and

L.     Such other and further relief as this Court may deem necessary and appropriate under the circumstances.

Dated:  September 30, 2019                    Respectfully submitted,

By: /s/ Danielle E. Karst
Danielle E. Karst
Timothy J. Mulreany
**COMMODITY FUTURES TRADING COMMISSION**
Three Lafayette Centre
1155 21st Street, N.W.
Washington, D.C. 20581
Telephone:  (202) 418-5000
Facsimile:   (202) 418-5523