1 | Danielle E. Karst (D.C. Bar No. 481881)
Timothy J. Mulreany (Maryland Bar No. 8812160123)
2 | **COMMODITY FUTURES TRADING COMMISSION**
Three Lafayette Centre
3 | 1155 21st Street, N.W.
Washington, D.C. 20581
4 | Telephone:   (202) 418-6158 (Karst)
Telephone:   (202) 418-5306 (Mulreany)
5 | Facsimile:   (202) 418-5523
dkarst@cftc.gov
6 | tmulreany@cftc.gov



7

# UNITED STATES DISTRICT COURT
## DISTRICT OF NEVADA

8

**2:19-cv-01697-KJD-DJA**

| | |
|---|---|
| COMMODITY FUTURES TRADING COMMISSION, | Case No. |
| Plaintiff, | |
| v. | **PLAINTIFF'S MOTION FOR A PRELIMINARY INJUCTION AND MEMORANDUM IN SUPPORT** |
| DAVID GILBERT SAFFRON a/k/a DAVID GILBERT and CIRCLE SOCIETY, CORP., | |
| Defendants. | |

## I.     INTRODUCTION

Plaintiff Commodity Futures Trading Commission ("Commission" or "CFTC") submits this motion for a preliminary injunction and memorandum in support against David Gilbert Saffron a/k/a David Gilbert ("Saffron") and his business entity, Circle Society, Corp. ("Circle Society") (collectively, "Defendants"). As alleged in the Complaint for Injunctive  Relief, Restitution, Disgorgement and Civil Monetary Penalties Under the Commodity Exchange Act and Commission Regulations ("Complaint," ECF No. 1) filed contemporaneously herewith, Defendants have engaged, are engaging, and may be about to engage in acts and practices that violate the anti-fraud, registration, and commodity pool operator provisions of the Commodity Exchange Act ("Act") and Commission Regulations ("Regulations").

Accordingly, and as set forth in the proposed order submitted herewith, the Commission moves for a preliminary injunction to protect the Court's ability to grant full and effective relief by preserving the *status quo*, in particular by: (1) freezing Defendants' assets pending trial on the merits of this action; (2) requiring Defendants to provide the Commission with a full accounting of their assets, the disposition of participants' funds from receipt until present, and access to all records associated with Defendants' accounts held at financial institutions; (3) prohibiting Defendants from destroying, altering, or disposing of any books and records; and (4) preliminarily enjoining Defendants from further violating the Act and Regulations as alleged in the Complaint filed herein.

## II.     THE PARTIES

Plaintiff **Commodity Futures Trading Commission** is an independent federal regulatory agency charged by Congress with the administration and enforcement of the Act, 7 U.S.C. §§ 1-26 (2012), and the Regulations promulgated thereunder, 17 C.F.R. pts. 1–190 (2019).

Defendant **David Gilbert Saffron** is a citizen of the Commonwealth of Australia and sometimes uses the alias "David Gilbert." Saffron's last known residence is in Las Vegas, Nevada. Saffron has never been registered with the Commission in any capacity.

Defendant **Circle Society, Corp**. is a Nevada corporation based in Henderson, Nevada. Circle Society, Corp. was incorporated by Saffron on September 6, 2018, with a purported office at 2450 St. Rose Parkway, Suite 120, Henderson, Nevada. Circle Society, Corp. has never been registered with the Commission in any capacity.

### III.    FACTS

**A.    The Fraudulent Scheme**

From at least December 2017 through the present (the "Relevant Period"), Saffron has

fraudulently solicited and accepted at least $11 million worth of Bitcoin ("BTC") and United

States Dollars ("USD") (BTC, together with USD, "funds") from no fewer than fourteen

members of the public to participate in an unregistered commodity pool (the "Pool"). *See*

Declaration of Futures Trading Investigator George Malas ("Malas Decl.") ¶ 6(c)-(d) (Exhibit 1).

During the early stages of his activity, Saffron individually created a business entity, Circle

Society Corp. ("Circle Society"), on or about September 6, 2018, and used this entity to

perpetuate his fraud. *Id*. ¶¶ 6(b)-(c), 65-68; Exhibit 2 to Malas Decl. (Certified Nevada Sec. of

State Records).  Beginning on or about September 6, 2018 through the present, Saffron,

individually and as principal and agent of Circle Society, has fraudulently solicited members of

the public to participate in a commodity pool operated by Circle Society. *Id*.  Through the use of

in-person meetings, word-of-mouth, instant messaging services such as Telegram, podcasts, and

websites operated by Saffron, Defendants solicited actual and prospective participants to pool

their funds with that of other participants for the purported purpose of trading off-exchange

binary option contracts on foreign currency ("forex") and cryptocurrency pairs, among other

things. *Id*. ¶ 6(f).  Defendants guaranteed returns of up to 300% in three weeks. *Id*. ¶ 6(g)(iii).

