# Exhibit List

| EXHIBIT | DESCRIPTION |
|:---:|:---:|
| 1 | Certified NFA Registration Records |
| 2 | Certified Nevada Secretary of State Records for Circle Society, Corp. |
| 3 | Superior Court of the State of California, County of Los Angeles Court Records |
| 4 | Information & Documents Produced by the Murrin Law Firm |
| 5 | Information & Documents Produced by Preston Sterling Kerr |
| 6 | Information & Documents Produced by David L. Kagel |
| 7 | David Saffron Coinbase Virtual Currency Account Records |
| 8 | David Saffron Uphold Virtual Currency Account Records |
| 9 | David Saffron Gemini Virtual Currency Account Records |
| 10 | David Saffron KuCoin Virtual Currency Account Records |
| 11 | Preston Sterling Kerr Coinbase Virtual Currency Account Records |
| 12 | Omnicron, Circle Society, & BinBot Pro Website Records |
| 13 | Transcript of Participant 7 Testimony Under Oath |
| 14 | Transcript of David L. Kagel Testimony Under Oath |
| 15 | Transcript of Preston Sterling Kerr Testimony Under Oath |
| 16 | Materials Produced by Participant 1 |
| 17 | Materials Produced by Participant 3 |
| 18 | Materials Produced by Participant 4 |
| 19 | Materials Produced by Participant 5 |
| 20 | Materials Produced by Participant 7 |
| 21 | Materials Produced by Participant 8 |
| 22 | Materials Produced by Participant 13 |
| 23 | Materials Produced by Participant 14 |
| 24 | Declaration of Participant 5 |
| 25 | Declaration of Participant 13 |
| 26 | Declaration of Participant 14 |
| 27 | Materials Produced by Participant |

Exhibit 1 - Certified NFA Registration Records

## CERTIFICATION

### With respect to: Circle Society, Corp.

1.  I, Sandra A. Jung, am employed by National Futures Association ("NFA") as
    Registration Manager.  I also have served as Deputy Record Custodian since
    May 6, 1996.  NFA is a futures association registered with the U.S. Commodity
    Futures Trading Commission ("CFTC") under Section 17 of the Commodity
    Exchange Act ("Act").  7 U.S.C. § 21 (2006).

2.  Under Sections 4f, 4k, 4n, 8a and 19 of the Act, the CFTC is authorized to collect
    and maintain registration records for each category of registration under the Act.
    7 U.S.C. §§ 6f, 6k, 6n, 12a and 23 (2006).  Under Sections 8a(10) and 17o of the
    Act, 7 U.S.C. §§ 12a(10) and 21o (2006), the CFTC has delegated to NFA the
    responsibility and authority to process and act as custodian of the official CFTC
    registration records for all categories of registration under the Act.

3.  Pursuant to the CFTC's delegation of responsibility and authority, NFA receives,
    processes, stores and records all official CFTC registration records in the normal,
    ordinary and regular course of NFA's business.  NFA has adopted Registration
    Rules, which the CFTC has reviewed and approved, governing access to and
    certification of the official CFTC registration records.

4.  As Deputy Record Custodian, I am responsible for NFA's receipt, processing,
    storage and recording of all official CFTC registration records.  As such, I am
    familiar with these records and the system that NFA uses to maintain these
    records.

5.  In accordance with Rules 803(6), 803(7), and 902(11) of the Federal Rules of
    Evidence, CFTC registration records: (1) are regularly kept for persons and
    entities registered with the CFTC; (2) are made at or near the time by, or from
    information transmitted by, a person with knowledge of those records; (3) are
    kept in the course of a regularly conducted business activity; and (4) are made as
    a regular practice in the course of regularly conducted business activity.

SDKD-NFA-0000000002_0004

- 2 -

6.    Under my supervision, I have caused to be conducted a review of these official CFTC records from July 1982 to the present, which disclosed the following information:

        There is no record of a registration, an application for registration, or an exemption from registration in any capacity for Circle Society, Corp.

    I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Date:  August 12, 2019

Deputy Record Custodian

National Futures Association
300 South Riverside Plaza
Suite 1800
Chicago, Illinois  60606

## CERTIFICATION

With respect to: David Gilbert

1.  I, Sandra A. Jung, am employed by National Futures Association ("NFA") as Registration Manager.  I also have served as Deputy Record Custodian since May 6, 1996.  NFA is a futures association registered with the U.S. Commodity Futures Trading Commission ("CFTC") under Section 17 of the Commodity Exchange Act ("Act").  7 U.S.C. § 21 (2006).

2.  Under Sections 4f, 4k, 4n, 8a and 19 of the Act, the CFTC is authorized to collect and maintain registration records for each category of registration under the Act. 7 U.S.C. §§ 6f, 6k, 6n, 12a and 23 (2006).  Under Sections 8a(10) and 17o of the Act, 7 U.S.C. §§ 12a(10) and 21o (2006), the CFTC has delegated to NFA the responsibility and authority to process and act as custodian of the official CFTC registration records for all categories of registration under the Act.

3.  Pursuant to the CFTC's delegation of responsibility and authority, NFA receives, processes, stores and records all official CFTC registration records in the normal, ordinary and regular course of NFA's business.  NFA has adopted Registration Rules, which the CFTC has reviewed and approved, governing access to and certification of the official CFTC registration records.

4.  As Deputy Record Custodian, I am responsible for NFA's receipt, processing, storage and recording of all official CFTC registration records.  As such, I am familiar with these records and the system that NFA uses to maintain these records.

5.  In accordance with Rules 803(6), 803(7), and 902(11) of the Federal Rules of Evidence, CFTC registration records: (1) are regularly kept for persons and entities registered with the CFTC; (2) are made at or near the time by, or from information transmitted by, a person with knowledge of those records; (3) are kept in the course of a regularly conducted business activity; and (4) are made as a regular practice in the course of regularly conducted business activity.

300 S. Riverside Plaza, Suite 1800  |  Chicago, IL 60606  |  312-781-1300  |  www.nfa.futures.org

- 2 -

6.    Under my supervision, I have caused to be conducted a review of these official CFTC records from July 1982 to the present, which disclosed the following information:

There is no record of a registration, an application for registration, or an exemption from registration in any capacity for David Gilbert with the name and social security number as provided.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.


Date:  August 12, 2019

_____
Deputy Record Custodian

National Futures Association
300 South Riverside Plaza
Suite 1800
Chicago, Illinois  60606

## CERTIFICATION

With respect to: David Gilbert Saffron

1.  I, Sandra A. Jung, am employed by National Futures Association ("NFA") as Registration Manager. I also have served as Deputy Record Custodian since May 6, 1996. NFA is a futures association registered with the U.S. Commodity Futures Trading Commission ("CFTC") under Section 17 of the Commodity Exchange Act ("Act"). 7 U.S.C. § 21 (2006).

2.  Under Sections 4f, 4k, 4n, 8a and 19 of the Act, the CFTC is authorized to collect and maintain registration records for each category of registration under the Act. 7 U.S.C. §§ 6f, 6k, 6n, 12a and 23 (2006). Under Sections 8a(10) and 17o of the Act, 7 U.S.C. §§ 12a(10) and 21o (2006), the CFTC has delegated to NFA the responsibility and authority to process and act as custodian of the official CFTC registration records for all categories of registration under the Act.

3.  Pursuant to the CFTC's delegation of responsibility and authority, NFA receives, processes, stores and records all official CFTC registration records in the normal, ordinary and regular course of NFA's business. NFA has adopted Registration Rules, which the CFTC has reviewed and approved, governing access to and certification of the official CFTC registration records.

4.  As Deputy Record Custodian, I am responsible for NFA's receipt, processing, storage and recording of all official CFTC registration records. As such, I am familiar with these records and the system that NFA uses to maintain these records.

5.  In accordance with Rules 803(6), 803(7), and 902(11) of the Federal Rules of Evidence, CFTC registration records: (1) are regularly kept for persons and entities registered with the CFTC; (2) are made at or near the time by, or from information transmitted by, a person with knowledge of those records; (3) are kept in the course of a regularly conducted business activity; and (4) are made as a regular practice in the course of regularly conducted business activity.

300 S. Riverside Plaza, Suite 1800 | Chicago, IL 60606 | 312-781-1300 | www.nfa.futures.org

- 2 -

6.     Under my supervision, I have caused to be conducted a review of these official CFTC records from July 1982 to the present, which disclosed the following information:

> There is no record of a registration, an application for registration, or an exemption from registration in any capacity for David Gilbert Saffron with the name and social security number as provided.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Date:  August 12, 2019

_____
Deputy Record Custodian

National Futures Association
300 South Riverside Plaza
Suite 1800
Chicago, Illinois  60606

Exhibit 2 - Certified Nevada Sec. of State Records for Circle Society, Corp.

**STATE OF NEVADA**



*BARBARA K. CEGAVSKE*
*Secretary of State*

*KIMBERLEY PERONDI*
*Deputy Secretary for*
*Commercial Recordings*

**OFFICE OF THE**
**SECRETARY OF STATE**

*Commercial Recordings & Notary Division*
*202 N. Carson Street*
*Carson City, NV 89701*
*Telephone (775) 684-5708*
*Fax (775) 684-7138*

*North Las Vegas City Hall*
*2250 Las Vegas Blvd North, Suite 400*
*North Las Vegas, NV 89030*
*Telephone (702) 486-2880*
*Fax (702) 486-2888*

Chrystal Gonnella
1155 21st St NW
Washington, DC 20581

**Work Order #:** W2019082600135
August 26, 2019
Receipt Version: 1

**Special Handling Instructions:**

**Submitter ID:** 55060

**Charges**

| Description | Filing Number | Filing Date/Time | Filing Status | Qty | Price | Amount |
|---|---|---|---|---|---|---|
| Business Entity Filed Documents | 20190123722 | 8/26/2019 7:35:24 AM | Approved | 1 | $34.00 | $34.00 |
| Total | | | | | | $34.00 |

**Payments**

| Type | Description | Payment Status | Amount |
|---|---|---|---|
| Credit Card | 56683011263267874030 | Success | $34.00 |
| Total | | | $34.00 |

**Credit Balance:**    $0.00

Chrystal Gonnella
1155 21st St NW
Washington, DC 20581

**STATE OF NEVADA**

***BARBARA K. CEGAVSKE***
*Secretary of State*

***KIMBERLEY PERONDI***
*Deputy Secretary for*
*Commercial Recordings*



**OFFICE OF THE**
**SECRETARY OF STATE**

*Commercial Recordings Division*
*202 N. Carson Street*
*Carson City, NV 89701*
*Telephone (775) 684-5708*
*Fax (775) 684-7138*

*North Las Vegas City Hall*
*2250 Las Vegas Blvd North, Suite 400*
*North Las Vegas, NV 89030*
*Telephone (702) 486-2880*
*Fax (702) 486-2888*

**Certified Copy**

08/29/2019 08:13:31 AM

| | |
|---|---|
| **Work Order Number:** | W2019082600135 - 61721 |
| **Reference Number:** | 20190123722 |
| **Through Date:** | 08/29/2019 08:13:31 AM |
| **Corporate Name:** | CIRCLE SOCIETY, CORP. |

The undersigned filing officer hereby certifies that the attached copies are true and exact copies of all requested statements and related subsequent documentation filed with the Secretary of State's Office, Commercial Recordings Division listed on the attached report.

| Document Number | Description | Number of Pages |
|---|---|---|
| 20180394381-29 | Initial List - 09/06/2018 | 1 |
| 20180394380-18 | Articles of Incorporation - 09/06/2018 | 1 |

Respectfully,

*Barbara K. Cegavske*

BARBARA K. CEGAVSKE
Nevada Secretary of State

Certificate Number: B20190829183038
You may verify this certificate
online at **http://www.nvsos.gov**

**(PROFIT) INITIAL/ANNUAL LIST OF OFFICERS, DIRECTORS AND STATE BUSINESS LICENSE APPLICATION OF:**

ENTITY NUMBER

| CIRCLE SOCIETY, CORP. | E0419242018-7 |

NAME OF CORPORATION

FOR THE FILING PERIOD OF **SEP, 2018** TO **SEP, 2019**

USE BLACK INK ONLY - DO NOT HIGHLIGHT

\*100103\*

**\*\*YOU MAY FILE THIS FORM ONLINE AT www.nvsilverflume.gov\*\***

☐ Return one file stamped copy. (If filing not accompanied by order instructions, file stamped copy will be sent to registered agent.)

*IMPORTANT:* Read instructions before completing and returning this form.

1. Print or type names and addresses, either residence or business, for all officers and directors. A President, Secretary, Treasurer, or equivalent of and all Directors must be named. There must be at least one director. An Officer must sign the form. FORM WILL BE RETURNED IF UNSIGNED.

2. If there are additional officers, attach a list of them to this form.

3. Return the completed form with the filing fee. Annual list fee is based upon the current total authorized stock as explained in the Annual List Fee Schedule For Profit Corporations. A $75.00 penalty must be added for failure to file this form by the deadline. An annual list received more than 90 days before its due date shall be deemed an amended list for the previous year.

4. State business license fee is $500.00/$200.00 for Professional Corporations filed pursuant to NRS Chapter 89. Effective 2/1/2010, $100.00 must be added for failure to file form by deadline.

5. Make your check payable to the Secretary of State.

6. *Ordering Copies:* If requested above, one file stamped copy will be returned at no additional charge. To receive a certified copy, enclose an additional $30.00 per certification. A copy fee of $2.00 per page is required for **each additional copy** generated when ordering 2 or more file stamped or certified copies. Appropriate instructions must accompany your order.

7. Return the completed form to: Secretary of State, 202 North Carson Street, Carson City, Nevada 89701-4201, (775) 684-5708.

8. Form must be in the possession of the Secretary of State on or before the last day of the month in which it is due. (Postmark date is not accepted as receipt date.) Forms received after due date will be returned for additional fees and penalties. Failure to include annual list and business license fees will result in rejection of filing.

Filed in the office of

*Barbara K. Cegavske*
Barbara K. Cegavske
Secretary of State
State of Nevada

Document Number
**20180394381-29**
Filing Date and Time
**09/06/2018 11:34 AM**
Entity Number
**E0419242018-7**

(This document was filed electronically.)
ABOVE SPACE IS FOR OFFICE USE ONLY

**CHECK ONLY IF APPLICABLE AND ENTER EXEMPTION CODE IN BOX BELOW**

☐ Pursuant to NRS Chapter 76, this entity is exempt from the business license fee. Exemption code: [____]

**NOTE:** If claiming an exemption, a notarized Declaration of Eligibility form must be attached. **Failure to attach the Declaration of Eligibility form will result in rejection, which could result in late fees.**

☐ This corporation is a publicly traded corporation. The Central Index Key number is: [____]

☐ This publicly traded corporation is not required to have a Central Index Key number.

**NRS 76.020 Exemption Codes**
001 - Governmental Entity
006 - NRS 680B.020 Insurance Co.

| NAME | TITLE(S) |
|---|---|
| DAVID SAFFRON | **PRESIDENT** (OR EQUIVALENT OF) |

| ADDRESS | CITY | STATE | ZIP CODE |
|---|---|---|---|
| 2450 ST ROSE PKWY STE 120 | HENDERSON | NV | 89074 |

| NAME | TITLE(S) |
|---|---|
| DAVID SAFFRON | **SECRETARY** (OR EQUIVALENT OF) |

| ADDRESS | CITY | STATE | ZIP CODE |
|---|---|---|---|
| 2450 ST ROSE PKWY STE 120 | HENDERSON | NV | 89074 |

| NAME | TITLE(S) |
|---|---|
| DAVID SAFFRON | **TREASURER** (OR EQUIVALENT OF) |

| ADDRESS | CITY | STATE | ZIP CODE |
|---|---|---|---|
| 2450 ST ROSE PKWY STE 120 | HENDERSON | NV | 89074 |

| NAME | TITLE(S) |
|---|---|
| DAVID SAFFRON | **DIRECTOR** |

| ADDRESS | CITY | STATE | ZIP CODE |
|---|---|---|---|
| 2450 ST ROSE PKWY STE 120 | HENDERSON | NV | 89074 |

None of the officers or directors identified in the list of officers has been identified with the fraudulent intent of concealing the identity of any person or persons exercising the power or authority of an officer or director in furtherance of any unlawful conduct.

I declare, to the best of my knowledge under penalty of perjury, that the information contained herein is correct and acknowledge that pursuant to NRS 239.330, it is a category C felony to knowingly offer any false or forged instrument for filing in the Office of the Secretary of State.

**X** DAVID SAFFRON

**Signature of Officer or
Other Authorized Signature**

| Title | Date |
|---|---|
| PRESIDENT | 9/6/2018 11:34:34 AM |

Nevada Secretary of State List Profit
Form: 100103   Revised: 7-1-17

*040105*



**BARBARA K. CEGAVSKE**
Secretary of State
202 North Carson Street
Carson City, Nevada 89701-4201
(775) 684-5708
Website: www.nvsos.gov

# Articles of Incorporation
## (PURSUANT TO NRS CHAPTER 78)

| Filed in the office of | Document Number |
|---|---|
| *Barbara K. Cegavske*<br>Barbara K. Cegavske<br>Secretary of State<br>State of Nevada | **20180394380-18** |
| | Filing Date and Time<br>**09/06/2018 11:34 AM** |
| | Entity Number<br>**E0419242018-7** |

(This document was filed electronically.)

