2:19-cv-01697-JAD-DJA - January 10, 2020

```
 1                IN THE UNITED STATES DISTRICT COURT

 2                   FOR THE DISTRICT OF NEVADA

 3    COMMODITY FUTURES TRADING      )
      COMMISSION,                    )
 4                                   ) Case No. 2:19-cv-01697-JAD-DJA
                 Plaintiff,          )
 5                                   ) Las Vegas, Nevada
      vs.                            ) January 10, 2020
 6                                   ) 10:04 a.m. - 10:34 a.m.
      DAVID GILBERT SAFFRON a/k/a    ) Courtroom 6D
 7    DAVID GILBERT and CIRCLE       ) SHOW CAUSE HEARING
      SOCIETY, CORP.,                )
 8                                   )
                 Defendants.         )
 9    _____  ) C E R T I F I E D   C O P Y

10

11               REPORTER'S TRANSCRIPT OF PROCEEDINGS
                BEFORE THE HONORABLE JENNIFER A. DORSEY
12                 UNITED STATES DISTRICT COURT JUDGE

13

14    APPEARANCES:

15    For the Plaintiff:

16          DANIELLE E. KARST, ESQ.
            COMMODITY FUTURES TRADING COMMISSION
17          Three Lafayette Centre, 1155 21st Street, N.W.
            Washington, D.C. 20581
18          (202) 418-6158

19

20

21    Court Reporter:      Amber M. McClane, RPR, CRR, CCR #914
                           United States District Court
22                         333 Las Vegas Boulevard South, Room 1334
                           Las Vegas, Nevada 89101
23                         AM@nvd.uscourts.gov

24    Proceedings reported by machine shorthand.  Transcript
      produced by computer-aided transcription.
25
```

```
 1          LAS VEGAS, NEVADA; FRIDAY, JANUARY 10, 2020; 10:04 A.M.

 2                              --o0o--

 3                        P R O C E E D I N G S

 4          COURTROOM ADMINISTRATOR:  Now's the time set for a

 5   show cause hearing in Case Number 2:19-cv-1697-JAD-DJA,

 6   Commodity Futures Trading Commission versus David Gilbert

 7   Saffron.

 8          Counsel, please state your appearance.

 9          MS. KARST:  Good morning, Your Honor.  Danielle Karst

10   for the Commodity Futures Trading Commission.

11          THE COURT:  And I will note that there is no one at

12   defense table, so there's no one appearing on behalf of the

13   defendants David Gilbert Saffron and Circle Society Corp.

14          This was a continued hearing -- continued show cause

15   hearing.  I had issued an order to show cause why defendant

16   Circle Society should not be held in civil contempt for

17   violation of the Court's temporary restraining order.  When we

18   showed up for that hearing last time, although Circle Society

19   had had an attorney show up on its behalf, he was permitted to

20   withdraw immediately before that hearing the last time we

21   showed up.  So we continued this.  Former counsel for Circle

22   Society filed a notice indicating that he had informed Circle

23   Society, his prior client, that -- what was going on and that

24   this hearing was being continued.  So I note that no one has

25   shown up to show cause.
```

2:19-cv-01697-JAD-DJA - January 10, 2020

```
 1              In the meantime, we converted the TRO to a
 2   preliminary injunction.  And so, in effect, that TRO is no
 3   longer in existence.  It's been converted.  So the request for
 4   an OSC for civil contempt on the TRO is -- is moot.
 5   Thankfully, though, CFTC did also file at Document Number 40 a
 6   motion for issuance of an order to show cause as to why
 7   defendants Circle Society and also David Saffron, who is one
 8   of the targets of the Court's preliminary injunction order,
 9   should not be held in civil contempt for violations of that
10   preliminary injunction order.  So that's at Document
11   Number 40.  So that is currently pending.
12              There's also -- in the meantime, something else that
13   did occur, Saffron was served by publication.  And when the
14   time for his answer had expired, default was entered.  And
15   although default was entered by the clerk, that same day --
16   later that same day the clerk received an answer from Saffron
17   and that was filed, but it was filed after the default was
18   entered.  And so CFTC has also now filed a motion to strike
19   that answer because that is a -- because Saffron is a
20   defendant who is defaulted.
21              The opposition time for that motion has not yet
22   expired.  I think it's --
23              MS. KARST:  Yes, Your Honor.  The docket notes that
24   the response for the CFTC's motion to strike at ECF Number 45,
25   the response is due next Friday, January 17th.
```

1          **THE COURT:**  Okay.  So it's too early for me to

2     resolve that today.  We need to wait and see if we get a

3     response from Mr. Saffron.

