Danielle E. Karst (D.C. Bar No. 481881)
Timothy J. Mulreany (Maryland Bar No. 8812160123)
**COMMODITY FUTURES TRADING COMMISSION**
Three Lafayette Centre
1155 21st Street, N.W.
Washington, D.C. 20581
Telephone:  (202) 418-6158 (Karst)
Telephone:  (202) 418-5306 (Mulreany)
Facsimile:   (202) 418-5523
dkarst@cftc.gov
tmulreany@cftc.gov

## UNITED STATES DISTRICT COURT
### DISTRICT OF NEVADA

| | |
|---|---|
| COMMODITY FUTURES TRADING COMMISSION, | Case No.  2:19-cv-1697-JAD-DJA |
| Plaintiff, | |
| v. | |
| DAVID GILBERT SAFFRON a/k/a DAVID GILBERT and CIRCLE SOCIETY, CORP., | |
| Defendants. | |

**PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT, PERMANENT INJUNCTION, CIVIL MONETARY PENALTY AND OTHER EQUITABLE RELIEF AND MEMORANDUM IN SUPPORT**

Pursuant to Federal Rules of Civil Procedure 55(b), Plaintiff Commodity Futures Trading Commission ("Plaintiff," "CFTC," or "Commission") respectfully requests that the Court enter final judgment by default against Defendants David Gilbert Saffron a/k/a David Gilbert ("Saffron") and Circle Society, Corp ("Circle Society") (collectively, "Defendants") and issue a final order that finds Defendants liable for violations of the Commodity Exchange Act (the "Act'), 7 U.S.C. §§ 1-27f (2012), its implementing regulations ("Regulations"), 17 C.F.R. pts. 1–190 (2019), and grants permanent injunctive relief, restitution, disgorgement, and a civil monetary penalty.

## I.    PROCEDURAL HISTORY

On September 30, 2019, the CFTC filed a Complaint against Defendants, seeking injunctive and other equitable relief for anti-fraud and other violations of the Act and Regulations.  Complaint, ECF No. 1.  The CFTC served Circle Society with the Complaint, Summons, and all associated papers via its Registered Agent on October 7, 2019.[1]  Aff. of Service, ECF No. 14.  Pursuant to the Court's Order dated October 30, 2019 (Alternative Service Order, ECF No. 19), the CFTC served Saffron with the Complaint and Summons by publication in accordance with Nev. R. Civ. P. 4.4(c).  The CFTC completed service of process on Saffron by publication on November 29, 2019.  Proof of Service by Publication, ECF No. 27.

Pursuant to Fed. R. Civ. P. 12(a)(1)(A)(i), all Defendants were required to answer or move against the Complaint within twenty-one days of service.  The deadline to answer or move against the Complaint expired on October 28, 2019 for Circle Society, prompting the CFTC to submit an Application for Entry of Default against Circle Society pursuant to Fed. R. Civ. P.

---

[1] The "associated papers" are identified in the Affidavit of Service on Defendant Circle Society (ECF No. 14) and includes all papers related to the CFTC's Motion for a Statutory Restraining Order (ECF No. 5) and Motion for a Preliminary Injunction (ECF No. 6).

55(a) on November 4, 2019.  Appl. for Entry of Default, ECF No. 20.  The deadline to answer or move against the Complaint expired on December 20, 2019 for Saffron, prompting the CFTC to submit an Application for Entry of Default against Saffron pursuant to Fed. R. Civ. P. 55(a) on December 21, 2019.  Appl. for Entry of Default, ECF No. 41.

The Clerk of the Court granted the Applications against each Defendant, placing all Defendants in default.  Clerk's Entry of Default as to Circle Society (Nov. 5, 2019), ECF No. 21; Clerk's Entry of Default as to Saffron (Dec. 23, 2019), ECF No. 42.  To date, Circle Society has not answered the Complaint and has not filed a notice of new counsel as required by the Court's Order granting former attorney Michael Van's motion to withdraw.  Order dated Dec. 2, 2019 (ECF No. 29).

Following the Clerk's Entry of Default, Saffron, acting in a *pro se* capacity, filed an untimely and procedurally improper Answer to the CFTC's Complaint.  Answer, ECF No. 43. Pursuant to Fed. R. of Civ. P. 12(f) and 55(c), the CFTC filed a Motion to Strike Saffron's Answer on January 3, 2020 ("Motion to Strike," ECF No. 45).  The Court struck Saffron's Answer on January 30, 2020, and set a deadline of February 13, 2020 for him to file a motion to set the default aside.  Order Granting Mot. to Strike Answer, ECF No. 52.  Saffron failed to move to set the default aside.  The CFTC now moves for a default judgment against Defendants pursuant to Fed. R. Civ. P. 55(b).

## II.      STATEMENT OF FACTS

As alleged in the Complaint, incorporated herein by reference, from at least December 2017 through the present (the "Relevant Period"), Saffron fraudulently solicited and accepted Bitcoin ("BTC") and United States Dollars ("USD") (BTC, together with USD, "funds") from members of the public to participate in an unregistered commodity pool (the "Pool"), which

2

purportedly traded binary options contracts on foreign currency ("forex") and cryptocurrency pairs.  Compl. ¶¶ 1, 22; Malas Decl. dated Sept. 26, 2019 ("Malas Decl. II," ECF No. 6-1)[2] ¶ 6(c)-(d).  During the early stages of his activity, Saffron individually created Circle Society, on or about September 6, 2018, and used this entity to perpetuate his fraud.  Compl. ¶¶ 2, 16; Malas Decl. II ¶ 6(b)-(c), 65-68; Malas Decl. II Ex. 2, ECF No. 6-2 (Nev. Sec. of State corp. records).  Beginning on or about September 6, 2018 through the present, Saffron, individually and as principal and agent of Circle Society, has fraudulently solicited members of the public to participate in a commodity pool operated by Circle Society.  *Id.*  At the time of the filing of the Complaint in September 2019, the CFTC's investigation revealed that Defendants fraudulently solicited and accepted at least $11 million in funds from no fewer than fourteen individuals.  Compl. ¶¶ 3, 22; Malas Decl. II ¶ 6(d).  However, since the filing of the Complaint, the CFTC has learned of an additional 165 participants, who provided Defendants with an additional $4,593,847 during the Relevant Period for the purpose of trading forex and cryptocurrency pairs.  Therefore, Defendants fraudulently solicited and accepted at least $15,815,967 in funds from at least 179 participants.  Compl. ¶¶ 3, 22; Malas Decl. II ¶ 6(d)-(e); Malas Decl. dated March 9, 2020 ("Malas Decl. IV," submitted herewith as Exhibit 1) ¶¶ 9-10.

