# Exhibit 1

Declaration of George H. Malas In Support Of Plaintiff's Motion for Default Judgment

Danielle E. Karst (D.C. Bar No. 481881)
Timothy J. Mulreany (Maryland Bar No. 8812160123)
**COMMODITY FUTURES TRADING COMMISSION**
Three Lafayette Centre
1155 21st Street, N.W.
Washington, D.C. 20581
Telephone:  (202) 418-6158 (Karst)
Telephone:  (202) 418-5306 (Mulreany)
Facsimile:   (202) 418-5523
dkarst@cftc.gov
tmulreany@cftc.gov

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEVADA**

| | |
|---|---|
| COMMODITY FUTURES TRADING COMMISSION,<br><br>Plaintiff,<br><br>v.<br><br>DAVID GILBERT SAFFRON<br>a/k/a DAVID GILBERT and<br>CIRCLE SOCIETY, CORP.,<br><br>Defendants. | Case No.  2:19-cv-1697-JAD-DJA<br><br>**DECLARATION OF GEORGE H. MALAS IN SUPPORT OF PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT** |

I, George H. Malas, hereby declare as follows:

## I.    INTRODUCTION

1. I have personal knowledge of the following facts and, if called as a witness, could and would testify competently thereto.

2. I submit this Declaration pursuant to 28 U.S.C. § 1746, in support of the following damages sought by the CFTC in its Motion for Default Judgment and Memorandum in Support:  (1) restitution of $14,841,280; (2) disgorgement of $15,815,967; and (3) civil monetary penalty of $47,447,901 (which is three times the requested disgorgement amount).[1]

---

[1] As described below in paragraph 7, this is my fourth declaration in this litigation (referred to in the CFTC's Motion for Default Judgment as "Malas Decl. IV").

1

3. I have worked as a Futures Trading Investigator for Plaintiff Commodity Futures Trading Commission ("Plaintiff" or "CFTC") since September 2009. Prior to joining the CFTC, I held positions as a Compliance Officer and Branch Administrative Manager at Deutsche Bank Securities Inc. and as a Compliance Examiner, Investigator and Regulatory Analyst at the National Association of Securities Dealers (now known as "FINRA"). I have a Bachelor of Science in Business Administration, with a Concentration in Finance, from Towson State University and a Master of Business Administration from Johns Hopkins University.

4. I am the Futures Trading Investigator assigned to assist in the investigation of David Gilbert Saffron ("Saffron") and Circle Society, Corp. ("Circle Society") (collectively, "Defendants").

## II.   RECORDS REVIEWED

5. I reviewed and analyzed the following documents in the preparation of this Declaration:[2]

    a. Documents identified in paragraph 5 of Malas Decl. II dated September 26, 2019, which was filed with the Court in this action on September 30, 2019 (ECF No. 6-1 to 6-5); and

    b. Documents produced to the CFTC by the additional participants noted below in paragraph 9.

## III.   PREVIOUS DECLARATIONS

6. On September 30, 2019, the CFTC filed a Complaint in this action against Defendants seeking injunctive and other relief for violations of the Commodity Exchange Act.

---

[2] These documents are voluminous and therefore are not attached to this Declaration, but rather summarized herein. All documents can be made available for review upon request.

On October 3, 2019, the Court entered a Temporary Restraining Order against Defendants. TRO, ECF No. 9. On December 6, 2019, the Court issued a Preliminary Injunction Order against Defendants. PI Order, ECF No. 31. The Court held a contempt hearing on January 24, 2020 and issued a Civil Contempt Order against Defendants on January 30, 2020. Civil Contempt Order, ECF No. 51.

7. In connection with the case captioned above, I prepared three previous declarations detailed as follows:

a. Malas Declaration dated September 26, 2019 ("Malas Decl. I") was submitted to the Court in Support of Plaintiff's Motion for an *Ex Parte* Temporary Restraining Order and Memorandum in Support. ECF No. 5-1 to 5-5;

b. Malas Declaration dated September 26, 2019 ("Malas Decl. II," which is identical to Malas Decl. I) was submitted to the Court in Support of Plaintiff's Motion for a Preliminary Injunction. ECF No. 6-1 to 6-5. Malas Decl. II included my analyses of documents and information produced to the CFTC by various pool participants, and other documents; and

c. Malas Declaration dated October 22, 2019 ("Malas Decl. III") was submitted to the Court in Support of Plaintiff's Motion for Alternative Service. ECF No. 16-1 to 16-8.

### IV.    ANALYSIS FOR REQUESTED DAMAGES

8. My analysis of the records included in Malas Decl. II (noted above), revealed that from at least December 2017 to present (the "relevant period"), Saffron, individually and on behalf of Circle Society, solicited and accepted at least $11 million worth of Bitcoin ("BTC") and United States Dollars ("USD"), (collectively, "funds") from at least 14 individuals ("participants"), for the purpose of participating in a commodity pool that purportedly utilized

3

algorithmic trading programs, referred by Saffron as "trading bots."  Saffron allegedly created "trading bots" to trade binary options contracts on foreign currency ("forex") and cryptocurrency pairs, among other things.  In addition, Saffron returned a total of 130 BTC (worth approximately $974,687 at the time) to initial participants using the BTC of later-in-time participants, in the nature of a "Ponzi" scheme.  Malas Decl. II ¶ 69.  Based on information provided to the CFTC in recent months by participants, Saffron is providing payouts in an apparent attempt to "settle" with some participants outside of this litigation.[3]

9. Since the filing of the CFTC's Motion for a Preliminary Injunction on September 30, 2019, the CFTC has obtained records and information that have revealed at least 165 additional participants, who provided at least $4.5 million ($4,593,847) to Defendants for the purpose of trading binary options contracts on forex and cryptocurrency pairs.

10. In total, based on the analysis included in Malas Decl. II and my analysis of the additional records listed in Section II above, Saffron solicited and accepted at least $15.8 million ($15,815,967) from at least 179 participants during the relevant period for the purpose of trading binary options contracts on forex and cryptocurrency pairs.

11. Further, Saffron, who has no known source of legitimate income, used the funds he obtained from participants to support his lavish lifestyle.  For example, Saffron spent an exorbitant amount of money on travel to Las Vegas, Nevada where he spent at least $1.8 million on gambling at five different casinos from January 2018 through June 2019, and more than $50,000 on hotel charges in two different Las Vegas hotels in January 2018, June 2018, and July

---

[3] In recent weeks, the CFTC has heard from at least one participant who represented that she has decided to "redact" her claim against Saffron.  This participant reported that she and Saffron have "came [sic] to a settlement."  Another participant reported that Saffron "continues to message his 'customers' (victims) in the Telegram groups and has requested" that participants work with Saffron to "settle outside of the CFTC investigation."

4

2018.[4]

12.     Defendants' conduct caused participants to incur net losses of $14,841,280, which reflects the total funds participants provided to Defendants ($15,815,967), less the funds Defendants returned to participants in the manner of a "Ponzi" scheme ($974,687).  Similarly, Defendants' net gains from their fraud during the relevant period equal $14,841,280.

I declare under penalty of perjury that the foregoing is true and correct.

Executed in Washington, D.C. on March 9, 2020.

George H. Malas
Futures Trading Investigator

---

[4] These expenses are a small sampling of Saffron's spending during the relevant period based on documents obtained by the CFTC.

5