Danielle E. Karst (D.C. Bar No. 481881)
Timothy J. Mulreany (Maryland Bar No. 8812160123)
**COMMODITY FUTURES TRADING COMMISSION**
Three Lafayette Centre
1155 21st Street, N.W.
Washington, D.C. 20581
Telephone:   (202) 418-6158 (Karst)
Telephone:   (202) 418-5306 (Mulreany)
Facsimile:    (202) 418-5523
dkarst@cftc.gov
tmulreany@cftc.gov

## UNITED STATES DISTRICT COURT
### DISTRICT OF NEVADA

|  |  |
|---|---|
| COMMODITY FUTURES TRADING COMMISSION, | Case No.  2:19-cv-1697-JAD-DJA |
| Plaintiff, | |
| v. | |
| DAVID GILBERT SAFFRON a/k/a DAVID GILBERT and CIRCLE SOCIETY, CORP., | |
| Defendants. | |

**[PROPOSED] ORDER GRANTING PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT, PERMANENT INJUNCTION, CIVIL MONETARY PENALTY, AND OTHER EQUITABLE RELIEF**

Before the Court is Plaintiff Commodity Futures Trading Commission's ("Plaintiff," "CFTC," or "Commission") Motion for Entry of Default Judgment, Permanent Injunction, Civil Monetary Penalty, and Other Equitable Relief against Defendants David Gilbert Saffron a/k/a David Gilbert ("Saffron") and Circle Society, Corp ("Circle Society") (collectively, "Defendants"), pursuant to Fed. R. Civ. P. 55(b)(2).  For the reasons stated below and good cause having been shown, the Motion is **GRANTED**.

I.      **PROCEDURAL HISTORY**

1.      On September 30, 2019, Plaintiff filed a Complaint for Injunctive and Other

Equitable Relief and for Civil Monetary Penalties Under the Commodity Exchange Act and

Commission Regulations ("Complaint," ECF No. 1) against Defendants for violations of the

Commodity Exchange Act ("Act"), 7 U.S.C. §§ 1-27f (2012), and its implementing regulations,

17 C.F.R. pts. 1-190 (2019).

2.      On October 7, 2019, pursuant to Fed. R. Civ. P. 4(h)(1)(B), the CFTC served

Circle Society with the Complaint, Summons, and all associated papers via its Registered Agent.

Aff. of Service, ECF No. 14.

3.      On November 29, 2019, pursuant to the Court's Order dated October 30, 2019

(Alternative Service Order, ECF No. 19), and in accordance with Fed. R. Civ. P. 4(e)(1) and

Nev. R. Civ. P. 4.4(c), the CFTC served Saffron with the Complaint and Summons by

publication in two newspapers.  Proof of Service by Publication, ECF No. 27.

4.      Pursuant to Fed. R. Civ. P. 12(a)(1)(A)(i), all Defendants were required to answer

or move against a complaint within 21 days of service.  The deadline to answer or move against

the Complaint expired on October 28, 2019 for Circle Society and on December 20, 2019 for

Saffron.

5.      Circle Society failed to answer or otherwise move against the Complaint,

prompting the CFTC to submit an Application for Entry of Default against Circle Society

pursuant to Fed. R. Civ. P. 55(a) on November 4, 2019.  Appl. for Entry of Default, ECF No. 20.

On November 4, 2019, the Clerk of the Court granted the Application, placing Circle Society in

default.  Clerk's Entry of Default as to Circle Society (Nov. 5, 2019), ECF No. 21.  Circle

Society has failed to answer the Complaint and has failed to file a notice of new counsel as

required by the Court's Order granting former attorney Michael Van's motion to withdraw. Order dated Dec. 2, 2019 (ECF No. 29).

6.      Saffron failed to answer or otherwise move against the Complaint, prompting the CFTC to submit an Application for Entry of Default against Saffron pursuant to Fed. R. Civ. P. 55(a) on December 21, 2019.  Appl. for Entry of Default, ECF No. 41.  On December 23, 2019, the Clerk of the Court granted the Application, placing Saffron in default.  Clerk's Entry of Default as to Saffron (Dec. 23, 2019), ECF No. 42.  Following the Clerk's Entry of Default, Saffron, acting in a *pro se* capacity, filed an untimely and procedurally improper Answer to the CFTC's Complaint.  Answer, ECF No. 43.  Pursuant to Fed. R. of Civ. P. 12(f) and 55(c), the CFTC filed a Motion to Strike Saffron's Answer on January 3, 2020 ("Motion to Strike," ECF No. 45).  The Court struck Saffron's Answer on January 30, 2020, and set a deadline of February 13, 2020 for him to file a motion to set the default aside.  Order Granting Mot. to Strike Answer, ECF No. 52.  Saffron has failed to set the default aside.

7.      Plaintiff's instant motion followed.

## II.      FINDINGS OF FACT

### A.      The Parties

8.      Plaintiff **Commodity Futures Trading Commission** is an independent federal regulatory agency charged by Congress with the administration and enforcement of the Act, 7 U.S.C. §§ 1-27f (2012), and the Regulations promulgated thereunder, 17 C.F.R. pts. 1–190 (2019).

9.      Defendant **David Gilbert Saffron** is a citizen of the Commonwealth of Australia and sometimes uses the alias "David Gilbert."  Upon information and belief, Saffron resides in

Los Angeles, California and/or Las Vegas, Nevada.  Saffron owns and operates Circle Society, Corp.  Saffron has never been registered with the CFTC in any capacity.

10.     Defendant **Circle Society, Corp**. is a Nevada corporation based in Henderson, Nevada.  Circle Society, Corp. was incorporated by Saffron on September 6, 2018, with a purported office at 2450 St. Rose Parkway, Suite 120, Henderson, Nevada.  Circle Society, Corp. has never been registered with the CFTC in any capacity.

