Danielle E. Karst (D.C. Bar No. 481881)
Timothy J. Mulreany (Maryland Bar No. 8812160123)
**COMMODITY FUTURES TRADING COMMISSION**
Three Lafayette Centre
1155 21st Street, N.W.
Washington, D.C. 20581
Telephone:   (202) 418-6158 (Karst)
Telephone:   (202) 418-5306 (Mulreany)
Facsimile:   (202) 418-5523
dkarst@cftc.gov
tmulreany@cftc.gov

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEVADA**

| | |
|---|---|
| COMMODITY FUTURES TRADING COMMISSION,<br><br>　　　　　　　Plaintiff,<br><br>v.<br><br>DAVID GILBERT SAFFRON<br>a/k/a DAVID GILBERT and<br>CIRCLE SOCIETY, CORP.,<br><br>　　　　　　　Defendants. | Case No.  2:19-cv-1697-JAD-DJA<br><br>**PLAINTIFF CFTC'S OPPOSITION TO DEFENDANTS' MOTIONS TO SET ASIDE ENTRIES OF DEFAULT (ECF NOS. 63, 64)** |

Plaintiff Commodity Futures Trading Commission ("Commission" or "CFTC") submits the following Opposition to Defendants David Gilbert Saffron ("Saffron") and Circle Society, Corp.'s ("Circle Society") (collectively, "Defendants") untimely Motions to Set Aside the Entries of Default ("Motions to Set Aside Defaults," ECF Nos. 63, 64), and in support thereof, states as follows:

Defendants were properly served with the Complaint and Summonses and were aware of the deadlines to answer the Complaint.  The Clerk of Court entered defaults against Circle Society on November 5, 2019 (ECF No. 21) and Saffron on December 23, 2019 (ECF No. 42). At the January 24, 2020 Contempt Hearing and also by Order dated January 30, 2020, the Court directed Saffron to file a motion to set aside the entry of default entered against him by February

1

13, 2020.  Order Striking Saffron's Answer, ECF No. 52.  Defendants ignored the Court's order, and failed to move as ordered.  On March 20, 2020, in violation of the Order Striking Saffron's Answer and without seeking leave to modify the Court's order, Defendants filed their Motions to Set Aside Defaults.[1]

Defendants have demonstrated a pattern of contempt, inaction, and indifference to this Court's orders and are now attempting to once again avoid their obligations through false and misleading claims.  *See* Motions to Set Aside Defaults at p. 3, ECF Nos. 63, 64 (falsely claiming "[b]oth Defendants appeared pro se at the January 24th hearing"); *id*. at 5 (omitting any mention of the Contempt Order and mischaracterizing the Contempt Order document production provisions as mere "discovery requests"); Declaration of Saffron in Support of Motions to Set Aside Defaults at ¶ 1, ECF Nos. 63, 64 ("Saffron Declaration") ("On January 24, 2020, I appeared before this court and was asked, among other things, to retrieve information regarding the data banks of clients of Circle Society, Corp.").[2]  No "good cause" is alleged or demonstrated by Defendants.  Because Defendants' Motions and Saffron's self-serving declaration fail to

---

[1] As described in the CFTC's separate Motion to Strike the Filings Dated March 20, 2020 (ECF No. 67), attorney Marcus Mumford, together with local counsel Michael Van of the law firm Shumway Van, entered his appearance on behalf of Defendants and filed the Motions despite not being admitted to practice law before this Court.

[2] Saffron's Declaration is extremely vague and contains a number of undefined terms such as "data banks," "WordPress IDs," and "account identifiers."  In his Declaration, Saffron also admits to having in excess of 3,400 "clients."  Saffron Declaration at ¶¶ 3-5, ECF Nos. 63, 64.  Despite Saffron's admissions and prior representations to the Court that he does in fact have business records, no actual records have been produced to date.  *See* Plaintiff's Motion for Additional Sanctions in Furtherance of CFTC's Notice of Defendants' Non-Compliance with Civil Contempt Order dated January 30, 2020 at pp. 4-5, ECF No. 62.

demonstrate good cause for setting aside the Entries of Default under Fed. R. Civ. P. 55(c), the CFTC requests that the Court deny Defendants' Motions.

