Danielle E. Karst (D.C. Bar No. 481881)
Timothy J. Mulreany (Maryland Bar No. 8812160123)
**COMMODITY FUTURES TRADING COMMISSION**
Three Lafayette Centre
1155 21st Street, N.W.
Washington, D.C. 20581
Telephone: (202) 418-6158 (Karst)
Telephone: (202) 418-5306 (Mulreany)
Facsimile: (202) 418-5523
dkarst@cftc.gov
tmulreany@cftc.gov

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEVADA**

| | |
|---|---|
| COMMODITY FUTURES TRADING COMMISSION,<br><br>Plaintiff,<br><br>v.<br><br>DAVID GILBERT SAFFRON a/k/a DAVID GILBERT and CIRCLE SOCIETY, CORP.,<br><br>Defendants. | Case No. 2:19-cv-1697-JAD-DJA<br><br>**PLAINTIFF'S REPLY MEMORANDUM TO DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION FOR ADDITIONAL SANCTIONS IN FURTHERANCE OF THE CFTC'S NOTICE OF DEFENDANTS' NON-COMPLIANCE WITH THE COURT'S CIVIL CONTEMPT ORDER DATED JANUARY 30, 2020 (ECF NO. 68)** |

Plaintiff Commodity Futures Trading Commission ("Plaintiff" or "CFTC") hereby submits the following Reply Memorandum to the Opposition of Defendants David Gilbert Saffron ("Saffron") and Circle Society, Corp. ("Circle Society") (collectively, "Defendants") to the CFTC's Motion for Additional Sanctions in Furtherance of the CFTC's Notice of Defendants' Non-Compliance with the Court's Civil Contempt Order Dated January 30, 2020 ("Defs.' Opp.," ECF No. 68), and in support thereof states as follows.

**I.  SUMMARY**

Defendants' Opposition fails to set forth any legally cognizable justification for their continued non-compliance with the Court's Contempt Order. Contempt Order, ECF No. 51. Defendants take their efforts to evade their obligations to a new level by presenting additional

1

baseless excuses, blaming the CFTC for Defendants' own failures to comply, and falsely alleging that the CFTC has misled the Court on the civil contempt standard. Defendants rely on Saffron's spurious and self-serving declaration, which presents news claims that Defendants' data "was lost for various reasons," and the "Circle Society's website administrator . . . has been under quarantine in Italy for over a month." Declaration of Saffron in Support of Defs.' Mem. in Opp. to CFTC's Mot. for Additional Sanctions at ¶¶ 3-4 ("Saffron Decl. II"), ECF No. 68-2. These allegations directly contradict defense counsel's November 20, 2019 email in which he admitted: "I have been and am continuing to locate documents that are responsive to your request. We will provide what we have as I indicated to you previously." Email from Van to CFTC dated Nov. 20, 2019, attached as Ex. 1 to CFTC's Opp. to Defs.' Motions to Set Aside Defaults (ECF No. 69-1).

The simple fact remains that Defendants continue to refuse to comply with the Court's Order of Preliminary Injunction ("PI Order," ECF No. 31) and Contempt Order (ECF No. 51). Defendants have failed to meet their burden of submitting detailed evidence to establish any credible defense for their ongoing violations of the Contempt Order. Although Saffron admits to having more than 3,400 participants and receiving "6,884 Bitcoin," which has a current value in excess of $45.8 million, Defendants have failed to produce a single business record, an accounting of their assets, and complete responses to the questions set forth in the Contempt Order. Moreover, Defendants owe $110,000 in daily compliance fines to date but have failed to pay anything into the registry of the Clerk of the Court in violation of the Contempt Order. Contempt Order, ECF No. 51 at ¶¶ 5-6 (ordering each defendant to pay daily compliance fines of $1,000 per day, beginning on Feb. 8, 2020).