At Defendants' instruction, pool participants provided at least $11 million in funds to

Defendants via a Bitcoin wallet address controlled by Saffron and/or through the Circle Society

website.  Malas Decl. ¶¶ 6(h), 67.  Some participants also provided USD to Saffron directly. *Id*.

¶ 6(h).  During the Relevant Period, Saffron, and from September 6, 2018 through the present,

Defendants, by and through Saffron, have accepted and misappropriated participants' funds. *Id*.

¶ 6(j). Defendants misappropriated pool participants' funds by soliciting funds for trading on behalf of the Pool and then holding participants' funds in Saffron's personal E-Wallet instead of segregating the funds in a pool account and using the funds to trade on behalf of the Pool as promised. *Id.* ¶ 6(j). Defendants did not conduct trading on behalf of participants as promised and operated their unregistered pool in the nature of a "Ponzi" scheme. *Id.* Defendants also misappropriated some portions of participants' funds by providing BTC to earlier-in-time participants using the BTC of later-in-time participants to perpetuate their fraud. *Id.*

During the Relevant Period, Saffron has failed to register with the Commission as a commodity pool operator ("CPO"). Malas Decl. ¶ 7; Exhibit 1 to Malas Decl. (National Futures Association "NFA" Certifications of Registration). From September 6, 2018 through the present, Circle Society has failed to register with the Commission as a CPO, and Saffron has failed to register with the Commission as an associated person ("AP") of CPO Circle Society. *Id.*

Besides the participants who obtained some Ponzi payments from Saffron, the majority of participants have been unable to obtain a return of any of their funds. Malas Decl. ¶ 6(k). Pool participants made and continue to make repeated demands on Defendants for the return of their funds. *Id.* Saffron made and continues to make numerous representations to participants as to why Defendants are not paying purported profits as promised. *Id.* ¶ 6(l)-(o).

**B.      Material Omissions and Misrepresentations of Material Facts**

In furtherance of the fraudulent scheme, Defendants knowingly made and continue to make material omissions of fact in solicitations and other communications with actual and prospective pool participants, including by failing to disclose that: (1) Defendants misappropriated pool participants' funds by soliciting funds for trading and then retaining

participants' funds in Saffron's personal E-Wallet instead of segregating the funds in a pool account and using the funds to trade on behalf of the Pool; (2) Defendants were not registered with the Commission as required by the Act and were therefore operating an unlawful business enterprise; and (3) purported "returns" paid to some pool participants were in fact the principal deposits of other participants and were not generated by profitable trading.

Similarly, Defendants misrepresented and continue to misrepresent material facts in their solicitations and other communications with actual and prospective pool participants, including by mispresenting that: (1) pool participants' funds would be pooled and used to trade binary options contracts, among other things, for the benefit of participants; (2) guaranteed profits would be paid to participants (*e.g.*, up to a 300% return every three weeks); and (3) guaranteed referral fees would be paid to participants in the amount of one Bitcoin for every Bitcoin and/or equal to twenty percent (20%) of the assets invested by their friends and acquaintances.

## C.   Defendants' Misappropriation and Refusal to Return Participants' Funds

Defendants did not use the funds solicited and accepted from participants to trade on behalf of the Pool as promised.  Defendants did not disclose to actual and prospective participants that they misappropriated and used their funds for Saffron's personal use.  The Bitcoin tendered by participants to Defendants were held in Saffron's personal E-Wallet and were never placed in any cryptocurrency or other trading accounts for the benefit of the Pool. Malas Decl. ¶¶ 6(j), 12, 14, 16.  Similarly, at least some of the USD tendered by participants to Defendants were converted to Saffron's personal use and not placed in any cryptocurrency or other trading accounts for the benefit of the Pool.  *Id.* ¶ 24.

Defendants also misappropriated some portions of participants' funds by providing Bitcoin to certain participants as purported trading "profits," in order to create the illusion that

the Pool was trading, and trading profitably.  Malas Decl. ¶ 6(j).  For example, in early-January 2018, one participant provided Saffron with ten Bitcoin (worth approximately $150,000 at the time), and Saffron returned thirty Bitcoin (worth approximately $450,000 at the time) to this participant as purported "profits" within twenty-four hours.  *Id.* ¶ 46.  This participant then touted these results to induce other members of the public to invest with Saffron.

Other pool participants made and continue to make repeated demands on Defendants for the return of their funds.  Malas Decl. ¶ 6(k).  None of the participants received any "profits" within three weeks or at any other time.  The majority of participants have been unable to obtain a return of any of their funds.  *Id.*

Defendants attempted to perpetuate the fraud and conceal their misappropriation of participants' funds by making false statements to participants.  Saffron made and continues to make, individually and as the agent of Circle Society, numerous representations to participants as to why Defendants are not paying profits as promised, including but not limited to:  (1) computer shutdowns due to "solar flares"; (2) withdrawal delays at various cryptocurrency exchanges; and (3) transactions being "jammed up" or "frozen in cycle."  Malas Decl. ¶ 6(l)-(o).