USE BLACK INK ONLY - DO NOT HIGHLIGHT                    ABOVE SPACE IS FOR OFFICE USE ONLY

| | |
|---|---|
| **1. Name of Corporation:** | CIRCLE SOCIETY, CORP. |
| **2. Registered Agent for Service of Process:** (check only one box) | ☒ Commercial Registered Agent: **P STERLING KERR**<br>Name<br>☐ Noncommercial Registered Agent **OR** ☐ Office or Position with Entity<br>(name and address below)          (name and address below)<br><br>Name of Noncommercial Registered Agent **OR** Name of Title of Office or Other Position with Entity<br><br>Street Address | City | Nevada | Zip Code<br>Mailing Address (if different from street address) | City | Nevada | Zip Code |
| **3. Authorized Stock:** (number of shares corporation is authorized to issue) | Number of shares *with par value:* ___ Par value per share: $ ___ Number of shares *without par value:* 2500 |
| **4. Names and Addresses of the Board of Directors/Trustees:** (each Director/Trustee must be a natural person at least 18 years of age; attach additional page if more than two directors/trustees) | 1) DAVID SAFFRON<br>Name<br>2450 ST ROSE PKWY STE 120 | HENDERSON | NV | 89074<br>Street Address | City | State | Zip Code<br>2) ___<br>Name<br>___ Street Address | City | State | Zip Code |
| **5. Purpose:** (optional; required only if Benefit Corporation status selected) | *The purpose of the corporation shall be:*<br>ANY LEGAL PURPOSE |
| **6. Benefit Corporation:** (see instructions) | ☐ Yes |
| **7. Name, Address and Signature of Incorporator:** (attach additional page if more than one incorporator) | I declare, to the best of my knowledge under penalty of perjury, that the information contained herein is correct and acknowledge that pursuant to NRS 239.330, it is a category C felony to knowingly offer any false or forged instrument for filing in the Office of the Secretary of State.<br><br>DAVID SAFFRON | X DAVID SAFFRON<br>Name | Incorporator Signature<br>2450 ST ROSE PKWY STE 120 | HENDERSON | NV | 89074<br>Address | City | State | Zip Code |
| **8. Certificate of Acceptance of Appointment of Registered Agent:** | *I hereby accept appointment as Registered Agent for the above named Entity.*<br>X P STERLING KERR | 9/6/2018<br>Authorized Signature of Registered Agent or On Behalf of Registered Agent Entity | Date |

*This form must be accompanied by appropriate fees.*

Nevada Secretary of State NRS 78 Articles
Revised: 1-5-15

Exhibit 3 - Superior Court of the State of California, County of
Los Angeles Court Records

Electronically FILED by Superior Court of California, County of Los Angeles on 04/04/2019 08:55 PM Sherri R. Carter, Executive Officer/Clerk of Court, by B. Ramos,Deputy Clerk

BEVERLY HILLS LAW CORP., PC
Sagar Parikh, Esq. (SBN 282655)
433 N. Camden Drive, 6th Floor
Beverly Hills, CA 90210
Telephone:  (310) 887-1338
Facsimile:   (310) 982-2603
Email:      SP@BeverlyHillsLawCorp.com

Attorneys for Plaintiffs

## SUPERIOR COURT OF THE STATE OF CALIFORNIA

## COUNTY OF LOS ANGELES

| | |
|---|---|
| JASON CARAMANIS, an individual; YA-YA HOLDINGS, LLC, a Delaware Limited Liability Company; GAVIN DICKSON, an individual, | Case No.: BC723555 |
| Plaintiffs, | **FIRST AMENDED COMPLAINT FOR:** |
| *v.* | 1. CONVERSION<br>2. UNJUST ENRICHMENT<br>3. NEGLIGENT MISREPRESENTATION<br>4. FRAUD<br>5. BREACH OF WRITTEN CONTRACT<br>6. BREACH OF WRITTEN CONTRACT<br>7. BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING<br>8. CONSPIRACY TO COMMIT FRAUD |
| DAVID SAFFRON ALSO KNOWN AS DAVID GILBERT ALSO KNOWN AS DAVID GILBERT SAFFRON, an individual; GENE HOUSTON, an individual; CIRCLE SOCIETY, CORP., a Nevada corporation; Omnicron Trust, a business entity form unknown;  and DOES 1 through 20, inclusive, | |
| Defendants | |

COME NOW, Plaintiffs JASON CARAMANIS ("Caramanis"), YA-YA HOLDINGS,

LLC ("Ya-Ya"), and GAVIN DICKSON ("Dickson") (collectively, "Plaintiffs") and hereby

submit their First Amended Complaint ("FAC") and allege as follows:

## <u>GENERAL ALLEGATIONS</u>

1.      Caramanis is now, and at all times relevant herein has been, an individual residing in

the County of Los Angeles, State of California.

2.      Ya-Ya is a Delaware Limited Liability Company, controlled by Caramanis.

3.      Dickson is now, and at all times relevant herein has been, an individual residing in

- 1 -

FIRST AMENDED COMPLAINT

SDKD-LACSC-0000000001_0063

1  the State of Utah.

2      4.    Plaintiffs are informed, believe and thereupon allege that Defendant DAVID

3  SAFFRON ALSO KNOWN AS DAVID GILBERT ALSO KNOWN AS DAVID GILBERT

4  SAFFRON ("Saffron") is now, and at all times relevant herein has been, an individual residing in

5  the County of Los Angeles, State of California.

6      5.    Plaintiffs are informed, believe and thereupon allege that Defendant GENE

7  HOUSTON ("Houston") is now, and at all times relevant herein has been, an individual.

8      6.    Plaintiffs are informed, believe and thereupon allege that Defendant CIRCLE

9  SOCIETY, CORP. ("Circle Society") is now, and at all times relevant herein has been, a Nevada

10  corporation doing business in all 50 states and across the world.   Circle Society is owned,

11  controlled, and operated by Saffron and is a mere shell instrumentality and alter ego of Saffron.

12      7.    Plaintiffs are informed, believe and thereupon allege that Defendant OMNICRON

13  TRUST ("Omnicron") is now, and at all times relevant herein has been a business entity form

14  unknown, that is owned, controlled, and operated by Saffron and is a mere shell instrumentality and

15  alter ego of Saffron.

16      8.    Saffron, Circle Society, Houston, and Omnicron upon information and belief, are all

17  business partners and involved in a scheme to defraud investors, as further alleged herein.

18      9.    Plaintiffs are ignorant of the true names and capacities, whether individual,

19  corporate, associate, or otherwise, of Defendants sued herein as DOES 1 through 20, inclusive, and,

20  therefore, sue these Defendants by such fictitious names.   Plaintiffs will amend this complaint to

21  allege their true names and capacities when ascertained.   Plaintiffs is informed and believes and

22  thereon alleges that each of these fictitiously named Defendants is responsible in some manner for

23  the occurrences herein alleged, and that Plaintiffs' damages, as herein alleged, were proximately

24  caused by such Defendants.

25      10.    Plaintiffs are informed, believe and thereupon allege that Defendants, including

26  those sued herein as DOES 1 through 20, inclusive, and each of them, were and are the tenants,

27  agents, employees, officers, directors, principals, managing agents, managers, members,

28  subsidiaries, affiliates, joint ventures, partners, subcontractors, alter egos, co-conspirators or

FIRST AMENDED COMPLAINT

SDKD-LACSC-0000000001_0064

1   representatives of each other with respect to the events and transactions alleged herein.

2       11.     Plaintiffs are informed, believe and thereupon allege that Defendants, including

3   those sued herein as DOES 1 through 20, inclusive, and each of them, were involved in the acts,

4   transactions, and omissions alleged herein below and are responsible in whole or in part for the

5   injuries and damages herein alleged.

6       12.     Plaintiffs are informed, believe and thereupon allege that, at all times herein

7   mentioned, each of the Defendants, including those named herein as DOES 1 through 20, in

8   addition to action for herself and itself at all material times was acting as the agent, servant,

9   employee and representative of each of the other defendants, and in doing the things herein after

10  alleged, was acting within the course and scope of such relationship and with the permission,

11  consent and ratification of each and every other Defendant.   All of the references made herein

12  below to Defendants, and each of them, include a reference to the fictitiously named Defendants.

13  Defendants DOES 1 through 20 identified in the complaint are fictitiously named Defendants, and

14  Plaintiffs reserve the right to amend this complaint to identify those parties true names once

15  discovered.

16                          **FACTUAL ALLEGATIONS**

17                      **COMMON TO ALL CAUSES OF ACTION**

18      13.     Plaintiffs are individuals that are in the cryptocurrency industry involving the trading

19  of Bitcoin and other cryptocurrencies.

20      14.     Saffron purports to be a master cryptocurrency trader who uses bots and automated

21  trading/algorithms to generate tremendous returns for his clients, including promising a 100%

22  return on monies invested.  Saffron operates under the shell companies and alter ego companies of

23  Omnicron and Circle Society.

24      15.     Houston acted as a broker in this situation, helping facilitate the transaction between

25  Dickson and Defendants.

26      16.     In or about April or May 2018, Houston reached out to Dickson via telephone and

27  represented that he worked with Saffron, who was a master crypto trader that had already generated

28  returns for Houston.  Houston also represented to Dickson over text message and over phone calls

SDKD-LACSC-0000000001_0065

that he invested 11 Bitcoin with Saffron, and had already received a return on those. As a reference point, the 11 Bitcoin that Saffron allegedly received from Houston would be worth anywhere between $6,000 and $20,000 per Bitcoin, depending on when it was purportedly invested.

17.     Houston and Dickson already knew each other for multiple years at this point, but this was the first time Houston had reached out to Dickson with this type of opportunity with Saffron.

18.     Houston then had subsequent meetings with Dickson in both Utah and Denver. He continued to make the same representations to Dickson in person, namely that other investors had made money and had gotten paid out by Saffron, that he (and other investors) had gotten paid out by Saffron for his investment of Bitcoin, and Houston even showed screenshots on his phone to Dickson, purporting to be their trading accounts with Saffron. Houston added that other investors that Dickson knew, such as Stephanie Weeks, invested and made money with Saffron. However, in fact the opposite was true; Weeks actually called Saffron out as being a scammer and did not do any business with him.

19.     It was made clear to Dickson that Houston was procuring investors for Saffron and was receiving a commission for this work from Saffron.

20.     A few weeks after speaking with Houston about the Saffron opportunity, Dickson and Saffron had multiple phone calls and text messages, with Saffron making bold representations about providing a 100% return on investments, about how Saffron had an algorithm and "bot" that was trading cryptocurrency in a profitable and efficient manner.

21.     Directly based on these representations, in or about June 2018, Dickson, Houston, and Saffron entered into a Custom Bot Trade Agreement ("Agreement"), whereby Dickson was going to send 1,000 Bitcoin to Saffron's Bitcoin wallet address (this would be the equivalent of $8 million) and in exchange Saffron was going to pay out a 100% return on that Bitcoin over the course of four weeks. Additionally, 20% of the amount was going to go to Houston for his broker services, as a referral fee. A true and correct copy of the Agreement is attached hereto as EXHIBIT A.

22.     In reliance on the representations and the execution of this Agreement, Dickson did

-4-
FIRST AMENDED COMPLAINT

1   send 1,000 Bitcoin to Saffron.

2       23.     Over the next few weeks and months, Saffron and Dickson had numerous messages

3   through text and Telegram, whereby Saffron continued to promise the original return of 100%,

4   despite him continuously missing the deadlines specified in the Agreement.

5       24.     Saffron would string Dickson along and make numerous excuses, including, but not

6   limited to, having difficult withdrawing Bitcoin to pay out Dickson, being busy in meetings with

7   Fortress Investment Group (a multi-billion dollar publicly traded investment company) and the

8   Marriot family.

9       25.     Saffron was allegedly doing deals worth 35,000 Bitcoin (over $225 million), yet

10  could not manage to pay Dickson any of the return promised in the Agreement.

11      26.     Then, Saffron would continuously promise that he will make partial payments, of

12  100 Bitcoin or a similar amount, in good faith.

13      27.     However, yet again, all of these representations fell through and nothing ever

14  materialized.

15      28.     Then, Caramanis, an associate of Dickson, started involving himself with Saffron

16  and Saffron's attorney in an effort to coax repayment of the Bitcoin owed.

17      29.     Due to Caramanis' negotiating and coaxing, the parties entered into a Settlement

18  Agreement which provided that Saffron would pay to Plaintiffs the total sum of 1,250 Bitcoin, 625

19  Bitcoin on or before September 7, 2018, and 625 Bitcoin on or before September 14, 2018

20  ("Settlement Agreement").   The Settlement Agreement is attached hereto as EXHIBIT B.

21      30.     Unsurprisingly, Saffron continued to have more excuses, feigning that his brokerage

22  account would not allow him to withdraw sufficient Bitcoin and yet again, failing to even make any

23  sort of good faith payment.

24      31.     A cursory Google search on Saffron shows that Saffron has perpetuated this exact

25  same scheme previously (i.e. defrauding investors in a Bitcoin trading scheme and failing to return

26  investors' monies) and in fact had perpetuated this scheme before ever taking in Dickson's Bitcoin.

27  Please see attached hereto true and correct copies of online postings on Ripoff Report and Dirty

28  Scam as EXHIBIT C.   These outline unfortunate accounts of Saffron preying on investors'

SDKD-LACSC-0000000001_0067

DocuSign Envelope ID: 7FD31E3B-5665-4060-AE6E-7931EBEF74B5

Custom Bot Trade Agreement

This agreement to outline and summarize the agreement between the following parties: Gavin Dickson (Client), David Gilbert (Trader), Gene Houston (Consultant)

The client agrees to send 1,000 BTC on or before June 6th 2018, to the following wallet address: ███████████████████████F9QB controlled by the Trader for the purposes of trading within the A.I. Bot Trade Program for a fixed agreed upon amount of principle plus 100% return over the course of 4 weeks, with the first Payment being at 12pm noon on June 20th 2018 and the final payment being on July 6th 2018. The 20% referral fee will also be automatically applied by the trader to its own trade agreement for the same principle plus 100% return also paid out over the course of 4 weeks to the Consultant on the same dates listed above (June 20th and July 6th).

Details of deposits and payments:

Trade deposit amount:  1000 BTC

Traders wallet deposited to:

███████████████████F9QB

First payment due to client at noon on June 20th 2018 is 1000 BTC to the following wallet Address: (need address) _____

The second and final payment due to client at noon on July 6th 2018 is 1000 BTC to the following Client wallet address _____

The 20% referral fee of 200 BTC to go into a separate trade channel.

The first payment due to consultant at Noon on June 20th 2018 is 200 BTC to the following consultant wallet adress:

████████████████████rRJ8

SDKD-LACSC-0000000001_0078

DocuSign Envelope ID: 7FD31E3B-5665-4060-AE6E-7931EBEF74B5

The second and final payment due at noon on July 6th 2018 is 200 BTC to the following consultant wallet address:

██████████████████████rRJ8

Gavin Dickson (Client)

███████████████

Bountiful, Utah ███

DocuSigned by:

F249FD155ADB4B7

David Gilbert (Trader)

████████████

████████

Los Angeles, CA ████

United States

DocuSigned by:

39E3AC93F71245E

Gene Houston (Consultant)

████████████████

Costa Mesa Ca ████

United States

DocuSigned by:

D82DBDB5830447A

In the event of NON payment for any reason within 24 hours of the dates and times listed in this agreement, add an extra 10% for every 5 days late.

The traders legal firm:

https://www.sterlingkerrlaw.com/

## SETTLEMENT AND NON-DISPARAGEMENT AGREEMENT

As of August 29, 2018, Gavin Dickson and Jason Caramanis, on behalf of themselves, individually, and their companies, Bitwealth Utah LLC (a Utah limited liability company), and Ya-Ya Holdings, LLC (a Delaware limited liability company), respectively, enter into this Settlement And Non-Disparagement Agreement with David Saffron ("Saffron"), for the consideration set forth below.

### RECITALS

A.      On or about June 6, 2018, Dickson entered into an agreement, titled "Custom Bot Trade Agreement," with Saffron and another individual. Pursuant to that agreement, Dickson delivered 1,000 bitcoin (BTC) to the wallet address indicated.

B.      Since that time, there have been a number of communications between Dickson, Saffron, and others, including Caramanis, wherein the parties have expressed their frustrations with each other regarding their respective performance and interpretation of the terms of that agreement. Among other things, Caramanis has informed Saffron that he claims an interest in the BTC that Dickson delivered to Saffron under the terms of the Custom Bot Trade Agreement, and Dickson and Caramanis have accused Saffron of violating the terms of that agreement and other state and federal laws.

C.      Dickson and Caramanis acknowledge that Saffron disputes their accusations, and, in the spirit of compromise, agree to retract their accusations and state their current understanding and belief, which is that there was no intentional wrongdoing on the part of Saffron or others involved in his trading business.

D.      The parties desire to settle all claims and accusations raised in their entirety.

E.      The parties enter into this Agreement freely and agree that all statements and negotiations leading up to this Agreement and compromise constitute subsequent remedial measures and statements made in compromise negotiations under the applicable rules, and that nothing in this Agreement or the negotiations leading up to it shall be construed as an effort to obstruct or unduly influence any party to act in a way that would be contrary to law.

### AGREEMENT

Wherefore, having incorporated the recitals above, and in consideration for the mutual promises and other good and valuable consideration, the parties covenant and agree as follows:

1.   **Terms**. Assuming that a final version of this Agreement has been duly executed and delivered by all parties to each other pursuant to the notice provisions below within three (3) business days of the date above, Saffron will deliver to Dickson, at the following wallet address, ██████████████████████████████████g5HU, a sum of one thousand, two hundred and fifty bitcoin (1,250 BTC), in two installments:

a.   the first installment, six hundred and twenty-five bitcoin (625 BTC), to be delivered by Friday, September 7, 2018;

1

    b.  the final installment of six hundred and twenty-five bitcoin (625 BTC) to be delivered to the same wallet address by September 14, 2018.