4          In his answer, we have a new address that we haven't

5     seen before.

6          That was just a CSO.

7          We have a new answer -- or a new address in Victoria,

8     Australia, I believe?

9          **MS. KARST:**  Yes, Your Honor.  The CFTC believes

10    Mr. Saffron has made a misrepresentation to the Court in his

11    answer regarding his whereabouts.  Although Mr. Saffron claims

12    to reside in Victoria, Australia, the CFTC has reached out to

13    its sister regulatory authority in Australia.  That authority

14    is called the Australian Securities and Investments

15    Commission, otherwise known as ASIC.  And ASIC had made a trip

16    out to Saffron's purported address in Victoria.

17    Representatives of ASIC knocked on the door.  They spoke with

18    a lady residing at that address, and she said that she had

19    never heard of Mr. Saffron.  So we believe that his

20    representation to the Court as to his whereabouts in Australia

21    is false.

22          And in addition to the information we learned from

23    ASIC, we have been contacted recently by a customer who

24    believes that Saffron is back in the Los Angeles area, and

25    that customer provided the Commission with a restaurant

2:19-cv-01697-JAD-DJA - January 10, 2020

1   receipt with his name on it dated January 4th, 2020, at the

2   Beverly Hills SLS Hotel restaurant.

3            And we've also received word from customers that

4   Mr. Saffron is continuing to post in the Telegram chat app for

5   Circle Society members that he is available for meetings in

6   Los Angeles, Las Vegas, or Atlanta.  So we believe that he is

7   currently in the United States.

8            **THE COURT:**  Hold on one second.  What's going on,

9   guys?

10           **THE MARSHAL:**  Nothing.

11           **THE COURT:**  Oh.  Okay.

12           **COURT SECURITY OFFICER:**  Is your phone off?

13           **UNIDENTIFIED SPEAKER:**  It's on silent.

14           **THE COURT:**  Okay.  All right.  So we think he's in

15   the United States?

16           **MS. KARST:**  Yes, Your Honor.

17           **THE COURT:**  Okay.

18           **MS. KARST:**  And in addition, Your Honor, I have an

19   obligation to advise the Court of communications that I

20   received relevant to today's proceeding.  Last night,

21   January 9th, 2020, the CFTC received a short e-mail from

22   Mr. Saffron.  With the Court's permission, I can read the

23   e-mail, or I have a copy for the Court.

24           **THE COURT:**  Please read it.

25           **MS. KARST:**  Yes, Your Honor.  The e-mail at 8:02 p.m.

1    yesterday, January 9th, reads, "to whom it may concern:  Today

2    I filed the attached form that the CFTC has requested in their

3    pleadings.  I am trying to organize legal representation to

4    begin settlement talks with the CFTC.  The reason I have not

5    attend court is the -- I've been getting credible death

6    threats.  Thank you, David Saffron.  January 9th, 2020."

7            **THE COURT:**  And what was attached, if anything?

8            **MS. KARST:**  Yes, Your Honor.  What was attached to

9    the e-mail was a form entitled Consent to Release of Financial

10   Records.  And this is a form, Your Honor, that we provided to

11   Mr. Saffron, and it was a form that was required by your

12   preliminary injunction order.  It's standard language in

13   preliminary injunction orders, and we ask defendants to

14   provide this form to direct any banks or credit unions,

15   traditional financial institutions to disclose information

16   regarding the defendant's accounts.

17           However, Your Honor, in this case I will note that

18   the form is essentially useless, and it's useless because

19   we're not aware of any traditional bank, credit union, or

20   other financial accounts.  While this form might have some

21   efficacy in a traditional fraud case where a defendant holds

22   traditional bank accounts, here we believe that Mr. Saffron's

23   assets may be held either in offshore accounts or in an

24   off-line storage wallet and so the form is useless.