Defendants, without registering with the CFTC as commodity pool operators ("CPOs") and/or as an associated person ("AP") of a CPO, solicited and accepted funds from members of the general public through in-person meetings, word-of-mouth, Telegram instant messaging service, podcasts, and websites operated by Saffron, including *https://circlesociety.com*.  Compl. ¶¶ 23, 43-45; Malas Decl. II ¶¶ 6(f), 7; Malas Decl. II Ex. 1, ECF No. 5-2 (NFA registration

---

[2] Malas Declaration dated September 26, 2019 and related attachments were submitted to the Court in Support of Plaintiff's Motion for a Preliminary Injunction and Memorandum in Support.  ECF No. 6-1 to 6-5.

records).  Defendants guaranteed returns of up to 300% in three weeks, which equals a rate of return on investment in excess of 186 million percent (186,000,000%).  Compl. ¶ 27; Malas Decl. II ¶ 6(g)(iii).  At Defendants' instruction, participants provided funds to Defendants via a BTC wallet address controlled by Saffron and/or through the Circle Society website.  Compl. ¶ 31; Malas Decl. II ¶¶ 6(h), 67.  Some participants also provided USD to Saffron directly.  *Id.*

During the Relevant Period, Saffron, and from September 6, 2018 through the present, Defendants, by and through Saffron, made material omissions, including by failing to disclose that:  (1) Defendants misappropriated participants' funds by retaining participants' funds in Saffron's personal E-Wallet instead of segregating the funds in a pool account and using the funds to trade on behalf of the Pool; (2) Defendants were not registered with the CFTC as required by the Act and were therefore operating an unlawful business enterprise; and (3) purported "returns" paid to some participants were in fact the principal deposits of other participants and were not generated by profitable trading.  Compl. ¶¶ 4, 35, 37; Malas Decl. II ¶ 6(g).  Defendants also made material misrepresentations in their solicitations, including by misrepresenting that:  (1) participants' funds would be pooled and used to trade binary options contracts, among other things, for the benefit of participants; (2) guaranteed profits would be paid to participants (*e.g.*, up to a 300% return every three weeks); and (3) guaranteed referral fees would be paid to participants in the amount of one BTC for every BTC and/or equal to twenty percent (20%) of the assets invested by their friends.  Compl. ¶¶ 4, 26-28, 36; Malas Decl. II ¶ 6(g)(iii), (v), (viii).

Contrary to their claims, Defendants did not use participants' funds to trade on behalf of the Pool as promised but instead misappropriated the funds by holding them in Saffron's personal E-Wallet, converting them to Saffron's personal use, and paying some participants with

4

the funds of other participants in order to create the illusion that the Pool was trading.  Compl.
¶¶ 3, 5, 32, 37-40; Malas Decl. II ¶¶ 6(j), 69.  The BTC tendered by participants was held in
Saffron's personal E-Wallet and was never placed in any cryptocurrency or other trading
accounts for the benefit of the Pool.  Compl. ¶¶ 32, 37-38; Malas Decl. II ¶¶ 6(j), 6(q), 12, 14,
16, 18.  As part of the fraudulent scheme, Defendants returned approximately 130 BTC to initial
participants using the BTC of later-in-time participants in the manner of a Ponzi scheme.
Compl. ¶¶ 5, 40; Malas Decl. II ¶¶ 6(j), 69; Malas Decl. IV ¶¶ 8, 12.  However, the majority of
participants have been unable to obtain a return of any of their funds despite their repeated
demands to Saffron.  Compl. ¶ 41; Malas Decl. II ¶¶ 6(k)-(l), 69.

## III.     ARGUMENT

**A.     Jurisdiction**

This Court possesses subject matter jurisdiction over this action pursuant to 7 U.S.C.
§ 13a-1(a) (2012), which authorizes the CFTC to seek injunctive and other relief in a United
States district court against any person whenever it appears to the CFTC that such person has
violated the Act or Regulations.  Compl. ¶ 12.  The Court possesses personal jurisdiction over
Saffron because he resided in this District and committed the acts alleged in the Complaint
within this District, and over Circle Society because it conducted business and maintained an
address in this District.  Compl. ¶¶ 13, 15-16; Malas Decl. II ¶¶ 6(a)-(b), 49, 52, 64; Malas Decl.
II Ex. 2, ECF No. 6-2 (Nev. Sec. of State corp. records);[3] Karst Decls. in Support of Plaintiff's
Motion for Default Judgment (submitted herewith as Exhibits 2 and 3) (certifying neither Saffron
nor Circle Society are members of any branch of the military service as defined by the
Servicemembers Civil Relief Act).

---

[3] Venue is proper in this District for the same reasons.  7 U.S.C. § 13a-1(e) (2012).

1

2

**B.      Default Judgment is Warranted Against All Defendants**

Following an entry of default, Fed. R. Civ. P. 55(b)(2) permits the Court to enter default

judgment in the plaintiff's favor.  In considering a motion for default judgment, a court must first

determine that it possesses "jurisdiction over both the subject matter and the parties."  *In re Tuli*,

172 F.3d 707, 712 (9th Cir. 1999).  The decision to enter default judgment is then left to the

sound discretion of the court.  *See* Fed. R. Civ. P. 55(b); *Aldabe v. Aldabe*, 616 F.2d 1089, 1092-

93 (9th Cir. 1980).

When deciding whether to grant default judgment, the Ninth Circuit considers the

following factors:  (1) the merits of plaintiff's substantive claim; (2) the sufficiency of the

complaint; (3) the possibility of a dispute concerning material facts; (4) whether default was due

to excusable neglect; (5) the possibility of prejudice to the plaintiff if the motion is denied; (6)

the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the

merits; and (7) the sum of money at stake in the action.  *Eitel v. McCool*, 782 F.2d 1470, 1471-72

(9th Cir. 1986) ("*Eitel* factors"). [4]  "In applying this discretionary standard, default judgments are

more often granted than denied."  *Bird-B-Gone, Inc. v. Haierc Indus. Co.*, No. 2:18-cv-00819-

RJC-NJK, 2018 WL 4682320, at *2 (D. Nev. Sept. 28, 2018) (quoting *PepsiCo v. Triunfo-Mex,*

*Inc.*, 189 F.R.D. 431, 432 (C.D. Cal. 1999)).  As detailed below, each *Eitel* factor weighs in favor

of granting Plaintiff's Motion for Default Judgment against Defendants.  Further, the CFTC

meets the procedural requirements required by Fed. R. Civ. P. 55(b).