**B.     Defendants' Fraudulent Scheme**

11.     From at least December 2017 through the present (the "Relevant Period"), Saffron has engaged in a fraudulent scheme to solicit Bitcoin and United States Dollars ("USD") from members of the public to participate in a pooled investment vehicle ("commodity pool" or "Pool") for trading commodity interests, including trading binary options contracts on foreign currency ("forex") and cryptocurrency pairs.

12.     During the early stages of his activity, Saffron individually created a business entity, Circle Society, on or about September 6, 2018, and used this entity to perpetuate his fraud.  Beginning on or about September 6, 2018 through the present, Saffron, individually and as principal and agent of Circle Society, has fraudulently solicited members of the public to participate in a commodity pool operated by Circle Society.

13.     Defendants, without registering with the CFTC as commodity pool operators ("CPOs") and/or as an associated person ("AP") of a CPO, solicited and accepted funds from actual and prospective pool participants the public through in-person meetings, word-of-mouth, Telegram instant messaging service, podcasts, and websites operated by Saffron, including *https://circlesociety.com*.

4

14.     During the Relevant Period, Saffron, and from September 6, 2018 through the present, Defendants, by and through Saffron, made material omissions, including by failing to disclose that:  (1) Defendants misappropriated participants' funds by retaining participants' funds in Saffron's personal E-Wallet instead of segregating the funds in a pool account and using the funds to trade on behalf of the Pool; (2) Defendants were not registered with the CFTC as required by the Act and were therefore operating an unlawful business enterprise; and (3) purported "returns" paid to some participants were in fact the principal deposits of other participants and were not generated by profitable trading.

15.     Defendants also made material misrepresentations in their solicitations, including by misrepresenting that:  (1) participants' funds would be pooled and used to trade binary options contracts, among other things, for the benefit of participants; (2) guaranteed profits would be paid to participants (*e.g.*, up to a 300% return every three weeks); and (3) guaranteed referral fees would be paid to participants in the amount of one Bitcoin for every Bitcoin and/or equal to twenty percent (20%) of the assets invested by their friends.

16.     Contrary to their claims, Defendants did not use participants' funds to trade on behalf of the Pool as promised but instead misappropriated the funds by holding them in Saffron's personal E-Wallet, converting them to Saffron's personal use, and paying some participants with the funds of other participants in order to create the illusion that the Pool was trading.   The Bitcoin tendered by participants was held in Saffron's personal E-Wallet and was never placed in any cryptocurrency or other trading accounts for the benefit of the Pool.

17.     A alleged in the Complaint, Defendants fraudulently solicited and accepted at least $11 million in funds from no fewer than fourteen individuals.  However, since the filing of the Complaint, the CFTC has learned of an additional 165 participants, who provided Defendants

with an additional over $4.5 million during the Relevant Period for the purpose of trading forex and cryptocurrency pairs. Therefore, Defendants fraudulently solicited and accepted at least $15,815,967 in funds from at least 179 participants.

18.     Contrary to their claims, Defendants did not use participants' funds to trade on behalf of the Pool as promised but instead misappropriated the funds by holding them in Saffron's personal E-Wallet, converting them to Saffron's personal use, and paying some participants with the funds of other participants in order to create the illusion that the Pool was trading. The BTC tendered by participants was held in Saffron's personal E-Wallet and was never placed in any cryptocurrency or other trading accounts for the benefit of the Pool.

19.     As part of the fraudulent scheme, Defendants returned approximately 130 BTC to initial participants using the BTC of later-in-time participants in the manner of a Ponzi scheme. However, the majority of participants have been unable to obtain a return of any of their funds despite their repeated demands to Saffron.

## III.     CONCLUSIONS OF LAW

### A.     Jurisdiction

20.     This Court possesses subject matter jurisdiction over this action pursuant to 7 U.S.C. § 13a-1(a) (2012), which authorizes the CFTC to seek injunctive and other relief in a United States district court against any person whenever it appears to the CFTC that such person has violated the Act or Regulations. The Court possesses personal jurisdiction over Saffron because he resided in this District and committed the acts alleged in the Complaint within this District, and over Circle Society because it conducted business and maintained an address in this District.

21.     Venue properly lies with this Court pursuant to 7 U.S.C. § 13a-1(e) (2012) because Defendants' acts and practices in violation of the Act and Regulations occurred within this District.

**B.     Default Judgment Is Warranted Against All Defendants**

22.     Fed. R. Civ. P. 55(b) authorizes litigants to seek, and the Court to enter, default judgment against a party who has failed to plead or otherwise defend an action.

23.     Where a Court possesses personal and subject-matter jurisdiction, the decision to enter default judgment is left to the Court's sound discretion.

24.     In exercising discretion to enter default judgment under Federal Rule of Civil Procedure 55(b), courts in the Ninth Circuit consider seven "*Eitel*" factors.  *See Eitel v. McCool*, 782 F.2d 1470, 1471-72 (9th Cir. 1986).  The *Eitel* factors are identified in the Order in which they are addressed herein:

(1) the sufficiency of the complaint;

(2) the substantive merits of plaintiff's claims;

(3) the possibility of a dispute concerning material facts;

(4) whether default resulted from excusable neglect;

(5) the prejudice to plaintiff if the motion is denied;

(6) the strong policy of the Federal Rules of Civil Procedure favoring decisions on the merits; and

(7) the amount of money at stake.