## I.     FACTUAL BACKGROUND[3]

### A.     Circle Society Was Properly Served and Aware of the Deadlines to Answer the Complaint and File Notice of New Counsel

The CFTC filed its Complaint against Defendants on September 30, 2019.  The CFTC served Circle Society with the Complaint and Summons via its Registered Agent on October 7, 2019.  Affidavit of Service, ECF No. 14.  The Summons clearly advised Circle Society that its Answer to the Complaint was due within twenty-one days of service, which was October 28, 2019.  Proof of Service on Circle Society (Ex. 2 to Affidavit of Service), ECF No. 14.  Despite being aware that its failure to answer would result in default, Circle Society did not file an answer.  Because Circle Society did not file a timely answer, the CFTC submitted an Application for Entry of Default against Circle Society pursuant to Fed. R. Civ. P. 55(a).  The Clerk of the Court entered default against Circle Society on November 5, 2019.  Clerk's Entry of Default, ECF No. 21.

Circle Society's former counsel Michael Van filed a Motion to Withdraw as Counsel on December 2, 2019.  Motion to Withdraw, ECF No. 28.  The Court granted the Motion to Withdraw and ordered at that time:

> The Court will require that Defendant Circle Society, Corp. advise the Court if it will retain new counsel by December 23, 2019 as it must retain new counsel if it intends to continue to litigate this matter. . . . Failure to respond may result in a recommendation to the United States District Judge . . . that dispositive sanctions be issued against Defendant Circle Society, Corp.

---

[3] The CFTC will limit the facts here to those relevant to Defendants' Motions to Set Aside Defaults and incorporates by reference those facts in the CFTC's Motion for Default Judgment as if fully set forth herein.  ECF No. 61.

3

Order dated Dec. 2, 2019, ECF No. 29.  As noted by the Court in its Order, corporations can only appear in court through an attorney.[4]  Circle Society failed to advise the Court it retained new counsel by the December 23, 2019 deadline ordered by the Court.  Finally, on March 20, 2020, over four months after the Clerk's Entry of Default against Circle Society and without seeking leave of the Court, Defendants filed Motions to Set Aside Defaults.  ECF Nos. 63, 64.

**B.  Saffron Was Properly Served and Aware of the Deadlines to Answer the Complaint and File a Motion to Set Aside the Default**

The CFTC served Saffron with the Complaint and Summons by publication on November 29, 2019.  Proof of Service by Publication, ECF No. 27.  The Summons clearly advised Saffron that his Answer to the Complaint was due within twenty-one days of service, which was December 20, 2019.  Affidavits of Publication (Exs. 1, 2 to Proof of Service by Publication), ECF Nos. 27-1, 27-2.  Because Saffron did not file a timely answer, the CFTC submitted an Application for Entry of Default against Saffron pursuant to Fed. R. Civ. P. 55(a).  The Clerk of the Court entered default against Saffron on December 23, 2019.  Clerk's Entry of Default, ECF No. 42.  Following the Clerk's Entry of Default against Saffron, Saffron filed an untimely Answer on December 23, 2019.  Answer, ECF No. 43.  The CFTC filed a Motion to Strike Saffron's Answer (ECF No. 45), which the Court granted on January 30, 2020 (ECF No. 52).

---

[4] Order dated Dec. 2, 2019, ECF No. 29 (citing *United States v. High Country Broad.*, 3 F.3d 1244, 1245 (9th Cir. 1993) (per curiam); *In re Am. W. Airlines*, 40 F.3d 1058, 1059 (9th Cir. 1999) (stating that "[c]orporations and other unincorporated associations must appear in court through an attorney.")).