## II. DEFENDANTS HAVE FAILED TO REBUT PLAINTIFF'S PRIMA FACIE SHOWING OF CONTEMPT

### A. Legal Standard Requiring Defendants To Present Evidence

In an apparent attempt to dodge the issue of their refusal to comply with the Court's orders, Defendants falsely claim that the CFTC has "misled" the Court and failed to advise the Court of the correct civil contempt standard.  *See* Defs.' Opp. at pp. 2-3, ECF No. 68.  Contrary to Defendants' claims, the CFTC consistently set forth the correct legal standard for civil contempt in its two Show Cause Motions.  *See* Plaintiff's Mot. for Order to Show Cause as to Why Defendant Circle Society Should Not Be Held in Civil Contempt for Violation of the Court's Temporary Restraining Order at pp. 6-7, ECF No. 24 (setting forth civil contempt standard and citing *e.g.*, *United States v. Ayres*, 166 F.3d 991, 994 (9th Cir. 1999); *NLRB v. Trans Ocean Export Packing, Inc*., 473 F.2d 612, 616 (9th Cir. 1973); *CFTC v. Emerald Worldwide Holdings, Inc*., No. 2:03-cv-8339, 2004 WL 3186580, at *2 (C.D. Cal. July 29, 2004)); Plaintiff's Mot. for Order to Show Cause as to Why Defs. Should Not Be Held in Civil Contempt for Violations of the Court's PI Order at pp. 6-7, ECF No. 40 (same).  This Court relied upon this correct standard in issuing the Contempt Order.  Based upon this standard, and the Court's clear and unambiguous warnings to Defendants that continued non-compliance would result in additional sanctions, Saffron's persistent contempt has left the CFTC with no option but to seek his incarceration until such time as he fully complies with the Court's orders.

### 1. The Party Asserting Impossibility Defense Bears The Burden Of Producing Evidence Showing "Categorically And In Detail" Why It Is Unable To Comply

Defendants have never alleged it was impossible to comply with this Court's order; indeed, the record demonstrates just the opposite is true.  Defendants admitted through counsel Van that "I have been and am continuing to locate documents that are responsive to your

3

request. We will provide what we have as I indicated to you previously." Email from Van to CFTC dated Nov. 20, 2019, ECF No. 69-1. More than two months after Defendants admitted to having business records, Saffron appeared at the Contempt Hearing and not only admitted to possessing records, but claimed the records are in the possession of former counsel who refused to return the records to him. *See* Tr. Second Contempt Hearing Jan. 24, 2020 at 10:22-11:3 (ECF No. 65) ("I had given that to a previous attorney that had came — came in here, but he left and just didn't do anything and never gave me back my records."). Saffron later changed his story by claiming that a third-party "website administrator . . . in Italy" controls the records. *See* Saffron Decl. II at ¶ 4, ECF No. 68-2. An alleged contemnor may defend against a finding of contempt by demonstrating a present inability to comply. *Ayres*, 166 F.3d at 994. "Ability to comply is the crucial inquiry, and a court should weigh all the evidence properly before it determines whether or not there is actually a present ability to obey." *Id.* (internal citation and quotations omitted). The burden of showing the inability to comply falls on the alleged contemnor. *United States v. Rylander*, 460 U.S. 752, 757 (1983) ("It is settled, however, that in raising this defense, the defendant has a burden of production."); *NLRB v. Trans Ocean Export Packing, Inc.*, 473 F.2d 612, 616 (9th Cir. 1973) ("the federal rule is that one petitioning for an adjudication of civil contempt does not have the burden of showing that the respondent has the capacity to comply"). An impossibility defense "is not successful based on conclusory representations." *On Demand Direct Response, LLC v. McCart-Pollak*, No. 2:15-cv-1576, 2018 WL 3060524, at *7 (D. Nev. Apr. 20, 2018). Instead, the "party asserting the impossibility defense must show '***categorically and in detail***' why he is unable to comply." *FTC v. Affordable Media*, *LLC*, 179 F.3d 1228, 1241 (9th Cir. 1999) (citing *NLRB v. Trans Ocean Export Packing, Inc.*, 473 F.2d at 616) (emphasis added).

### 2. The Party Asserting Substantial Compliance Must Show That It Took All Reasonable Steps Within Its Power To Comply

Substantial compliance with a court order is "a defense to civil contempt, and is not vitiated by a few technical violations where every reasonable effort has been made to comply." *In re Dual-Deck Video Cassette Recorder Antitrust Litig.*, 10 F.3d 693, 695 (9th Cir. 1993) (internal citations and quotations omitted). A party charged with civil contempt may assert the substantial compliance defense if it took "all reasonable steps" within the party's power to comply, and the violation was merely "technical or inadvertent." *General Signal Corp. v. Donallco, Inc.*, 787 F.2d 1376, 1379 (9th Cir. 1986).

The Court has already determined that the "CFTC has provided clear and convincing evidence, ***which defendants have failed to rebut***, that defendants have violated the PI Order's terms and conditions by failing to provide an accounting of their assets and by refusing to permit inspection and copying of their books and records." Contempt Order at p. 5, ECF No. 51 (emphasis added). As explained below, Defendants have clearly failed to meet their burden of showing an inability to comply or substantial compliance defense.