**D.     Operation of the Pool and Commingling**

At no time during the Relevant Period did Defendants create or operate the Pool as an entity cognizable as a legal entity separate from the pool operator.  As a result, at no time were any funds from pool participants received in the Pool's name because a separate pool was never created.  During the Relevant Period, Saffron, and from September 6, 2018 through the present, Defendants, by and through Saffron, failed to maintain pool funds separately from Saffron's own funds.  Defendants commingled pool participants' funds with personal funds of Saffron.  As described above, pool participants deposited their funds into a BTC wallet address controlled by

Saffron and/or through the Circle Society website.  Malas Decl. ¶ 6(h).  Defendants then held these funds in Saffron's personal E-Wallet instead of segregating them in a pool account.  *Id.* ¶ 6(h).

### E.   Saffron and Circle Society Acted as Unregistered CPOs and Saffron Acted as an Unregistered Associated Person of a CPO

During the Relevant Period, Saffron acted and continues to act in a capacity as a CPO by soliciting, accepting, and receiving funds from the public while engaged in a business that is of the nature of an investment trust, syndicate, or similar form of enterprise, for the purpose of, among other things, trading in commodity futures, without being registered with the Commission as a CPO.  Malas Decl. ¶ 7; Exhibit 1 to Malas Decl. (National Futures Association Certifications of Registration).

From September 6, 2018 through the present, Circle Society acted and continues to act in a capacity as a CPO by soliciting, accepting, and receiving funds from the public while engaged in a business that is of the nature of an investment trust, syndicate, or similar form of enterprise, for the purpose of, among other things, trading in commodity futures, without being registered with the Commission as a CPO.  *Id.*

From September 6, 2018 through the present, Saffron acted and continues to act in a capacity as an AP of Circle Society by, in his capacity as a partner, officer, employee, consultant or agent of the CPO (Circle Society), soliciting or supervising the solicitation of funds for participation in the Pool, without being registered with the Commission as an AP of a CPO.  *Id.*

### IV.   ARGUMENT

### A.   Legal Standard for Preliminary Injunctive Relief

Pursuant to 7 U.S.C. § 13a-1 (2012), the Commission seeks a preliminary injunction against Defendants prohibiting, among other things, future violations of the Act or Regulations

under which they have been charged.  7 U.S.C. § 13a-1(a) (2012) authorizes the Commission to

seek injunctive relief against any person "[w]henever it shall appear to the Commission" that

such person or entity "has engaged, is engaging, or is about to engage in any act or practice

constituting a violation of any provision" of the Act or Regulations; *see also CFTC v. Co Petro*

*Marketing Group, Inc.*, 680 F.2d 573, 583 (9th Cir. 1982) (recognizing district court's authority

"to issue permanent or temporary injunctions or restraining orders" under 7 U.S.C. § 13a-1);

*CFTC v. Yu*, No. 12-cv-3921, 2012 WL 3283430, at *4 (N.D. Cal. Aug. 10, 2012) ("the CFTC is

entitled to injunctive relief upon a *prima facie* showing that a violation of the law has occurred

and that 'there is some reasonable likelihood of future violations'") (quoting *CFTC v. Hunt*, 591

F.2d 1211, 1220 (7th Cir. 1979)).  Injunctive relief under 7 U.S.C. § 13a-1 "is remedial in nature,

and is designed to prevent injury to the public and to deter future illegal conduct." *Yu*, 2012 WL

3283430, at *4.  Therefore, restrictions ordinarily associated with private litigation, such as

irreparable injury or inadequacy of other remedies, are inapplicable. *See Hunt*, 591 F.2d at 1220;

*Yu*, 2012 WL 3283430, at *4.

The Commission is entitled to preliminary injunctive relief upon a *prima facie* showing

that:  (1) a violation of the Act or Regulations has occurred; and (2) there is a reasonable

likelihood of future violations.  "Once a violation is demonstrated, the moving party need show

only that there is some reasonable likelihood of future violations." *CFTC v. Wilson*, No. 11-cv-

1651, 2011 WL 6398933, at *2 (S.D. Cal. Dec. 20, 2011) (citing *Hunt*, 591 F.2d at 1220)

(internal quotations omitted); *see also CFTC v. Valois*, No. 8:15-cv-130, 2015 WL 12684303, at

*2 (C.D. Cal. Feb. 13, 2015) (granting preliminary injunction where record constitutes *prima*

*facie* showing of Defendants' violations and a "reasonable likelihood of future violation" exists).

In assessing the reasonable likelihood of future violations of the Act and Regulations, "a court

must look to the totality of the circumstances," including whether a defendant's past violations "require a showing of knowledge of wrongdoing, were persistent or recurrent, or occurred over a long span of time." *Yu*, 2012 WL 3283430, at *4. As a result, the Court may infer a reasonable likelihood of future violations from a defendant's past unlawful conduct. *Hunt*, 591 F.2d at 1220.