2.  **Release.**

    a.  In consideration of the promises and terms referenced above, Dickson, on behalf of himself, and his company, Bitwealth Utah, LLC, and any successors, assigns, and/or related parties, and Caramanis, on behalf of himself, and his company, Ya-Ya Holdings, LLC, and any successors, assigns and/or related parties, hereby release, acquit, covenant, and forever discharge Saffron, and his successors and assigns, affiliates and their principals, employees, managers, attorneys, agents, servants, representatives, partners, predecessors and/or successors in interest, of and from any and all claims, demands, damages, causes of action, suits and liabilities, known or unknown, which they now have or which may hereafter accrue because of, arising out of or in any way connected with the bitcoin that Dickson delivered to Saffron pursuant to the Custom Bot Trade Agreement. Dickson and Caramanis, on behalf of themselves and their respective companies, agree to withdraw or dismiss any and all legal, administrative, disciplinary, consumer, arbitration or other actions, proceedings, complaints or reports (if any) filed or made, and in any way connected to the Custom Bot Trade Agreement transaction, and they agree to provide documentation of any such action, proceeding, complaint or report, with its corresponding withdrawal or dismissal. Dickson and Caramanis, on behalf of themselves and their respective companies expressly waive the provisions of Section 1542 of the California Civil Code, which provides that "[a] general release does not extend to claims which the creditor does not know or suspect to exist in his or her favor at the time of executing the release, which if known by him or her must have materially affected his or her settlement with the debtor."

    b.  As a reciprocal matter, Saffron on behalf of himself and any successors and assigns, affiliates and their principals, employees, managers, attorneys, agents, servants, representatives, partners, predecessors and/or successors in interest, hereby releases, acquits, and forever discharges Dickson, Caramanis, and their respective companies, Bitwealth Utah LLC and Ya-Ya Holdings, LLC, of any and all known claims, demands, damages, causes of action, suits and liabilities, arising out of the Custom Bot Trade Agreement that he entered into with Dickson, but this release does not extend to any unknown potential claims arising from the actions of Dickson, Caramanis or their respective companies.

    3.  **Non-disparagement.** Dickson and Caramanis, on behalf of themselves, their respective companies, and any agents or employees working under their direction or control, hereby agree in perpetuity, that will refrain from making any derogatory or disparaging statements concerning Saffron or his businesses to any third party. Reciprocally, Saffron agrees to refrain from making any derogatory or disparaging statements concerning Dickson, Caramanis and/or their respective businesses to any third party.

    4.  **Supersede Prior Agreements.** The parties hereto acknowledge and agree that this Agreement replaces and supersedes all prior agreements between the parties identified above or in

SDKD-LACSC-0000000001_0082

the course of their communications, whether oral or in writing, and covenant that they have the authority to enter into this Agreement on behalf of themselves and their respective entities.

5.   **Notice.**  Where the terms of this Agreement provide for notice to be provided, it shall be provided as follows:

    a.   In the case of notice to be provided by Dickson and/or Caramanis, or their respective entities, and materials or information to be identified or delivered to David Saffron, the party shall send the materials or information in question via email to the following addresses: Marcus Mumford, as attorney for Mr. Saffron, email address: mrm@mumfordpc.com; and davidsaffron@live.com.

    b.   In the case of materials to be identified or delivered to Dickson and/or Caramanis, the party shall send the materials or information in question via email to the following address: Sagar Parikh, as attorney for Messrs. Dickson and Caramanis, email address: sp@beverlyhillslawcorp.com.

6.   **Separate Counter-Parts:**  This Agreement may be executed in multiple counterpart originals, and in such case this Agreement shall have the same force and effect as if all signatures appeared on the same original.  For purposes of this Agreement and the documents required hereby and executed copy shall be considered an executed original.  Facsimile signatures shall have the same force and effect as original signatures.

7.   **Complete Agreement:**  The parties expressly acknowledge that this Agreement constitutes the entire agreement between the parties with regard to the settlement of this claim.  This Agreement cannot be modified or amended unless in writing signed by parties.

8.   **Authority to Sign:**  The signatory of each party to the Agreement represents and warrants to the other party that he/she has complete and unrestricted authority to execute this Agreement and to by the Party to the terms, conditions, releases and indemnifications of the Agreement.

9.   **Invalidity of Any Provision:**  If any Portion of this Agreement shall be or become illegal, invalid, or unenforceable in whole or in part for any reason, such provision shall be ineffective only to the extent of such illegality, invalidity, or unenforceability, without **invalidating** the remainder of such provision or the remaining portion of the Agreement.

10. **Jurisdiction and Attorney Fees:**  This Agreement shall be governed and interpreted in accordance with the laws of the State of California. The parties agree that any action or lawsuit arising out of this Agreement, including but not limited to any action brought to enforce the terms of this Agreement, shall be brought in the federal or state courts of California, with venue to be in the Superior Court of the State of California, County of Los Angeles.  The parties agree that they are subject to the personal jurisdiction of such courts for the purposes of any such lawsuit or action, and that the prevailing party of any such lawsuit or action shall be entitled to costs and attorney fees.

/
/



3

Gavin Dickson

Date:  August 29, 2018

Jason Caramanis

Date:  8-29-2018

David Saffron

Date:  8/30/2018 2:17:42 AM EDT

Gavin Dickson, authorized manager/
managing member for Bitwealth Utah LLC

Date:  August 29, 2018

Jason Caramanis, authorized manager/
managing member for Ya-Ya Holdings, LLC

Date:  8-29-2018

4

SDKD-LACSC-0000000001_0084

## FACTUAL ALLEGATIONS APPLICABLE TO ALL COUNTS

**PLAINTIFFS ARE LURED INTO TRANSFERRING THEIR FUNDS TO DEFENDANTS**

19.     In late-2018, Defendant KIM introduced Plaintiffs to Defendants SAFFRON and KAGEL at a meeting organized by Defendants.

20.     The meeting -- held at a private medical office -- served as an opportunity for Defendants to introduce themselves to Plaintiffs (and other investors) and to induce Plaintiffs (and other investors) into investing in a purported high-yield, low-risk cryptocurrency investment program (the "Bitcoin Wealth Management program").

21.     According to Defendants' sales pitch, investors (like Plaintiffs) would deliver to Defendants cryptocurrency and fiat currency as an investment, and Defendants would return to the investors double the amount of their invested funds within one month.  For example, if an investor were to deliver to Defendants cryptocurrency or fiat currency valued at $100,000.00, that investor would receive a $200,000.00 payout -- in the form of either cryptocurrency or fiat currency -- one month after investing.

22.     As part of their inducement to investors (including Plaintiffs), Defendants represented the following, *inter alia*:

> (a) the Bitcoin Wealth Management program would provide investors very high yields with little-to-no-risk;
>
> (b) the Bitcoin Wealth Management program would provide each investor a return on his/her capital investment in a very short amount of time;
>
> (c) Defendant SAFFRON was an experienced investor who had unique insight into cryptocurrency markets that allowed him to produce huge returns on investments;

SDKD-LACSC-0000000002_0006

(d) Defendant SAFFRON had deposited one thousand two hundred ninety (1,290) bitcoin into a secure cryptocurrency wallet[1]; and the assets held in that wallet could serve as collateral to ensure that investors' funds were not dissipated without the investors receiving a return on their investments. If, for some reason, an investor did not receive his/her anticipated return on investment in a timely manner, the investor could make a demand upon Defendants that they pull assets from that wallet to fully compensate the investor in accordance with the terms of the investment program;

(e) Defendant KAGEL was an experienced and trustworthy attorney, and his law firm (KAGEL LAW) had unrestricted access to the bitcoin reserve funded by Defendant SAFFRON;

(f) Defendants KAGEL and KAGEL LAW jointly served as the escrow agent to safeguard investors' deposited assets; and

(g) If Defendant SAFFRON were either unable or unwilling to produce to any investor the promised investment results, Defendants KAGEL and KAGEL LAW -- upon demand by the investor -- would provide the investor the appropriate funds from the SAFFRON-funded bitcoin reserve.

23.     Defendants KAGEL and KAGEL LAW even set forth in an identical pair of January 21, 2018 letters to Plaintiffs many of those factual representations.  *See*, **Exhibit "A"** (letter to Plaintiff CHARLSTON) and **Exhibit "B"** (letter to Plaintiff KIM) hereto.

24.     Based upon representations made to her by Defendants, Plaintiff CHARLSTON transferred to Defendants One Hundred Thousand Dollars ($100,000.00) in cash on or about January 22, 2018.

25.     Likewise, based on representations made to him by Defendants, Plaintiff KIM transferred to Defendants One Hundred Thousand Dollars ($100,000.00) in cash on or about January 22, 2018.

---

[1] In early-January 2018 -- when each bitcoin was valued at approximately $15,000.00 -- one thousand two hundred ninety (1,290) bitcoin were valued at approximately $19,350,000.00.

SDKD-LACSC-0000000002_0007

46.     Furthermore, pursuant to the CHARLSTON Buy-Sell Agreement, Plaintiff CHARLSTON is entitled to recover from Defendant SAFFRON the reasonable amount of costs and attorneys' fees she has had to incur in representing her interests in this matter.

## COUNT II -- RESCISSION OF CONTRACT
### [PLAINTIFF CHARLSTON AGAINST DEFENDANT SAFFRON]

Plaintiffs re-allege, and adopt by reference herein, Paragraphs 1 - 38 above, and further allege:

47.     On or about January 22, 2018, Plaintiff CHARLSTON and Defendant SAFFRON entered into a written agreement (the "CHARLSTON Buy-Sell Agreement") memorializing the terms of Plaintiff CHARLSTON's investment with Defendants.

48.     The terms of the CHARLSTON Buy-Sell Agreement constitute a contract between Plaintiffs CHARLSTON and Defendant SAFFRON.

49.     The terms of the CHARLSTON Buy-Sell Agreement called for an investment of One Hundred Thousand Dollars ($100,000.00) by Plaintiff CHARLSTON -- a sum Plaintiff CHARLSTON delivered to Defendants on or about January 22, 2018.

50.     The CHARLSTON Buy-Sell Agreement further provides that in return for her investment, Plaintiff CHARLSTON would be paid Two Hundred Thousand Dollars ($200,000.00) on February 22, 2018.

51.     Plaintiff CHARLSTON relied on, and is dependent upon, the expertise and efforts of Defendants for her investment returns.

52.     Contrary to the terms of the CHARLSTON Buy-Sell Agreement -- which embodied Defendants' representations of the Bitcoin Wealth Management program -- no funds were paid to Plaintiff CHARLSTON on or after February 22, 2018; and Plaintiff

10
COMPLAINT

1  CHARLSTON reasonably believes the funds she invested have been dissipated, or will be

2  dissipated, before she receives any return on her investments.

3       53.    As a result of Defendants' false representations in connection with the Buy-Sell

4  Agreement and the Bitcoin Wealth Management program, Plaintiff CHARLSTON states her

5  demand that the contract between her and Defendant SAFFRON be rescinded and canceled.

6       54.    To the extent Plaintiff CHARLSTON has received from Defendants any

7  benefits through the contract -- though none are known -- Plaintiff CHARLSTON hereby offers

8  to restore to Defendants those benefits, once they are identified and can be quantified.

9       55.    As a direct and proximate cause of Defendants' conduct, Plaintiff

10  CHARLSTON has been damaged.

11       56.    Furthermore, pursuant to the CHARLSTON Buy-Sell Agreement, Plaintiff

12  CHARLSTON is entitled to recover from Defendant SAFFRON the reasonable amount of costs

13  and attorneys' fees she has had to incur in representing her interests in this matter.

14  **COUNT III -- BREACH OF CONTRACT**<br>**[PLAINTIFF KIM AGAINST DEFENDANT SAFFRON]**

15
16       Plaintiffs re-allege, and adopt by reference herein, Paragraphs 1 - 38 above, and further

    allege:

17
18       57.    On or about January 22, 2018, Plaintiff KIM and Defendant SAFFRON entered

    into a written agreement (the "KIM Buy-Sell Agreement") memorializing the terms of Plaintiff

19  KIM's investment with Defendants.

20
21       58.    The terms of the KIM Buy-Sell Agreement constitute a contract between

    Plaintiffs KIM and Defendant SAFFRON.

22
23
24
25

11<br>COMPLAINT

59.    The terms of the KIM Buy-Sell Agreement called for an investment of One Hundred Thousand Dollars ($100,000.00) by Plaintiff KIM -- a sum Plaintiff KIM delivered to Defendants on or about January 22, 2018.

60.    The KIM Buy-Sell Agreement further provides that in return for his investment, Plaintiff KIM would be paid Two Hundred Thousand Dollars ($200,000.00) on February 22, 2018.

61.    Plaintiff KIM relied on, and is dependent upon, the expertise and efforts of Defendants for her investment returns.

62.    Contrary to the terms of the KIM Buy-Sell Agreement -- which embodied Defendants' representations of the Bitcoin Wealth Management program -- no funds were paid to Plaintiff KIM on or after February 22, 2018; and Plaintiff KIM reasonably believes the funds he invested have been dissipated, or will be dissipated, before he receives any return on his investments.

63.    As a direct and proximate cause of Defendants' conduct, Plaintiff KIM has been damaged.

64.    Furthermore, pursuant to the KIM Buy-Sell Agreement, Plaintiff KIM is entitled to recover from Defendant SAFFRON the reasonable amount of costs and attorneys' fees he has had to incur in representing his interests in this matter.

SDKD-LACSC-0000000002_0013

SUPERIOR COURT OF THE STATE OF CALIFORNIA
IN AND FOR THE COUNTY OF LOS ANGELES

|  |  |
|---|---|
| HAYAN CHARLTON, an individual; and<br>CHIN SE KIM, an individual<br><br>    Plaintiffs,<br><br>v.<br><br>DAVID SAFFRON, an individual;<br>DAVID L. KAGEL, an individual;<br>KAGEL LAW, P.C., a California corporation; and<br>WONJAE KIM a/k/a WARREN KIM, an individual<br><br>    Defendants. | Case No.: BC 708601 |

## CONFIDENTIAL SETTLEMENT AGREEMENT AND GENERAL RELEASE

**THIS SETTLEMENT AGREEMENT AND MUTUAL GENERAL RELEASE** (the "Settlement Agreement" or the "Agreement") is made and entered into by and between:

HAYAN CHARLTON, an individual;    DAVID SAFFRON, an individual;
CHIN SE KIM, an individual;    DAVID L. KAGEL, an individual; and
    KAGEL LAW, P.C., a California corporation.

HAYAN CHARLTON and CHIN SE KIM are hereinafter collectively referred to as the "Plaintiffs."

DAVID SAFFRON, DAVID L. KAGEL, and KAGEL LAW, P.C., are collectively referred to herein as the "Defendants."

Plaintiffs and Defendants are hereinafter collectively referred to as the "Parties" in the plural, and any singular member of this group is referred to individually as a "Party."

This Settlement Agreement shall be effective as of the latest date on which any Party hereto executes the Settlement Agreement (the "Effective Date").

**WHEREAS,** in June 2018, Plaintiffs filed a lawsuit against Defendants that is currently pending in the Superior Court of the State of California in and for the County of Los Angeles (the "Court") under Case No. BC 708601 (referred to herein as the "Lawsuit");

**WHEREAS,** Defendants expressly deny the validity of all allegations and claims asserted against them in the Complaint that Plaintiffs filed in the Lawsuit and further deny any liability for any of the damages which Plaintiffs claim to have sustained and otherwise deny all other material allegations made by Plaintiffs against them in the Lawsuit;

**WHEREAS,** all Parties, each of whom is represented by counsel or has been advised of the

opportunity to retain counsel and has affirmatively chosen not to do so, recognize their respective rights and obligations and desire to fully and finally settle any and all matters and any and all claims of any kind or nature whatsoever which were brought, or could have been brought, in the Lawsuit;

**WHEREAS**, prior to signing this Settlement Agreement, each of the Parties has thoroughly read this Agreement; and each of the Parties has had an opportunity to have counsel review this Agreement and explain the Party's rights and obligations under, and the legal effect of, this Agreement; and each Party believes it is fair, just, and reasonable in all respects; and each has assented freely and voluntarily to all of its terms; and

**WHEREAS**, the Parties hereto have signed this Settlement Agreement of their own free will and volition, with the full recognition and understanding of their rights and obligations under and the legal effect of this Agreement;

**WHEREAS**, the Parties have agreed that: (i) Defendants will pay, or cause to be paid, to Plaintiffs a total payment of **One Hundred Seventy-Five Thousand Dollars ($175,000.00)** as set forth below; (ii) within five (5) business days following receipt and clearance of the settlement proceeds, Plaintiffs shall file with the Court papers dismissing with prejudice all claims in the Lawsuit; and (iii) the Parties will provide mutual releases to be held in escrow and to only become effective upon receipt and clearance of the settlement proceeds set forth herein.

**NOW, THEREFORE**, in consideration of and reliance upon the premises, covenants, and obligations hereinafter set forth, the sufficiency and receipt of which is hereby acknowledged; the Parties, as evidenced by the signatures of their respective authorized representatives below, hereby agree as follows:

1.    **Recitals**:  Each of the Parties acknowledge and agree that the foregoing Recitals are true and correct and are incorporated herein by reference.

2.    **Payment of Money**:  The Parties agree that the total settlement amount is **One Hundred Seventy-Five Thousand Dollars ($175,000.00) (the "Settlement Amount")**.  Payment of the Settlement Amount will be transmitted by or on behalf of Defendants via wire transfer **on or before 4:00 p.m. ET on Monday, August 13, 2018** to the Silver Miller Trust Account for the benefit of Plaintiffs in the following manner unless otherwise agreed in a writing signed by the Parties and their counsel:

| | |
|---|---|
| Account Name: | Silver Miller f/b/o Hayan Charlton, *et al.* |
| Account Address: | ██████████████████ |
| | Coral Springs, FL ████ |
| Account Number: | ███████████ |
| Routing Number: | 121000248 |
| Bank: | Wells Fargo, N.A. |
| | 1460 Coral Ridge Drive |
| | Coral Springs, FL 33071 |

3.    **General Releases**:

Confidential Settlement Agreement and General Release
Page 3 of 8

A.   Upon receipt and clearance of the Settlement Amount, and only at that time, in consideration of receipt of those payments, as well as other good and valuable consideration received from Defendants, **Plaintiffs** shall, upon Defendants' full and complete satisfaction of their obligations as set forth in Section 2 above, and only upon Defendants' full and complete satisfaction of those obligations; forever remise, release, acquit, satisfy, forever discharge, and by these presents for their trustees, agents, representatives, successors, or assigns forever release Defendants from any and all manner of action and actions, cause and causes of action, charges, suits, rights, debts, dues, sums of money, accounts, reckonings, bonds, bills, specialties, covenants, contracts, controversies, agreements, promises, variances, trespasses, damages, judgments, executions, claims, obligations, liabilities, and demands of any kind or nature whatsoever, at law or in equity, which Plaintiffs may have had, ever had, claim to have had, now have, or which their trustees, agents, representatives, successors, or assigns hereafter can, shall, or may have for, upon, or by reason of any matter, cause, or thing whatsoever from the beginning of the world to the date of these presents, arising out of or related to all claims, demands, and defenses that were or could have been raised in, or in connection with, the Lawsuit.