25           We've received no documents, no accounting.  I

1    wouldn't even know where to send the form to that he signed,

2    and I also note for the record the form hit the docket without

3    the e-mail this morning on my way to court.  It was about

4    8:50 a.m.  But I wanted to make the Court aware of the e-mail

5    that we had received yesterday evening.

6         **THE COURT:**  And I hadn't noticed.  So you're saying

7    the form got filed as well?

8         **MS. KARST:**  Yes, Your Honor.  The form was filed I

9    believe as a stand-alone form this morning.  It hit the

10   docket.  I saw it on my e-mail.  I believe it's ECF Number 46.

11        And I just want to note for the record that the CFTC

12   believes the e-mail in -- or, excuse me, the form, the Consent

13   to Financial Records, although it is a form required by

14   Your Honor's preliminary injunction order, the form in no way

15   purges Mr. Saffron's contempt.  It's useless in this case for

16   the reasons that I just described.  And, you know, what we

17   really need and what was ordered by the Court is the

18   defendant's business records and an accounting of assets.

19   Because, without those, Your Honor, the CFTC is unable to

20   determine the full scope and the extent of the fraud.  We are

21   unable to determine the number of defrauded customers and the

22   extent of the customer losses.  We're aware of 160-plus

23   customers today and over 15 million taken in, but we -- we

24   don't know the full extent of the fraud.

25        And the preliminary injunction order also requires an

2:19-cv-01697-JAD-DJA - January 10, 2020

1    accounting -- an accounting necessary to determine what assets

2    exist to satisfy any judgment that this Court may later order,

3    and the CFTC has made repeated demands on the defendant for

4    the documents and the accounting.  We've sent him e-mails to

5    an e-mail address that he actively uses.  These were attached

6    to our motion to show cause at ECF Number 40.  We sent him

7    e-mails on December 9th, December 16th, and again I sent him

8    an e-mail, myself, on January 2nd, 2020, asking him to purge

9    his contempt and to provide documents and accounting.  And the

10   only thing that I've received in response to the multiple

11   demands is the e-mail that I received yesterday evening along

12   with the form.

13            **THE COURT:**  All right.  So let's talk about where we

14   go from here then.  So with the TRO converted to the

15   preliminary injunction, I think the motion at Number 24 for

16   issuance of an -- well, I'm sorry, the OSC, which I did issue

17   in response to Document Number 24, is probably not the one

18   we're dealing with.  That one's probably moot at this point,

19   and really what we need is to focus on the Document Number 40,

20   which is CFTC's motion for issuance of order to show cause as

21   to why defendants David Saffron and Circle Society should not

22   be held in civil contempt for violations of the Court's

23   preliminary injunction order which was issued on December 6th

24   of 2019.

25            So what is CFTC's position on what is necessary now?

2:19-cv-01697-JAD-DJA - January 10, 2020

1   I have the proposed orders that were attached to that motion.

2   There's the proposed order to show cause, and then there's

3   subsequently a proposed order regarding contempt.

4          Is it CFTC's position -- now, we haven't received any

5   response to the motion for issuance of an order to show cause.

6   The responses to that motion would have been due on the 3rd of

7   January, so no response has been received.

8          I don't know what to even call this new filing that

9   popped up this morning.  It is certainly not a brief.  It is

10  not a response.  It is not --

11         Danielle, can you confirm for me that that's not even

12  captioned in some way as a response to the motion for OSC?

13         **COURTROOM ADMINISTRATOR:**  No, Your Honor.  It's

14  entitled Consent to Release of Financial Records.

15         **THE COURT:**  All right.  So it's the form that

16  Ms. Karst was speaking about.

17         So, Ms. Karst, what is CFTC's position on next steps?

18         **MS. KARST:**  Yes, Your Honor.  The CFTC really would

19  like for the Court to issue a civil contempt order against

20  Mr. Saffron and Circle Society.  The CFTC is requesting the

21  issuance of a bench warrant as well as an order for fines for

22  failure to comply with the Court's orders.