---

[4] For organizational purposes, this Memorandum addresses the seven *Eitel* factors in a
numerical order that differs from the *Eitel* opinion.

**C.**   ***Eitel*** **Factors**

      **1.**   **All Four Causes of Action in the Complaint Have Substantive Merit and Are Sufficiently Alleged (*Eitel* Factors 1 and 2)**

The first two Eitel factors assess the substantive merit of the movant's claims and the sufficiency of its pleadings.  These factors require that a plaintiff "state a claim on which [it] may recover."  *Ocwen Loan Servicing, LLC v. Corpolo Ave. Tr.*, No. 2:16-cv-02653-APG-NJK, 2020 WL 406377, at *2 (D. Nev. Jan. 23, 2020) (quoting *Danning v. Lavine,* 572 F.2d 1386, 1388 (9th Cir. 1978)).  Upon entry of default, the factual allegations of the complaint, except those relating to the amount of damages, are taken as true.  *TeleVideo Sys., Inc., v. Heidenthal*, 826 F.2d 915, 917-18 (9th Cir. 1987); *see also* Fed. R. Civ. P. 8(b)(6) ("An allegation–other than one relating to the amount of damages–is admitted if a responsive pleading is required and the allegation is not denied.").  As detailed below, the CFTC has adequately pleaded its claims against all Defendants.

      **a.   Defendants Committed Options Fraud (Count I)**[5]

7 U.S.C. § 6c(b) (2012) makes it unlawful for "any person to offer to enter into, enter into, or confirm the execution of any transaction" involving any commodity regulated under the Act which is of the character of, or is commonly known as, *inter alia*, an "option," "bid," "offer," "put," or "call," contrary to any rule, regulation, or order of the CFTC prohibiting any such transaction or allowing any such transaction under such terms and conditions as the CFTC shall prescribe.  Through 7 U.S.C. § 6c(b), Congress has given the CFTC jurisdiction and

_____

[5] Saffron controlled Circle Society and, as a controlling person, is liable for Circle Society's violations of the Act pursuant to 7 U.S.C. § 13c(b) (2012), because he did not fact in good faith or knowingly induced, directly or indirectly, the act or acts constituting the violations.  *See* CFTC's Mot. for a Prelim. Inj. at pp. 19-12, ECF No. 6.  In addition, Circle Society is liable for the acts of its agent, Saffron, pursuant to 7 U.S.C. § 2(a)(1)(B) (2012) and 17 C.F.R. § 1.2 (2019).  *See id.* at p. 21.

plenary rulemaking authority over all commodity option transactions.  17 C.F.R. § 32.4 (2019), promulgated in part pursuant to 7 U.S.C. § 6c(b), provides that:

> In or in connection with an offer to enter into, the entry into, or the confirmation of the execution of, any commodity option transaction, it shall be unlawful for any person, directly or indirectly:  (a) To cheat or defraud or attempt to cheat or defraud any other person; (b) To make or cause to be made to any other person any false report or statement thereof or cause to be entered for any person any false record thereof; or (c) To deceive or attempt to deceive any other person by any means whatsoever.

The same elements supporting a traditional fraud claim under 7 U.S.C. § 6b (2012) support a binary options fraud claim under 7 U.S.C. § 6c(b) (2012) and 17 C.F.R. § 32.4 (2019). *See CFTC v. Arrington*, 998 F. Supp. 2d 847, 871 (D. Neb. 2014), *aff'd sub nom. CFTC v. Kratville*, 796 F.3d 873 (8th Cir. 2015); *see also CFTC v. Rosenberg*, 85 F. Supp. 2d 424, 445 (D.N.J. 2000) (analyzing claims under 7 U.S.C. § 6b(a) and 7 U.S.C. § 6c(b) together); *CFTC v. Valko*, No. 0:06-cv-60001, 2006 WL 2582970, at *3 (S.D. Fla. Aug. 16, 2006).  Accordingly, "[i]n order to establish liability for fraud, [the CFTC has] the burden of proving three elements: (1) the making of a misrepresentation, misleading statement, or a deceptive omission; (2) scienter; and (3) materiality."  *CFTC v. R.J. Fitzgerald & Co., Inc.*, 310 F.3d 1321, 1328 (11th Cir. 2002) (citations omitted).

### i. Defendants Committed Fraud Through Material Omissions and Misrepresentations of Material Fact

The first and third elements of fraud by omissions and misrepresentation are met here because Defendants omitted material facts and made material misrepresentations to their participants and prospective participants.  Whether an omission or misrepresentation has been made is determined objectively and holistically, through examination of the "overall message" and the "common understanding of the information conveyed."  *R.J. Fitzgerald*, 310 F.3d at 1328.  A statement or omission is material if "a reasonable investor would consider it important

in deciding whether to make an investment." *Id*. at 1328-29. "Misrepresentations concerning profit and risk go to the heart of a customer's investment decision and are therefore material as a matter of law." *CFTC v. Noble Wealth Data Info. Servs., Inc*., 90 F. Supp. 2d 676, 686 (D. Md. 2000) (citing *CFTC v. Commonwealth Fin. Grp*., 874 F. Supp. 1345, 1353 (S.D. Fla. 1994)).

As discussed above, during the Relevant Period, Saffron, and from September 6, 2018 through the present, Defendants, by and through Saffron, have committed fraud, including by making omissions and misrepresentations of material fact to attract and retain participants to enter into binary options transactions in violation of 7 U.S.C. § 6c(b) (2012) and 17 C.F.R. § 32.4 (2019). Defendants' omissions and misrepresentations constitute fraud. *See CFTC v. Weinberg,* 287 F. Supp. 2d 1100, 1107 (C.D. Cal. 2003) (finding that "by guaranteeing profits to his investors, [defendant] made material misrepresentations that constitute fraud under Sections 4b(a)(i) and (iii) of the Act"); *CFTC v. Standard Forex*, *Inc*., No. 1:93-cv-0088, 1993 WL 809966, at *21 (E.D.N.Y. Aug. 9, 1993) ("Any guarantee of profit and assurance against loss in the context of futures trading is inherently a fraudulent misrepresentation because investments in futures transactions necessarily depend on speculative predictions about an unpredictable future and risk is unavoidable.").