**1.     All Four Causes of Action in the Complaint Are Sufficiently Alleged and Have Substantive Merit (*Eitel* Factors 1 and 2)**

25.     In considering a motion for default judgment, the Court treats "factual allegations of the complaint, except those relating to the amount of damages . . . as true."  *See TeleVideo*

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

*Systems, Inc. v. Heidenthal*, 826 F.2d 915, 917-18 (9th Cir. 1987).  The first two Eitel factors are (1) the merits of Plaintiff's substantive claim and (2) the sufficiency of the complaint.  These factors require that a plaintiff "state a claim on which the [plaintiff] may recover."  *Ocwen Loan Servicing, LLC v. Corpolo Ave. Tr.*, No. 2:16-cv-02653-APG-NJK, 2020 WL 406377, at *2 (D. Nev. Jan. 23, 2020) (quoting *Danning v. Lavine,* 572 F.2d 1386, 1388 (9th Cir. 1978)).  As described below, the Complaint has adequately pled all four asserted causes of action.

> **a.     Defendants Committed Commodity Options Fraud (Count I)**

26.     7 U.S.C. § 6c(b) (2012) makes it unlawful for "any person to offer to enter into, enter into, or confirm the execution of any transaction" involving any commodity regulated under the Act which is of the character of, or is commonly known as, *inter alia*, an "option," "bid," "offer," "put," or "call," contrary to any rule, regulation, or order of the CFTC prohibiting any such transaction or allowing any such transaction under such terms and conditions as the CFTC shall prescribe.

27.     Plaintiff can establish violations of 7 U.S.C. § 6c(b) (2012) by showing that Defendants made a material misrepresentation, false or misleading statement, or deceptive omission with scienter.  *CFTC v. R.J. Fitzgerald & Co.*, 310 F.3d 1321, 1328 (11th Cir. 2002).

24.     A statement or omission is material if "a reasonable investor would consider it important in deciding whether to make an investment."  *CFTC v. R.J. Fitzgerald & Co.*, 310 F.3d 1321, 1328-29 (11th Cir. 2002).  "Misrepresentations concerning profit and risk go to the heart of a customer's investment decision and are therefore material as a matter of law."  *CFTC v. Noble Wealth Data Info. Servs., Inc.*, 90 F. Supp. 2d 676, 686 (D. Md. 2000) (citing *CFTC v. Commonwealth Fin. Grp.*, 874 F. Supp. 1345, 1353 (S.D. Fla. 1994)).

25.     Proof of scienter requires evidence that Defendants' conduct was either reckless or intentional.  *CFTC v. Driver*, 877 F. Supp. 2d 968, 977 (C.D. Cal. 2012).  Scienter exists if Defendants "knew the representations were false and were calculated to cause harm or by showing that the representations were made with a reckless disregard for their truth or falsity." *CFTC v. Nat'l Invest. Consultants, Inc.*, No. 3:05-cv-2641, 2005 WL 2072105, at *8 (N.D. Cal. Aug. 26, 2005) (citing *CFTC v. Noble Wealth Data Info. Servs., Inc.*, 90 F. Supp. 2d at 686).

### i.      Material Omissions and Misrepresentations

26.     The facts of the Complaint, which the Court takes as true for purposes of the instant motion, sufficiently allege that Saffron, individually and as agent and principal of Circle Society, made the following material omissions by failing to disclose, among other things, that: (i) Defendants misappropriated participants' funds by retaining participants' funds in Saffron's personal E-Wallet instead of segregating the funds in a pool account and using the funds to trade on behalf of the Pool; (ii) Defendants were not registered with the CFTC as required by the Act and were therefore operating an unlawful business enterprise; and (iii) purported "returns" paid to some participants were in fact the principal deposits of other participants and were not generated by profitable trading.  These material omissions violated 7 U.S.C. § 6c(b) (2012).

27.     The Complaint also sufficiently alleges that Defendants intentionally made the following material misrepresentations, among others:  (i) participants' funds would be pooled and used to trade binary options contracts, among other things, for the benefit of participants; (ii) guaranteed profits would be paid to participants (*e.g.*, up to a 300% return every three weeks); and (iii) guaranteed referral fees would be paid to participants in the amount of one BTC for every BTC and/or equal to twenty percent (20%) of the assets invested by their friends.  These material misrepresentations violated 7 U.S.C. § 6c(b) (2012).

### ii.        Misappropriation

28.     The Complaint also sufficiently alleges that Defendants violated 7 U.S.C. § 6c(b) (2012) by misappropriating participants' funds.  Misappropriation of customer funds constitutes fraud in violation of 7 U.S.C. § 6b (2012).  *See CFTC v. Driver*, 877 F. Supp. 2d at 978 (finding that "[s]oliciting or obtaining funds from investors for trading, then failing to trade the funds while using them for personal or business expenses, is misappropriation" and granting summary judgment to CFTC on claims that commodity pool operator's misappropriation of funds violated 7 U.S.C. §§ 6b and 6*o*); *CFTC v. Weinberg*, 287 F. Supp. 2d 1100, 1106 ("Defendant's misappropriation of funds entrusted to him for trading purposes is 'willful and blatant fraudulent activity' that clearly violates Section 4b(a) of the Act [7 U.S.C. § 6b(a)].") (quoting *CFTC v. Noble Wealth*, 90 F. Supp. 2d at 687)).

### b.        Defendants Committed Fraud as Commodity Pool Operators (Count II)

29.     7 U.S.C. § 1a(11) (2012) defines a commodity pool operator ("CPO") as, among other things, "any person engaged in a business that is of the nature of a commodity pool . . . and who solicits, accepts, or receives from others funds, securities, or property . . . for the purpose of trading in commodity interests."