At the January 24, 2020 Contempt Hearing, the Court explained to Saffron the requirement for him to file a motion to aside the entry of default, and he confirmed that he understood:

> [The Court]:  In order to file an answer and defend against the CFTC's allegations in their complaint, you'll first need to move to set aside the default that the Clerk has entered against you.  That's the first step that you will need to do.  Because your answer won't be considered.
>
> The CFTC has filed a motion to strike your answer because it was entered after – it was entered after the default was entered.  And because of the – just the timing of that, their motion is well taken, and I'm granting their motion to strike your answer.
>
> So if you want to defend against the allegations, you personally can file an answer, but first you're going to have to successfully move the Court to set aside the Clerk's entry of default.
>
> Does that make sense to you?
>
> [Saffron]:  It makes sense.

*See* Tr. Second Contempt Hearing Jan. 24, 2020 at 21:20-22:10 (ECF No. 65).  Later in the same hearing, the Court pointedly advised Saffron on the record that he had twenty days from that date to file a motion to set aside the default entered against him:

> [The Court]:  [Y]ou've got 20 days if you want to move to set aside that default and file an answer —
>
> [Saffron]:  Okay.
>
> [The Court]:  — okay?
>
> [Saffron]:  So 20 days to do that, but then 14 days to comply with the record?
>
> [The Court]:  Yes.
>
> [Saffron]:  Okay.  All right.  Okay.

*See* Tr. Second Contempt Hearing Jan. 24, 2020 at 26:3-10 (ECF No. 65).

5

Following the Contempt Hearing, the Court issued a Civil Contempt Order (ECF No. 51) and an Order Striking Saffron's Answer (ECF No. 52). The Order Striking Saffron's Answer set forth a clear deadline of February 13, 2020 for Saffron to file a motion under Fed. R. Civ. P. 55(c) to set aside the default. No motion to set aside the default was filed on or before February 13, 2020.

## II.  ARGUMENT

### A.  Legal Standard

Defendants have failed to address any of the factors required to demonstrate that "good cause" exists sufficient to set aside their defaults. Prior to a default judgment being entered, a default under Fed. R. Civ. P. 55(a) can be set aside by a district court for "good cause." To determine if good cause exists, the Court considers: "(1) whether the party seeking to set aside the default engaged in culpable conduct that led to the default; (2) whether it had no meritorious defense; or (3) whether reopening the default judgment would prejudice the other party."[5] *United States v. Signed Personal Check No. 730 of Yubran S. Mesle*, 615 F.3d 1085, 1091 (9th Cir. 2010) (quoting *Franchise Holding II v. Hunting Rests. Grp., Inc.*, 375 F.3d 922, 925-26 (9th Cir. 2004)). The above-mentioned factors set forth a "disjunctive" test, meaning that a motion to set aside entries of default should be denied "if any of the three factors [is] true." *Am. Ass'n of Naturopathic Physicians v. Hayhurst*, 227 F.3d 1104, 1108 (9th Cir. 2000) (quoting *In re Hammer*, 940 F.2d 524, 525-26 (9th Cir. 1991)). Defendants' failure to make a showing of good cause under any one of the factors "is sufficient to justify the district court's refusal" to set aside the defaults against them. *Cassidy v. Tenorio*, 856 F.2d 1412, 1415 (9th Cir. 1988). Here,

---

[5] These three factors, taken from *Falk v. Allen*, 739 F.2d 461, 463 (9th Cir. 1984), also govern relief under Fed. R. Civ. P. 60(b)(1) based upon "excusable neglect" for setting aside a default judgment. *See Brandt v. Am. Bankers Ins. Co.*, 653 F.3d 1108, 1111 (9th Cir. 2011).

Defendants fail on all three factors: Defendants' conduct solely caused the defaults, no meritorious defenses are alleged let alone discussed, and the prejudice to the CFTC's ability to prosecute this matter is not even addressed. Defendants thus do not meet their burden to set aside the Entries of Default.