### B. Defendants Have Failed To Meet Their Burden Of Proving That They Have A Defense For Failing To Comply With The Court's Order

In their Opposition, Defendants simultaneously claim they have "already substantially complied with the Court's Order" yet do not have the "present ability" to comply due to a multitude of purported reasons. *Compare* Defs.' Opp. at 3, ECF No. 68 (claiming "Mr. Saffron "has taken 'all reasonable steps' to comply with the Court's order") *with id.* at 8 (claiming "Mr. Saffron does not have the 'present ability' to produce records that he is still reconstructing"). As set forth below, Defendants have failed to demonstrate "categorically and in detail" why they are

unable to comply and have failed to demonstrate that they have taken "all reasonable steps" within their power to comply.

### 1.   Defendants Have Failed To Prove That They Are Unable To Comply

Defendants' ever-changing story offers a variety of unsubstantiated and contradictory reasons for their "'present inability' to produce records that [Saffron] is still reconstructing." Defs. Opp. at 7-11, ECF No. 68.  Defendants even attempt to shift the burden of showing their ability to comply onto the CFTC, when the burden is solely upon Defendants to show "categorically and in detail" why they are unable to comply.  *See NLRB v. Trans Ocean Export Packing, Inc.*, 473 F.2d at 616 (internal quotations and citations omitted).

Defendants have provided an evolving and unbelievable story concerning the existence, location, and accessibility of the business records they have refused to produce.  Initially, Defendants admitted through counsel that they had located business records and would produce them.  *See* Plaintiff's Opp. to Defs.' Mots. to Set Aside Defaults at pp. 8-9 and Ex. 1, ECF Nos. 69, 69-1.  More than two months after Defendants admitted to having business records, Saffron appeared at the January 24, 2020 Contempt Hearing and admitted to possessing records but claimed both that some records were allegedly stolen from a "storage facility," and a former counsel "never gave [him] back [his] records."  *See* Tr. Second Contempt Hearing Jan. 24, 2020 at 10:22-11:3 (ECF No. 65).  Saffron then claimed he required at least two weeks to "reconstruct the records."  *See id.* at 11:3-11:4.  The Court gave Saffron two weeks to produce business records to the CFTC, but he failed to do so.  The only actual document Saffron produced was not a business record but a partial copy of a February 5, 2019 Los Angeles Police Department report filed by "Joshua Hayward" of Jacksonville Texas, stating that Hayward's property (including comic books, a camera, a chair and "bitcoin") was purportedly stolen by "unknown individuals"

from a storage locker on "Santa Monica Boulevard." The police report does not establish any theft of Saffron's or Circle Society's records. To the contrary, the police report demonstrates that the stolen property in fact belonged to "Joshua Hayward," not Saffron or Circle Society. Even if the Court were to take the leap of faith that Saffron's claims of stolen records are true, Defendants failed to produce the business records that they perforce had to create and use to operate their fraudulent scheme subsequent to the alleged theft. Defendants' ever-changing story is simply without merit or credibility.

More recently, Saffron alleges for the first time in his March 26, 2020 declaration that his efforts are being "frustrated" by an unnamed third-party administrator "quarantined in Italy." Defs.' Opp. at 7-8, ECF No. 68; Saffron Decl. II at ¶ 4, ECF No. 68-2. Saffron provides no name or address of this purported "website administrator" who has allegedly "been with the Circle Society since its founding," no explanation as to why this person is "frustrating" his efforts, and no discussion of how his "quarantine in Italy" prevents him from obtaining Internet access. *Id.* Saffron's latest set of excuses are simply unbelievable.

Finally, in their Opposition, far from alleging it is impossible to produce records, Defendants allege that they are delayed in producing business records because they need a "protective order" to protect participants' "confidential information." *See id.* at 9-11. However, Defendants failed to raise any such issue with the Court, failed to seek any modification of the Contempt Order, and failed to seek a protective order from the Court. Defendants use their purported confidentiality concerns as a pretext and excuse for their refusal to produce any business records.

## 2. Defendants Have Failed To Prove That They Have Substantially Complied

### a. Defendants Have Failed To Provide A Single Business Record

Although Saffron admits to having more than 3,400 participants (Saffron Decl. at ¶¶ 3-5, ECF No. 63) and receiving "a total of 6,884 Bitcoin from its clients" in the past two years (Saffron Decl. II at ¶ 2, ECF No. 68-2), Defendants have failed to produce any business records typical of a legitimate business enterprise, such as emails, phone records, text records, billing records, invoices, correspondence, or state or federal tax returns. Instead of taking all reasonable steps to comply, Defendants fail to present evidence that they took any step of compliance prior to the Contempt Order's February 7, 2020 deadline. Their production of three Excel spreadsheets, two of which were produced after the February 7, 2020 deadline, in no way purges their contempt.