Moreover, "because the commodities trading area is a highly regulated, 'highly sensitive area of public trust,'" any circumstances suggesting that a defendant may repeat or continue his activity in violation of Commission registration requirements "strongly favor entry of an injunction." *Yu*, 2012 WL 3283430, at *4 (citing *CFTC v. British Am. Commodity Options*, 560 F.2d at 142); *see also* Malas Decl. ¶ 7; Exhibit 1 to Malas Decl. (NFA Certifications of Registration).

## B.   *Prima Facie* **Violations of the Act and Regulations**

The record before the Court establishes a *prima facie* showing that Defendants violated the antifraud and registration provisions of the Act and Regulations and that a reasonable likelihood of future violations exists. As alleged in the Complaint and described herein, Defendants operated a fraudulent scheme and knowingly and intentionally misappropriated pool participants' funds. Far from an isolated incident, Defendants' fraudulent scheme was an intentional "Ponzi" scheme inflicted upon participants all over the United States. Defendants violated core provisions of the Act, and their conduct strikes at the heart of market integrity and the orderly functioning of the Commission's registration process. By acting as unregistered CPOs in soliciting, accepting, and receiving at least $11 million in funds for the purpose of trading binary options contracts on forex and cryptocurrency pairs, Defendants have repeatedly demonstrated a high likelihood that they will continue to engage in such unlawful conduct unless

enjoined by this Court as requested by the Commission.  Therefore, the granting of the

preliminary injunctive relief requested by the Commission is warranted.

### 1.  Saffron and Circle Society Committed Commodity Options Fraud in Violation of 7 U.S.C § 6c(b) (2012) and 17 C.F.R. § 32.4 (2019) (Count One)

7 U.S.C § 6c(b) (2012) makes it unlawful for "any person to offer to enter into, enter into,

or confirm the execution of any transaction" involving any commodity regulated under the Act

which is of the character of, or is commonly known as, *inter alia*, an "option," "bid," "offer,"

"put," or "call," contrary to any rule, regulation, or order of the Commission prohibiting any

such transaction or allowing any such transaction under such terms and conditions as the

Commission shall prescribe.  Through 7 U.S.C. § 6c(b) Congress has given the Commission

jurisdiction and plenary rulemaking authority over all commodity option transactions.

17 C.F.R. § 32.4 (2019), promulgated in part pursuant to 7 U.S.C. § 6c(b), provides that:

> In or in connection with an offer to enter into, the entry into, or the confirmation of the execution of, any commodity option transaction, it shall be unlawful for any person, directly or indirectly:  (a) To cheat or defraud or attempt to cheat or defraud any other person; (b) To make or cause to be made to any other person any false report or statement thereof or cause to be entered for any person any false record thereof; or (c) To deceive or attempt to deceive any other person by any means whatsoever.

The same elements supporting a traditional fraud claim under 7 U.S.C. § 6b (2012)

support a binary options fraud claim under 7 U.S.C. § 6c(b) (2012) and 17 C.F.R. § 32.4 (2019).

*See CFTC v. Arrington*, 998 F. Supp. 2d 847, 871 (D. Neb. 2014), *aff'd sub nom. CFTC v.

Kratville*, 796 F.3d 873 (8th Cir. 2015); *see also CFTC v. Rosenberg*, 85 F. Supp. 2d 424, 445

(D.N.J. 2000) (analyzing claims under 7 U.S.C. § 6b(a) and 7 U.S.C. § 6c(b) together); *CFTC v.

Valko*, No. 0:06-cv-60001, 2006 WL 2582970, at *3 (S.D. Fla. Aug. 16, 2006); *In re Staryk*,

CFTC No. 95-5, 1996 WL 294355, at *8 (June 5, 1996) (outlining requirements for options fraud

under 7 U.S.C. § 6c(b) and noting parallels between applicable Commission Regulation and 7

U.S.C. § 6b(a) of Act), *aff'd in relevant part*, 1997 WL 35391496 (Dec. 18, 1997).  Accordingly, "[i]n order to establish liability for fraud, [the CFTC has] the burden of proving three elements: (1) the making of a misrepresentation, misleading statement, or a deceptive omission; (2) scienter; and (3) materiality."  *CFTC v. R.J. Fitzgerald & Co., Inc.*, 310 F.3d 1321, 1328 (11th Cir. 2002) (citations omitted).

### a. Defendants Committed Fraud by Making Omissions and Misrepresentations of Material Fact

#### 1. Omissions and Misrepresentations

When determining whether a misrepresentation has been made, one must look to the "overall message" and the "common understanding of the information conveyed."  *R.J. Fitzgerald*, 310 F.3d at 1328 (internal quotation marks and citation omitted).  "Any guarantee of profit and assurance against loss in the context of futures trading is inherently a fraudulent misrepresentation because investments in futures transactions necessarily depend on speculative predictions about an unpredictable future and risk is unavoidable."  *CFTC v. Standard Forex, Inc.*, No. 1:93-cv-0088 (CPS), 1993 WL 809966, at *21 (E.D.N.Y. Aug. 9, 1993).  Failure to inform customers about the inherent risks associated with trading commodity option contracts "while projecting large profits amounts to fraud."  *CFTC v. Commonwealth Fin. Grp.*, 874 F. Supp. 1345, 1354 (S.D. Fla. 1994); *see also CFTC v. Weinberg*, 287 F. Supp. 2d 1100, 1107 (C.D. Cal. 2003) (finding that "by guaranteeing profits to his investors, [defendant] made material misrepresentations that constitute fraud under Sections 4b(a)(i) and (iii) of the Act").