B.   Upon Defendants' full and complete satisfaction of their obligations as set forth in Section 2 above, **Defendants** shall forever remise, release, acquit, satisfy, forever discharge, and by these presents for their past, present, and future predecessors, successors, parents, subsidiaries, affiliates, officers, directors, shareholders, partners, principals, agents, representatives, employees, insurers, and attorneys forever release Plaintiffs and each of their respective past, present, and future predecessors, successors, principals, agents, representatives, insurers, and attorneys from any and all manner of action and actions, cause and causes of action, charges, suits, rights, debts, dues, sums of money, accounts, reckonings, bonds, bills, specialties, covenants, contracts, controversies, agreements, promises, variances, trespasses, damages, judgments, executions, claims, obligations, liabilities, and demands of any kind or nature whatsoever, at law or in equity, which Defendants may have had, ever had, claim to have had, now have, or which their past, present, and future predecessors, successors, parents, subsidiaries, affiliates, officers, directors, shareholders, partners, principals, agents, representatives, employees, insurers, and attorneys hereafter can, shall, or may have for, upon, or by reason of any matter, cause, or thing whatsoever from the beginning of the world to the date of these presents, arising out of or related to all claims, demands, and defenses that were or could have been raised in, or in connection with, the Lawsuit.

C.   Plaintiffs represent and warrant that they have not and will not, on or before execution of this Settlement Agreement, assign or subrogate any of their rights, claims and causes of action relating to the Lawsuit, including any claims referenced in the Settlement Agreement, or authorize any person or entity to assert such claim or claims on their behalf; and they agree to indemnify and hold harmless Defendants against any assignment of said rights, claims and or causes of action.

SDKD-LACSC-0000000002_0054

D.   Defendants represent and warrant that they have not and will not, on or before execution of this Settlement Agreement, assign or subrogate any of their rights, claims and causes of action relating to the Lawsuit, including any claims referenced in this Agreement, or authorize any other person or entity to assert such claim or claims on their behalf; and they agree to indemnify and hold harmless Plaintiffs against any assignment of said rights, claims and/or causes of action.

E.   Each of the Parties hereto acknowledges that he/she/it has read Section 1542 of the California Civil Code set out below which states as follows: A General Release does not extend to claims which the creditor does not know or suspect to exist in his favor at the time of executing the Release, which if known by him/her/it must have materially affected his/her/it settlement with the debtor. Each of the Parties hereto hereby waives application of Section 1542 of the California Civil Code.

4.   **Dismissal of Claims in the Lawsuit**: Within five (5) business days after Plaintiffs' counsel's receipt and clearance of Defendants' payment of the Settlement Amount as set forth in Section 2 above, Plaintiffs shall file with the Court papers dismissing with prejudice all claims in the Lawsuit.

5.   **Fees and Expenses**: The Parties agree each of them will be responsible for paying his/her/its own attorney's fees, costs, and expenses arising out of or connected with the Lawsuit, except as provided in Section 11.

6.   **Default**: Without limitation, an event of default shall occur if Defendants fail to timely make to Plaintiffs the payment of, or cause to make the payment of, the Settlement Amount as set forth in Paragraph 2 above; in which case Plaintiffs, through counsel, shall provide written notice (the "Written Notice") of the default to Defendants by First Class U.S. Mail, private postal carrier (e.g., FedEx, UPS, etc.), facsimile, or by electronic mail as indicated in Section 7 below (each of which the Parties agree to be acceptable methods of properly giving notice under this Settlement Agreement). The Written Notice shall provide five (5) business days from the date of transmittal of such notice to cure the default. Should Defendants fail to cure the default within the period referenced above, then Plaintiffs shall retain, and shall not release, any and all rights and claims they have or had prior to execution of this Settlement Agreement except as otherwise provided herein.

7.   **Notices:** All notices to be sent or information to be provided under this Settlement Agreement shall be sent to the following:

A.   **Plaintiffs:**
Hayan Charlton and Chin Se Kim
c/o David C. Silver, Esq.
Silver Miller
11780 W. Sample Rd.
Coral Springs, FL 33065
Telephone:   (954) 516-6000
Facsimile:   (954) 755-4684
E-mail:   DSilver@SilverMillerLaw.com

Confidential Settlement Agreement and General Release
Page 5 of 8

*Counsel for Hayan Charlton and Chin Se Kim*

Adam I. Miller, Esq.
MILLER MILLER GERBER LLP
1500 Quail Street - Suite 490
Newport Beach, California 92660
Telephone:     (714) 450-3800
Facsimile:      (714) 450-3800
E-mail:          amiller@mmg-llp.com
*Counsel for Hayan Charlton and Chin Se Kim*

**B.    Defendants:**
David Saffron, David L. Kagel, and Kagel Law, P.C.
c/o David L. Kagel, Esq.
1801 Century Park East - Suite 1201
Los Angeles, California 90067
Telephone:     (310) 860-9975
E-mail:          davidlkagel@gmail.com
*Counsel for David Saffron, David L. Kagel, and Kagel Law, P.C.*

8.    **Denial of Liability.**  Notwithstanding anything stated herein, the Parties acknowledge and agree that this Settlement Agreement and the settlement contained herein is a compromise of disputed claims in the Lawsuit made solely to avoid and resolve the claims between them in Lawsuit and to make peace, and that neither this Agreement nor any of the documents executed in connection with this Agreement are to be construed in any way as an admission by any of the Parties of any of the allegations and/or claims raised in the Lawsuit or otherwise, all of which are expressly denied.

9.    **Capacity and Authority:**  Each signatory to this Settlement Agreement hereby represents and warrants that he or she has the full right, power, authority and capacity to enter into this Agreement and that this Agreement constitutes a legal and binding agreement that is enforceable in accordance with its terms.

10.    **No Coercion/Advice of Counsel.**  The Parties understand and agree that this Settlement Agreement constitutes a settlement agreement and release, and the Parties intend to be legally bound by same.  The Parties further acknowledge that, in considering whether to sign this Agreement, they have not relied upon any representation or statement, written or oral, not set forth in this Agreement, and that they have not been threatened or coerced into signing this Agreement by any party.  The Parties have read the Agreement carefully; and the Parties fully understand the terms, consequences and/or effect of this Agreement.  The Parties voluntarily agree to and accept the terms of this Agreement.  Each Party hereto acknowledges that he/she/it has been represented and advised by counsel concerning the effect of this Agreement, or has elected not to seek advice of counsel.

11.    **Governing Law/Attorneys' Fees.**  The Parties understand and agree that the interpretation and enforcement of this Settlement Agreement shall be governed by the laws of the State of California, without giving effect to its conflict of law provisions.  The Parties further understand and agree that, if any party should breach this Agreement, the injured party may seek all applicable remedies arising out of law or equity.  The Parties further understand and agree that if legal

SDKD-LACSC-0000000002_0056

action is commenced arising out of, in connection with, or to enforce any provision of this Agreement (including any amendment, modification, or waiver of this Agreement or any of its terms, as provided for below), any such suit, action, or legal proceeding must be brought in a court of competent jurisdiction in California; that service of process may be made pursuant to the Notice provisions in Section 7 above; and the prevailing party in any such action shall be entitled to recover its costs, including reasonable attorneys' fees, through all appellate levels in addition to any other relief that may be granted.

12.     **Entire Agreement/Merger Provision/No Oral Modification.**   The Parties understand and agree that this Settlement Agreement sets forth, embodies and contains all the agreements and understandings between the Parties pertaining to the subject matter herein.  This Agreement constitutes the entire agreement between the Parties, and it supersedes any and all prior, contemporaneous agreements and understandings between the parties in connection therewith.  Any amendments to, or modifications of, this Agreement, or any waiver of its terms, shall not be enforceable unless in writing and signed by the party against whom enforcement is sought.

13.     **Future Interests.**  This Settlement Agreement shall be binding upon, and shall inure to the benefit of, the Parties hereto and their respective legal representatives, successors, and assigns.

14.     **Severability.**   The Parties further agree that, if any provision of this Settlement Agreement is found to be void or voidable or in any other way unenforceable, the Parties shall remain bound by the remainder of the Agreement.  If any term in this Agreement conflicts with applicable law or with the obligations of counsel imposed by the applicable Rules of Professional Conduct, such term shall be modified so as to most closely express the intent of the Parties while conforming with such rules and laws.

15.     **Counterparts.**  This Agreement may be executed in counterparts, each of which shall be deemed to be an original document and all of which, taken together, shall be deemed to constitute but a single original document.  Facsimile or .pdf copies shall be deemed an original signature.

16.     **Assignment.**  The rights, duties, and obligations of this Settlement Agreement and all exhibits attached hereto shall not be transferable or assigned without the express written prior consent of all Parties hereto.

17.     **Headings.**  The headings used in this Settlement Agreement are used for reference purposes only and are not to be deemed controlling with respect to the contents thereof.

18.     **Gender.**  Wherever the context shall so require, all words herein shall be deemed to include the masculine, feminine, or neuter gender; all singular words shall include the plural, and all plural words shall include the singular.

19.     **Joint Agreement.**  This Settlement Agreement and any exhibits attached hereto shall be considered the joint product of all the Parties hereto; and in the event of any controversy as to the construction, interpretation, or enforcement of any provision hereof, such controversy shall not be construed against any party as the alleged drafter of this Agreement.  It is the intent of all Parties that this Agreement shall be deemed to have been prepared by all of the Parties to the end that no party shall be entitled to the benefits of any favorable interpretation or construction of any term or provision hereof under any rule or law.

Confidential Settlement Agreement and General Release
Page 7 of 8

entitled to the benefits of any favorable interpretation or construction of any term or provision hereof under any rule or law.

**20.    Binding Effect.**  The terms of this Settlement Agreement and any exhibits attached hereto shall be binding upon, inure to the benefit of, and shall be enforceable by, the respective successors, assigns, heirs, beneficiaries, and personal representatives of the Parties.

**21.    Confidentiality and Non-Disparagement.**  The Parties agree that this Settlement Agreement and its terms shall remain strictly confidential and shall not be made part of any public record or Court file unless an action to enforce the terms of the Agreement is undertaken. Notwithstanding the foregoing, any Party may disclose the terms of the Agreement to that Party's attorneys, accountants, regulators, or other professional financial advisors as is reasonably necessary for the conduct of that Party's business and/or financial affairs.  Following the execution of the Settlement Agreement, no Party or Parties shall make statements or representations, or otherwise communicate, directly or indirectly, in writing, orally or otherwise, or take any action which may, directly or indirectly, disparage or be damaging to the other Parties; provided that nothing in this preclude either Party from making truthful statements or disclosures that are required by applicable law, regulation, or legal process.

We further confirm and state that we have carefully read this Settlement Agreement, know the contents thereof, and sign our names as our own free act.

**[SIGNATURES APPEAR ON THE FOLLOWING PAGE(S)]**

Confidential Settlement Agreement and General Release
Page 8 of 8

**Hayan Charlton**

By: _____
     Hayan Charlton, individually

Date: _____

**Chin Se Kim**

By: _____
     Chin Se Kim, individually

Date: _____08/11/18_____

**David Saffron**

By: _____
     David Saffron, individually

Date: _____8/8/2018_____

**David L. Kagel**

By: _____
     David L. Kagel, individually

Date: _____8-8-18_____

Kagel Law, P.C., a California corporation

By: _____
Name: David L. Kagel
Title: President
Date: _____8-8-18_____

SDKD-LACSC-0000000002_0059

Confidential Settlement Agreement and General Release
Page 8 of 8

**Hayan Charlton**

By: _____
    Hayan Charlton, individually

Date: _____

**Chin Se Kim**

By: _____
    Chin Se Kim, individually

Date: _____

**David Saffron**

By: _____
    David Saffron, individually

Date: _____8/8/2018_____

**David L. Kagel**

By: _____
    David L. Kagel, individually

Date: _____8-8-18_____

Kagel Law, P.C., a California corporation

By: _____
Name: David L. Kagel
Title: President
Date: _____8-8-18_____

SDKD-LACSC-0000000002_0060

**COPY**

CONFORMED COPY
OF ORIGINAL FILED
Los Angeles Superior Court

AUG 29 2018

Sherri R. Carter, Executive Officer/Clerk

By Shaunya Bolden, Deputy

**BY FAX**

1  Adam I. Miller (SBN 269990)
   *Attorneys for Plaintiff*
2  MILLER MILLER GERBER LLP
   1500 Quail Street - Suite 490
3  Newport Beach, California 92660
   Telephone: (714) 450-3800
4  Facsimile:  (714) 450-3800
   E-mail: amiller@mmg-llp.com
5
   David C. Silver, *pro hac vice forthcoming*
6  Jason S. Miller, *pro hac vice forthcoming*
   *Attorneys for Plaintiff*
7  SILVER MILLER
   11780 West Sample Road
8  Coral Springs, Florida 33065
   Telephone: (954) 516-6000
9  E-mail: DSilver@SilverMillerLaw.com
   E-mail: JMiller@SilverMillerLaw.com
10

11                SUPERIOR COURT OF THE STATE OF CALIFORNIA
                    IN AND FOR THE COUNTY OF LOS ANGELES
12

13  HAYAN CHARLSTON, an individual; and          CASE NO.:  BC 708601  *DEPT-24*
    CHIN SE KIM, an individual
14                                               **AMENDED COMPLAINT FOR:**
        Plaintiff,
15                                               **(1) BREACH OF CONTRACT**
            v.                                   **(2) RESCISSION OF CONTRACT**
16                                               **(3) FRAUDULENT INDUCEMENT**
    DAVID SAFFRON, an individual;                **(4) NEGLIGENT**
17  DAVID L. KAGEL, an individual;                   **MISREPRESENTATION**
    KAGEL LAW, P.C., a California corporation;   **(5) BREACH OF FIDUCIARY DUTY**
18  WONJAE KIM a/k/a WARREN KIM, an              **(6) CONVERSION**
    individual; and                              **(7) CIVIL CONSPIRACY**
19  INA P. KAGEL, an individual; *and DOES*      **(8) BREACH OF CONTRACT**
    *1 to 25, inclusive,*
        Defendants.
20
                                                 **JURY TRIAL DEMANDED**
21
                                                 **DEMAND EXCEEDS $25,000.00**
22

23      Plaintiffs HAYAN CHARLSTON, an individual; and CHIN SE KIM, an individual

24  ("Plaintiffs"), by and through undersigned counsel, hereby sue Defendants DAVID SAFFRON,

25                                       1
                        AMENDED COMPLAINT

1   an individual; DAVID L. KAGEL, an individual; KAGEL LAW, P.C., a California corporation

2   ("KAGEL LAW"); WONJAE KIM a/k/a WARREN KIM, an individual (collectively the

3   "BWM Defendants"); and INA P. KAGEL, an individual ("Defendant INA KAGEL") (BWM

4   Defendants and Defendant INA KAGEL collectively "Defendants"); for monetary damages

5   and equitable relief.  In support thereof, Plaintiffs allege as follows:

6                          **PRELIMINARY STATEMENT**

7         1.       This action is brought by Plaintiffs -- investors who contributed Two Hundred

8   Thousand Dollars ($200,000.00) to a cryptocurrency investment program run by the BWM

9   Defendants.  In the investment program, each defendant played an important role: Defendant

10  WONJAE KIM was the recruiter, Defendant DAVID KAGEL (through KAGEL LAW, the law

11  firm he jointly operates with Defendant INA KAGEL) was the attorney and escrow agent

12  giving the enterprise an air of legitimacy and security, and Defendant SAFFRON was the

13  investment planner who orchestrated the operation.

14        2.       Despite their promises to Plaintiffs of wealth, professionalism, and managed risk

15  in the explosively popular world of cryptocurrency, the BWM Defendants perpetrated upon

16  Plaintiffs a fraudulent financial scheme as old as time itself.

17        3.       The BWM Defendants' representations to Plaintiffs were nothing more than a

18  ruse to separate Plaintiffs from their money, with no intent to invest Plaintiffs' funds in

19  legitimate investment vehicles or provide Plaintiffs any positive return on their investments.

20        4.       Instead, the BWM Defendants were focused on converting Plaintiffs funds to

21  their own benefit, which they did in short order amidst a sea of excuses and misdirection with

22  the hope that Plaintiffs would not uncover the fraud perpetrated upon them.

23

24

25                                   2
                            AMENDED COMPLAINT

5.      Plaintiffs seek compensatory and equitable relief rescinding their investments with the BWM Defendants and having all Defendants restore to them the assets and funds they were falsely induced into investing.

## GENERAL ALLEGATIONS

## THE PARTIES

### Plaintiffs

6.      Plaintiff HAYAN CHARLSTON is an individual domiciled in Pasadena, California and is *sui juris*.

7.      Plaintiff CHIN SE KIM is an individual domiciled in Orange, California and is *sui juris*.

### Defendants

8.      Defendant DAVID SAFFRON is an individual domiciled in Los Angeles, California and is *sui juris*.

9.      Defendant DAVID L. KAGEL ("Defendant DAVID KAGEL") is an individual domiciled in Los Angeles, California and is *sui juris*.

10.     Defendant KAGEL LAW is a professional corporation organized under the laws of the state of California and maintains its principal place of business in Los Angeles, California.  Upon information and belief, KAGEL LAW is currently controlled by its founder and President, DAVID KAGEL.  In addition, public records reflect that Defendant INA KAGEL is an attorney and is a Partner at KAGEL LAW, where she serves as the company's Secretary and Chief Financial Officer.