23         **THE COURT:**  So you've structured this, though, as a

24  motion for order to show cause.  Is the show cause order a

25  prerequisite?  Is that a step that the Court must take before

1    issuing the -- a contempt order, or is there some hybrid?  I

2    think I'm just trying to understand exactly.  Because of the

3    way that it has been proposed to the Court by CFTC as this

4    sort of dual-step process, it would seem to grant that motion

5    at this point would cause me to issue an order to show cause

6    and not yet the civil contempt order.

7         **MS. KARST:**  Yes, Your Honor.  I'll respond to that.

8    When I filed the papers and I filed both proposed orders, I

9    was anticipating an issuance of a show cause for Mr. Saffron

10   to appear today in response to our motion for violations of

11   the preliminary injunction.  That did not happen.  It happened

12   with the -- our motion for violations of the temporary

13   restraining order.  A -- an order to show cause was quickly

14   thereafter issued.  It didn't happen here.

15        I'll note for the record that Circle Society was

16   ordered to appear at the last hearing on the then pending

17   CFTC's motion to show cause at ECF Number 24.  No corporate

18   representative, which would be Mr. Saffron, he's the

19   president, sole corporate officer of the company, no one

20   appeared at that hearing.  Mr. Saffron clearly has notice of

21   today's hearing, which was continued from the last hearing.

22   Mr. Van provided confirmation to the Court that he informed

23   Mr. Saffron to appear at today's hearing.

24        So the CFTC today is requesting issuance of a civil

25   contempt order along with the bench warrant and fines.

1    However, Your Honor, I will note, given the CFTC's filing, the

2    CFTC is amenable to what Your Honor just spoke about, which is

3    issuing the show cause order for Mr. Saffron to appear within

4    a certain period of days and to explain also that, if he fails

5    to appear, that the Court then may issue a bench warrant, and

6    the CFTC would also be requesting fines -- daily fines for

7    defendant's continual failure to comply with the Court's

8    orders.   The CFTC has and can submit to the Court, you know,

9    fine calculation worksheets of what that fine would look like.

10   The CFTC's proposed a fine of $5,000 a day for failure to

11   comply with this Court's orders.

12          But I want to make it clear that the CFTC really

13   believes that fines are ineffective here because no assets of

14   the defendants are held by the Court.   The CFTC can't identify

15   any assets without an accounting.   And we believe at this

16   point, Your Honor, a bench warrant and incarceration are the

17   only way to compel Mr. Saffron to do anything.   So without a

18   bench warrant and incarceration, you know, the only other

19   option for the CFTC would be to request leave to file default

20   judgment motions against both defendants under Federal Rules

21   of Civil Procedure 55(b), but we believe strongly the contempt

22   issue is a stand-alone problem.   And we believe that problem

23   is separate and apart from the merits of the case.

24          **THE COURT:**  So a couple things.  So if I were to

25   issue an order to show cause, would it have to require him to

2:19-cv-01697-JAD-DJA - January 10, 2020

1    show up in person and show cause, or could it require him to

2    show cause in writing?  What is the CFTC's position on that?

3         **MS. KARST:**  The CFTC believes that Mr. Saffron should

4    be ordered to appear in person personally and to explain his

5    failure to comply with this Court's orders.  And also, if he's

6    ordered to show, the Court then also can make inquiry,

7    Your Honor, of whether Mr. Saffron is continuing to violate

8    the injunctive provisions of the preliminary injunction order.

9    We believe and received communications from customers that

10   Mr. Saffron is continuing to solicit and he's continuing to

11   post messages in the Telegram chat app with 2020 investment

12   plans for customers.  And we believe that is a clear and

13   serious violation of the Court's existing preliminary

14   injunction order.

15        **THE COURT:**  So if I were to now grant that motion for

16   order to show cause, how long out would you propose the show

17   cause hearing?  I realize you have to continue to travel for

18   these hearings.  So when -- when would you be available?

19        **MS. KARST:**  Yes, Your Honor.  I could be back within

20   two weeks, ten days.  Whenever the Court would like for me to

21   appear, I'm prepared to be back here.