Because Defendants' fraudulent conduct occurred in connection with binary option contracts, they violated 7 U.S.C. § 6c(b) (2012) and 17 C.F.R. § 32.4 (2019). *See CFTC v. Vault Options, Ltd.,* No. 1:16-cv-01881, 2016 WL 5339716, at *5-6 (N.D. Ill. July 20, 2016) (default order) (holding that operators of website offering off-exchange binary options contracts violated 7 U.S.C. § 6c(b) and 17 C.F.R. § 32.2); *see also, e.g., CFTC v. Gibraltar Monetary Corp.,* No. 9:04-cv-80132, 2006 WL 1789018, at *15 (S.D. Fla. May 30, 2006) (entering judgment for CFTC after bench trial; holding that defendants made misrepresentations and omissions

regarding returns from commodity options, in violation of 7 U.S.C. § 6c(b) of the Act), *aff'd*, 575 F.3d 1180 (11th Cir. 2009).

### ii.    Defendants Acted with Scienter

Saffron, individually and as principal and agent of Circle Society, acted with the requisite scienter to violate 7 U.S.C. § 6c(b) (2012).  To establish the scienter element of fraud, the CFTC must show that Defendants' conduct was either reckless or intentional.  "Proof of scienter requires evidence that a Defendant committed the alleged wrongful acts intentionally, or that the representations were made with a reckless disregard for their truth or falsity."  *CFTC v. Driver*, 877 F. Supp. 2d 968, 977 (C.D. Cal. 2012) (internal citations and quotations omitted); *see also CFTC v. Noble Metals Int'l*, *Inc*., 67 F.3d 766, 774 (9th Cir. 1995) (holding that scienter is established when defendants act intentionally or with "careless disregard"); *CFTC v. Nat'l Inv. Consultants, Inc.*, No. 3:05-cv-02641, 2005 WL 2072105, at *8 (N.D. Cal. Aug. 26, 2005) (holding that CFTC can establish scienter by showing that a defendant "knew the representations were false and were calculated to cause harm or by showing that the representations were made with a reckless disregard for their truth or falsity") (citing *Noble Wealth Data Info.,* 90 F. Supp. 2d at 686, *aff'd in part, vacated in part, sub nom. CFTC v. Baragosh*, 278 F.3d 319 (4th Cir. 2002)).  The CFTC need not prove "an evil motive or intent to injure the customer."  *Cange v. Stotler & Co.*, 826 F.2d 581, 589 (7th Cir. 1987).

Saffron, individually and as principal and agent of Circle Society, knew that he was making omissions and misrepresentations to actual and prospective participants when he touted his trading experience and guaranteed returns of up to 300%.  In reality, Saffron knew or acted with reckless disregard of the fact that binary options trading on cryptocurrency and forex is risky, with no guaranteed returns.  As the holder of the E-wallet and BTC addresses used to

collect funds from participants and four known cryptocurrency trading accounts, Saffron had

personal knowledge of the amount of funds accepted from participants, the disposition of those

funds, as well as the absence of trading on behalf of participants as promised.  Finally, Saffron

knew or acted in reckless disregard of the facts when he failed to disclose that neither he nor

Circle Society were registered with the CFTC as required, and Defendants were therefore

operating an unlawful business enterprise.

### iii.    Defendants Committed Fraud by Misappropriation

Misappropriation of customer funds constitutes fraud in violation of 7 U.S.C. § 6b

(2012).  *See CFTC v. Driver*, 877 F. Supp. 2d at 978 (finding that "[s]oliciting or obtaining funds

from investors for trading, then failing to trade the funds while using them for personal or

business expenses, is misappropriation" and granting summary judgment to CFTC on claims that

commodity pool operator's misappropriation of funds violated 7 U.S.C. §§ 6b and 6*o*); *CFTC v.

Weinberg*, 287 F. Supp. 2d at 1106 ("Defendant's misappropriation of funds entrusted to him for

trading purposes is 'willful and blatant fraudulent activity' that clearly violates Section 4b(a) of

the Act [7 U.S.C. § 6b(a)].") (quoting *CFTC v. Noble Wealth*, 90 F. Supp. 2d at 687)).

Here, Defendants misappropriated participants' funds by using the principal deposits of

certain participants to pay other participants in the manner of a Ponzi scheme.  Defendants'

conduct amounts to willful and fraudulent activity in violation of 7 U.S.C. § 6c(b) (2012) and 17

C.F.R. § 32.4 (2019).  *See CFTC v. Dean*, No. 1:18-CV-345, 2018 WL 4573029, at *9 (E.D.N.Y.

July 9, 2018) (default order) (finding defendants violated 7 U.S.C. § 6c(b) and 17 C.F.R. § 32.4

by "misappropriat[ing] customer funds and never trad[ing] options with . . . customer funds").

### b.  Defendants Committed Fraud as CPOs (Count II)

7 U.S.C. § 6*o*(1)(A), (B) (2012), in relevant part, makes it unlawful for CPOs or APs of

CPOs, "by use the mails or any other means of interstate commerce, directly or indirectly—(A) to employ any device, scheme, or artifice to defraud any . . . participant or prospective . . . participant; or (B) to engage in any transaction, practice, or course of business which operates as a fraud or deceit upon any . . . participant or prospective . . . participant." "Section 4*o*(1) of the Act [7 U.S.C. § 6*o*(1)] broadly prohibits fraudulent conduct by a Commodity Pool Operator" and "applies to all CPOs whether registered, required to be registered, or exempted from registration." *Weinberg*, 287 F. Supp. 2d at 1107-08 (citing *CFTC v. Skorupskas*, 605 F. Supp. 923, 932-33 (E.D. Mich. 1985)). The same conduct that constitutes violations of 7 U.S.C. § 6c(b) (2012) described above (*i.e.*, Defendants' misrepresentations and omissions) also constitutes violations of 7 U.S.C. § 6*o*(1). *See Weinberg*, 287 F. Supp. 2d at 1108 (finding the "same conduct" by defendant that violates 7 U.S.C. § 6b also violates 7 U.S.C. § 6*o*(1)). The same elements of proof regarding Defendants' conduct described above in violation of 7 U.S.C. § 6c(b) (2012) also demonstrate a violation of 7 U.S.C. § 6*o*(1)(A), (B) (2012).