30.     17 C.F.R. § 1.3 (2019) defines an associated person ("AP") of a CPO as any person who is associated with "[a] [CPO] as a partner, officer, employee, consultant, or agent (or any natural person occupying a similar status or performing similar functions), in any capacity which involves (i) the solicitation of funds, securities, or property for a participation in a commodity pool or (ii) the supervision of any person or persons so engaged."

31.     Pursuant to 7 U.S.C. § 6*o*(1)(A), (B) (2012), it is unlawful for CPOs or APs of CPOs, "by use the mails or any other means of interstate commerce, directly or indirectly—(A)

10

to employ any device, scheme, or artifice to defraud any . . . participant or prospective . . . participant; or (B) to engage in any transaction, practice, or course of business which operates as a fraud or deceit upon any . . . participant or prospective . . . participant." "Section 4*o*(1) of the Act [7 U.S.C. § 6*o*(1)] broadly prohibits fraudulent conduct by a Commodity Pool Operator" and "applies to all CPOs whether registered, required to be registered, or exempted from registration." *Weinberg*, 287 F. Supp. 2d at 1107-08 (citing *CFTC v. Skorupskas*, 605 F. Supp. 923, 932-33 (E.D. Mich. 1985)).  The same conduct that constitutes violations of 7 U.S.C. § 6c(b) (2012) described above (*i.e.*, Defendants' misrepresentations and omissions) also constitutes violations of 7 U.S.C. § 6*o*(1).  *See Weinberg*, 287 F. Supp. 2d at 1108 (finding the "same conduct" by defendant that violates 7 U.S.C. § 6b also violates 7 U.S.C. § 6*o*(1)).  The same elements of proof regarding Defendants' conduct described above in violation of 7 U.S.C. § 6c(b) (2012) also demonstrate a violation of 7 U.S.C. § 6*o*(1)(A), (B) (2012).

32.    As alleged in the Complaint, during the Relevant Period, Saffron acting as a CPO, and from September 6, 2018 through the present, Defendants acting as CPOs and/or as an AP of a CPO, violated 7 U.S.C. § 6*o*(1)(A), (B) (2012) by using interstate commerce to fraudulently solicit funds from participants for the purported purpose of trading binary options contracts on forex and cryptocurrency pairs.

### c.    Defendants Failed to Operate Commodity Pool as a Separate Legal Entity, Failed to Receive Funds in the Pool's Name, and Commingled Funds (Count III)

33.    17 C.F.R. § 4.20(a)(1) (2019) provides that a CPO must operate its pool "as an entity cognizable as a legal entity separate from that of the pool operator," with certain exceptions not applicable here.

34.    Defendants, who operated the Pool at issue, maintained no distinction between

themselves and the Pool and failed to establish the Pool as a separate legal entity, all in violation of 17 C.F.R. § 4.20(a)(1) (2019).

35.    17 C.F.R. § 4.20(b) (2019) requires all funds, securities, or other property received by a CPO from pool participants to be "received in the pool's name."

36.    As Defendants failed to create and maintain the Pool as a separate legal entity, at no time were funds from pool participants "received in the pool's name." Defendants therefore violated 17 C.F.R. § 4.20(b) (2019) when they accepted pool participants' funds.

37.    17 C.F.R. § 4.20(c) (2019) prohibits a CPO from commingling the property of the pool with the property of any other person.

38.    While acting as CPOs, Defendants violated 17 C.F.R. § 4.20(b) (2019) by commingling pool participants' funds with Saffron's own personal funds.

        **d.    Defendants Failed to Register as CPOs, and Saffron Failed to Register as an AP of a CPO (Count IV)**

39.    7 U.S.C. § 6m(1) (2012) provides that it is unlawful for any CPO, unless registered with the CFTC, to make use of the mails or any means or instrumentality of interstate commerce in connection with its business as a CPO, with certain exceptions not applicable here.

40.    7 U.S.C. § 6k(2) (2012) makes it unlawful for any person to be associated with a CPO as an officer or agent (or any person occupying a similar status or performing similar functions), in any capacity that involves the solicitation of funds or property for participation in a commodity pool, unless such person is registered with the CFTC as an AP of a CPO.

41.    The Complaint sufficiently alleges that during the Relevant Period, Saffron, and from September 6, 2018 through the present, Circle Society, used interstate commerce in connection with his/its business as CPOs, while failing to register with the CFTC as CPOs in violation of 7 U.S.C. § 6m(1) (2012).

12

42.     The Complaint sufficiently alleges that from September 6, 2018 through the present, Saffron was associated with CPO Circle Society as an officer or agent in a capacity that involved the solicitation of funds or property for participation in a commodity pool, while failing to register with the CFTC as an AP of a CPO in violation of 7 U.S.C. § 6k(2)(2012).

### e.     Principal-Agent and Control Person Liability

43.     The Complaint sufficiently alleges that Saffron at all times controlled Circle Society and did not act in good faith and knowingly induced Circle Society to violate the Act and Regulations.  Pursuant to 7 U.S.C. § 13c(b) (2012), the Court finds Saffron liable for Circle Society's violations of the Act and Regulations.

44.     The Court also finds that Saffron acted within the course and scope of his employment, agency, or office with Circle Society.  Pursuant to 7 U.S.C. § 2(a)(1)(B) (2012) and 17 C.F.R. § 1.2 (2019), Circle Society is therefore liable as principal for Saffron's violations of the Act and Regulations.

### 2.     Default Judgment Is Proper Under the Remaining *Eitel* Factors

**Possibility of Dispute Concerning Material Facts**

45.     The Court finds that there is no possibility of a dispute concerning material facts because Defendants have conceded all allegations in the Complaint, which must be taken as true for purposes of this Motion.  *See* Fed. R. Civ. P. 8(b)(6); *Trustees of The Plumbers & Pipefitters Nat. Pension Fund & Int'l Training Fund v. All Seasons Interior & Exterior Maint., Inc.*, No. 2:14-CV-00436-GMN, 2015 WL 4724227, at *4 (D. Nev. Aug. 7, 2015) (finding "[g]iven the sufficiency of the Complaint, the evidence presented by Plaintiff, and the Defendant's default, there are no factual disputes that preclude the entry of default judgment").