### B.     Defendants' Disregard of This Action Constitutes Culpable Conduct

"A defendant's conduct is culpable if he has received actual or constructive notice of the filing and *intentionally* failed to answer." *Mesle*, 615 F.3d at 1092 (quoting *TCI Group Life Ins. Plan v. Knoebber*, 244 F.3d 691, 697 (9th Cir. 2001)) (emphasis in original). In order for a failure to answer to be intentional, "the movant must have acted with bad faith, such as an intention to take advantage of the opposing party, interfere with judicial decision making, or otherwise manipulate the legal process." *Id*. (internal quotations omitted). Culpable behavior "usually involves conduct by parties that is calculated to help them retain property in their possession, and avoid liability by staying out of court." *Id*. at 1094 (citations omitted). Culpable behavior is also typically found when "there is no explanation of the default inconsistent with a devious, deliberate, willful, or bad faith failure to respond." *Id*. at 1092 (citations omitted).

Saffron's intentionally manipulative conduct throughout these proceedings demonstrates his culpable conduct. Here, it is undisputed that Defendants had actual notice regarding this case, participating in hearings[6] and receiving court filings and multiple communications regarding the pending litigation and deadlines through the CM/ECF filing system, email, and regular mail. Circle Society was represented by experienced counsel until his withdrawal on

---

[6] Attorney Michael Van appeared as counsel for Circle Society at the October 29, 2019 and December 2, 2019 motion hearings. *See* Minutes of Proceedings, ECF Nos. 18, 30. Saffron appeared in a *pro se* capacity at the January 24, 2020 Contempt Hearing. *See* Minutes of Proceedings, ECF No. 53.

December 2, 2019. *See* Order dated Dec. 2, 2019, ECF No. 29. In addition, as noted above, Saffron personally appeared in Court for the January 24, 2020 Contempt Hearing and repeatedly confirmed on the record that he understood the requirement for him to file a motion to aside the Entry of Default against him and the twenty-day deadline for doing so. *See* Tr. Second Contempt Hearing Jan. 24, 2020 at 21:20-22:10, 26:3-10 (ECF No. 65).

Saffron's intentional, culpable conduct, including interfering with judicial decision making and manipulating these proceedings, is highlighted by his bad faith in refusing to obey this Court's orders. Rather than obey this Court's Order of Preliminary Injunction ("PI Order," ECF No. 31), Contempt Order (ECF No. 51), and Order Striking Saffron's Answer (ECF No. 52), Defendants have instead chosen to engage in a pattern of misinformation and falsehoods. Defendants' constantly changing "story" concerning the existence, location and accessibility of the business records they have refused to produce is prime example of their lack of credibility and bad faith. First, Defendants admitted through counsel that they had located records and would produce them. *See* Email from Van to CFTC dated Nov. 20, 2019, attached as Ex. 1 ("I have been and am continuing to locate documents that are responsive to your request. We will provide what we have as I indicated to you previously."). No records were ever produced. It should be noted that on or about November 20, 2019, Van neither alleged that records have been stolen nor that records would have to be "reconstructed." Van also did not mention the existence of an unnamed third party "website administrator," who possesses a "second key" needed to "reconstruct" records as later claimed by Saffron in his most recent declaration. Declaration of Saffron in Support of Defendant's Mem. in Opp. to CFTC's Motion for Additional Sanctions at ¶ 4 ("Saffron Declaration II"), ECF No. 68-2.

More than two months after Defendants admitted to having business records, Saffron appeared at the Contempt Hearing and not only admitted to possessing records, but claimed the records are in the possession of former counsel who refused to return the records to him. *See* Tr. Second Contempt Hearing Jan. 24, 2020 at 10:22-11:3 (ECF No. 65) ("I had given that to a previous attorney that had came — came in here, but he left and just didn't do anything and never gave me back my records."). Saffron mentioned that some records were allegedly "stolen" and further claimed he can "reconstruct" the records but said he would need at least two weeks to do so. *Id*. at 10:22-11:4. The Court gave him two weeks to produce business records to the CFTC, to no avail. At the Hearing, Saffron made no mention of a purported third party "website administrator" in Italy or elsewhere, or a purported "double key" security system, and he ultimately produced no business records. Defendants also failed to produce the computers, software and/or web applications they are purportedly using to "reconstruct" participant records.