Saffron's failure to produce the records he claims to be using to "reconstruct" his participant records underlines the need for more severe sanctions. To date, Defendants have provided three Excel spreadsheets — described by Saffron as a "partially restored client list" — containing three unnamed columns of information, which appear to be a participant name, participant email address, and a virtual currency address.[1] *See* CFTC's Notice of Defs.' Non-Compliance with Civil Contempt Order at pp. 4-5, ECF Nos. 58, 58-1. Saffron's three spreadsheets contain approximately 2,035 customer names. *See id.*; Plaintiff's Mot. for

---

[1] Saffron provided the first Excel file on February 6, 2020, which contains approximately 1,242 customer names after removing duplicate names. Saffron provided the second Excel file containing two worksheets on February 28, 2020 (after the expiration of the Contempt Order's February 7, 2020 deadline), which contain approximately 3,032 customer names after removing duplicate names. However, many of the names in the second Excel file are duplicates of the names provided in the first Excel file. In the end, the CFTC combined both Excel files and removed duplicate names, leaving a total of approximately 2,035 participant names.

8

Additional Sanctions in Furtherance of CFTC's Notice of Defs.' Non-Compliance with Civil Contempt Order at pp. 4-5, ECF No. 62.  Saffron claims that these are "reconstructed" records but has failed to explain his process of reconstructing Defendants' business records and has failed to produce what he is using to allegedly "reconstruct" records.  He has failed to explain, for example, what information he possesses, how it is stored and in what format, and how he is using the information he possesses to "reconstruct" Defendants' business records.  Saffron's declarations are extremely vague and in no way shed any light on his reconstruction process, should one even exist.  *See* Saffron Decl. at ¶ 2, ECF Nos. 63, 64 (failing to define or explain "data banks in question," "WordPress IDs"); Saffron Decl. II at ¶ 4, ECF No. 68-2 (failing to explain how "certain records . . . are subject to complex, 'double key' security measures").  Defendants have also failed to produce any computers, software and/or web applications they are purportedly using to "reconstruct" their records.  For these reasons, the three Excel spreadsheets provided by Defendants do not constitute "substantial compliance."

### b. Defendants Have Failed To Provide Complete Responses To The Questions In The Contempt Order

Only in Defendants' recent filing do they even acknowledge their obligation to provide written responses to the three questions set forth in Paragraph Four of the Contempt Order. Defendants offer this excuse for their failure to respond: "Mr. Saffron's statements at the January 24th hearing and by producing the reconstructed records of his client's data, that ***Defendants essentially answered those questions posed in the affirmative***."  Defs.' Opp. at 5-6, ECF No. 68 (emphasis added).  Defendants further claim that "to eliminate any doubt on their answers to those questions, under oath, Mr. Saffron is attaching to this opposition a sworn declaration to this response that provides written answers to those questions under oath." *Id.* at 6.

9

Despite Defendants' claims of compliance, they nevertheless fail to provide complete responses to the questions set forth in Paragraph Four of the Contempt Order:

> No later than February 7, 2020, provide written responses to the CFTC, under oath, to the following questions:
>
> a. Have you held or controlled any virtual currency addresses, including possessing the private keys for any virtual currency address, that has had a balance greater than zero in the past two years?
>
>   i. *If so, identify the address, provide the corresponding private key for any virtual currency address, and provide the date on which you acquired that private key*.
>
> b. Have you participated in or directed any virtual currency transactions in the past two years?
>
>   i. *If so, identify the dates, currency, quantity, and your involved virtual currency address(es)*.
>
> c. *Identify all persons and/or entities to whom you have transferred virtual currency, beginning from December 2017 to the date of this Order, the date of each transfer, & provide the public keys and public addresses associated with said transfers, as well as the private keys you used to effect each transfer*.

Contempt Order at ¶ 4, ECF No. 51 (emphasis added).

Saffron provides only partial responses to paragraphs 4(a) and 4(b) of the Contempt Order: "I and the Company have held or controlled several addresses which held some form of cryptocurrency in the past two years, from which addresses the Company has participated in or directed transactions involving cryptocurrency in that same time period." Saffron Decl. II at ¶ 1, ECF No. 68-2. Saffron's responses are thus incomplete and do not provide the information required in paragraphs 4(a)(i), 4(b)(i), and 4(c), including any virtual currency addresses.