During the Relevant Period, Saffron, and from September 6, 2018 through the present, Defendants, by and through Saffron, have committed fraud, including by making omissions and misrepresentations of material fact to attract and retain participants to enter into binary options transactions.  In violation of 7 U.S.C. § 6c(b) and 17 C.F.R. § 32.4 (2019), Defendants failed to

11

disclose, among other things, that: (1) Defendants misappropriated pool participants' funds by soliciting funds for trading and then retaining participants' funds in Saffron's personal E-Wallet instead of segregating the funds in a pool account and using the funds to trade on behalf of participants as promised; (2) Defendants were not registered with the Commission as CPOs and as an AP of a CPO as required by the Act and were therefore operating an unlawful business enterprise; and (3) purported "returns" paid to some participants were in fact the principal deposits of other participants.

Similarly, during the Relevant Period, Saffron, and from September 6, 2018 through the present, Defendants, by and through Saffron, have misrepresented, among other things, that: (1) pool participants' funds would be pooled and used to trade binary options contracts for the benefit of participants; (2) guaranteed profits would be paid to participants (*e.g.*, up to a 300% return every three weeks); and (3) guaranteed referral fees would be paid to participants in the amount of one BTC for every BTC they induced their friends and acquaintances to invest with Saffron and/or equal to 20% of the assets invested by their friends and acquaintances.  In addition, Defendants have defrauded customers who requested withdrawals of principal and/or profits by making excuses and false representations such as: (1) "solar flares" causing computer shutdowns; (2) cryptocurrency exchanges causing withdrawal delays; and (3) transactions being "jammed up" or "frozen in cycle."

Because Defendants' fraudulent conduct occurred in connection with commodity options transactions (*e.g.*, binary options), they violated 7 U.S.C. § 6c(b) (2012) and 17 C.F.R. § 32.4 (2019).  *See CFTC v. Vault Options, Ltd.,* No. 1:16-cv-01881, 2016 WL 5339716, at *5-6 (N.D. Ill. July 20, 2016) (default order) (holding that operators of website offering off-exchange binary options contracts violated 7 U.S.C. § 6c(b) and 17 C.F.R. § 32.2); *see also, e.g., CFTC v.*

12

*Gibraltar Monetary Corp.*, No. 9:04-cv-80132, 2006 WL 1789018, at *15 (S.D. Fla. May 30, 2006) (entering judgment for CFTC after bench trial; holding that defendants made misrepresentations and omissions regarding returns from commodity options, in violation of 7 U.S.C. § 6c(b) of the Act), *aff'd,* 575 F.3d 1180 (11th Cir. 2009).

### 2. Scienter

To establish the scienter element of fraud, the Commission must show that Defendants' conduct was either reckless or intentional. "Proof of scienter requires evidence that a Defendant committed the alleged wrongful acts intentionally, or that the representations were made with a reckless disregard for their truth or falsity." *CFTC v. Driver*, 877 F. Supp. 2d 968, 977 (C.D. Cal. 2012) (internal citations and quotations omitted); *see also CFTC v. Noble Metals Int'l, Inc.*, 67 F.3d 766, 774 (9th Cir. 1995) (holding that scienter is established when defendants act intentionally or with "careless disregard"); *CFTC v. Nat'l Inv. Consultants, Inc.*, No. 3:05-cv-02641, 2005 WL 2072105, at *8 (N.D. Cal. Aug. 26, 2005) (holding that CFTC can establish scienter by showing that a defendant "knew the representations were false and were calculated to cause harm or by showing that the representations were made with a reckless disregard for their truth or falsity") (citing *CFTC v. Noble Wealth Data Info. Servs., Inc.*, 90 F. Supp. 2d 676, 686 (D. Md. 2000), *aff'd in part, vacated in part, sub nom. CFTC v. Baragosh*, 278 F.3d 319 (4th Cir. 2002)). The Commission need not prove "an evil motive or intent to injure the customer." *Cange v. Stotler & Co.*, 826 F.2d 581, 589 (7th Cir. 1987).

Saffron, individually and as principal and agent of Circle Society, knew that he was making omissions and misrepresentations to actual and prospective participants when he touted his trading experience and guaranteed returns of up to 300%. In reality, Saffron knew or acted with reckless disregard of the fact that binary options trading on cryptocurrency and forex is

risky, with no guaranteed returns.  As the holder of the E-wallet and BTC addresses used to

collect funds from participants and four known cryptocurrency trading accounts, Saffron had

personal knowledge of the amount of funds accepted from participants, the disposition of those

funds, as well as the absence of trading on behalf of participants as promised.  Finally, Saffron

knew or acted in reckless disregard of the facts when he failed to disclose that neither he nor

Circle Society were registered with the Commission as required, and Defendants were therefore

operating an unlawful business enterprise.