11.     Defendant WONJAE KIM a/k/a WARREN KIM is an individual domiciled in Irvine, California and is *sui juris*.

3
AMENDED COMPLAINT

12.    Defendant INA P. KAGEL is an individual domiciled in Los Angeles, California and is *sui juris*. As noted above, public records state that Defendant INA KAGEL is an attorney and is a Partner at KAGEL LAW, where she serves as the company's Secretary and Chief Financial Officer.

### Other Liable Persons/Entities

13.    In addition to those persons and entities set forth as Defendants herein, there are likely other parties who may well be liable to Plaintiffs, but respecting whom Plaintiffs currently lack specific facts to permit them to name such person or persons as a party defendant. By not naming such persons or entities at this time, Plaintiffs are not waiving their right to amend this pleading to add such parties, should the facts warrant adding such parties.

### JURISDICTION AND VENUE

### Subject Matter Jurisdiction

14.    This Court has subject matter jurisdiction over this action pursuant to California Code of Civil Procedure § 410.10 because the amount in controversy exceeds Twenty-Five Thousand Dollars ($25,000.00), exclusive of interest, costs and attorneys' fees.

### Personal Jurisdiction

15.    This Court has personal jurisdiction over Defendants because: (a) at least one Defendant is operating, present, and/or doing business within this District, and (b) Defendants' breaches and unlawful activity occurred within this District.

16.    The BWM Defendants solicited investors in this jurisdiction, including Plaintiffs, to participate in the Bitcoin Wealth Management program -- reaping from those investors large sums of money and other assets, including valuable cryptocurrency.

4
AMENDED COMPLAINT

17.     In light of the foregoing, Defendants purposefully availed themselves of the benefits of operating in this jurisdiction; and this Court may exercise personal jurisdiction over Defendants.

## Venue

18.     Venue is proper pursuant to California Code of Civil Procedure §§ 395(a) and 395.5 in that a substantial part of the events or omissions giving rise to the claims set forth herein occurred in this judicial district, as several of the defendants reside and work in Los Angeles and the BWM Defendants operated their Bitcoin Wealth Management program in Los Angeles as well.

19.     In light of the foregoing, this forum is a proper venue in which to adjudicate this dispute.

## FACTUAL ALLEGATIONS APPLICABLE TO ALL COUNTS

### PLAINTIFFS ARE LURED INTO TRANSFERRING THEIR FUNDS TO DEFENDANTS

20.     In late-2017, Defendant KIM introduced Plaintiffs to Defendants SAFFRON and KAGEL at a meeting organized by the BWM Defendants.

21.     The meeting -- held at a private medical office -- served as an opportunity for the BWM Defendants to introduce themselves to Plaintiffs (and other investors) and to induce Plaintiffs (and other investors) into investing in a purported high-yield, low-risk cryptocurrency investment program (the "Bitcoin Wealth Management program").

22.     According to the BWM Defendants' sales pitch, investors (like Plaintiffs) would deliver to the BWM Defendants cryptocurrency and fiat currency as an investment, and the BWM Defendants would return to the investors double the amount of their invested funds within one month.  For example, if an investor were to deliver to the BWM Defendants

5
AMENDED COMPLAINT

cryptocurrency or fiat currency valued at $100,000.00, that investor would receive a $200,000.00

payout -- in the form of either cryptocurrency or fiat currency -- one month after investing.

23.     As part of their inducement to investors (including Plaintiffs) -- both at the

initial in-person meeting and in subsequent communications -- the BWM Defendants

represented the following, *inter alia*:

> (a) the Bitcoin Wealth Management program would provide investors very high yields with little-to-no-risk;
>
> (b) the Bitcoin Wealth Management program would provide each investor a return on his/her capital investment in a very short amount of time;
>
> (c) Defendant SAFFRON was an experienced investor who had unique insight into cryptocurrency markets that allowed him to produce huge returns on investments;
>
> (d) Defendant SAFFRON had deposited one thousand two hundred ninety (1,290) bitcoin into a secure cryptocurrency wallet[1]; and the assets held in that wallet could serve as collateral to ensure that investors' funds were not dissipated without the investors receiving a return on their investments. If, for some reason, an investor did not receive his/her anticipated return on investment in a timely manner, the investor could make a demand upon Defendants that they pull assets from that wallet to fully compensate the investor in accordance with the terms of the investment program;
>
> (e) Defendant DAVID KAGEL was an experienced and trustworthy attorney, and his law firm (KAGEL LAW) had unrestricted access to the bitcoin reserve funded by Defendant SAFFRON;
>
> (f) Defendants DAVID KAGEL and KAGEL LAW jointly served as the escrow agent to safeguard investors' deposited assets; and
>
> (g) If Defendant SAFFRON were either unable or unwilling to produce to any investor the promised investment results, Defendants DAVID KAGEL and KAGEL LAW -- upon demand by the investor -- would provide the investor the appropriate funds from the SAFFRON-funded bitcoin reserve.

---

[1] In early-January 2018 -- when each bitcoin was valued at approximately $15,000.00 -- one thousand two hundred ninety (1,290) bitcoin were valued at approximately $19,350,000.00.

6

AMENDED COMPLAINT

SDKD-CFTC-0000000001_0006

24. Defendants DAVID KAGEL and KAGEL LAW even set forth in an identical pair of January 21, 2018 letters to Plaintiffs many of those factual representations. *See*, **Exhibit "A"** (letter to Plaintiff CHARLSTON) and **Exhibit "B"** (letter to Plaintiff KIM) hereto.

25. Moreover, at the initial in-person sales pitch and in subsequent communications, Defendant KIM specifically made the following representations to induce investments from the gathered guests:

(a) Investors in the Bitcoin Wealth Management program were guaranteed to receive the promoted return on their investments;

(b) The Bitcoin Wealth Management program was fail-proof;

(c) Defendant KIM and Defendant SAFFRON were partners in this investment venture;

(d) Defendant KIM and Defendant SAFFRON traveled on private jets across the country speaking with, and signing up, investors to participate in the Bitcoin Wealth Management program;

(e) Defendant SAFFRON is a genius investor who has earned millions of dollars using his investment strategies;

(f) Defendant KIM had himself invested in the Bitcoin Wealth Management program, and his investment in the program had made him wealthy;

(g) Though investment funds would ultimately go to the same place for the same purpose, investors could deliver their investments in the Bitcoin Wealth Management program to either Defendant KIM or to Defendant SAFFRON;

(h) Defendant KIM, who speaks fluent Korean (as did several of the potential investors invited to the in-person sales pitch), could be trusted; and

(i) If the gathered guests were to invest in in the Bitcoin Wealth Management program, Defendant KIM would remain involved and oversee the investments.

7
AMENDED COMPLAINT

Exhibit 4 - Information & Documents Produced by the Murrin Law Firm

# MURRIN LAW FIRM
—— EST. 1977 ——

<table>
<tr>
<td>Mailing address:<br>7045 E. Los Santos Drive<br>Long Beach, CA 90815<br>562-342-3011 (Office)<br>562-724-7007 (Fax)</td>
<td>J. Owen Murrin<br>www.murrinlawfirm.com<br>jmurrin@murrinlawfirm.com<br><br>Practicing law in California & North Dakota only.<br>Nationwide Securities Arbitration and Mediation Services.</td>
<td>Client Appointment Office:<br>5150 Pacific Coast Highway<br>Suite 200, Long Beach, CA 90804</td>
</tr>
</table>

February 5, 2018

**Via Certified Mail 7017 2680 0001 0735 5044**
David L. Kagel
Kagel Law, a Professional Corporation
1801 Century Park East, Suite 1201
Los Angeles, CA 90067

**Via Certified Mail 7017 2680 0001 0735 5051**
David L. Kagel
9400 Readcrest Drive
Beverly Hills, CA 90210

**Via Certified Mail 7017 2680 0001 0735 5068**
Ina Kagel
Managing Partner, Kagel Law, APC
202 N. Canon Dr.
Beverly Hills, California 90210

**Via Certified Mail 7017 2680 0001 0735 5075**
David Saffron
████████████████
North Hollywood, CA ███

Re:  Ten (10) Day Notice for Return of Deposit

Dear Mr. Kagel, Ms. Ina Kagel (Managing Partner, Kagel Law, APC), and Mr. Saffron:

Our firm has been retained to represent a group of investors in Mr. Saffron's Bot Investment Trading Program. Before investing, the investors were told about an escrow trust fund that would provide security for any losses. The escrow trust fund was to be administered by Mr. David Kagel. In fact, the investors were assured by both Mr. Saffron and Mr. Kagel orally and in writing that the "security escrow" fund in the form of a cryptocurrency wallet was accessible by both Mr. Saffron and Mr. Kagel. Specifically, these investors are in receipt of a letter dated January 7, 2018 in which Mr. Kagel represented that Mr. Saffron agreed to assure that our clients'

Exhibit 2 p. 1

Mr. Kagel, Ms. Ina Kagel, Kagel Law, APC, and Mr. Saffron
February 5, 2018
Page 2

deposit of bitcoin and other cryptocurrency will be returned if the Saffron Bot Investment Trading Program does not work or if Saffron does not perform.  Mr. Kagel represented in the letter that he has unrestricted access to the cryptocurrency wallet in the event that Mr. Saffron is unable or unwilling to return the deposited cryptocurrency. See the letter, dated January 7, 2018, attached, for evidence of the above statements.

Mr. Saffron has been unable and unwilling to return the bitcoin to the investors as promised. He has been nonresponsive to our clients' attempts to contact him. The time has passed in which Mr. Saffron promised to pay the investors back.  Moreover, through phone calls our clients have made to Mr. Kagel seeking to return the investors' deposits of bitcoins or cryptocurrency, it now appears that Mr. Kagel seems to be back-pedaling on whether or not he has access to the cryptocurrency wallet.

Therefore, please let this letter serve as our clients' ten business day notice to return our clients' deposits of bitcoin or cryptocurrency in Mr. Saffron's Bot Investment Trading Program. This demand letter is being sent to both David Saffron and David Kagel pursuant to the terms of the January 7, 2018 letter.

Specifically, the following investors are requesting the return of the bitcoins lent to Mr. Saffron during the time period of January 2, 2018 through January 6, 2018:

The initial set of investors demanding a return of the above described investment are:

| | |
|---|---|
| Rodney Burton | 50.0  Bitcoins |
| Frank E. Calabro Jr. | 50.0  Bitcoins |
| Hitesh Junega | 20.0  Bitcoins |
| Michael Jamison Palmer | 50.0  Bitcoins |
| Kameron Pollock | 2.5  Bitcoins |
| Nathan Van Tuyl | 28.0  Bitcoins |
| Dee Washington | 5.0  Bitcoins |
| Eddie Wilds | 1.0  Bitcoin |

For a total of 206.5 Bitcoins deposited and not returned.

To quote from Mr. Kagel in his January 7, 2018 letter to our client investors:

He [David Saffron] has agreed to at all times maintain the deposit in the wallet and give this firm unrestricted access to it. If you have not received the return of your deposit from Mr. Saffron following ten business days' notice to him with a copy to us, upon five business days' notice to us we will return your deposit from the aforementioned wallet.

Our clients have not received the return of their deposit or the promised return on their investment.  Please return the deposit within the time required or we will take the appropriate legal

Exhibit 2 p. 2

SDKD-Murrin-0000000011

Mr. Kagel, Ms. Ina Kagel, Kagel Law, APC, and Mr. Saffron
February 5, 2018
Page 3

action to assure that our clients' oral and written agreements with Mr. Saffron and Mr. Kagel are honored.

　　　　Please do not hesitate to give me a call if you wish to resolve this matter swiftly and amicably, or if you have any questions, suggestions, or instructions on how to obtain the deposited bitcoin as quickly and efficiently as possible.

　　　　　　　　　　　　　　　　Very truly yours,
　　　　　　　　　　　　　　　　MURRIN LAW FIRM

　　　　　　　　　　　　J. Owen Murrin

　　　　　　　　　　　　　　　　　　　　　　　　　　Exhibit 2 p. 3

SDKD-Murrin-0000000011

# MURRIN LAW FIRM
—— EST. 1977 ——

Mailing address:
7045 E. Los Santos Drive
Long Beach, CA 90815
562-342-3011 (Office)
562-724-7007 (Fax)

J. Owen Murrin
www.murrinlawfirm.com
jmurrin@murrinlawfirm.com

Practicing law in California & North Dakota only.
Nationwide Securities Arbitration and Mediation Services.

Client Appointment Office:
5150 Pacific Coast Highway
Suite 200, Long Beach, CA 90804

March 2, 2018

Office of Chief Trial Counsel
Intake Department
State Bar of California
845 South Figueroa Street
Los Angeles, California 90017-2515

   Re: David Kagel, Kagel Law, APC
      State Bar # 58961
      Ina P. Kagel, Kagel Law, APC
      State Bar Number #198706

      Bitcoin Investment Escrow Account at Kagel Law, APC

Dear Counsel:

   Our office has been retained by a group of disgruntled investors who have been taken advantage of, and quite possibly the victims of outright theft, at the hands of Kagel Law, APC.

   This is not our first time reporting this type of activity regarding David L. Kagel to your office. Your office is already in receipt of a complaints against David Kagel by two other groups of clients who were wronged by David L. Kagel. One group includes State Bar complaint file numbers 16-F-12734, 16-F-12735, 16-F-12737, 16-F-12738, 16-F-12739, 16-F-12740, 16-F-12741, 16-F-12742, 16-F-12743, 16-F-12744, 16-F-12745, 16-F-12746, 16-F-12747, 16-F-12748, 16-F-12749, 16-F-12750, 16-F-12751, 16-F-12755; and the other group of clients include complaint file numbers 16-F-15467, 16-F-15468, 16-F-15469, 16-F-15470, 16-F-15471, 16-F-15756, 16-F-15669, 16-F-23837. These two groups of investors' complaints all had to do with David Kagel breaching his fiduciary duty when acting as a trustee of a viatical life settlement investment trust. One group of these clients won a $1.3 million judgment against David L. Kagel, which is now up on appeal and hence your office is suspending any action on this matter until such time as the appellate court rules.

   Our current set of investors, the subject of this letter to the State Bar, were assured by David L. Kagel that his firm, Kagel Law, APC would act as an escrow of bitcoin deposits. Mr. Kagel was working with David Saffron (Saffron has been extradited to Fulton County Georgia on

SDKD-Murrin-0000000024

Office of Chief Trial Counsel
Intake Department
March 2, 2018
Page 2

February 16, 2018 for Financial Transaction Card Fraud and is awaiting trial in Fulton County, see Exhibit 5).

To quote from Mr. Kagel in his January 7, 2018 letter to our client investors:

> He [David Saffron] has agreed to at all times maintain the deposit in the (bitcoin) wallet and give this firm unrestricted access to it. If you have not received the return of your deposit from Mr. Saffron following ten business days' notice to him with a copy to us, upon five business days' notice to us we will return your deposit from the aforementioned wallet. See Exhibit 1.

Our firm has given David L. Kagel, Ina Kagel, Kagel Law, APC and David Saffron the 10 day and follow up 5 day notice to no avail.  (See Exhibits 2, 2a and 4).  When our office contacted the District Attorney, they instructed us to let the State Bar know of this new development, namely that David L. Kagel, now this time along with his wife and law partner, Ina Kagel, continue to breach their fiduciary duty to the investing public.  The attached letters summarize the case, which case will be filed shortly in Superior Court.  Please see the attached letter from David Kagel to our clients, and our firm's letters to David L. Kagel, Ina Kagel and David Saffron pursuant to the notice requirements as set forth in Mr. Kagel's letter.  Mr. Kagel's bizarre explanation in his February 12, 2018 letter (Exhibit 3) reveals Kagel's inability to grasp one of the major benefits of Bitcoin, that being its ability to be accessible to only the persons who have access to a 24 digit code. Once a person has access to that code, the code cannot be pulled back as Kagel claims that Saffron was able to do in the midst of being attacked and assaulted.  This appears to be a dishonest statement by Kagel.

Ina Kagel may claim that she is not part of this, but when she was deposed in August, 2017, she stated under oath that she became a 99% owner of Kagel Law, APC at the time when David Kagel was suspended. She stated that she has always been a part of Kagel Law. As such, due to Mr. Kagel's bar record, and Ina Kagel's 99% ownership interest in the firm, Ina Kagel was on notice that she had a duty to supervise. The California Supreme Court recognizes the obligation to develop appropriate office procedures and to supervise law office staff, as well as the duty to provide effective supervision to junior lawyers. (See *Trousil v. State Bar* (1985) 38 Cal. 3d 337, 342 ("lapses in office procedure…[may be] deemed 'wilful' for disciplinary purposes"); *Gabba v. State Bar* (1990) 50 Cal. 3d 344, 353 (duty to supervise other lawyers); *Waysman v. State Bar* (1986) 41 Cal. 3d 452, 455 (duty to supervise law office staff); *see also,* Calif. Ethics Opn. 1997-50 at 3 ("Each attorney has the obligation to supervise his or her subordinates and employees.").) (Deposition Transcript available upon request.)

We bring this matter to your attention now because the District Attorney's office informed us that this new information on additional and continued wrong doing by David L. Kagel should be in the State Bar's hands at such time the State Bar takes the above mentioned State Bar complaints under consideration, which we were told would be when the appellate court rules on the pending Anderson v Kagel matter.

SDKD-Murrin-0000000024

Office of Chief Trial Counsel
Intake Department
March 2, 2018
Page 3

It could possibly be months if not years before the civil court will be able to take any action on this new bitcoin matter against Kagel.  It is our hope that the investing public be afforded protection from such predatory practices while the wheels of justice move forward on the bitcoin case.

Feel free to call our office if you have any questions regarding the above matter. Attached to this letter is more specific information about our clients' complaints against David L. Kagel and Ina Kagel.

MURRIN LAW FIRM

Very truly yours,

J. Owen Murrin
JM/dq

Office of Chief Trial Counsel
Intake Department
March 2, 2018
Page 4

## State Bar Complaint Information Sheet

**1. Clients names and contact information:**

Nathan Van Tuyl
Top View Films

Irvine, CA
(714) 415-8586
nvantuyl@gmail.com

Frank E. Calabro Jr.