22        **THE COURT:**  Okay.  Do we have time on the 24th,

23   Danielle?

24        **COURTROOM ADMINISTRATOR:**  Yes, Your Honor.

25        **MS. KARST:**  Your Honor, if I may just check my --

2:19-cv-01697-JAD-DJA - January 10, 2020

 1          **THE COURT:**  Please.

 2          **MS. KARST:**  -- calendar really quickly?

 3          **THE COURT:**  Ms. Karst.

 4          **MS. KARST:**  Yes, Your Honor.  I am available to

 5    appear back in Court on January 24th, which I believe is a

 6    Friday.

 7          **THE COURT:**  It is a Friday.  Why don't we put it on

 8    at 3:00.  That might even allow you to travel that day.  All

 9    right.

10          So with no opposition and good cause appearing, I'm

11    granting the motion for issuance of order to show cause as to

12    why defendants David Saffron and Circle Society should not be

13    held in civil contempt for violations of the Court's

14    preliminary injunction order at Document 40.  I will issue a

15    show cause.  I'll sign the show cause order or some version of

16    the proposed order, and we will set this for Mr. Saffron and

17    for a representative -- I realize we all understand that

18    Circle Society is Mr. Saffron -- but also for Circle Society

19    or a representative of Circle Society to appear.

20          I will let you know, Ms. Karst, that at this point --

21    so I've -- I've contemplated the appropriate contempt

22    sanctions, and I am, at this point, inclined to follow the

23    structure that was imposed by U.S. District Judge Matz,

24    M-a-t-z, granting in part the Commission's motion for civil

25    contempt in *CFTC versus Emerald Worldwide Holdings, Inc.*  I

 1    think that the process that he used is a suitable course to
 2    follow for defendants' similar violations in this case.
 3           So that's the structure that I am inclined to go
 4    with, which would start, I believe, with monetary sanctions
 5    and then escalate from there.  So that's really what I'm
 6    inclined to do at this point.
 7           At the hearing in two weeks, I would appreciate if
 8    the CFTC is prepared to argue for appropriate daily fine
 9    amounts.  You've just indicated that you think it should be
10    $5,000.  So I'll hear more argument on that issue, if that's
11    the course that I intend to take, and how long the daily fines
12    should go before an escalation of additional steps.
13           So if you could be prepared sort of to talk about
14    those concepts at that hearing in two weeks, I would
15    appreciate that.
16           **MS. KARST:**  Yes, Your Honor.  And is -- may I ask, is
17    the Court contemplating daily fines to begin the date of the
18    next hearing?
19           **THE COURT:**  Potentially.
20           **MS. KARST:**  Yes, Your Honor.  I'll be prepared, and I
21    can also prepare fine calculation worksheets with proposed
22    fines as well.
23           **THE COURT:**  Is CFTC experiencing at this point
24    anything that would require compensatory relief, or is this
25    just coercive at this point?

 1          **MS. KARST:**  Your Honor, at this point we were seeking

 2     coercive sanctions.  You know, I'll just note for the record,

 3     you know, I've been here a number of times.  We have, you

 4     know, spent a lot of money and time filing all of these

 5     motions that would, frankly, be unnecessary had defendants

 6     complied with Your Honor's orders.

 7          **THE COURT:**  I understand.

 8          So I will today sign an order to show cause, and I

 9     will ask also that CFTC make efforts to serve that at every

10     known address.  I know that you have a number of e-mail

11     addresses, and certainly if you could send it back to whatever

12     the e-mail address was that you received that e-mail last

13     night from Mr. Saffron as well.

14          **MS. KARST:**  Yes, Your Honor.  Certainly.

15          **THE COURT:**  All right.  And the Court will, of

16     course, serve it on him at the last known address and -- but,

17     as you've represented, that may not -- that address in

18     Australia may not be a valid one.

19          **MS. KARST:**  Yes, Your Honor.

20          **THE COURT:**  All right.  So that's what we'll do.

21     We'll -- I will get that order to show cause out, and we will

22     go forward with this hearing in two weeks.