7 U.S.C. § 1a(11) (2012) defines a CPO as, among other things, "any person engaged in a business that is of the nature of a commodity pool . . . and who solicits, accepts, or receives from others funds, securities, or property . . . for the purpose of trading in commodity interests." Defendants acted and continue to act as CPOs as defined by 7 U.S.C. § 1a(11) (2012), by soliciting, accepting, or receiving funds or property (in the form of BTC) from the public while engaged in a business that is of the nature of an investment trust, syndicate, or similar form of enterprise, for the purpose of trading in commodity interests, including, in relevant part, commodity options authorized under 7 U.S.C. § 6c (2012).

17 C.F.R. § 1.3 (2019) defines an AP of a CPO as any person who is associated with "[a] [CPO] as a partner, officer, employee, consultant, or agent (or any natural person occupying a

similar status or performing similar functions), in any capacity which involves (i) the solicitation of funds, securities, or property for a participation in a commodity pool or (ii) the supervision of any person or persons so engaged."  From September 6, 2018 through the present, Saffron acted and continues to act as an AP of CPO Circle Society by soliciting funds or property for the Pool.

As discussed above, during the Relevant Period, Saffron, and from September 6, 2018 through the present, Defendants, by and through Saffron, violated 7 U.S.C. § 6*o*(1)(A), (B) (2012) by committing fraud as CPOs and as an AP of a CPO through material omissions and misrepresentations, among other things.

### c. Defendants Failed to Operate Commodity Pool as a Separate Legal Entity, Failed to Receive Funds in the Pool's Name, and Commingled Funds (Count III)

With certain specified exceptions and exemptions not applicable here, 17 C.F.R. § 4.20(a)(1) (2019) provides that a CPO must operate its pool "as an entity cognizable as a legal entity separate from that of the pool operator."  Defendants, who operated the Pool at issue, maintained no distinction between themselves and the Pool and failed to establish the Pool as a separate legal entity.  As a result, Defendants violated 17 C.F.R. § 4.20(a)(1) (2019).

In failing to establish the Pool as a separate legal entity, Defendants also violated 17 C.F.R. § 4.20(b) (2019), which requires all funds, securities, or other property received by a CPO from pool participants to be "received in the pool's name."  As Defendants failed to create and maintain the Pool as a separate legal entity, at no time were funds from pool participants "received in the pool's name."  Defendants therefore violated 17 C.F.R. § 4.20(b) (2019) when they accepted pool participants' funds.

Defendants violated 17 C.F.R. § 4.20(c) (2019), which prohibits a CPO from commingling the property of the pool with the property of any other person.  While acting as a

CPO, Defendants violated 17 C.F.R. § 4.20(b) (2019) by commingling pool participants' funds with Saffron's own personal funds.

### d. Defendants Failed to Register as CPOs, and Saffron Failed to Register as an AP of a CPO (Count IV)

With certain specified exceptions and exemptions, not applicable here, 7 U.S.C. § 6m(1) (2012) provides that it is unlawful for any CPO, unless registered with the CFTC, to make use of the mails or any means or instrumentality of interstate commerce in connection with its business as a CPO.  Defendants violated 7 U.S.C. § 6m(1) (2012) by, without being registered as a CPO, using the mails and other means or instrumentalities of interstate commerce (including email and the Internet), to solicit and accept funds or property for the purpose of trading in commodity options.

During the Relevant Period, Saffron, and from September 6, 2018 through the present, Circle Society, acted as CPOs by engaging in a business that was in the nature of a commodity pool, and in connection therewith, solicited, accepted, or received from others, funds or property, for the purpose of trading in commodity options, while failing to register with the CFTC as a CPO in violation of 7 U.S.C. § 6m(1) (2012).

7 U.S.C. § 6k(2) (2012) makes it unlawful for any person to be associated with a CPO as an officer or agent (or any person occupying a similar status or performing similar functions), in any capacity that involves the solicitation of funds or property for participation in a commodity pool, unless such person is registered with the CFTC as an AP of a CPO.

From September 6, 2018 through the present, Saffron was associated with CPO Circle Society as an officer or agent in a capacity that involved the solicitation of funds or property for participation in a commodity pool, while failing to register with the CFTC as an AP of a CPO in violation of 7 U.S.C. § 6k(2) (2012).

**2.   The Remaining *Eitel* Factors Support Entry of Default Judgment (*Eitel* Factors 3-7)**

**a.   There is Minimal Possibility of Dispute Concerning Material Facts**

Upon entry of default, all well-pleaded facts in the complaint are taken as true, except those relating to damages.  *See TeleVideo Sys., Inc. v. Heidenthal*, 826 F.2d at 917-18.  Here, Plaintiff filed a well-pleaded complaint alleging the facts necessary to establish its claims, and the Clerk of the Court entered default against Defendants.  No dispute has been raised regarding the material facts in the Complaint, and the likelihood that any genuine issue may exist is, at best, remote.  *See Trustees of The Plumbers & Pipefitters Nat. Pension Fund & Int'l Training Fund v. All Seasons Interior & Exterior Maint., Inc.*, No. 2:14-CV-00436-GMN, 2015 WL 4724227, at *4 (D. Nev. Aug. 7, 2015) (finding "[g]iven the sufficiency of the Complaint, the evidence presented by Plaintiff, and the Defendant's default, there are no factual disputes that preclude the entry of default judgment").  This factor weighs in favor of Plaintiff.

**b.   There is No Evidence that Default Was Due to Excusable Neglect**

Defendants' failure to respond to the Complaint is not the result of "excusable neglect."  The CFTC has diligently prosecuted this case since its inception, while Defendants have failed to properly answer, plead, or defend in this action.

Circle Society was properly served with the Summons, Complaint, and all associated papers through its Registered Agent on October 7, 2019.  Aff. of Service, ECF No. 14.  Circle Society's deadline to answer or move against the Complaint expired on October 28, 2019.  The Clerk of Court granted the CFTC's Application for Entry of Default Against Circle Society on November 5, 2019.  Clerk's Entry of Default Against Circle Society, ECF No. 21.