**Whether Default Was Due to Excusable Neglect**

46.     Defendants' failure to respond to the Complaint is not the result of "excusable

1    neglect." Circle Society was properly served with the Summons, Complaint, and all associated

2    papers through its Registered Agent on October 7, 2019.  Aff. of Service, ECF No. 14.  Circle

3    Society's deadline to answer or move against the Complaint expired on October 28, 2019.  The

4    Clerk of Court granted the CFTC's Application for Entry of Default Against Circle Society on

5    November 5, 2019.  Clerk's Entry of Default Against Circle Society, ECF No. 21.  Similarly,

6    Saffron was properly served with the Summons, Complaint, and all associated papers by

7    publication on November 29, 2019.  Proof of Service by Publication, ECF No. 27.  Saffron's

8    deadline to answer or move against the Complaint expired on December 20, 2019.  The Clerk of

9    Court granted the CFTC's Application for Entry of Default Against Saffron on December 23,

10   2019.  Clerk's Entry of Default Against Saffron, ECF No. 42.  Following the Clerk's entry of

11   default, Saffron, acting in a *pro se* capacity, filed an untimely and procedurally improper Answer

12   to the CFTC's Complaint.  Answer, ECF No. 43.  The Court struck Saffron's Answer on January

13   30, 2020, and ordered Saffron to file a motion to set aside the default pursuant to Fed. R. Civ. P.

14   55(c) by February 13, 2020.  Order Granting Mot. to Strike Answer, ECF No. 52.  Saffron failed

15   to file a motion to set aside the default.

16

17          47.    There is no indication that Defendants' failure to plead or properly respond to the

18   Complaint is due to excusable neglect.  *See R&R Partners, Inc. v. Humble TV, LLC*, No. 3:19-

19   cv-00016-MMD-WGC, 2019 WL 5684174, at *2 (D. Nev. Nov. 1, 2019) (finding twenty-seven

20   days between service of Complaint and Summons and Entry of Clerk's Default to be an

21   "extended period of time" demonstrating it is unlikely Defendant's failure resulted from

22   excusable neglect); *see also Bd. of Trustees of The Teamsters Local 631 Sec. Fund For S.*

23   *Nevada v. Grand Expo (USA), Inc.*, No. 2:14-CV-02017-MMD, 2015 WL 4113218, at *4 (D.

24   Nev. July 8, 2015) (finding unlikely that default resulted from excusable neglect due to

25

26

27

28
                                            14

Defendant's "repeated failure to respond" to Plaintiff's letter requesting documents).

**Possibility of Prejudice to Plaintiff if Default Judgment Is Not Entered**

48.    The CFTC has established that it will suffer prejudice if default judgment is not entered because it will be "left without a judicial resolution of its complaint and the remedies it seeks if a default judgment is not entered in its favor."  *See CFTC v. My Global Leverage, LLC*, No. 2:15-cv-00745-APG-PAL, 2016 WL 8257337, at *1 (D. Nev. Aug. 26, 2016) (finding "[b]ecause the defendants have refused to participate in the case, the Commission is prejudiced by the defendants' frustration of the court proceedings"); *see also Trustees of The Plumbers & Pipefitters Nat. Pension Fund & Int'l Training Fund*, 2015 WL 4724227, at *1.  In light of Defendants' refusal to fully participate in the case and continued noncompliance with the Court's Civil Contempt Order (ECF No. 51), denying the CFTC's motion for default judgment would effectively deny defrauded clients the opportunity to be made whole by an order of restitution. *See R&R Partners, Inc. v. Humble TV,* 2019 WL 5684174, at *2 ("If Plaintiff's motion for default judgment is not granted, Plaintiff will likely be without other recourse for recovery."); *CFTC v. CIS Commodities LLC*, No. 2:11-CV-1069-GMN-GWF, 2013 WL 1944571, at *7 (D. Nev. May 8, 2013) (finding "if Plaintiff's Motion for Default Judgment is not granted, Plaintiff will likely be without other recourse to enjoin the company from continuing the violations").

49.    Further, failure to enter default judgment would frustrate the important policy goal of protecting the integrity of the commodity futures markets.  *See Stephen Bronte, Advisors, LLC v. CFTC*, 90 F. App'x 251, 252 (9th Cir. 2004) (describing CFTC as "'the 'statutory guardian' entrusted with the enforcement of the congressional scheme for safeguarding the public interest in the commodity futures markets'") (citing *Lawrence v. CFTC*, 759 F.2d 767, 776 (9th Cir. 1985)); *SEC v. Fortitude Grp., Inc.*, No. 1:16-cv-50, 2017 WL 818604, at *2 (W.D.

Pa. Feb. 10, 2017) (granting SEC's motion for default judgment because SEC would "be prejudiced by its inability to effectively enforce federal securities laws" if motion were denied).

**Strong Policy Favoring Decisions on the Merits**

50.     Although the Federal Rules and public policy favor a decision on the merits, "[d]efendant's failure to answer Plaintiff's Complaint makes a decision on the merits impractical, if not impossible." *R&R Partners, Inc. v. Humble TV, LLC*, 2019 WL 5684174, at *3. The CFTC has sufficiently pleaded facts supporting its claims and under these circumstances the policy favoring decisions of cases on their merits does not warrant denying default judgment.