After ignoring the Court's deadline for more than a month, Defendants filed the Motions to Set Aside Defaults, and Saffron alleges for the first time that there is a "website administrator" who purportedly is "critical . . . to reconstruct . . . records," but who is "frustrating" Saffron's efforts because this third party administrator is "under quarantine in Italy." Saffron Declaration II at ¶ 4, ECF No. 68-2. No name or address of this purported administrator is provided. No explanation is provided as to why this person is "frustrating" Saffron's efforts, nor is there any discussion that his "quarantine in Italy" prevents him from obtaining Internet access, should he even actually exist. It is submitted that there is no admissible evidence of any theft of records, and there is no evidence of any "website administrator."

9

Defendants magnify their culpable conduct by failing to comply with the Court's instructions and deadlines, failing to seek leave of Court to file untimely Motions to Set Aside Defaults, and offering no concrete reasons for their failure to do so in a timely manner. Defendants offer only unsubstantiated and unsupported claims of "mistake" and "excusable neglect" and fail to provide any facts that support any purported "mistake" or "excusable neglect." Instead, Defendants attempt to mischaracterize these proceedings by ignoring their contempt, alleging: "While the Court was apparently frustrated regarding the excuses and explanations offered by Mr. Saffron at the January 24th hearing, there was no indication from the Court's order calling Defendants' good faith into question." Motions to Set Aside Defaults at p. 5, ECF Nos. 63, 64. Conveniently, Defendants fail to mention that the "January 24th hearing" was the second Contempt Hearing and fail to acknowledge that the Court found Defendants in contempt for violating "multiple terms and conditions" of the Preliminary Injunction Order. *See* Civil Contempt Order, ECF No. 51; Tr. Second Contempt Hearing Jan. 24, 2020, ECF No. 65. Considering Defendants' manipulative conduct and track record of noncompliance with this Court's orders, including their continued refusal to comply with any provision of the Civil Contempt Order,[7] their inaction can only be described as deliberate and intentional. Defendants' request to set aside the Entries of Default should be denied based on their own culpable conduct.

    **C.**    **Defendants Fail to Make Any Showing of a Meritorious Defense**

A party in default is "required to make some showing of a meritorious defense as a prerequisite to vacating an entry of default." *Hawaii Carpenters' Trust Funds v. Stone*, 794 F.2d

---

[7] *See* CFTC's Notice of Defendants' Non-Compliance with the Civil Contempt Order, ECF No. 58; Plaintiff's Motion for Additional Sanctions in Furtherance of CFTC's Notice of Defendants' Non-Compliance with Civil Contempt Order dated January 30, 2020, ECF No. 62.

508, 513 (9th Cir. 1986) (upholding district court's denial of defendant's motion to set aside entry of default).  Here, Defendants do not even attempt to demonstrate a meritorious defense. *See Mesle*, 615 F.3d at 1094 ("A defendant seeking to vacate a default judgment must present specific facts that would constitute a defense.") (citations omitted).  It is well established that a defendant's "'mere general denial without facts to support it'" is not enough to justify vacating a default.  *Franchise Holding II*, 375 F.3d at 926 (quoting *Madsen v. Bumb*, 419 F.2d 4, 6 (9th Cir. 1969)).  "Legal conclusions, general denials, or simple assertions that the movant has a meritorious defense are [ ] insufficient." *Cassidy v. Tenorio*, 856 F.2d at 1415 (internal quotations omitted).

Defendants do not provide any facts or evidence supporting a meritorious defense. Defendants merely state that "[a]s will be set forth in greater detail in a subsequent filing with the Court, it increasingly appears that Plaintiff simply misunderstands the workings and basis of Defendants' business, to say nothing about the potential lack of subject matter jurisdiction." Motions to Set Aside Defaults at p. 6, ECF Nos. 63, 64.  To the extent Defendants raise lack of subject matter jurisdiction as their sole defense, it is completely unfounded.  This Court has subject matter jurisdiction because this case presents a federal question (*see* 28 U.S.C. § 1331 (2012)), and because federal law expressly authorizes the CFTC to sue and the court to grant appropriate relief (*see* 7 U.S.C. § 13a-1 (2012); 28 U.S.C. § 1345 (2012)).  Complaint ¶ 12, ECF No. 1.