### c. Defendants Have Failed To Provide A Full Accounting Of Each Defendant's Assets

Defendants neither address their obligations under paragraph three of the Contempt Order to provide a "full accounting of each defendant's assets," nor do they offer any excuse for failing to do so.[2] No information has been provided as to the past or present disposition of the assets Defendants fraudulently obtained from thousands of participants in Defendants' illegal commodity pool.

## III. DEFENDANTS' CONTINUED FAILURES TO COMPLY WITH THE COURT'S CONTEMPT ORDER WARRANTS INCARCERATION

The CFTC has shown by clear and convincing evidence that Defendants have violated multiple provisions of the PI Order and Civil Contempt Order. Saffron has engaged in intentional, culpable conduct and has continually refused to obey the Court's orders and deadlines despite his empty promises at the Contempt Hearing over two months ago. *See* CFTC's Opp. to Defs.' Motions to Set Aside Defaults at pp. 7-10, ECF No. 69. Although the Court ordered Defendants to pay daily compliance fines of $1,000 each per day, beginning on February 8, 2020, these monetary sanctions have not been paid and have failed to coerce Defendants to comply with the Contempt Order. Therefore, coercive incarceration is necessary and is the sole option remaining to coerce Defendants to provide the records and accounting they admit to having. Contrary to Defendants' claim, incarceration in this context is not punitive but rather coercive in nature because the party "carries they keys of his prison in his own pocket." *Int'l Union v. Bagwell*, 512 U.S. 821, 828 (1994) (quoting *Gompers v. Bucks Stove & Range Co*.,

---

[2] *See* Contempt Order at ¶ 3, ECF No. 51: "No later than February 7, 2020, provide the CFTC with a full accounting of each defendant's assets, held jointly or separately, within or outside the United States, beginning from December 2017 for Saffron and from September 2018 for Circle Society to the date of this Order."

11

221 U.S. 418, 442 (1911)).  Under the circumstances of Defendants' conduct, incarceration is an appropriate coercive sanction to bring Defendants into compliance.  *See, e.g.*, *SEC v. Elmas Trading Corp.*, 824 F.2d 732, 733 (9th Cir. 1987) (dismissing appeal of civil contempt order and finding it was not an abuse of discretion for district court to find that defendant "can comply with its order and continue his incarceration until he does so"); *CFTC v. Emerald Worldwide Holdings, LLC*, No. 2:03-cv-8339, 2005 WL 77048, at *1 (C.D. Cal. Jan. 3, 2005) (granting application for arrest warrant of defendant who violated prior court order imposing civil contempt and fining defendants on daily basis until they made records available to CFTC); *SEC v. Bankers Alliance Corp.*, 881 F. Supp. 673, 678-79 (D.D.C. 1995) (imposing civil contempt sanctions that included fines and incarceration against defendants for failing to provide an accounting of assets pursuant to a preliminary injunction order).

## **CONCLUSION**

For the foregoing reasons, Plaintiff respectfully requests the relief identified in its *Motion for Additional Sanctions in Furtherance of the CFTC's Notice of Defendants' Non-Compliance with the Court's Civil Contempt Order*.  ECF No. 62.  The CFTC also moves the Court to provide any further and additional relief as the Court deems necessary and appropriate.[3]

Dated:  April 2, 2020                                             Respectfully submitted,

By: /s/ Danielle E. Karst
Danielle E. Karst
Timothy J. Mulreany
**COMMODITY FUTURES TRADING COMMISSION**
Three Lafayette Centre
1155 21st Street, N.W.
Washington, D.C. 20581

---

[3] In the event the Court deems it appropriate to hold a hearing on the relief requested, the CFTC moves that it be permitted to participate via telephone due to the current exigent circumstances created by COVID-19.

# CERTIFICATE OF SERVICE

I certify that on April 2, 2020, I served a copy of the foregoing *Plaintiff's Reply Memorandum to the Opposition of Defendants to the CFTC's Motion for Additional Sanctions in Furtherance of the CFTC's Notice of Defendants' Non-Compliance with the Court's Civil Contempt Order* on counsel of record below by filing a copy of the same with the Clerk of the Court using the CM/ECF system.

**Michael C. Van**
**Garrett Chase**
Shumway Van
8589 South Eastern Avenue, Suite 100
Las Vegas, NV 89123

**Marcus Mumford**
Mumford Law
1449 Devonshire Drive
Salt Lake City, UT 84108

/s/ Danielle E. Karst
Danielle E. Karst