### 3.  Materiality

A statement is material if "there is a substantial likelihood that a reasonable investor

would consider the information important in making a decision to invest."  *R&W Tech. Serv. Ltd.*

*v. CFTC*, 205 F.3d 165, 169 (5th Cir. 2000); *see also R.J. Fitzgerald & Co.*, 310 F.3d at 1328-29;

*Sudol v. Shearson Loeb Rhoades Inc., and Jack O. Spies*, CFTC No. R81-562-81-696, 1985 WL

55286, at *4 (Sept. 30, 1985); *CFTC v. Matrix Trading Grp., Inc.*, No. 9:00-cv-8880, 2002 WL

31936799, at *6 (S.D. Fla. Oct. 3, 2002) (finding defendants misrepresented and omitted

material facts concerning likelihood and extent of profits to be made trading commodity options,

risks inherent in trading such options, and actual performance record in trading commodity

options).  Any fact that enables an investor to assess independently the risk inherent in their

investment and the likelihood of profit is a material fact.  *See Driver*, 877 F. Supp. 2d at 977

(finding "[m]isrepresentations of profit and risk are material"); *Matrix Trading Grp.*, 2002 WL

31936799, at *6 (finding misstatements and omissions regarding "profit potential, risk of loss,

and performance record" were material because "a reasonable investor would have relied on

these statements in determining whether to invest").  "Misrepresentations as to the trading record

and experience of a firm or broker are fraudulent because past success and experience are

14

material factors to reasonable customers." *CFTC v. Next Fin. Servs. Unlimited*, No. 04-80562, 2006 WL 889421, at *4 (S.D. Fla. Mar. 30, 2006).  Furthermore, misrepresentations regarding profitability are material because customers or potential customers are likely to rely on such information when making their investment decisions. *See Commonwealth Fin. Grp., Inc.*, 874 F. Supp. at 1354.

As outlined above, Saffron, individually and as principal and agent of Circle Society, made materially false and misleading statements or omissions of facts to participants.  In order to conceal and continue the fraudulent scheme, Saffron made and continues to make, individually and as the agent of Circle Society, numerous representations to participants as to why Defendants are not paying profits.  Saffron's omissions and misrepresentations were material because they impacted the participants' decisions to invest, remain in the pool, or make additional investments.

**b.  Defendants Committed Fraud by Misappropriation**

The Commission may also prove fraud if it can show that a person or entity misappropriated customer funds. *See Noble Wealth Data*, 90 F. Supp. 2d at 687 (misappropriation of customer funds, by diverting them to pay for operating and personal expenses, salaries and other expenses, constituted willful and blatant fraudulent activity).  Here, Defendants misappropriated participants' funds by soliciting funds for trading and then holding participants' funds in Saffron's personal E-Wallet instead of segregating the funds in a pool account and using the funds to trade binary options contracts on behalf of participants as promised. *See CFTC v. Skorupskas*, 605 F. Supp. 923, 932 (E.D. Mich. 1985) (defendant violated 7 U.S.C. § 6b when she misappropriated pool funds by soliciting funds for trading and then trading only a small percentage of those funds, while disbursing the rest of the funds to pool

participants, herself, and her family); *In re Slusser*, CFTC No. 94-14, 1999 WL 507574, at *12 (July 19, 1999) (respondents violated 7 U.S.C. § 6b by surreptitiously retaining pool money in their own bank accounts that should have been traded on behalf of participants), *aff'd in relevant part sub nom. Slusser v. CFTC*, 210 F.3d 783 (7th Cir. 2000).

Defendants also misappropriated some portions of participants' funds by using the principal deposits of certain participants to pay other participants in the manner of a Ponzi scheme. Defendants' conduct amounts to willful and fraudulent activity in violation of 7 U.S.C. § 6c(b) (2012) and 17 C.F.R. § 32.4 (2019). *See CFTC v. Dean*, No. 1:18-CV-345, 2018 WL 4573029, at *9 (E.D.N.Y. July 9, 2018) (default order) (finding defendants violated 7 U.S.C. § 6c(b) and 17 C.F.R. § 32.4 by "misappropriat[ing] customer funds and never trad[ing] options with . . . customer funds"); *CFTC v. Antonovich*, No. 1:18-CV-2383, 2018 WL 6322609, at *8 (E.D.N.Y. Oct. 5, 2018) (consent order) (finding defendant violated 7 U.S.C. § 6c(b) and 17 C.F.R. § 32.4 by, among other things, "misappropriat[ing] pool funds to pay for business and personal expenses, and to make Ponzi-style payments to satisfy pool participant funds").