Mcleansville, NC
(252) 503-2092
frankiecalabrojr@gmail.com

Rodney Burton

Campsprings, MD
(202) 604-5415
gotmillionsonline@gmail.com

Dee Washington

Harrisonburg, VA
(540) 282-2168
Washingtondee1983@gmail.com

Eddie Wilds

Froth Smith, AZ
(929) 400-1358
wildholdings@gmail.com

Kameron Pollock

Moorpark, CA
(805) 657-7837
Kameron.pollock7@gmail.com

Michael Jamison Palmer

Boulder, CO
(720) 365-0536
Jamison777@gmail.com

Hitesh Juneja

Irvine, CA
714-422-9298
hitesh93@gmail.com

**2. Attorneys' Contact Information:**

David L. Kagel
Kagel Law, APC
1801 Century Park East, Suite 1201
Los Angeles, CA 90067-2314
dkagel@earthlink.net
State Bar # 58961
310-860-9975
Fax 310-271-0118

Ina P Kagel
Kagel Law, APC
1801 Century Park East, Suite 1201
Los Angeles, CA 90067-2314
ikagel@earthlink.net
State Bar Number 198706
Phone: 310-271-1525
Fax 310-271-0118

**3.** This particular group of investors have not complained to the State Bar about this Attorney, but two other sets of investors have pending complaints against David L. Kagel for breach of fiduciary duty. One group won a $1.3 million civil judgment against David L. Kagel which is pending before the Appellate Court. See attached letter for State Bar Complaint file numbers.

**4.** This group of Bitcoin investors were sent a letter by Kagel Law, APC assuring the investors that Kagel Law, APC was acting as an escrow for deposited funds. See Exhibit 1. Part of the sales pitch was that if the investors turned over their money, that Kagel Law, APC would provide security that their deposit would be returned.

**5. Statement of the case:**

A group of Bitcoin investors were approached by David Saffron to invest in a short term crypto-currency bot trading program. Some of the investors invested a small amount. On

SDKD-Murrin-0000000024

Office of Chief Trial Counsel
Intake Department
March 2, 2018
Page 5

**January 3, 2018 these investors were paid back triple their investment.** This created an excitement and these investors communicated this profit to other investors. This was followed by a meeting on January 4, 2018. During this meeting David Saffron made a presentation to a larger group of investors. At this meeting Saffron stated that he had an automated bot/A-1/trading software that was able to open and close positions automatically and net him 5 to 8 times return on trades. Saffron wanted more funds to be able to scale up his trading. He stated that he had 1000-bit coin ($15 million) in a private escrow fund held by David L. Kagel (his attorney). Kagel had access to this money. This money would be paid out as a protection if Saffron's projected returns didn't prove correct or allow for the return of investor money. In case the promised/projected returns were not provided, Mr. Kagel would have access the escrow/funds to pay the investors. Based on the above representation that Mr. Saffron proclaimed, he had open investor positions and was accepting more money. The projection Saffron made for this investment was that this would produce a 3 to 1 return on January 7, 2018. David Kagel made representations contained in the attached letter see (Ex. 1), which read in part as follows:

> "...In order to assure that your deposit will be returned in the event that Mr. Saffron is unable or unwilling to do so, he has deposited at least one thousand-bit coin into a wallet to which he has given us access. He has agreed to at all times maintain the deposit in the wallet and give this firm unrestricted access to it. If you have not received the return of your deposit from Mr. Saffron following ten business days' notice to him with a copy to us, upon five business days' notice to us we will return your deposit from the aforementioned wallet."

This letter was signed by David L. Kagel, Kagel Law, A Professional Corporation.
When Kagel Law, APC, David L. Kagel and Ina P. Kagel were contacted about a return of their deposit of over $3,000,000, David L. Kagel stated that he no longer had access to the funds. See Exhibit 3. It appears that David Saffron was arrested, imprisoned and then extradited to Fulton County Georgia to await trial on Financial Transaction Fraud. See Exhibit 5. David L. Kagel replied to our demand letter, (see Exhibit 3) saying that David Saffron should be in a position to return the investors deposits by the end of the week. That letter was written on February 12th. No investors have received any return of their investment.

6. This complaint has not reached the lawsuit stage yet, but a law suit is being contemplated.

7. Kagel Law APC has 2 attorneys, David L. Kagel and Ina P. Kagel.

8. Translation services are not needed.

Signatures on next page

SDKD-Murrin-0000000024

Office of Chief Trial Counsel
Intake Department
March 2, 2018
Page 6

---

Client: Nathan Van Tuyl                    Date

*Nathan Van Tuyl*                          3/8/18
---
Client: Frank E. Calabro Jr.               Date


---
Client: Rodney Burton                      Date


---
Client: Dee Washington                     Date


---
Client: Eddie Wilds                        Date


---
Client: Kameron Pollock                    Date


---
Client: Michael Jamison-Palmer             Date

---
Client: Hitesh Juneja                      Date

Signatures by facsimile or other method of reproduction shall have the same force and effect as this original instrument.  This instrument may be executed in counterparts.

SDKD-Murrin-0000000024

Office of Chief Trial Counsel
Intake Department
March 2, 2018
Page 6

Client: Nathan Van Tuyl _____   Date

*Frank E Calabro Jr*   3·2·2018
Client: Frank E. Calabro Jr. _____   Date

Client: Rodney Burton _____   Date

Client: Dee Washington _____   Date

Client: Eddie Wilds _____   Date

Client: Kameron Pollock _____   Date

Client: Michael Jamison-Palmer _____   Date

Client: Hitesh Juneja _____   Date

Signatures by facsimile or other method of reproduction shall have the same force and effect as this original instrument.  This instrument may be executed in counterparts.

SDKD-Murrin-0000000024

Office of Chief Trial Counsel
Intake Department
March 2, 2018
Page 6

Client: Nathan Van Tuyl _____ Date _____

Client: Frank E. Calabro Jr. _____ Date _____

Client: Rodney Burton _____ Date _____ 3/2/18

Client: Dee Washington _____ Date _____

Client: Eddie Wilds _____ Date _____

Client: Kameron Pollock _____ Date _____

Client: Michael Jamison-Palmer _____ Date _____

Client: Hitesh Juneja _____ Date _____

Signatures by facsimile or other method of reproduction shall have the same force and effect as this original instrument. This instrument may be executed in counterparts.

SDKD-Murrin-0000000024

Office of Chief Trial Counsel
Intake Department
March 2, 2018
Page 6

---

Client: Nathan Van Tuyl                    Date

---

Client: Frank E. Calabro Jr.               Date

---

Client: Rodney Burton                      Date

---

Client: Dee Washington                     Date

3/14/2018

---

Client: Eddie Wilds                         Date

---

Client: Kameron Pollock                     Date

---

Client: Michael Jamison-Palmer              Date

---

Client: Hitesh Juneja                       Date

**Signatures by facsimile or other method of reproduction shall have the same force and effect as this original instrument. This instrument may be executed in counterparts.**

SDKD-Murrin-0000000024

Office of Chief Trial Counsel
Intake Department
March 2, 2018
Page 6

_____     _____
Client: Nathan Van Tuyl                        Date

_____     _____
Client: Frank E. Calabro Jr.                   Date

_____     _____
Client: Rodney Burton                          Date

_____     _____
Client: Dee Washington                         Date

*Eddie Wilds*                    3/19/18
_____     _____
Client: Eddie Wilds                            Date

_____     _____
Client: Kameron Pollock                        Date

_____     _____
Client: Michael Jamison-Palmer                 Date

_____     _____
Client: Hitesh Juneja                          Date

Signatures by facsimile or other method of reproduction shall have the same force and effect as this original instrument.  This instrument may be executed in counterparts.

SDKD-Murrin-0000000024

Office of Chief Trial Counsel
Intake Department
March 2, 2018
Page 6

_____   _____
Client: Nathan Van Tuyl                Date

_____   _____
Client: Frank E. Calabro Jr.           Date

_____   _____
Client: Rodney Burton                  Date

_____   _____
Client: Dee Washington                 Date

_____   _____
Client: Eddie Wilds                    Date

_____   3/5/2017
Client: Kameron Pollock                Date

_____   _____
Client: Michael Jamison-Palmer         Date

_____   _____
Client: Hitesh Juneja                  Date

Signatures by facsimile or other method of reproduction shall have the same force and effect as
this original instrument.  This instrument may be executed in counterparts.

SDKD-Murrin-0000000024

Office of Chief Trial Counsel
Intake Department
March 2, 2018
Page 6

---
Client: Nathan Van Tuyl                     Date

---
Client: Frank E. Calabro Jr.                Date

---
Client: Rodney Burton                       Date

---
Client: Dee Washington                      Date

---
Client: Eddie Wilds                         Date

---
Client: Kameron Pollock                     Date

_Michael Jamison-Palmer_        3-8-18
Client: Michael Jamison-Palmer              Date

---
Client: Hitesh Juneja                       Date

Signatures by facsimile or other method of reproduction shall have the same force and effect as
this original instrument. This instrument may be executed in counterparts.

SDKD-Murrin-0000000024

Office of Chief Trial Counsel
Intake Department
March 2, 2018
Page 6

_____
Client: Nathan Van Toyl                        Date

_____
Client: Frank E. Calabro Jr.                   Date

_____
Client: Rodney Burton                          Date

_____
Client: Dee Washington                         Date

_____
Client: Eddie Wilds                            Date

_____
Client: Kameron Pollock                        Date

_____
Client: Michael Jamison-Palmer                 Date

_____
Client: Hitesh Juneja                          Date

Signatures by facsimile or other method of reproduction shall have the same force and effect as
this original instrument. This instrument may be executed in counterparts.

SDKD-Murrin-0000000024

**KAGEL LAW**
A Professional Corporation
1801 Century Park East, Suite 1201
Los Angeles, CA 90067
TELEPHONE: (310) 860-9975
E-MAIL: dkagel@earthlink.net

February 12, 2018

J. Owen Murrin
Murrin Law Firm
7045 E. Los Santos Drive
Long Beach, CA. 90815

Re: David Saffron

Dear Mr. Murrin;

I am in receipt of your letter of February 5, 2018. Please direct all correspondence regarding this matter to me only, at the above address or by email. Mrs. Kagel is not the "managing partner" of this firm as it is a professional corporation.

On January 23, 2018 Mr. Saffron was brutally beaten and robbed of his computer at his apartment. His life was threatened by his assailants in an attempt to obtain access to his bitcoin wallets, including the wallet held for the benefit of your clients. In order to secure the contents of the wallets, and at the risk of his life, Mr. Saffron disabled access to them by anyone other than himself, including the undersigned.

When his assailants left Mr. Saffron called the Los Angeles police. After taking a report he was arrested on an outstanding warrant from the State of Georgia on a relatively minor matter, not involving bitcoin, which he believed had been resolved. He has waived extradition and is currently being transported to Atlanta. His counsel there has assured me that he believes that Mr. Saffron will be released upon payment of an amount being held in his trust account.

Following his release I believe that Mr. Saffron will contact all of his investors, including your clients, and return their deposits or otherwise make arrangements satisfactory to them. I expect that he will be able to begin that process by the end of this week. When I have additional information I will contact you.

Very truly yours,

Kagel Law, a Professional Corporation

By _____
    David L. Kagel

1

SDKD-Murrin-0000000047

# M U R R I N   L A W   F I R M
— EST. 1977 —

| | | |
|---|---|---|
| Mailing address:<br>7045 E. Los Santos Drive<br>Long Beach, CA 90815<br>562-342-8011 (Office)<br>562-724-7007 (Fax) | J. Owen Murrin<br>www.murrinlawfirm.com<br>jmurrin@murrinlawfirm.com<br><br>Practicing law in California & North Dakota only.<br>Nationwide Securities Arbitration and Mediation Services. | Client Appointment Office:<br>5150 Pacific Coast Highway<br>Suite 200, Long Beach, CA 90804 |

February 15, 2018

**Via Certified Mail 7017 2680 0001 0735 5099**
David L. Kagel, Chief Executive Officer, Director of
Kagel Law, a Professional Corporation
1801 Century Park East, Suite 1201
Los Angeles, CA 90067

**Via Certified Mail 7017 2680 0001 0735 5129**
Ina Kagel
Chief Financial Officer, Secretary, and Director of Kagel Law, APC
202 N. Canon Dr.
Beverly Hills, California 90210

**Via Certified Mail 7017 2680 0001 0735 5105**
David Saffron

North Hollywood, CA █████

**Via Certified Mail 7017 2680 0001 0735 5112**
David Saffron, Booking No. 5211943
Los Angeles County Sheriff's Dept.
P.O. Box 86164
Terminal Annex
Los Angeles, CA 90086-0164

Re:  Five (5) Day Further Notice for Return of Deposit of Bitcoins or other
Cryptocurrency

Dear Mr. Kagel, Ms. Ina Kagel (Chief Financial Officer, Secretary, and Director of Kagel Law,
APC), and Mr. Saffron:

We write to follow up on our previous correspondence of February 5th.  Pursuant to your
January 7, 2018 letter to our clients (attached hereto), your agreement with our clients is as follows:

"In order to assure that your deposit will be returned in the event that Mr.
Saffron is unable or unwilling to do so he has deposited at least one thousand bitcoin

SDKD-Murrin-0000000051

Mr. Kagel, Ms. Ina Kagel, Kagel Law, APC, and Mr. Saffron
February 15, 2018
Page 2

in a wallet to which he has given us access.  He has agreed to at all times maintain the deposit in the wallet and give this firm unrestricted access to it. If you have not received the return of your deposit from Mr. Saffron following ten business days' notice to him with a copy to us, upon five business days' notice to us **we will return your deposit** from the aforementioned wallet." (emphasis added)

Please consider this letter our clients' formal five day notice to you, (following up on our previous 10 day demand letter dated February 5, 2018), that Mr. David Saffron has not returned the deposit of bitcoin and other forms of cryptocurrency to our clients in the prescribed time period allowed. As such, pursuant to your January 7, 2018 agreement as quoted above, we hereby demand that Kagel Law, APC, (David L. Kagel; Chief Executive Officer, and Director, and Ina Kagel; Chief Financial Officer, Secretary, and Director of Kagel Law, APC) make good on the above stated promise to return our clients' deposit of bitcoin and other forms of cryptocurrency, the amounts of which are outlined in detail in our February 5th letter.

Additionally, we are in receipt of your February 12th letter. Your letter raises several concerns. First of all, your January 7th, 2018 letter assures my clients that your firm will have unrestricted access to the wallet. As such, it defies logic that Mr. Saffron, while under duress, would disable all access to the wallet by your firm, instead of protecting his life and disabling his own access to deter the assailants.  Nevertheless, without trying to speculate as to Mr. Saffron's state of mind during the stressful event you describe in your letter, the bottom line is that our clients are gravely concerned about receiving their deposit back.

Given that Mr. Saffron has a public record of Financial Transaction Card Fraud in Fulton County Georgia, and given that Mr. Saffron has been, by your own admission, recently extradited to Atlanta, Georgia, my clients hereby demand the following information:

1. Given that my clients were told that this is a Ledger Nano Account (Hardware wallet), my clients want the receiving address verifying that the cryptocurrency was received and is still being held in one wallet and that the coins (Bitcoins) have not been dissipated into various and many wallets. In furtherance thereof, my clients want viewing access to the wallet holding their deposit.  As you know, viewing a wallet is easily done if in possession of the correct watching wallet address.  Viewing does not allow withdrawal and wallet addresses are given freely for deposits. Allowing my clients access to the watching wallet address will assure my clients that the bitcoins still exist.

2. Given that my clients were told that your office, Kagel Law, APC, would be acting to "assure" that the deposit would be returned, my clients demand proof from you that the coins still exist in the wallet and demand proof that the coins ever existed in the wallet.

3. My clients are confused about your statement that "Mr. Saffron disabled access to them (cryptocurrency) by anyone other than himself." My clients want you to define "access". Is access

SDKD-Murrin-0000000051

Mr. Kagel, Ms. Ina Kagel, Kagel Law, APC, and Mr. Saffron
February 15, 2018
Page 3

to this wallet through a key or key phrase, through a PIN number or through other means?  Again, it defies logic that if you previously had unrestricted access to the wallet, that Mr. Saffron could disable that access during a stressful event as described in your February 12th letter.

4. My clients were assured that your office was performing an escrow function.  As such, my clients want to know what precautions you have taken to assure the safekeeping of my clients' deposit.

Again, our clients have not received the return of their deposit or the promised return on their investment.  Please return the deposit within the time required or we will take the appropriate legal action to assure that our clients' oral and written agreements with Mr. Saffron, Mr. Kagel, and Kagel Law, APC are honored.

Please do not hesitate to give me a call if you wish to resolve this matter swiftly and amicably, or if you have any questions, suggestions, or instructions on how to obtain the deposited bitcoin as quickly and efficiently as possible.  As you know a swift and amicable resolution of this matter without further legal action is in everyone's best interest.

Very truly yours,

MURRIN LAW FIRM

J. Owen Murrin

**KAGEL LAW**
A Professional Corporation
1801 Century Park East, Suite 1201
Los Angeles, CA 90067
TELEPHONE: (310) 860-9975
E-MAIL: dkagel@earthlink.net

January 7, 2018

Hitesh Juneja
Jason Rose
J&H Business Institute Corp., LLC

██████████
Cypress TX

Gentlemen:

This firm acts as counsel to David Saffron. We understand that you will be depositing bitcoin and other forms of cryptocurrency with Mr. Saffron which he will be investing on your behalf. He has agreed to return your investment to you together with a profit. In order to assure that your deposit will be returned in the event that Mr. Saffron is unable or unwilling to do so he has deposited at least one thousand bitcoin in a wallet to which he has given us access. He has agreed to at all times maintain the deposit in the wallet and give this firm unrestricted access to it. If you have not received the return of your deposit from Mr. Saffron following ten business days' notice to him with a copy to us, upon five business days' notice to us we will return your deposit from the aforementioned wallet.

You agree to copy us on all written communication between you and Mr. Saffron and to advise us of the contents of all verbal communications between the two of you.