23          In the meantime, I will monitor whether we get a

24     response to the motion to strike and take appropriate actions

25     either before the hearing or at the next hearing with respect

```
1    to the motion to strike the answer.

2              MS. KARST:  Yes, Your Honor.  Thank you.

3              And if I may just raise one other issue?

4              THE COURT:  Sure.

5              MS. KARST:  The CFTC, Your Honor, would like to

6    advise the Court that Marcus Mumford, an attorney purporting

7    to act on Mr. Saffron's behalf, also e-mailed the CFTC a

8    preliminary answer.  That's what he titled the document.  He

9    e-mailed this to the CFTC on December 23rd, 2019.  I will note

10   for the record this preliminary answer has not reached the

11   docket, has not been filed, although Mr. Mumford claimed in

12   his document that he mailed it to the Clerk's Office.

13             So I would just like to make the Court aware of that

14   preliminary answer, which, you know, if it does hit the

15   docket, the CFTC would like an opportunity to respond to that.

16   We believe that is inappropriate and that preliminary answers

17   are not permitted under the Federal Rules of Civil Procedure.

18             And I'll also note that Mr. Mumford is not an

19   attorney licensed to practice in Nevada or before this Court.

20   He is not filed any pro hac vice applications.  And pursuant

21   to Local Rule IA 11-2, Mr. Mumford must file a verified

22   petition with the Court to practice in this case, and he has

23   not done so.  And in the event that he does file any such

24   petition, the CFTC advises the Court that it would oppose such

25   a petition given his disciplinary history and repeated
```

1   sanctions in multiple states and past behavior in

2   Federal Court.  Mr. Mumford has been sanctioned in Utah,

3   Oregon, and New York, and there was an incident in the state

4   of Oregon in which he was tased.  So -- I wanted to make the

5   Court.

6           **THE COURT:**  I'm sorry.  Did you just say tased?

7           **MS. KARST:**  Yes, Your Honor.

8           **THE COURT:**  Okay.

9           **MS. KARST:**  And after that incident Mr. Mumford

10   agreed not to practice in the state of Oregon.  And so I want

11   to make the Court aware of this communication we received also

12   on December 23rd, which has not hit the docket.

13           **THE COURT:**  All right.  Thank you for the heads-up on

14   Mr. Mumford.  I haven't seen anything.

15           Danielle, have you seen anything from Mr. Mumford?

16           **COURTROOM ADMINISTRATOR:**  No, Your Honor.

17           **THE COURT:**  All right.  So we haven't seen that.

18           And your understanding is that he was purporting to

19   represent Mr. Saffron, not Circle Society?

20           **MS. KARST:**  Yes, Your Honor.  We received various

21   e-mail communications for him and a voice mail before the very

22   first hearing, and I have only communicated with him via

23   e-mail and asked that, you know, he enter an appearance, file

24   the appropriate papers before the Court to practice in this

25   case, and until such time as he does, you know, I will not --

2:19-cv-01697-JAD-DJA - January 10, 2020

1    I'm not going to engage in any substantive communications with

2    him.

3         THE COURT:  Okay.  All right.  Well, thank you for

4    that.  We will resume in two weeks with the contempt hearing

5    and the question of whether contempt sanctions should issue

6    and to what extent.

7         Anything else, Ms. Karst?

8         MS. KARST:  No, Your Honor.  Nothing.  Nothing else

9    at this time.

10        THE COURT:  All right.  Thank you.  Then we will get

11   that order out right away and see you in two weeks.

12        MS. KARST:  Thank you very much for the Court's time.

13        THE COURT:  Thank you.  We're adjourned.

14      *(Proceedings adjourned at 10:34 a.m.)*

15                        --o0o--

16             COURT REPORTER'S CERTIFICATE

17      I, AMBER M. McCLANE, Official Court Reporter, United

18   States District Court, District of Nevada, Las Vegas, Nevada,

19   do hereby certify that pursuant to 28 U.S.C. § 753 the

20   foregoing is a true, complete, and correct transcript of the

21   proceedings had in connection with the above-entitled matter.

22

23   DATED:  1/17/2020

24

25              /s/  *Amber M. McClane*
                 _____
                 AMBER McCLANE, RPR, CRR, CCR #914