Saffron was properly served with the Summons, Complaint, and all associated papers by publication on November 29, 2019.  Proof of Service by Publication, ECF No. 27.  Saffron's

15

deadline to answer or move against the Complaint expired on December 20, 2019.  The Clerk of

Court granted the CFTC's Application for Entry of Default Against Saffron on December 23,

2019.  Clerk's Entry of Default Against Saffron, ECF No. 42.  Following the Clerk's entry of

default, Saffron, acting in a *pro se* capacity, filed an untimely and procedurally improper Answer

to the CFTC's Complaint.  Answer, ECF No. 43.  The Court struck Saffron's Answer on January

30, 2020, and ordered Saffron to file a motion to set aside the default pursuant to Fed. R. Civ. P.

55(c) by February 13, 2020.  Order Granting Mot. to Strike Answer, ECF No. 52.  Saffron failed

to file a motion to set aside the default.

In light of these facts, there is nothing to indicate that Defendants' failure to plead or

properly respond to the Complaint is due to excusable neglect.  *See R&R Partners, Inc. v.*

*Humble TV, LLC*, No. 3:19-cv-00016-MMD-WGC, 2019 WL 5684174, at *2 (D. Nev. Nov. 1,

2019) (finding twenty-seven days between service of Complaint and Summons and Entry of

Clerk's Default to be an "extended period of time" demonstrating it is unlikely Defendant's

failure resulted from excusable neglect); *see also Bd. of Trustees of The Teamsters Local 631*

*Sec. Fund For S. Nevada v. Grand Expo (USA), Inc.*, No. 2:14-CV-02017-MMD, 2015 WL

4113218, at *4 (D. Nev. July 8, 2015) (finding unlikely that default resulted from excusable

neglect due to Defendant's "repeated failure to respond" to Plaintiff's letter requesting

documents).  Given the extended period of time during which Defendants have had notice of the

Complaint and in which Defendants have failed to answer or move to set aside the default, it is

unlikely that Defendants' failure to respond and subsequent defaults resulted from excusable

neglect.

### c.  The CFTC Will Suffer Prejudice if Default Judgment Is Not Entered

The CFTC will suffer prejudice if default judgment is not entered because it will be "left

without a judicial resolution of its complaint and the remedies it seeks if a default judgment is not entered in its favor." *See CFTC v. My Global Leverage, LLC*, No. 2:15-cv-00745-APG-PAL, 2016 WL 8257337, at *1 (D. Nev. Aug. 26, 2016) (finding "[b]ecause the defendants have refused to participate in the case, the Commission is prejudiced by the defendants' frustration of the court proceedings"); *see also Trustees of The Plumbers & Pipefitters Nat. Pension Fund & Int'l Training Fund*, 2015 WL 4724227, at *1.  In light of Defendants' refusal to fully participate in the case and continued noncompliance with the Court's Civil Contempt Order (ECF No. 51), denying the CFTC's motion for default judgment would effectively deny defrauded clients the opportunity to be made whole by an order of restitution.  *See R&R Partners, Inc. v. Humble TV*, 2019 WL 5684174, at *2 ("If Plaintiff's motion for default judgment is not granted, Plaintiff will likely be without other recourse for recovery."); *CFTC v. CIS Commodities LLC*, No. 2:11-CV-1069-GMN-GWF, 2013 WL 1944571, at *7 (D. Nev. May 8, 2013) (finding "if Plaintiff's Motion for Default Judgment is not granted, Plaintiff will likely be without other recourse to enjoin the company from continuing the violations").

Further, failure to enter default judgment would frustrate the important policy goal of protecting the integrity of the commodity futures markets.  *See Stephen Bronte, Advisors, LLC v. CFTC*, 90 F. App'x 251, 252 (9th Cir. 2004) (describing CFTC as "'the 'statutory guardian' entrusted with the enforcement of the congressional scheme for safeguarding the public interest in the commodity futures markets'") (citing *Lawrence v. CFTC*, 759 F.2d 767, 776 (9th Cir. 1985)); *SEC v. Fortitude Grp., Inc.*, No. 1:16-cv-50, 2017 WL 818604, at *2 (W.D. Pa. Feb. 10, 2017) (granting SEC's motion for default judgment because SEC would "be prejudiced by its inability to effectively enforce federal securities laws" if motion were denied).  Thus, this factor weights in favor of entering default judgment.

### d. Policy Favoring Decision on the Merits Does Not Warrant Denying Default Judgment

Although the Federal Rules and public policy favor a decision on the merits, "[d]efendant's failure to answer Plaintiff's Complaint makes a decision on the merits impractical, if not impossible." *R&R Partners, Inc. v. Humble TV, LLC*, 2019 WL 5684174, at *3. The Court has also already found both Defendants in contempt for violating the Court's December 6, 2019 Preliminary Injunction Order (ECF No. 31), and Defendants have failed to comply with the Civil Contempt Order (ECF No. 51) as documented in Plaintiff's Notice of Defendants' Non-Compliance (ECF No. 58). Accordingly, because the CFTC has sufficiently pleaded facts supporting its claims, the policy favoring decisions of cases on their merits does not warrant denying default judgment in this instance.

### e. Sum of Money at Stake

Finally, the Court considers "the amount of money at stake in relation to the seriousness of defendant's conduct." *R&R Partners, Inc*, 2019 WL 5684174, at *2 (quoting *PepsiCo, Inc.* v. *Calif. Sec. Cans*, 238 F. Supp. 2d 1172, 1176 (C.D. Cal. 2002)). Here, the amount of money at stake warrants a default judgment. Defendants' fraudulent conduct and registration violations constitute core violations of the Act and Regulations that attack the integrity of the commodity markets. The relief Plaintiff seeks is reasonable, is authorized by the Act and Regulations, and is consistent with prior default judgment awards in similar CFTC actions. *See*, *e.g*., *CFTC v. My Global Leverage,* 2016 WL 8257337, at *6 (entering default judgment and ordering defendants to pay over $1.4 million in restitution and a civil monetary penalty for soliciting $786,085 from approximately 12 customers in off-exchange precious metals transactions); *CFTC v. Williams*, No. 2:17-cv-01325, 2018 WL 3853992, at *7, *9, *11 (D. Ariz. Mar. 16, 2018) (entering default judgment and ordering defendants to pay $9.7 million in civil monetary penalties and $9.7

million in restitution); *CFTC v. Safevest, LLC*, No. 8:08-cv-474, 2009 WL 2448116, at *2, *4-5 (C.D. Cal. July 13, 2006) (finding defendants in default and ordering $17.8 million in disgorgement, $17.8 million in restitution, and $2 million in civil monetary penalties).