**Sum of Money at Stake**

51.     The amount of money at stake in relation to the seriousness of Defendants' conduct does not warrant denying default judgment. The relief Plaintiff seeks is reasonable, is authorized by the Act and Regulations, and is consistent with prior default judgment awards in similar CFTC actions. *See, e.g.*, *CFTC v. My Global Leverage,* 2016 WL 8257337, at *6 (entering default judgment and ordering defendants to pay over $1.4 million in restitution and a civil monetary penalty for soliciting $786,085 from approximately 12 customers in off-exchange precious metals transactions); *CFTC v. Williams*, No. 2:17-cv-01325, 2018 WL 3853992, at *7, *9, *11 (D. Ariz. Mar. 16, 2018) (entering default judgment and ordering defendants to pay $9.7 million in civil monetary penalties and $9.7 million in restitution); *CFTC v. Safevest, LLC*, No. 8:08-cv-474, 2009 WL 2448116, at *2, *4-5 (C.D. Cal. July 13, 2006) (finding defendants in default and ordering $17.8 million in disgorgement, $17.8 million in restitution, and $2 million in civil monetary penalties).

## IV.        REMEDIES AND DAMAGES

**A.        Permanent Injunction**

52.        Pursuant to 7 U.S.C. § 13a-1(a) (2012), "[t]he CFTC is entitled to a permanent injunction upon a showing that a violation [of the Act or Regulations] has occurred and is likely to continue unless enjoined."  *CFTC v. Driver*, 877 F. Supp. 2d 968, 981 (C.D. Cal. 2012).  As a result, "[o]nce a violation of the Act has been shown, the moving party need only show the existence of some reasonable likelihood of future violations."  *CFTC v. CIS Commodities LLC*, 2013 WL 1944571, at *10 (quoting *CFTC v. Co Petro Mktg. Grp., Inc.*, 502 F. Supp. 806, 818 (C.D. Cal. 1980)).

53.        The Court may infer a likelihood of future violations from past unlawful conduct. *CFTC v. CIS Commodities LLC*, 2013 WL 1944571, at *10.  In drawing inferences from past conduct, courts "look at the totality of the circumstances and when the violation has been predicated upon systematic wrongdoing, rather than an isolated occurrence, a court should be more willing to enjoin future conduct."  *Id.*  In deciding whether to issue a permanent injunction, the Court may also consider the following factors:  "(1) the egregiousness of the defendant's actions, (2) the isolated or recurrent nature of the infraction, (3) the defendant's recognition of the wrongful nature of his conduct, and (4) the likelihood that the defendant's occupation will present opportunities for future violations."  *Id.*

54.        As described above, the well-pleaded facts of the Complaint and the evidence Plaintiff has placed before the Court through declarations establish that Defendants' unlawful conduct makes it highly likely that they will be repeat violators of the Act and Regulations unless permanently enjoined by this Court.

55.        As alleged, Defendants fraudulently solicited and misappropriated at least

17

$15,815,967 from at least 179 participants over a multi-year period and took pains to conceal the fraud, including by making "Ponzi" scheme-like payments to certain participants.

56.     Based on the foregoing, the Court finds that the allegations of the Complaint, and the evidence Plaintiff has submitted in this action establish that:

a.   Saffron and Circle Society violated 7 U.S.C. § 6c(b) (2012) and 17 C.F.R. § 32.4 (2019);

b.   Saffron and Circle Society violated 7 U.S.C. § 6*o*(1)(A)-(B) (2012);

c.   Saffron and Circle Society violated 17 C.F.R. § 4.20(a)(1), (b), and (c) (2019);

d.   Saffron and Circle Society violated 7 U.S.C. § 6m(1) (2012);

e.   Saffron violated 7 U.S.C. § 6k(2) (2012); and

f.   There is a reasonable likelihood that Defendants will continue to violate the Act and Regulations unless permanently restrained and enjoined by this Court.  The intentional and egregious nature of Defendants' fraudulent conduct warrants permanent injunctive relief, including registration and trading bans.

57.     Accordingly, Defendants and their agents, servants, employees, assigns, attorneys, holding companies, alter egos, and persons in active concert or participation with them, including any of their successors, are permanently restrained, enjoined, and prohibited from directly or indirectly:

a.   engaging in conduct that violates 7 U.S.C. §§ 6c(b), 6k(2), 6m(1), 6*o*(1)(A)-(B), and 17 C.F.R. §§ 4.20(a)(1), (b), and (c), and 32.4 (2019);

b.   trading on or subject to the rules of any registered entity (as that term is defined in 7 U.S.C. § la(40) (2012));

c.   entering into any transaction involving "commodity interests" (as that term is defined

18

in 17 C.F.R. § 1.3(yy) (2019)) for their own personal account or for any account in which they have a direct or indirect interest;

d.  having any commodity interests traded on their behalf;

e.  controlling or directing trading for or on behalf of any other person or entity, whether by power of attorney or otherwise, in any account involving commodity interests;

f.  soliciting, receiving, or accepting any funds from any person for the purpose of purchasing or selling any commodity interests;

g.  applying for registration or claiming exemption from registration with the CFTC in any capacity, and engaging in any activity requiring registration or exemption from registration with the CFTC, except as provided for in 17 C.F.R. § 4.14(a)(9) (2019);

h.  acting as a principal (as that term is defined in 17 C.F.R. § 3.1(a) (2019)), agent, or any other officer or employee of any person registered, exempted from registration, or required to be registered with the CFTC, except as provided for in 17 C.F.R. § 4.14(a)(9) (2019); and

i.  engaging in any business activities related to commodity interests.