Defendants' suggestion that the Court lacks jurisdiction and/or the CFTC lacks enforcement authority over a fraudulent scheme involving cryptocurrency such as this one is also without basis or merit.  It is well settled that the CFTC has the authority to bring this matter.  *See CFTC v. My Big Coin Pay, Inc.*, 334 F. Supp. 3d 492, 495 (D. Mass. 2018) (denying motion to

dismiss and finding that virtual currencies are "commodities" within the meaning of the Commodity Exchange Act); *CFTC v. McDonnell*, 332 F. Supp. 3d 641, 650-51 (E.D.N.Y. 2018) ("In extensive memoranda and orders, the court has found the Commission has standing and authority to bring this action for fraud involving virtual currencies (also referred to commercially as 'cryptocurrencies,' 'crypto,' 'crypto coins,' 'digital currencies,' and 'digital tokens')."). Here, as alleged in the Complaint, Defendants fraudulently solicited and accepted at least $15.8 million worth of Bitcoin and U.S. dollars from individuals in the United States and elsewhere to trade off-exchange binary option contracts on foreign currencies ("forex") and cryptocurrency pairs, all in violation of the Act. *See* Complaint ¶¶ 1, 22, ECF No. 1.[8] In no way does Defendants' use of cryptocurrency in their fraudulent binary options scheme shield them from an enforcement action by the CFTC.

Defendants' vague and flimsy assertions here are insufficient to justify vacating the Entries of Default. The Ninth Circuit has held that "[s]uch a naked, conclusory allegation, without a statement of underlying facts which tend to support such an allegation, is insufficient to make out a colorable claim to a meritorious defense." *Cassidy v. Tenorio*, 856 F.2d at 1416; *see also Franchise Holding II*, 375 F.3d at 926 (where defendant "offered the district court only conclusory statements that a dispute existed" regarding plaintiff's claims, court properly denied motion to set aside default under Rule 55(c)). "To permit reopening of the case in the absence of

---

[8] Since the filing of the CFTC's Complaint, the CFTC has obtained records and information that have revealed at least 165 additional pool participants, who provided at least $4.5 million to Defendants. Therefore, Defendants fraudulently solicited and accepted at least $15.8 million in funds from at least 179 participants. *See* Plaintiff's Motion for Default Judgment at p. 3 (ECF No. 61) and supporting Declaration of George H. Malas at ¶¶ 9-10 (ECF No. 61-1). However, it is likely that the CFTC's participant and deposit totals are much lower than the actual numbers. Saffron admits in his most recent declaration filed with the Court that Defendants have "taken in a total of **6,884 Bitcoin** from its clients," which has a current value in excess of $45.8 million. Saffron Declaration II at ¶ 2, ECF No. 68-2 (emphasis added).

12

some showing of a meritorious defense would cause needless delay and expense to the parties and court system." *Hawaii Carpenters' Trust Funds*, 794 F.2d at 513. In sum, Defendants' failure to make any showing of a meritorious defense is yet another independent basis on which the Court should deny Defendants' Motions.

> **D. Setting Aside the Entries of Default May Prejudice the CFTC's Ability to Obtain Relief for Pool Participants**

Denial of a defendant's Fed. R. Civ. P. 55(c) is proper where, as here, there is "the possibility that setting aside the default [ ] would prejudice" Plaintiff. *Franchise Holding II*, 375 F.3d at 926. To be prejudicial, the setting aside of a default "must result in greater harm than simply delaying resolution of the case." *TCI Group Life Ins. Plan v. Knoebber*, 244 F.3d 691, 701 (9th Cir. 2001). "The standard is whether [plaintiff's] ability to pursue his claim will be hindered." *Id.* (citing *Falk v. Allen*, 739 F.2d 461, 463 (9th Cir. 1984)). Delays can constitute prejudice when they "result in tangible harm such as loss of evidence, increased difficulties of discovery, or greater opportunity for fraud or collusion." *Id*. (quoting *Thompson v. Am. Home Assur. Co*., 95 F.3d 429, 433-34 (6th Cir. 1996)).