## 2. Defendants Committed CPO Fraud in Violation of 7 U.S.C. § 6*o*(1)(A), (B) (2012) (Count Two)

7 U.S.C. § 6*o*(1)(A), (B) (2012), in relevant part, makes it unlawful for CPOs or APs of CPOs, "by use the mails or any other means of interstate commerce, directly or indirectly—(A) to employ any device, scheme, or artifice to defraud any . . . participant or prospective . . . participant; or (B) to engage in any transaction, practice, or course of business which operates as a fraud or deceit upon any . . . participant or prospective . . . participant." "Section 4*o*(1) of the Act broadly prohibits fraudulent conduct by a Commodity Pool Operator" and "applies to all CPOs whether registered, required to be registered, or exempted from registration." *Weinberg*, 287 F. Supp. 2d at 1107-08 (citing *Skorupskas*, 605 F. Supp. at 932). The same conduct that

16

constitutes violations of 7 U.S.C. § 6c(b) (2012) described above (*i.e.*, Defendants'
misrepresentations and omissions) also constitutes violations of 7 U.S.C. § 6*o*(1). *See Weinberg*,
287 F. Supp. 2d at 1108 (finding the "same conduct" by defendant that violates 7 U.S.C. § 6b
also violates 7 U.S.C. § 6*o*(1)).

### 3. Defendants Engaged in Prohibited Activities in Violation of 17 C.F.R. § 4.20(a)(1), (b), (c) (2019) (Count Three)

With certain specified exceptions and exemptions not applicable here, 17 C.F.R.
§ 4.20(a)(1) (2019), provides that a CPO must operate its pool "as an entity cognizable as a legal
entity separate from that of the pool operator." Defendants, who operated the Pool at issue,
maintained no distinction between themselves and the Pool, and failed to establish the Pool as a
separate legal entity. As a result, Defendants violated 17 C.F.R. § 4.20(a)(1) (2019).

In failing to establish the Pool as a separate legal entity, Defendants also violated 17
C.F.R. § 4.20(b) (2019) which requires all funds, securities, or other property received by a CPO
from pool participants to be "received in the pool's name." As Defendants unlawfully failed to
create and maintain the Pool as a separate legal entity, at no time were funds from pool
participants "received in the pool's name." Defendants therefore violated 17 C.F.R. § 4.20(b)
(2019) when they accepted pool participants' funds.

Defendants violated 17 C.F.R. § 4.20(c) (2019), which prohibits a CPO from
commingling the property of the pool with the property of any other person. While acting as a
CPO, Defendants violated 17 C.F.R. § 4.20(b) (2019) by commingling pool participants' funds
with Saffron's own personal funds.

**4. Saffron and Circle Society Failed to Register as a CPO in Violation of 7 U.S.C. § 6m(1) (2012), and Saffron Failed to Register as an AP of a CPO in Violation of 7 U.S.C. § 6k(2) (2012) (Count Four)**

7 U.S.C. § 1a(11) (2012) defines a CPO as, among other things, "any person engaged in a business that is of the nature of a commodity pool . . . and who solicits, accepts, or receives from others funds, securities, or property . . . for the purpose of trading in commodity interests." During the Relevant Period, Saffron has acted as a CPO by soliciting, accepting, or receiving participant funds, securities, or property (in the form of BTC), for the purpose of trading in commodity interests, including without limitation, commodity options. Similarly, from September 6, 2018 through the present, Circle Society has acted as a CPO by soliciting, accepting, or receiving participant funds, securities, or property (in the form of BTC), for the purpose of trading in commodity interests, including without limitation, commodity options.

With certain specified exceptions and exemptions, not applicable here, 7 U.S.C. § 6m(1) (2012) provides that it is unlawful for any CPO, unless registered with the Commission, to make use of the mails or any means or instrumentality of interstate commerce in connection with its business as a CPO. Defendants violated 7 U.S.C. § 6m(1) (2012) by, without being registered with the Commission, using the mails and other means or instrumentalities of interstate commerce (including email and the Internet), to solicit and accept funds, securities, or property, for the purpose of trading in commodity options.

17 C.F.R. § 1.3 (2019) defines an AP of a CPO as any person who is associated with "[a] [CPO] as a partner, officer, employee, consultant, or agent (or any natural person occupying a similar status or performing similar functions), in any capacity which involves (i) the solicitation of funds, securities, or property for a participation in a commodity pool or (ii) the supervision of any person or persons so engaged." From September 6, 2018 through the present, Saffron has

acted as an AP of Circle Society by soliciting funds or property (in the form of BTC) for

participation in the Pool.  Saffron violated 7 U.S.C. § 6k(2) (2012) by, without being registered

with the Commission, soliciting funds, securities, or property for participation in the Pool.

## C.    Derivative Liability

### 1.    Saffron is Liable as a Controlling Person of Circle Society

Saffron controlled Circle Society and, as a controlling person, is liable for Circle

Society's violations of the Act and Regulations pursuant to 7 U.S.C. § 13c(b) (2012), because he

did not act in good faith or knowingly induced, directly or indirectly, the act or acts constituting

the violations.[1]

From September 6, 2018 through the present, Saffron has been the owner, sole officer,

and President of Circle Society and at all times controlled Circle Society.  To establish

controlling person liability under 7 U.S.C. § 13c(b) (2012), the Commission must show both:  (1)

control and (2) lack of good faith or knowing inducement of the acts constituting the violation.