Very truly yours,

Kagel Law, a Professional Corporation

By _____
David L. Kagel

**To: David Saffron**                                                          Details

https://zoom.us/j/2519973628

1:30 now

1/3/18, 1:30 PM

Yep

Send me your wallet address for return of
30BtC

Yes for what position?

1/3/18, 4:11 PM

These ten are from you and Vincent
correct ??

Yes

Okie

Okie
I was just curious

Iv already made 49 coin on the 10 in 3
sessions

iMessage



SDKD-Murrin-0000000402

To: **David Saffron**                                              Details



iMessage with 13108496408
1/2/18, 4:22 PM

Nathan Van Tuyl

Exodus BTC address:

87JT

bitcoin:

6RL

Q

My wallet

1/2/18, 11:48 PM

Did you charge computer at last

iMessage

SDKD-Murrin-0000000485

To: **David Saffron**                                                    Details



Ok

1/3/18, 6:52 AM

GoodMorning
Just landed in la

30 btc on Friday
Then
Thank you all

I can't believe I'm still awake lol
And in la
Awwww

Likewise

**Transaction Details**

January 3, 2018, 6:54 AM

# Received $150,348.83
at ██████████ SRLQ

Status
**Complete**

Memo

Amount
$150,348.83

Starting balance: $70.71

iMessage

SDKD-Murrin-0000000486

To: **David Saffron**                                                  Details

Amount
**$150,348.83**

**Starting balance: $70.71**
**Ending balance: $150,419.54**

**Exchange rate when received:**
**$15,044.72/btc -0.00%**

Received At This Address

███████████████████████████**5RLQ**

More...

**Confirmed**

**Hell Day**
**Wake up Las Vegas**
**Fly to la**
**Meeting 1: 9:30**
**Meeting 2: 10:30**
**Meeting 3: 11:30**
**Meeting 4: 12-1pm**
**Zoom conference call 1pm - 2pm**
**Meeting 5: 3pm-4pm**

**Fly back to Vegas : 4:30pm**

**7:30pm Vegas meeting 6**

**11:30 pm meeting 7**

**During all this answer 1400 emails**
**2423 texts**
**56 vm**

**D**

iMessage                                            ☺  🎤

SDKD-Murrin-0000000487

**To: David Saffron**  Details

https://zoom.us/j/2519973628

1:30 now

1/3/18, 1:30 PM

Yep

Send me your wallet address for return of 30BtC

Yes for what position?

1/3/18, 4:11 PM

These ten are from you and Vincent correct ??

Yes

Okie

Nate/Vince

Okie
I was just curious

Iv already made 49 coin on the 10 in 3 sessions

iMessage

SDKD-Murrin-0000000488

Exhibit 5 - Information & Documents Produced by Preston
Sterling Kerr

# Law Offices of P. STERLING KERR

May 18, 2018

Justin Baraglia;
████████████

Brian Johnson (Meta-Tech Consultants L.L.C.);
████████████

David Saffron (Kinetic Marketing Systems Inc.)
████████████

RE: Legal Services for Creation of Joint Venture Agreement, Cayman Island hedge fund

Gentleman,

We are pleased that you are considering our firm for legal services. This letter will confirm our discussion regarding engagement of this firm and will describe the basis on which our firm will provide legal services on behalf of Justin Baraglia, Brian Johnson (Meta-Tech Consultants L.L.C.); David Saffron (Kinetic Marketing Systems Inc.).

Accordingly, we submit for your approval the following provisions governing our engagement. If you are in agreement, please sign the enclosed copy of this letter in the space provided below. If you have any questions about these provisions, or if you would like to discuss possible modifications, do not hesitate to contact us. Again, we are pleased to have the opportunity to serve you.

CLIENT. Our client in this matter will be Meta-Tech Consultants L.L.C., Justin Baraglia, Brian Johnson (Meta-Tech Consultants L.L.C.); David Saffron (Kinetic Marketing Systems Inc.) and is referred to in this letter as the "Client."

SCOPE. We are engaged to provide the Client with the following services:

- Separation of a joint venture agreement between Kinetic Marketing Systems Inc. and Meta-Tech Consultants L.L.C.;
- Creation of a general partner under Cayman law (for registration of Meta-Tech Consultants L.L.C. as a foreign Corp doing business in the Cayman Island);
- Creation of Cayman hedge fund (Omicron Propriety Fund, LP)
- Creation of Limited Partner agreement for hedge fund;
- Creation of Disclosure documents;
- Creation of Accredited investor questionnaire, subscription agreement (or equivalent Cayman custody documents)
- Law Firm to act as one of the directors of the Cayman entity;
- Filing of required REG. D 506 (c)

We may agree to expand or limit the scope of our representation from time to time; however, any expansion or limitation must be confirmed in a writing signed by you and us.

2450 St. Rose Parkway • Suite 120 • Henderson, NV 89074
Phone: (702) 451-2055 • Fax: (702) 451-2077
www.sterlingkerrlaw.com

3131 Las Vegas Boulevard South, Las Vegas, NV 89109   Tel (702) 770-7000   wynnresorts.com

TERM. Our representation shall continue on an as needed basis. In addition, either the Client or the firm may terminate our engagement at any time for any reason upon notice to the other. Our right to terminate may be limited by the applicable rules of professional conduct. In the event that we terminate the engagement, we will take such steps as are reasonably practicable to protect the Client's interests in the above matter and, if the Client requests, we will suggest possible successor counsel and provide that counsel with whatever materials Client provided to us. If permission for withdrawal is required by a court, we will promptly apply for that permission, and you agree to engage successor counsel to represent the Client.

PERSONNEL. The attorney executing this Agreement on behalf of our firm will be the principal attorney responsible for handling this matter on behalf of the Client; however, the Client agrees that certain portions of the legal work may be delegated to other attorneys and staff within the firm within the reasonable discretion of the principal attorney. This delegation may require meetings which expend the time for which you will be billed. In addition, if in the opinion of the principal attorney, it is necessary for the timely or proper handling of the matter, our firm may on behalf of the Client retain local or other legal counsel, court reporters, photographers, surveyors, title companies, appraisers, and experts either as witnesses or advisors. In the event our arrangement with other legal counsel would involve a division of our fee, we will advise you and assume your approval unless you promptly inform us otherwise.

FEES. Our fees will be based on the time spent, with the minimum billable increment of time being one-tenth (.1) of an hour and will be paid by the Client. The services for which you may be charged include, for example, telephone and office conferences, contract drafting, conferences among our employees, research, correspondence, opinions, memoranda, court appearances, depositions, preparation of litigation documents, travel, and related papers. Rates for each attorney, paralegal and law clerk are based upon that person's experience, years in practice, expertise, and professional achievement. The Firm's current rates are as follows:

The Firm adjusts these rates from time to time typically on an annual basis. The firm will notify you of adjustments, and you will be responsible for paying the rates in effect following that notice. On certain occasions we may quote to you a flat fee for certain services. These fees are typically confirmed in writing as is the scope of the legal work to be performed for that fee.

EXPENSES. In the course of providing services for the Client, we often incur expenses. These expenses may include, but are not limited to, charges for serving and filing papers, courier or messenger service, recording or certifying documents, depositions, transcripts, investigations, witnesses, computer research charges, long-distance telephone calls, copying charges, overtime and overload clerical assistance, travel expenses and postage. We will bill expenses to you as they are accrued. Large disbursements may be billed in advance, while certain costs associated with litigation-related work, including, for instance, the charges of expert witnesses and the charges of other law firms (acting, for example, as local counsel) may be forwarded to you for direct payment to the billing party. Although we may provide estimates for charges to be incurred by us in the course of our legal representation, such estimates are, by both their prospective nature and the uncertainty of any legal representation, necessarily inexact. Accordingly, we cannot be bound by any estimates. Travel expense of attorney to Cayman Island for initial setup will be included in the initial retainer. Expenses payable to Cayman attorney will be included in initial retainer. Filing fees to accomplish the scope of the legal work in this agreement shall be included in the retainer. However, audits, bank custody fees and registered agent fees on an annual basis are to be paid for by client and are not included in the initial retainer.

SDKD-Kerr-0000000001

RETAINER. You have agreed to pay on the date of this Agreement an initial retainer of one hundred thousand US dollars ($100,000.00) as an advance against our fees and expenses. This payment will be deposited in our trust account. We may withdraw from this amount, sums as payment towards our billings.

BILLING. We will submit billings from time to time to you. All billings shall be due and payable upon receipt. Payment is due within fifteen (15) days from the billing date. If payment is not received within one (1) month from the billing date, the outstanding balance will accrue interest at the rate of eighteen percent (18%) per annum, (1.5% per month) from the billing date until paid in full. LIEN. You agree that our firm will have a lien on all claims made by us on behalf of the Client on any proceeds derived therefrom, and on Client records, money and property in our possession for any sums due to us from you.

FAVORABLE OUTCOME NOT GUARANTEED. Our firm makes no warranty or representation concerning the successful termination of the matter or the favorable outcome of any legal action that may be undertaken. All statements by our personnel are statements of opinion only.

RETENTION OF FILES. Upon termination of our engagement, Client may upon written request, take possession of all of Client's files including any property or items furnished by Client or otherwise relating to the services. We have the right to retain copies at our expense of all items contained in those files. If Client does not elect to take custody of the files, we will retain the files for what we consider to be a reasonable time at which time the files will be disposed of without further notice to you. Our current policy is to dispose of all files five (5) years after termination of our engagement, and you agree that we may do so.

POST ENGAGEMENT MATTERS. After completion of the matter, changes may occur in the applicable laws or regulations that could have an impact upon your future rights and liabilities. Unless you engage us after completion of the matter to provide additional advice on issues arising from the matter, the firm has no continuing obligation to advise you with respect to future legal developments.

CLIENT RESPONSIBILITIES. You agree to cooperate fully with us and to provide promptly all information known or available relevant to our representation. You agree to notify us promptly of any change in the address or contact data for Client.

CONFLICTS. As we have discussed, you are aware that the firm represents many other companies and individuals. It is possible that during the time that we are representing the Client, some of our present or future clients will have disputes or transactions with the Client. The Client agrees that we may continue to represent or may undertake in the future to represent existing or new clients in any matter that is not substantially related to our work for the Client even if the interests of such clients in those other matters are directly adverse. We agree, however, that the Client's prospective consent to conflicting representation contained in the preceding sentence shall not apply in any instance where, as a result of our representation of the Client, we have obtained proprietary or other confidential information of a nonpublic nature, that, if known to such other client, could be used in any such other matter by such client to the Client's material disadvantage. If the Client affiliates with, acquires, is acquired by, or merges with another company, you will provide us with sufficient notice to permit us to withdraw as your attorneys if we determine that such affiliation, acquisition, or merger creates a conflict of interest which precludes our continued representation in this matter. You should know

3131 Las Vegas Boulevard South, Las Vegas, NV 89109    Tel (702) 770-7000    wynnresorts.com

SDKD-Kerr-0000000001

that, in similar engagements letters with many of our other clients, we have asked for similar agreements to preserve our ability to represent you.

Client under this engagement letter agrees that there is an inherent conflict of interest between Meta-Tech Consultants L.L.C. and Kinetic Marketing Systems Inc. This conflict is created because law firm is drafting a joint venture agreement between these two entities. Both Meta-Tech Consultants L.L.C. & Kinetic Marketing Systems Inc. agree to wave this conflict and allow law firm to create a joint venture agreement on their respective behalves.'

ARBITRATION. The attorney-client relationship is one of mutual trust and confidence. Whenever you have any questions or concerns regarding our services, please do not hesitate to contact our offices. Should a dispute arise between Client and our firm that cannot be resolved informally, the firm and we agree to arbitrate the dispute. We would jointly select an arbitrator. If we were unable to agree on an arbitrator, two arbitrators shall be selected with one selected by you and one by us. The selected arbitrators shall select a third arbitrator who would serve as chairman. The arbitrator or arbitrators would establish the rules of arbitration, and shall act by majority vote if more than one. A decision of the arbitration or arbitrators would be final and binding subject only to the Nevada Rules of Professional Conduct.

CHOICE OF LAW. Our engagement is entered into under and shall be governed by the laws of the state of Nevada excluding its choice of law provisions, even if our services involve actions and representation in other jurisdictions.

INTEGRATION. This Agreement constitutes the full and complete understanding between you and our firm. Any other oral or written prior agreements or understandings are superseded hereby. Any amendment to this engagement must be in writing signed by all parties.

///

///

3131 Las Vegas Boulevard South, Las Vegas, NV 89109     Tel (702) 770-7000     wynnresorts.com

SDKD-Kerr-0000000001

Please sign and date the accompanying copy of this letter and return to our office using the enclosed envelope or by facsimile or electronic mail. Your signature delivered by facsimile or electronic mail will be effective as an original. The effective date of this Agreement will be the date we receive copies showing execution by the Client and payment of the initial retainer.

If you have any questions about the provisions of this letter, please contact me. We appreciate your confidence in us.

Sincerely,

The Law Offices of P. Sterling Kerr

By _____
P. Sterling Kerr, Esq.

I have read, understand, and agree to the terms of the above engagement letter:

Meta-Tech Consultants L.L.C                          Kinetic Marketing Systems Inc.

By: _____          By: _____
Brian Johnson                                                  David Saffron

Date: _____          Date: _____

By: _____
Justin Baragiia

Date: _____

By: _____
Brian Johnson

Date: _____

By: _____
David Saffron

Date: _____

SDKD-Kerr-0000000001

OBSERVATIONS

*This document is valid for all countries unless otherwise arranged...*
*(subject to the laws, quarantine, currency or any other import and export control...*
*Ce document est valable pour tous pays sauf mention d'exception...*
*(sous réserve des conditions ayant trait à la quarantaine, au...*
*autres conditions d'entrée de chaque pays).*

AUSTRALIA

| | |
|---|---|
| PASSPORT | |
| Type / Type | Code of issuing / Code de l'État |
| **P** | Sicle **AUS** émetteur |
| Name / Nom | |
| **SAFFRON** | |
| **DAVID GILBERT** | |
| Nationality / Nationalité | |
| **AUSTRALIAN** | |
| Date of birth / Date de naissance | |
| ████ **1972** | |
| Sex / Sexe | Place of birth / Lieu de naissance |
| **M** | **SYDNEY** |
| Date of issue / Date de délivrance | Holder's signature / Signature du titulaire |
| **11 FEB 2010** | |
| Date of expiry / Date d'expiration | |
| **11 FEB 2020** | |
| Authority / Autorité | |
| **WASHINGTON** | |

DOCUMENT No.

```
P<AUSSAFFRON<<DAVID<GILBERT<<<<<<<<<<<<<<<<<<<
█████<8AUS72███4M2002112<25731953D<<<<20
```

SDKD-Kerr-0000000001

**OPERATING AGREEMENT**

**OF**

**META-TECH CONSULTANTS, L.L.C.**

The undersigned, all of the initial members of META-TECH CONSULTANTS, LLC, a
Nevada limited liability company.  Such new limited liability company shall be governed as
follows:

**ARTICLE 1 - OFFICES**

Section 1.1.    Princi~~~ ~ice. The principal office and place of business of the
company shall b~ ~ ~ vy., Suite 120, Henderson, NV 89074.

Offices *Justin Baraglia 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*    ~nt. The registered agent of the company shall be the Law
~ose Pkwy., Suite 120, Henderson, NV 89074 .

S~    ~TICLE 2
to the con       The in*Brian Johnson*~n their contributions
~sts in the comp;   *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* ~ST

**MEMBER**

Justin Baraglia

Brian Johnson

*Justin 310-435-9683*

~Members.~  A person, or any other legal entity in
ility Company Act ("Act"), may be admitted as a new
all members.

*Review*    ' be transferred or
sferee of a
ss all of the other
ier or its interest),
ment and agree to
ember shall have
es of the
m any liability to

*mkensatsni@ gmail.com*
*Brian Johnson*    )er's interest is not
ate in the
tled to receive the
tributions to which

management of the business and ~
share of profits or other compensa
the transferor would have been en

Section 2.5    Annual Me    for the election of
mangers and for the transaction o!    )efore the meetings

# LAW OFFICES OF P. STERLING KERR

June 15, 2018

Meta-Tech Consultants, LLC
c/o Justin Baraglia
███████████████

Re:    Omicron Trust (Trading Program- BTC) David Saffron, Consultant

Gentlemen:

We have acted as counsel to KINETIC MARKETING SYSTEMS, INC, a Wyoming Corporation ("**Client**"), in connection with that certain trading program known as Omicron Trust ("**Omicron**") traded through consultant, David Saffron ("**Consultant**").  In such capacity, we have reviewed certain documents, reports and computer programs and made general investigations with respect to the following:

      1.    Review of **trading history client spreadsheets** for several separate clients of Consultant;

      2.    Review of **demo trading history report** dated June 15, 2018 in four (4) hour time block commencing on or about 2:00am to 6:00am;

      3.    Review of trading program BTC/fiat currency trading pairs;

      4.    Engaged in 26 minute test trade of 0.2 BTC;

      5.    Review Omicron Trust web platform, test transaction, discussion with Consultant;

The information reviewed above was conducted in the presence of Consultant at Consultant's Hotel accomodation and separately at the undersigned's office address in Henderson, Nevada. Test trades were conducted utilizing both computer and other devices, including the undersigned's personal device and Coinbase account.

In rendering our opinion we have also examined independent research and consulted with other experts as we have deemed necessary for the purposes of the opinion herein expressed. We have assumed that consultant has been engaged in the crypto-currency industry for many years and we have independently verified Consultant's programming credentials.

We have not made any investigation of and do not express an opinion as to, any matters of the legality of the trading program, nor do we express any opinion as to the trading program's adherence to Federal or State securities laws in the solicitation of BTC to trade on the Omicron trading website.

SDKD-Kerr-0000000002

# LAW OFFICES OF P. STERLING KERR

This opinion letter is limited to the matters stated herein as of the date hereof and no opinion is implied or may be inferred beyond the matters expressly stated.

We give no opinion regarding any tax implications resulting from trading on the Omicron platform.