**D.   Remedies and Damages**

    **1.   Permanent Injunction**

       The CFTC seeks permanent injunctive relief against Defendants under 7 U.S.C. § 13a-1(a) (2012), including a trading ban against Defendants permanently prohibiting them from engaging in any activity related to commodity trading and a ban on soliciting or accepting funds from any person in connection with commodity trading.  Pursuant to 7 U.S.C. § 13a-1(a) (2012), "[t]he CFTC is entitled to a permanent injunction upon a showing that a violation [of the Act or Regulations] has occurred and is likely to continue unless enjoined."  *CFTC v. Driver*, 877 F. Supp. 2d 968, 981 (C.D. Cal. 2012).  As a result, "[o]nce a violation of the Act has been shown, the moving party need only show the existence of some reasonable likelihood of future violations."  *CFTC v. CIS Commodities LLC*, 2013 WL 1944571, at *10 (quoting *CFTC v. Co Petro Mktg. Grp., Inc.*, 502 F. Supp. 806, 818 (C.D. Cal. 1980)).  The Court may infer a likelihood of future violations from past unlawful conduct.  *CFTC v. CIS Commodities LLC*, 2013 WL 1944571, at *10.  In drawing inferences from past conduct, courts "look at the totality of the circumstances and when the violation has been predicated upon systematic wrongdoing, rather than an isolated occurrence, a court should be more willing to enjoin future conduct."  *Id.* In deciding whether to issue a permanent injunction, the Court may also consider the following factors:  "(1) the egregiousness of the defendant's actions, (2) the isolated or recurrent nature of the infraction, (3) the defendant's recognition of the wrongful nature of his conduct, and (4) the likelihood that the defendant's occupation will present opportunities for future violations."  *Id.*

There is ample evidence to support a permanent injunction and trading ban against Defendants, as set forth in the proposed order submitted herewith.  Defendants' conduct was neither isolated nor accidental.  Defendants engaged in egregious and systematic violations of the Act and Regulations by fraudulently soliciting and misappropriating at least $15,815,967 from at least 179 participants over a multi-year period.  Compl. ¶¶ 3, 22; Malas Decl. II ¶¶ 6(d), 69; Malas Decl. IV ¶¶ 10.  Rather than admitting or recognizing their wrongdoing, Defendants took pains to conceal the fraud.  Compl. ¶¶ 3, 40, 42.  Further, Saffron has not provided any recognition of his wrongful conduct.  In fact, he continues to disobey this Court's Preliminary Injunction (ECF No. 31) and Civil Contempt Orders (ECF No. 51).  Saffron's ongoing contemptuous conduct makes it highly likely that he will commit future violations of the Act unless permanently enjoined.  Given this history and Saffron's apparent lack of gainful employment,[6] the only conclusion is that Defendants, through Saffron, will continue their pattern of wrongdoing unless permanently enjoined by the Court.

### 2.   Restitution, Disgorgement, Civil Monetary Penalty, and Post-Judgment Interest

Congress has explicitly authorized the CFTC to seek equitable remedies, including an order that Defendants pay restitution and disgorge their ill-gotten gains:

"(3) Equitable remedies–In any action brought under this section, the Commission may seek, and the court may impose, on a proper showing, on any person found in the action to have committed any violation, equitable remedies including—

(A) restitution to persons who have sustained losses proximately caused by such violation (in the amount of such losses); and

(B) disgorgement of gains received in connection with such violation.

---

[6] Saffron, an Australian citizen, has no known source of legitimate income and appears to have used the funds he obtained from participants to support his lavish lifestyle, travel, and gambling.  *See* Malas Decl. IV ¶ 11.

7 U.S.C. § 13a-1(d)(3)(A)-(B) (2012).

Although the Court must make a determination regarding the damages requested in a motion for default judgment, the Court is "not required to conduct an evidentiary hearing to ascertain damages" where evidence of damages has been provided. *Garden City Boxing Club, Inc. v. Aranda*, 384 F. App'x 688, 689 (9th Cir. 2010). The Court may rely on declarations in lieu of a damages hearing. *See, e.g.*, *CFTC v. Emerald Worldwide Holdings, Inc.*, No. 2:03-cv-8339, 2005 WL 1130588, at *13 (C.D. Cal. Apr. 19, 2005) (finding "no reason to hold an evidentiary hearing on damages" because CFTC-submitted documentary evidence was "sufficient" to enter default judgment).

### a. Restitution

7 U.S.C. § 13a-1(d)(3)(A) (2012) authorizes the CFTC to seek, and the Court to order "restitution to persons who have sustained losses proximately caused by such violation (in the amount of such losses)." Restitution exists to "restore the status quo" and reflects "the difference between what defendants obtained and the amount customers received back." *Driver*, 877 F. Supp. 2d at 981 (entering default judgment and ordering restitution equal to amount of money solicited minus amount returned to customers); *Emerald Worldwide*, 2005 WL 1130588, at *10 ("The appropriate amount of restitution is the total amount invested by customers, less refunds made by the defendants to the customers.").

Defendants' illegal conduct, as detailed herein, proximately caused participants to incur net losses totaling $14,841,280, which reflects the total funds Defendants fraudulently solicited ($15,815,967), minus the funds they diverted from some participants and passed to other participants in the manner of a "Ponzi" scheme ($974,687). *See* Compl. ¶¶ 3, 22; Malas Decl. IV ¶¶ 2, 8, 10, 12. Accordingly, the CFTC requests the Court order Defendants to pay restitution of

1  $14,841,280 on a joint and several basis, which is equal to participants' net losses, together with

2  post-judgment interest.