**B.    Restitution, Civil Monetary Penalty, and Post-Judgment Interest**

**1.    Restitution**

58.    7 U.S.C. § 13a-1(d)(3)(A) (2012) authorizes the CFTC to seek, and the Court to impose, equitable remedies for violations of the Act, including "restitution to persons who have sustained losses proximately caused by such violation (in the amount of such losses)." Restitution exists to "restore the status quo" and reflects "the difference between what defendants obtained and the amount customers received back . . . ." *Driver*, 877 F. Supp. 2d at 981 (entering default judgment and ordering restitution equal to the amount of money solicited

19

minus the amount returned to customers); *Emerald Worldwide*, 2005 WL 1130558, at *10 ("The appropriate amount of restitution is the total amount invested by customers, less refunds made by the defendants to the customers.").

59. Defendants' illegal conduct caused participants to incur net losses totaling $14,841,280, which reflects the total funds Defendants fraudulently solicited ($15,815,967), minus the funds they diverted from some participants and passed to other participants in the manner of a "Ponzi" scheme ($974,687).  *See* Malas Decl. dated March 9, 2020 ("Malas Decl. IV") ¶¶ 2, 8, 10, 12.

60. Accordingly, Defendants are ordered to pay, on a joint and several basis, restitution in the amount of $14,841,280, which is equal to participants' net losses, plus post-judgment interest thereon (the "Restitution Obligation").  Post-judgment interest shall accrue beginning on the date of entry of this Order and shall be determined pursuant to 28 U.S.C. § 1961 (2012).

61. The Court appoints the National Futures Association ("NFA") as Monitor to distribute payments made against the Restitution Obligation to Defendants' clients.  The Monitor shall collect restitution payments from Defendants and make distributions as set forth below. Because the Monitor is acting as an officer of this Court in performing these services, NFA shall not be liable for any action or inaction arising from NFA's appointment as Monitor, other than actions involving fraud.

62. Defendants shall make Restitution Obligation payments under this Order to the Monitor in the name "David Saffron Restitution Fund" and shall send such payments by electronic funds transfer, or by U.S. postal money order, certified check, bank cashier's check, or bank money order, to the Office of Administration, National Futures Association, 300 South

20

Riverside Plaza, Suite 1800, Chicago, Illinois 60606, accompanied by a cover letter identifying Defendants and the name and docket number of this proceeding. Defendants shall simultaneously transmit copies of the cover letter and the form of payment to the Chief Financial Officer, Commodity Futures Trading Commission, Three Lafayette Centre, 1155 21st Street, N.W., Washington, D.C. 20581.

63. The Monitor shall oversee the Restitution Obligation and shall have the discretion to determine the manner of distribution of such funds in an equitable fashion to Defendants' participants identified by the CFTC, or may defer distribution until such time as the Monitor deems appropriate. In the event that the amount of Restitution Obligation payments to the Monitor are of a *de minimis* nature such that the Monitor determines that the administrative cost of making a distribution to eligible clients is impractical, the Monitor may, in its discretion, treat such restitution payments as civil monetary penalty payments, which the Monitor shall forward to the CFTC pursuant to the instructions for civil monetary penalty payments set forth below.

64. Defendants shall cooperate with the Monitor as appropriate to provide such information as the Monitor deems necessary and appropriate to identify Defendants' clients to whom the Monitor, in its sole discretion, may determine to include in any plan for distribution of any Restitution Obligation payments. Defendants shall execute any documents necessary to release funds that they hold in any repository, bank, investment, or other financial institution, wherever located, in order to make partial or total payment toward the Restitution Obligation.

65. The Monitor shall provide the CFTC at the beginning of each calendar year with a report detailing the disbursement of funds to Defendants' participants during the previous year. The Monitor shall transmit this report accompanied by a cover letter identifying the name and docket number of this proceeding to the Chief Financial Officer, Commodity Futures Trading

21

Commission, Three Lafayette Centre, 1155 21st Street, N.W., Washington, D.C. 20581.

66.     The amounts payable to each participant shall not limit the ability of any participant to prove that a greater amount is owed from Defendants or any other person or entity, and nothing herein shall be construed in any way to limit or abridge the rights of any participant that exist under state or common law.

67.     Pursuant to Federal Rule of Civil Procedure 71, each participant of Defendants who suffered a loss is explicitly made an intended third-party beneficiary of this Order and may seek to enforce this Order to obtain satisfaction of any portion of the Restitution Obligation that has not been paid by Defendants, to ensure continued compliance with any provision of this Order, and to hold Defendants in contempt for any violations of any provision of this Order.

68.     To the extent that any funds accrue to the U.S. Treasury for satisfaction of the Restitution Obligation, such funds shall be transferred to the Monitor for disbursement in accordance with the procedures set forth above.

**2.     Disgorgement**

69.     7 U.S.C. § 13a-1(d)(3)(B) (2012) authorizes the CFTC to seek, and the Court to order "disgorgement of gains received in connection with such violation." "District courts have the power to order disgorgement for violations of the Act for the purpose of depriving the wrongdoer of his ill-gotten gains and deterring violations of the law." *CFTC v. Am. Bullion Exch. ABEX Corp.*, No. 8:10-cv-01876, 2014 WL 12603558, at *9 (C.D. Cal. Sept. 16, 2014) (internal citation and quotations omitted).

70.     A disgorgement calculation requires only a "reasonable approximation of profits causally connected to the violation," and "the amount of disgorgement should include all gains flowing from the illegal activities." *SEC v. JT Wallenbrock & Assocs.*, 440 F.3d 1109, 1113-14

22

(9th Cir. 2006) (internal quotations and citations omitted).  The "risk of uncertainty" in computing disgorgement "should fall on the wrongdoer whose illegal conduct created that uncertainty."  *SEC v. Platforms Wireless Int'l Corp.*, 617 F.3d 1072, 1096 (9th Cir. 2010) (quoting *SEC v. First City Fin. Corp.*, 890 F.2d 1215, 1232 (D.C. Cir. 1989)).