Defendants fail to address the factor of prejudice. Over the course of this litigation, Defendants have ignored deadlines and multiple court orders and had defaults entered against them. If Defendants are permitted to further delay, Defendants may continue their fraudulent behavior, including dissipating pool participants' funds and losing relevant evidence. For example, the CFTC has obtained information from participants in recent months that Saffron is providing payouts to some participants in an apparent attempt to "settle" with them outside of this litigation. *See* Declaration of George H. Malas in Support of Plaintiff's Motion for Default Judgment dated March 9, 2020 at ¶ 8, ECF No. 61-1. If Defendants are permitted to dissipate participants' funds by "settling" with certain participants or using them for Saffron's living

13

expenses, for example, then defrauded participants may be denied an opportunity to be made whole.

Additional delay may also result in the loss of evidence. Indeed, Saffron already claims that customer records have been stolen or lost. In his Declaration in Support of Defendants' Motions, Saffron alleges that participants' records were stolen from an unspecified storage unit: "Because most of the data banks in question were stolen when the storage unit was broken into, I had to expend a considerable amount of time — I estimate in excess of 15 days —to reconstruct most of the files requested." Saffron Declaration at ¶ 2, ECF Nos. 63, 64.[9] As discussed above, Saffron newly alleges that additional delays in providing documents are due to Circle Society's "website administrator" being "quarantined in Italy." Saffron Declaration II at ¶ 4, ECF No. 68-2. Given Saffron's myriad of claims regarding stolen and lost business records, any further delays will likely result in the continued loss or destruction of evidence. To foreclose this serious risk of prejudice, the Entry of Defaults against each Defendant should be preserved.

## **CONCLUSION**

Defendants have failed to establish good cause to set aside the Entries of Default in this matter, and their Motions to Set Aside Defaults should be denied on the basis of any one or all of the relevant three factors. Accordingly, the CFTC respectfully requests that the Court deny Defendants' untimely Motions to Set Aside Defaults.

---

[9] On February 28, 2020, Saffron provided the CFTC with a partial copy of a Los Angeles Police Department report dated February 5, 2019 filed by "Joshua Hayward" of Jacksonville, Texas, stating that Mr. Hayward's property (including comic books, a camera, a chair and "bitcoin") was purportedly stolen by "unknown individuals" from a storage locker on "Santa Monica Boulevard." Saffron's own document demonstrates the stolen property belonged to "Joshua Hayward," not Saffron. *See* CFTC's Motion for Additional Sanctions at p. 4, ECF No. 62.

In the event the Court deems it appropriate to hold a hearing on the relief requested herein, the CFTC moves that it be permitted to participate via telephone.[10]

Dated:  March 30, 2020

Respectfully submitted,

By: /s/ Danielle E. Karst
Danielle E. Karst
Timothy J. Mulreany
**COMMODITY FUTURES TRADING COMMISSION**
Three Lafayette Centre
1155 21st Street, N.W.
Washington, D.C. 20581
Telephone:  (202) 418-5000

---

[10] CFTC counsel is located in Washington, D.C. and requests to participate in any court hearing scheduled in the near future via telephone due to the current exigent circumstances created by COVID-19.

## CERTIFICATE OF SERVICE

I certify that on March 30, 2020, I served a copy of the foregoing *Plaintiff CFTC's Motion in Opposition to Defendants' Motions to Set Aside Defaults* on counsel of record below by filing a copy of the same with the Clerk of the Court using the CM/ECF system.

**Michael C. Van**
**Garrett Chase**
Shumway Van
8589 South Eastern Avenue, Suite 100
Las Vegas, NV 89123

**Marcus Mumford**
Mumford Law
1449 Devonshire Drive
Salt Lake City, UT 84108

                                                  /s/ Danielle E. Karst
                                                  Danielle E. Karst