*In re First Nat'l Trading Corp.*, CFTC Nos. 90-28, 92-17, 1994 WL 378010, at *11 (Jul. 20,

1994), *aff'd without opinion sub nom. Pick v. CFTC*, 99 F.3d 1139 (6th Cir. 1996).  To establish

the first element, control, a defendant must possess general control over the operation of the

entity principally liable.  *See, e.g., R.J. Fitzgerald*, 310 F.3d at 1334 (recognizing an individual

who "exercised the ultimate choice-making power within the firm regarding its business

decisions" as a controlling person).  Evidence that a defendant is the sole principal, stockholder,

member of the board of directors or the authorized signatory on the company's bank accounts

---

[1] 7 U.S.C. § 13c(b) (2012) provides:  "Any person who, directly or indirectly, controls any
person who has violated any provision of this Act or any of the rules, regulations, or orders
issued pursuant to this Act may be held liable for such violation in any action brought by the
Commission to the same extent as such controlled person."

indicates the power to control a company. *In re Spiegel*, CFTC No. 85-19, 1988 WL 232212, at *8 (Jan. 12, 1988).  The Commission must also show that a defendant possessed specific control, which is "the power or ability to control the specific transaction or activity upon which the primary violation was predicated." *Monieson v. CFTC,* 996 F.2d 852, 860 (7th Cir. 1993) (internal quotation marks and citation omitted).  The defendant does not need to participate in or benefit from the wrongdoing; the issue is whether the defendant has the power to address the illegal conduct. *Id.*

In addition to control, the Commission must show the controlling person knowingly induced, directly or indirectly, the acts constituting the violation, or did not act in good faith.  To show knowing inducement, the Commission must show that a defendant had actual or constructive knowledge of the core activities that constituted the violation of the Act or the Regulations, and allowed the activities to continue. *R.J. Fitzgerald*, 310 F.3d at 1334; *Spiegel*, 1988 WL 232212, at *7.  To show lack of good faith, the Commission must show that a defendant failed to maintain a "reasonably adequate system of internal supervision and control" or did not oversee the system "with any reasonable diligence." *Monieson*, 996 F.2d at 860 (quoting *Harrison v. Dean Witter Reynolds, Inc.*, 974 F.2d 873, 881 (7th Cir. 1992)).

As to Saffron's general and specific control, he is the President and sole officer of Circle Society and directed every aspect of the fraudulent scheme.  He directly made omissions and misrepresentations to participants and misappropriated participants' funds.  Thus, Saffron had general control over Circle Society and specific control over the misconduct upon which the primary violations are predicated.  In addition, Saffron knowingly induced the violations because he individually had knowledge of the wrongdoing. *See Spiegel*, 1988 WL 232212, at *7 ("[W]e reject the view that a controlling person must know that the acts at issue amount to a violation in

order to be held to have 'knowingly' induced the acts constituting the violation. . . . [I]f the controlling person knowingly induces acts that amount to a violation, he will not escape liability merely because he acted in good faith."). Thus, Saffron is liable for Circle Society's violations as a controlling person.

### 2. Circle Society is Liable for the Acts of its Agent, Saffron

Under 7 U.S.C. § 2(a)(1)(B) (2012) and 17 C.F.R. § 1.2 (2019), a principal is strictly liable for the violations of its officials, agents, or other persons acting for it within the scope of their employment or office. *Rosenthal & Co. v. CFTC*, 802 F.2d 963, 966 (7th Cir. 1986) ("[W]e have no doubt that section 2(a)(1) imposes strict liability on the principal . . . provided, of course, as the statute also states expressly, that the agent's misconduct was within the scope or (equivalently but more precisely) in furtherance of the agent."). From September 6, 2018 through the present, Saffron has committed his violative acts within his capacity as a principal and agent of Circle Society. Thus, Circle Society is liable for Saffron's violations of the Act and Regulations.

### VI.   CONCLUSION

For the foregoing reasons, the Commission respectfully requests that the Court issue a preliminary injunction: (1) freezing Defendants' assets pending a trial on the merits of this action; (2) requiring Defendants to provide the Commission with a full accounting of their assets, the disposition of participants' funds from receipt until the present, and access to all records associated with Defendants' accounts held at financial institutions; (3) prohibiting Defendants from destroying, altering, or disposing of any books and records; and (4) preliminarily enjoining Defendants from further violating the Act and Regulations as alleged in the Complaint filed herein.

Dated:  September 30, 2019

Respectfully submitted,

By: /s/ Danielle E. Karst
Danielle E. Karst
Timothy J. Mulreany
**COMMODITY FUTURES TRADING
COMMISSION**
Three Lafayette Centre
1155 21st Street, N.W.
Washington, D.C. 20581
Telephone:  (202) 418-5000
Facsimile:   (202) 418-5523