Based on the foregoing and upon such investigation as we have deemed necessary, and subject to the qualifications and exceptions herein contained, we are of the opinion that:

1.      The Consultant has **historical trades** for clients with returns on the trading at a minimum of two (2) times the investment over varying periods of time.[1] The time periods for the return from the Consultant client spreadsheets vary from 24 hours to more than 40 days. The spreadsheets did not show each trade in the time period, but rather the BTC in the trade at the beginning of the trading period, random periodic returns and the final return to client at the conclusion of the trading period. The client spreadsheets also indicated the destination wallets upon conclusion of the trading period and amounts sent. In rendering the above opinion, we have assumed that the spreadsheets (because of the volume of information, among other things) were true and correct records of the trading of Consultant.

2.      The **demo trading history report** dated June 15, 2018 in a four (4) hour time block commencing on or about 2:00am to 6:00am, showed significant return on initial investment. The Consultant's algorithm traded 16 exchange platforms (ie., Gemini, GDAX) with 16 sets of trading pairs, including fiat/BTC pairs, FOREX pairs and other crypto-currency pairs. The trading period for the June 15, 2018 demo occurred in a downward trending market. The report that the undersigned reviewed showed all of the trades for a specific limited time in the four (4) hour time block with a summary of trades (total trades exceeded 7,400 trades in the block). The demo started with fiat $1,000 USD and concluded the four (4) hour block with $54,900 USD. In rendering the above opinion, we have assumed that the demo trading history report was a true and correct record of the trading of Consultant.

3.      The Consultant's **trading algorithm** (referred to by Consultant as "BOTS") generated two (2) times the investment in BTC over a 26 minute test period. The undersigned transferred 0.2 BTC from the undersigned's Coinbase account to Consultant. Consultant inserted the BTC into the trading algorithm and timed the trading for 26 minutes. At the conclusion of the 26 minute period the trading algorithm closed and 0.4 BTC were returned to the undersigned's Coinbase account by Consultant. In rendering the above opinion, we have assumed that the Consultant was only returning BTC to the undersigned generated by the trading algorithm during the 26 minute period.

In discussions with the Consultant the undersigned determined that the trading algorithm BOTS utilize artificial intelligence and trade based on RSS feeds of information concerning the markets, historical trends in the market (both short term and long term), and momentum in the market,

---

[1] Of the reviewed records, the return on investment for certain clients of Consultant was substantially higher than two (2) times the initial investment over the trading period.

2450 St. Rose Parkway ✦ Suite 120 ✦ Henderson, NV 89074
Phone: (702) 451-2055 ✦ Fax: (702) 451-2077
www.sterlingkerrlaw.com

SDKD-Kerr-0000000002

# LAW OFFICES OF P. STERLING KERR

among other information. Consultant did <u>not</u> provide to the undersigned sample source code, but did provide to the undersigned a description of the program and coding language utilized by Consultant to create the trading algorithm. The coding utilizes a hybrid C++ language in the LINUX environment.

In delivering the opinions set forth in paragraphs numbered 1 through 3, above, we have assumed the following:

(a) That all of the transactions set forth in the records reviewed by the undersigned are correct and completely detail the trading history as represented.

(b) That the Consultant has complied with his duty of good faith and fair dealing with respect to the transactions memorialized by the client history spreadsheets, demo trade reports and by the 26 minute trading algorithm test.

This opinion letter is subject to the following limitations:

(a) The undersigned cannot guaranty that the Consultant has not created an elaborate trading history and internet trading platform to intentionally deceive the undersigned.

(b) The undersigned is an attorney licensed in the State of Nevada only. The undersigned is not a professional currency or crypto-currency trader, nor is the undersigned a professional computer engineer. The undersigned may not possess the skill sufficient to determine whether the information provided by the Consultant is false or has been altered.

The foregoing opinions may be relied upon by Meta-Tech Consultants, LLC, its successors and/or assigns, but may not be relied upon by any other party.

Respectfully submitted,

*Sterling Kerr*

P. Sterling Kerr, for the Professional Corporation

SDKD-Kerr-0000000002



SDKD-Kerr-0000000003



SDKD-Kerr-0000000003

# Law Offices of P. Sterling Kerr

July 26, 2018

**Attention:** Justin Baraglia, Brian Johnson, David Saffron

**Via email:** ██████████████████████████████████

Gentlemen:

It has come to my attention from two (2) separate confirmed sources that one or all of you are using the Opinion Letter Dated June 15, 2018 (Opinion Letter) that was addressed to Meta-Tech Consultants, LLC to solicit investors to invest in Omicron Trust or through the Meta Proprietary Fund, Inc. The Opinion Letter was very limited in purpose and directed only to Meta-Tech Consultants, LLC. It was expressly to be a comfort letter with respect to the potential joint venture between Kinetic Marketing Systems, Inc. and Meta-Tech Consultants, LLC. Its scope is very limited and the due diligence was very limited as set forth in the Opinion Letter.

Of course, you are all aware to the potential liability to my firm if this Opinion Letter is used in any sales materials to third parties. My firm and myself specifically have instructed in our meetings that the Opinion Letter not be shared with third parties. As such, I am making a specific record in writing in this regard.

**EFFECTIVE UPON THE DATE OF THIS LETTER YOU ARE HEREBY DIRECTED TO CEASE AND DESIST IN THE USE OF THE JUNE 15, 2018 OPINION IN ANY MANNER WITH RESPECT TO SOLICITATION OF ANY INVESTORS IN OMICRON TRUST OR THE META PROPRIETARY FUND, INC.**

Sincerely,

P. Sterling Kerr, Esq.

SDKD-Kerr-0000000004

**From:** J Damien Scott <damien@bedrockspecialprojects.com>
**Date:** Monday, August 6, 2018 at 4:00 PM
**To:** "conor.neu@pieram.com" <conor.neu@pieram.com>
**Cc:** Sterling Kerr <sterling@sterlingkerrlaw.com>
**Subject:** David Gilbert Saffron - KYC Background Information

Conor -

Our firm has been providing comprehensive security and investigation services to David Saffron since January of 2018. We've had multiple opportunities to vet David and to verify the source of his funds (BitCoin).

In all of the time we have known him and throughout multiple spot checks, we've never found any inconsistency in his "story", his background or identity. We understand how he works with BTC and a few other alt currencies to produce a considerable expansion of his holdings.

We are aware of two primary websites providing false information about David and that these sites are to the very best of our knowledge, completely false. From these sites, there has been a viral transmission of "fake news" that can be found all over the Internet. Two persons are primarily responsible for these false claims: Ida Smith and Frank Calabro. Both persons have been attempting to extort our client for money in order to remove these claims.

David Saffron is not involved in any type of criminal activity. Our investigators would have uncovered something by now if he was.

In support of his background, we've verified his identifiers as:
DAVID GILBERT SAFFRON
█████████████ LOS ANGELES, CA ███████████ (LOS ANGELES COUNTY)
Date of Birth:██████ 1972 , Born 46 years ago
Australian National - Passport Holder

He has no bankruptcies or liens, nor does he appear on a global watchlist.

Please contact me if you have any questions.

----
**J Damien Scott**
Chief Operating Officer
**Bedrock Special Projects Group**
O: (702) 996-7111
M: (801) 392-9999
J Damien Scott LinkedIn Bio
NV 2183 A&B | UT 8632154-6301 / P103485
AZ 1681447 / PI 1681457 | CA PPO 11088

1

# Basic Business Checking® IOLTA

Account number: ████4737 ■ May 1, 2018 - May 31, 2018 ■ Page 1 of 4



PRESTON STERLING KERR
LAW OFFICES OF P STERLING KERR IOLTA
NV IOLTA ACCT
2450 SAINT ROSE PKWY STE 120
HENDERSON NV 89074-7770

**Questions?**

*Available by phone 24 hours a day, 7 days a week:*
Telecommunications Relay Services calls accepted

**1-800-CALL-WELLS** (1-800-225-5935)

*TTY:* 1-800-877-4833
*En español:* 1-877-337-7454

*Online:* wellsfargo.com/biz

*Write:* Wells Fargo Bank, N.A. (825)
P.O. Box 6995
Portland, OR 97228-6995

---

## Your Business and Wells Fargo

Access complimentary resources and tools to help you create or revise your
business plan - whether you're an experienced business owner or just starting out.
Find out more at wellsfargoworks.com/plan.

## Account options

*A check mark in the box indicates you have these convenient
services with your account(s). Go to wellsfargo.com/biz or
call the number above if you have questions or if you would
like to add new services.*

| | |
|---|---|
| Business Online Banking | ☑ |
| Online Statements | ☑ |
| Business Bill Pay | ☐ |
| Business Spending Report | ☑ |
| Overdraft Protection | ☐ |

---

## Activity summary

| | |
|---|---|
| Beginning balance on 5/1 | $298,532.29 |
| Deposits/Credits | 1,334,266.50 |
| Withdrawals/Debits | - 947,272.43 |
| **Ending balance on 5/31** | **$685,526.36** |
| Average ledger balance this period | $373,421.78 |

Account number: ████4737

**PRESTON STERLING KERR**
**LAW OFFICES OF P STERLING KERR IOLTA**
**NV IOLTA ACCT**

*Nevada account terms and conditions apply*

For Direct Deposit use
Routing Number (RTN): 321270742

For Wire Transfers use
Routing Number (RTN): 121000248

## Interest summary

| | |
|---|---|
| Interest paid this statement | $221.50 |
| Average collected balance | $372,484.84 |
| Annual percentage yield earned | 0.70% |
| Interest earned this statement period | $221.50 |
| Interest paid this year | $1,679.00 |

Sheet Seq = 0067095
Sheet 00001 of 00002

SDKD-Kerr-0000000007

| 5/30 | WT Seq121187 Marco S Grimaldi /Org= Srl# 0011231150435533 Trn#180530121187 Rfb# | 50,000.00 |
| 5/31 | Deposit Made In A Branch/Store | 10,846.00 |
| 5/31 | WT Fed#00529 Santander Bank, N. /Org=Marco Salvatore Grimaldi Srl# 180531112622H300 Trn#180531100520 Rfb# N899421 None | 25,000.00 |
| 5/31 | Online Transfer From Law Offices Of P Sterling Kerr Ref #lb04Nhn4Hv Business Checking Should Have Been Put IN Trust/Meta Tech | 14,154.00 |

SDKD-Kerr-0000000007

Account number: ████4737  ■  May 1, 2018 - May 31, 2018  ■  Page 3 of 4



**WELLS FARGO**

---

## Transaction history  (continued)

| Date | Check Number | Description | Deposits/ Credits | Withdrawals/ Debits | Ending daily balance |
|------|-------------|-------------|-------------------|--------------------|---------------------|
| ████████████████████ | ████████████ | ████████████ | ██████████ | █████████████████ | ████████ |
| **Ending balance on 5/31** | | | | | 685,526.36 |
| **Totals** | | | $1,334,286.50 | $947,272.43 | |

The Ending Daily Balance does not reflect any pending withdrawals or holds on deposited funds that may have been outstanding on your account when your transactions posted. If you had insufficient available funds when a transaction posted, fees may have been assessed.

Summary of checks written   *(checks listed are also displayed in the preceding Transaction history)*

| Number | Date | Amount | Number | Date | Amount |
|--------|------|--------|--------|------|--------|



## ☑ IMPORTANT ACCOUNT INFORMATION

**Important Information about legal process fees.**

The fee for legal order processing, which includes handling levies, writs, garnishments, and any other legal documents that require funds to be attached, remains $125. The Bank will assess no more than a total of $250 in legal process fees per account, per calendar month. Please note that the calendar month may not coincide with your statement cycle.

SDKD-Kerr-0000000007

Account number: ████4737   ■ May 1, 2018 - May 31, 2018   ■ Page 4 of 4



**WELLS FARGO**

---

### General statement policies for Wells Fargo Bank

■ **Notice:** Wells Fargo Bank, N.A. may furnish information about accounts belonging to individuals, including sole proprietorships, to consumer reporting agencies. If this applies to you, you have the right to dispute the accuracy of information that we have reported by writing to us at: Overdraft Collections and Recovery, P.O. Box 5058, Portland, OR 97208-5058.

You must describe the specific information that is inaccurate or in dispute and the basis for any dispute with supporting documentation. In the case of information that relates to an identity theft, you will need to provide us with an identity theft report.

### Account Balance Calculation Worksheet

1. Use the following worksheet to calculate your overall account balance.

2. Go through your register and mark each check, withdrawal, ATM transaction, payment, deposit or other credit listed on your statement. Be sure that your register shows any interest paid into your account and any service charges, automatic payments or ATM transactions withdrawn from your account during this statement period.

3. Use the chart to the right to list any deposits, transfers to your account, outstanding checks, ATM withdrawals, ATM payments or any other withdrawals (including any from previous months) which are listed in your register but not shown on your statement.

**ENTER**
A. The ending balance
shown on your statement . . . . . . . . . . . . . . . . . . . . $ _____

**ADD**
B. Any deposits listed in your          $ _____
register or transfers into              $ _____
your account which are not              $ _____
shown on your statement.            + $ _____

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . TOTAL $ _____

**CALCULATE THE SUBTOTAL**
(Add Parts A and B)

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . TOTAL $ _____

**SUBTRACT**
C. The total outstanding checks and
withdrawals from the chart above . . . . . . . . . . . . . - $ _____

**CALCULATE THE ENDING BALANCE**
(Part A + Part B - Part C)
This amount should be the same
as the current balance shown in
your check register . . . . . . . . . . . . . . . . . . . . . . $ . _____

| Number | Items Outstanding | Amount |
|--------|-------------------|--------|
|        |                   |        |
|        |                   |        |
|        |                   |        |
|        |                   |        |
|        |                   |        |
|        |                   |        |
|        |                   |        |
|        |                   |        |
|        |                   |        |
|        |                   |        |
|        |                   |        |
|        |                   |        |
|        |                   |        |
|        |                   |        |
|        |                   |        |
|        |                   |        |
|        |                   |        |
|        |                   |        |
|        |                   |        |
|        | Total amount $    |        |

©2010 Wells Fargo Bank, N.A. All rights reserved. Member FDIC. NMLSR ID 399801

# WRIGHT MARSH & LEVY

RICHARD A. WRIGHT
RUSSELL E. MARSH
MONTI JORDANA LEVY
••••••••••
MARITERESA RIVERA-ROGERS
SUNETHRA MURALIDHARA

LAWYERS
300 S. FOURTH STREET
SUITE 701
LAS VEGAS, NV 89101

Of Counsel·
MARGARET M. STANISH
KAREN C. WINCKLER
MONTE NEIL STEWART

(702) 382-4004 (Ph)
(702) 382-4800 (Fax)

March 20, 2019

Via Email: tmulreany@cftc.gov

Timothy J. Mulreany
Chief Trial Attorney
Division of Enforcement
U.S. Commodities Futures Trading Commission
Three Lafayette Center
1155 21st Street, NW
Washington, DC 20581

     RE:    SUBPOENA - PRESTON STERLING KERR

Dear Mr. Mulreany:

     This letter is in response to the Amended Subpoena Duces Tecum and Testificandum issued on March 12, 2019, to my client, Sterling Kerr. We will be producing documents electronically at the same time as this letter.

     In making this production, Mr. Kerr reserves the right to assert all privileges at any time. He also asks that you keep the production and his testimony non-public and not disclose those to anyone, unless required or ordered to do so.

     As you know, Mr. Kerr is scheduled to present testimony on March 27, 2019, in Las Vegas, Nevada, in the matter of an investigation of David G. Saffron and David L. Kagel. Mr. Kerr has represented Mr. Saffron as his attorney, and will be asserting attorney-client privilege regarding any confidential communications he had with his client. Without waiving any privilege, Mr. Kerr is providing the following documents:

    1.    Engagement letter from the Law Offices of P. Sterling Kerr dated May 18, 2018;

    2.    Letter dated June 15, 2018, from Mr. Kerr to Metz-Tech Consultants, LLC;

    3.    Screen shots of two Bitcoin trades on June 15, 2018;

Timothy J. Mulreany
Chief Trial Attorney
March 20, 2019
Page 2

      4.     Letter from Mr. Kerr to Justin Baraglia, Brian Johnson and David Saffron, dated July 26, 2018; and

      5.     Email from Damien Scott at Bedrock Special Projects Group to Conor Neu dated August 6, 2018 (Mr. Kerr is copied on this email).

As you are aware, Mr. Kerr maintains a Coinbase account, and you have subpoenaed information regarding his trades directly from them. Mr. Kerr has instructed Coinbase to provide that information. Accordingly, we will not be responding to the requests regarding that information. Mr. Kerr appreciates that you have agreed to provide us with the information regarding that account once the CFTC receives it from Coinbase.

In addition to providing the attached documents, Mr. Kerr makes the following responses to your requests:

Request for Production No. 1: Aside from privileged communication and information contained in the produced documents, Mr. Kerr does not have such information, except for Circle Society Corp., a Nevada limited liability company that Mr. Kerr formed for his clients, David Saffron and Kinetic Marketing Systems, Inc. Circle Society can be reached c/o Law Offices of P. Sterling Kerr, 2450 St. Rose Parkway, Suite 120, Henderson, NV 89074. Mr. Kerr asserts attorney-client privilege with respect to the information requested regarding his clients.

Request for Production No. 2: Aside from the documents provided, Mr. Kerr has no responsive documents, except for those relating to the Circle Society, LLC; Kinetic Marketing Systems, Inc.; and David Saffron. Mr. Kerr asserts attorney-client privilege regarding all privileged communications with these clients.

Requests for Production Nos. 3, 5, 6: Mr. Kerr has no responsive documents.

Request for Production No. 4: Aside from those documents being provided, specifically the June 15th and July 26th letters, Mr. Kerr has no responsive documents.

Requests for Production Nos. 7-16: As discussed above, Mr. Kerr maintains a Coinbase account, and those documents will be provided by Coinbase directly to the CFTC.

Request for Production No. 17: Mr. Kerr objects to the request in that it is overbroad and calls for the production of irrelevant information. It would also be extremely burdensome for Mr. Kerr to produce all such requested documents. Mr. Kerr would be happy to discuss a more narrow request for public information limited to the matters and companies at issue in the present investigation.