### b.  Disgorgement

3  7 U.S.C. § 13a-1(d)(3)(B) (2012) authorizes the CFTC to seek, and the Court to order

4  "disgorgement of gains received in connection with such violation."  "District courts have the

5  power to order disgorgement for violations of the Act for the purpose of depriving the wrongdoer

6  of his ill-gotten gains and deterring violations of the law."  *CFTC v. Am. Bullion Exch. ABEX*

7  *Corp.*, No. 8:10-cv-01876, 2014 WL 12603558, at *9 (C.D. Cal. Sept. 16, 2014) (internal

8  citation and quotations omitted).  A disgorgement calculation requires only a "reasonable

9  approximation of profits causally connected to the violation," and "the amount of disgorgement

10  should include all gains flowing from the illegal activities."  *SEC v. JT Wallenbrock & Assocs.*,

11  440 F.3d 1109, 1113-14 (9th Cir. 2006) (internal quotations and citations omitted).  The "risk of

12  uncertainty" in computing disgorgement "should fall on the wrongdoer whose illegal conduct

13  created that uncertainty."  *SEC v. Platforms Wireless Int'l Corp.*, 617 F.3d 1072, 1096 (9th Cir.

14  2010) (quoting *SEC v. First City Fin. Corp.*, 890 F.2d 1215, 1232 (D.C. Cir. 1989)).

15  In violation of the Preliminary Injunction (ECF No. 31) and Civil Contempt Orders (ECF

16  No. 51), Defendants have failed to provide any business records or accounting for the millions of

17  dollars they wrongfully obtained from participants.  *See* Notice of Defendants' Noncompliance,

18  ECF No. 58.  Given these circumstances and the scope of Defendants' fraud, the CFTC requests

19  the Court order Defendants to disgorge $15,815,967 on a joint and several basis, which is equal

20  to the total funds they fraudulently solicited and received, together with post-judgment interest.

### c.  Civil Monetary Penalty

21  7 U.S.C. § 13a-1(d)(1)(A) (2012) authorizes the imposition of a civil monetary penalty

("CMP") equal to the higher of triple Defendants' monetary gain from each violation of the Act or Regulations, or $185,242 per violation.[7]  The Court may "fashion a civil monetary penalty appropriate to the gravity of the offense and sufficient to act as a deterrent."  *Miller v. CFTC*, 197 F.3d 1227, 1236 (9th Cir. 1999).  In determining civil monetary penalties, courts consider the nature of the violation of the Act or Regulations, whether scienter was present, the consequences of the violation, the financial benefit to defendants, and the harm to customers. *See CFTC v. Am. Bullion Exch. ABEX Corp.*, No. 8:10-cv-01876, 2014 WL 3896023, at *18 (C.D. Cal. Aug. 7, 2014) (citing *CFTC v. Arrington,* 998 F. Supp. 2d 847, 875 (D. Neb. 2014)).

By including the level of monetary gain as one basis for calculating the penalty, Congress implicitly stated that gain is an appropriate starting point to set the penalty.  The imposition of a CMP in this case should enforce the principle of deterrence and bear a clear relationship to the level of fraud.  Defendants intentionally created and implemented a multi-year fraudulent scheme, continually misrepresented and omitted material facts in their solicitations, and misappropriated at least $15,815,967 in funds from at least 179 individuals.  Given Defendants' intentional and egregious conduct, the CFTC requests that the Court impose a CMP of $47,447,901 on a joint and several basis, which is equal to three times Defendants' monetary gain of $15,815,967, together with post-judgment interest.  Such a penalty is clearly within the Court's statutory authority to impose, will protect the CFTC's regulatory scheme and integrity of the markets, and send a clear message to deter others from engaging in a similar, pervasive fraudulent scheme.  *See Emerald Worldwide*, 2005 WL 1130588, at *13 (ordering CMP of triple defendant's gain); *CFTC v. Weber*, No. 2:10-cv-534 (D. Ariz. Feb. 22, 2011), Order at 3, ECF

---

[7] Pursuant to the associated regulation, 17 C.F.R. § 143.8(b)(1), the allowable inflation-adjusted civil monetary penalty is $185,242 per violation of the Act (effective Jan. 13, 2020) for non-manipulation claims brought in federal injunctive actions under 7 U.S.C. § 13a-1.

1
2

No. 22 (ordering CMP of "three times [defendant's] monetary gain"); *CFTC v. Capitalstreet Fin., LLC*, No. 3:09-cv-387, 2012 WL 79758, at *15 (W.D.N.C. Jan. 11, 2012) (same).

### d.  Post-Judgment Interest

3
4
5
6
7
8

The CFTC is entitled to post-judgment interest on any restitution and civil monetary penalty awards ordered by this Court, which accrues at the weekly average 1-year constant maturity Treasury yield for the calendar week preceding the date of judgment.  28 U.S.C. § 1961(a) (2012).

## IV.   CONCLUSION

9
10
11
12

For the foregoing reasons, the CFTC respectfully requests that grant the Motion, enter final judgment by default against Defendants, and issue a final order in the form of the proposed order submitted herewith.

13
14

Dated:  March 9, 2020

Respectfully submitted,

15
16
17
18
19

By: /s/ Danielle E. Karst
Danielle E. Karst
Timothy J. Mulreany
**COMMODITY FUTURES TRADING
COMMISSION**
Three Lafayette Centre
1155 21st Street, N.W.
Washington, D.C. 20581
Telephone:  (202) 418-5000
Facsimile:   (202) 418-5523

20
21
22
23
24
25
26
27
28

**CERTIFICATE OF SERVICE**

On March 9, 2020, I served a copy of *Plaintiff's Motion for Default Judgment,*

*Permanent Injunction, Civil Monetary Penalty and Other Equitable Relief and Memorandum in*

*Support, along with the Declarations of George H. Malas and Danielle E. Karst in Support of*

*the Motion* with the Clerk of the Court using the CM/ECF system.  I also certify that on March 9,

2020, I sent hard copies of the same to Defendants David Gilbert Saffron and Circle Society,

Corp. via USPS First-Class Mail overnight mail at the following addresses:

**David Gilbert Saffron**
████████████████
Los Angeles, CA ████
*via (1)USPS First-Class Mail; and (2) Electronic Mail to:*
davidsaffron@live.com; oversight2019@gmail.com

**Circle Society, Corp.**
c/o David Saffron or Marc Jenson
2450 St. Rose Parkway, Suite 120
Henderson, NV 89074
*via (1)USPS First-Class Mail; and (2) Electronic Mail to:*
Mjenson1960@gmail.com
davidsaffron@live.com; oversight2019@gmail.com


Date:  March 9, 2020                              /s/ Danielle E. Karst
                                                 Danielle E. Karst