71.     As a result of Defendants' egregious and fraudulent conduct, they reaped gains in the amount of $15,815,967, which is the amount of funds participants provided to Defendants. *See* Malas Decl. IV ¶¶ 10-12.  Defendants have failed to provide Plaintiff or the Court with any business records or an accounting for the millions of dollars they wrongfully obtained (*see* Civil Contempt Order, ECF No. 52).  Any risk of uncertainty in computing the disgorgement amount falls on Defendants.

72.     Accordingly, Defendants are ordered to pay, on a joint and several basis, disgorgement in the amount of $15,815,967 (fifteen million, eight hundred fifteen thousand, nine hundred sixty seven dollars), plus post-judgment interest thereon ("Disgorgement Obligation"). Post-judgment interest shall accrue on the Disgorgement Obligation beginning on the date of this Order and shall be determined pursuant to 28 U.S.C. § 1961 (2012).

### 3.     Civil Monetary Penalty

73.     7 U.S.C. § 13a-1(d)(1) (2012) and 17 C.F.R. § 143.8(b)(1) (effective Jan. 13, 2020) authorize the CFTC to seek a civil monetary penalty equal to the higher of triple Defendants' monetary gain from each violation of the Act or Regulations, or $185,242 per violation.  The Court may "fashion a civil monetary penalty appropriate to the gravity of the offense and sufficient to act as a deterrent."  *Miller v. CFTC*, 197 F.3d 1227, 1236 (9th Cir. 1999)).

74.     The Court considers numerous factors in determining an appropriate civil

monetary penalty for violations of the Act and Regulations, including the nature of the violation of the Act or Regulations, whether scienter was present, the consequences of the violation, the financial benefit to defendants, and the harm to customers. *See CFTC v. Am. Bullion Exch. ABEX Corp.*, No. 8:10-cv-01876, 2014 WL 3896023, at *18 (C.D. Cal. Aug. 7, 2014) (citing *CFTC v. Arrington,* 998 F. Supp. 2d 847, 875 (D. Neb. 2014)).

75.     Acting intentionally and with scienter, Defendants fraudulently solicited and misappropriated at least $15,815,967 during the Relevant Period and then attempted to conceal their fraud by tendering "Ponzi" scheme-like payments to certain participants. *See* Malas Decl. dated Sept. 26, 2019 ("Malas Decl. II") ¶¶ 6(j), 69; Malas Decl. IV ¶¶ 8, 12.

76.     As a result of Defendants' illegal conduct, hundreds of participants incurred significant losses as Defendants enriched themselves. *See* Malas Decl. II ¶ 69; Malas Decl. IV. ¶¶ 10-12.  The Court finds that these circumstances warrant imposition of a significant civil monetary penalty in the amount of three times Defendants' gain ($15,815,967), which equals $47,447,901.  This penalty is authorized by 7 U.S.C. 13a-1(d)(1) (2012) and 17 C.F.R. § 143.8(b)(1) (effective Jan. 13, 2020) and is consistent with the penalties ordered in similar CFTC fraud cases.

77.     Accordingly, Defendants are ordered to pay, on a joint and several basis, a civil monetary penalty in the amount of $47,447,901 (forty seven million, four hundred forty seven thousand, nine hundred and one dollars), plus post-judgment interest ("CMP Obligation").  Post-judgment interest shall accrue on the CMP Obligation beginning on the date of this Order and shall be determined pursuant to 28 U.S.C. § 1961 (2012).

78.     Defendants shall pay the CMP Obligation by electronic funds transfer, U.S. postal money order, certified check, bank cashier's check, or bank money order.  If payment is to be

made other than by electronic funds transfer, then the payment shall be made payable to the

Commodity Futures Trading Commission and sent to the address below:

> MMAC/ESC/AMK326
> Commodity Futures Trading Commission
> Division of Enforcement
> 6500 S. MacArthur Blvd.
> Oklahoma City, OK 73169
> (405) 954-6569 office
> (405) 954-1620 fax
> 9-AMC-AR-CFTC@faa.gov

79.     If payment by electronic funds transfer is chosen, Defendants shall contact Marie

Thorne or her successor at the address above to receive payment instructions and shall fully

comply with those instructions.  Defendants shall accompany payment of the CMP Obligation

with a cover letter identifying Defendants and the name and docket number of this proceeding.

Defendants shall simultaneously transmit copies of the cover letter and the form of payment to

the Chief Financial Officer, Commodity Futures Trading Commission, Three Lafayette Centre,

1155 21st Street, N.W., Washington, D.C. 20581.

## V.     <u>MISCELLANEOUS PROVISIONS</u>

80.     Partial Satisfaction:  Acceptance by the CFTC or the Monitor of any partial

payment of the Restitution Obligation or the CMP Obligation shall not be deemed a waiver of

Defendants' obligation to make further payments pursuant to this Order, or a waiver of the

CFTC's right to seek to compel payment of any remaining balance.

81.     Injunctive and Equitable Relief Provisions:  The injunctive and equitable relief

provisions of this Order shall be binding upon Defendants, upon any person under their authority

or control, and upon any person who receives actual notice of this Order, by personal service, email,

facsimile or otherwise insofar as he or she is acting in active concert or participation with

Defendants.

82.     Continuing Jurisdiction of this Court:  This Court shall retain jurisdiction of this action to ensure compliance with this Order and for all other purposes related to this action, including any motion by Defendants to modify, or for relief from, the terms of this Order.

**IT SO ORDERED**:

_____

UNITED STATES DISTRICT JUDGE

DATED:      _____