**MICHAEL C. VAN (NV# 3876)**
**GARRETT R. CHASE (NV# 14498)**
Shumway Van
8985 S. Eastern Avenue, Suite 100
Las Vegas, NV 89123
Tel: (702) 478 7770
Fax: (702) 478 7779
Email: michael@shumwayvan.com
         garrett@shumwayvan.com
**MARCUS R. MUMFORD** (*pro hac vice* application forthcoming)
Mumford PC
1449 Devonshire Drive
Salt Lake City, UT 84108
Tel: (310) 909-6153
Email: mrmumford@gmail.com

Attorneys for David Gilbert Saffron and Circle Society, Corp.

### UNITED STATES DISTRICT COURT FOR THE
### DISTRICT OF NEVADA

| | |
|---|---|
| COMMODITY FUTURES TRADING COMMISSION, | Case No.: 19-cv-01697-KJD-DJA |
| Plaintiff, | |
| v. | **REPLY MEMORANDUM IN FURTHER SUPPORT OF MOTION TO SET ASIDE ENTRIES OF DEFAULT (ECF NO. 64)[1]** |
| DAVID GILBERT SAFFRON, *et al*, | |
| Defendants. | |

        Defendants Circle Society, Corp. (the "Circle Society" or "Company"), and David Saffron

(collectively, "Defendants") submit this reply in further support of their motion to set aside entries

of default ("Motion") and in response to the opposition filed by Plaintiff, the Commodity Future

---

[1] On March 20, 2020, Defendants filed a Motion to Set Aside Entry of Default (ECF No. 63) and an Errata version of the same, which corrected the caption to clarify that it is a Motion To Set Aside *Entries* Of Default (ECF No. 64) (emphasis added). The correction is negligible and specified in the first 3 pages of the Errata – and that document is otherwise identical to ECF No. 63. Accordingly, this reply will refer to the ECF No. 64 as the operative version of the Motion.

1

1  Trading Commission ("CFTC").

2       **I.      The CFTC's Opposition Applies the Wrong Standard.**

3  As a preliminary matter, the CFTC's opposition misstates and misapplies the proper

4  standard in opposing Defendants' motion to set aside entries of default. Specifically, the CFTC

5  conflates the standard for setting aside ***entries of default***, which is what Defendants are seeking

6  here, with the standard for setting aside a ***default judgment***, which has not yet been ordered in this

7  case. *See, e.g., Perfect Event Inc. v. Bosworth*, 2015 WL 13313488, at *2 (C.D. Cal. Sept. 17,

8  2015) ("The different treatment of default entry and judgment by Rule 55(c) frees a court

9  considering a motion to set aside a default entry from the restraint of Rule 60(b) and entrusts [the]

10  determination to the discretion of the court." (quoting *Hawaii Carpenters' Trust Funds v. Stone*,

11  794 F.2d 508, 513 (9th Cir. 1986))).

12  The Ninth Circuit has explained this distinction in the very cases cited by the CFTC. The

13  CFTC's opposition begins its standard section with language from *United States v. Signed*

14  *Personal Check No. 730 of Yubran S. Mesle*, 615 F.3d 1085, 1091 (9th Cir. 2010), arguing that

15  "Defendants have failed to address any of the factors required to demonstrate that 'good cause'

16  exists sufficient to set aside their defaults."[2] But *Mesle* distinguished the "good cause" situations

17  that arise Fed. R. Civ. P. 55(c) from those that arise under Fed. R. Civ. P. 60(b), holding that a

18  court's refusal to set aside an entry of default is a "more extreme" and more "drastic step" than its

19  refusal to set aside default judgment. *Mesle*, 615 F.3d at 1091; *see also Perfect Event*, 2015 WL

20  13313488, at *2-*5 (quoting from *Mesle*, *Franchise Holding II v. Huntington Restaurants Group,*

21  *Inc.,* 375 F.3d 922, 925-26 (9th Cir. 2004), *TCI Group Life Ins. Plan v. Knoebber*, 244 F.3d 691,

22  697 (9th Cir. 2001)),[3] and *Falk v. Allen,* 739 F.2d 461, 463 (9th Cir. 1984), and other cases to hold

23  that the moving party satisfied the "proper, more relaxed standard" that applies in cases such as

24  this one, and thus showed "good cause to set aside the clerk's entry of his default"). The Ninth

25  Circuit emphasized the importance of this distinction: "Crucially, however, 'judgment by default

---

[2] ECF No. 69 at 6.

[3] A portion of the *TCI Group* case was overruled on other grounds by Supreme Court in *Egelhoff v. Egelhoff ex rel. Breiner*, 532 U.S. 141 (2001).

is a drastic step appropriate only in ***extreme cases***; a case should, whenever possible, be decided on the merits.'" *Mesle*, 615 F.3d at 1091 (quoting *Falk*, 739 F.2d at 463) (emphasis added). On that basis, the *Mesle* Court reversed the lower court's refusal to set aside the entry of default, holding that "[h]ad the district court properly considered the 'extreme circumstances' requirement, it could not have reached the result that it did" because "[n]othing about Mesle's failure to respond … suggests ***extreme or exceptional circumstances*** such as might warrant the 'drastic step' of entering a default judgment against his interests." *Id.* at 1092 (emphasis added). Courts applying these rules have recognized that the "good cause" standard for setting aside the entry of default is "more relaxed" than the "more demanding" standard for setting aside default judgment. *Perfect Event*, 2015 WL 13313488, at *5. That "more relaxed" standard that applies here, and the CFTC is wrong to suggest otherwise.

## II.      Defendants Did Not Engage in Culpable Conduct Leading to the Default.

The Ninth Circuit has held that "[t]o determine whether there is good cause to set aside a party's default under Rule 55(c), 'a court must consider three factors: (1) whether [the party seeking to set aside the default] engaged in culpable conduct that led to the default; (2) whether [he] had [no] meritorious defense; or (3) whether reopening the default … would prejudice' the other party." *Mesle*, 615 F.3d at 1091 (citations omitted). In applying the first consideration, the CFTC is wrong to accuse Defendants of "bad faith" and "intentionally manipulative conduct throughout these proceedings" in this case.[4] On this point, the CFTC cites to *Mesle* to argue that "'[A] defendant's conduct is culpable if he has received actual or constructive notice of the filing of the action and intentionally failed to answer.'" *Mesle*, 615 F.3d at 1092 (quoting *TCI*, 244 F.3d at 697). But the CFTC omitted the next statement from *Mesle*, which clarifies: "[I]n this context the term 'intentionally' means that a movant cannot be treated as culpable simply for having made a conscious choice not to answer." *Id.*[5]

Accordingly, the CFTC was wrong to argue that Defendants' failure to answer within the

---

[4] ECF No. 69 at 7.

[5] The *Mesle* Court cited *TCI Group*, 244 F.3d at 697, to illustrate further how "a defendant 'intentionally' fails to respond when his conduct is 'wilful, deliberate or [in] bad faith.'"

1    time frame specified by the Court should be construed as an intentional act in bad faith simply

2    because they had been informed of the deadlines. For his part, and as the Court has previously

3    acknowledged, Mr. Saffron did attempt to file an answer.[6] At the January 24th hearing in this case,

4    the Court observed that Mr. Saffron had filed an answer, but held that it should be stricken because

5    it had been filed "after the default was entered" earlier that same day. The Court instructed Mr.

6    Saffron that he could "file an answer, but first you're going to successfully move the Court to set

7    aside the Clerk's entry of default,"[7] which is the relief Defendants seek here. The discussion then

8    turned to Mr. Saffron's questions about whether he and the Circle Society needed to retain counsel

9    to do that and how he could pay for that, given the terms of the Court's preliminary injunction.[8]

10   On this point, Defendants have previously explained the problems they were having in complying

11   with the Court's directives to produce documents while also seeking to retain experienced counsel.

12   Statements made by CFTC counsel have exacerbated these problems.

13       At the October 29th hearing in this matter, counsel for the Circle Society explained that he

14   had not even signed a retainer agreement *or received any retainer*, which did not stop CFTC

15   counsel from arguing to this Court how it was "very concerned that fees used to retain Mr. Van's

16   services may have been transferred in violation of this Court's orders."[9] At the January 24th

17   hearing, Mr. Saffron explained the difficulties he was having in retaining a lawyer and otherwise

18   supplying the discovery demanded by the Court's preliminary injunction and discovery order.

19   Notwithstanding those difficulties, as of that time, Defendants had already begun responding with

20   information demanded by the Court's preliminary order, which they have continued doing.[10] The

21   CFTC disparaged some of this information as "useless," but in doing so the CFTC failed to

22

---

23   [6] ECF No. 43.
     [7] ECF No. 65 (1/24/2020 Hrg.) at 21:13-22:20.

24   [8] *Id*. at 21:13-23:7.

25   [9] ECF No. 23 (10/29/2019 Hrg.) at 3:22-5:1. In the different context of a criminal prosecution,
     the Supreme Court recently cautioned the government from attempting to limit a party's access

26   to the untainted assets needed to retain the party's counsel of choice, holding that such actions
     violate the Sixth Amendment. *See Luis v. United States*, 136 S. Ct. 1083, 1088 (2016) ("The

27   nature and importance of the constitutional right taken together with the nature of the assets lead
     us to this conclusion.").

28   [10] *See, e.g*., ECF No. 68 at 6 & n.15.

4

1   acknowledge Defendants' good faith in trying to do as the Court's orders instructed.[11]

2   Additionally, Mr. Saffron has explained the delays that he has encountered since the

3   January 24th hearing.[12] Despite promising to accommodate Mr. Saffron, the CFTC has responded

4   to Mr. Saffron's inquiries with unhelpful statements about how Defendants were in contempt.[13]

5   Nevertheless, Defendants have worked extensively since the January 24th hearing to both retain

6   competent counsel and produce the promised discovery materials. *See, e.g., United States v.*

7   *$48,595.00*, 705 F.2d 909, 912-13 (7th Cir. 1983) (noting that time spent acquiring funds to hire a

8   competent attorney can constitute excusable neglect). In that time period, the CFTC has

9   persistently refused Defendants' requests for additional time or assistance, whether that be for the

10   CFTC's agreement to enter into a protective order or an additional link they needed to upload

11   discovery materials.[14] All of these facts detract from the CFTC's desired conclusion that the delays

12   experienced in answering the Complaint filed in this case have been the result of Defendants' bad

13   faith and culpable conduct.

14   **III.      Defendants Have Demonstrated Their Meritorious Defense.**

15   The CFTC next argues that "Defendants do not even attempt to demonstrate a meritorious

16   defense."[15] But that is far from an accurate statement. First, it fails to consider the answer that Mr.

17   Saffron previously attempted to file, entered on December 23, 2019, and which the court struck in

18   late January 2020 with instructions to Mr. Saffron that Defendants needed to obtain the relief they

19   now seek with this Motion before they can file an answer.[16] The answer that Mr. Saffron filed in

20

21   [11] ECF No. 50 (1/10/2020 Hrg.) at 6:8-18, 7:15, 9:16; ECF No. 65 (1/24/2020 Hrg.) at 5:12-21.
     [12] *See, e.g.,* ECF Nos. 64 & 68.

22   [13] *See, e.g.,* ECF No. 68 at 4.

23   [14] For example, the CFTC agreed at the October 29, 2019 hearing that it would make its requests
     for information "more specific," ECF No. 23 at 14:4-7, and it also failed to provide Defendants

24   with the protective order Defendants requested or the additional links Defendants requested in
     order to upload information to the CFTC. See ECF No. 68 at 4-5.

25   [15] ECF No. 69 at 11.

26   [16] See ECF No. 43. At the January 24th hearing, the Court observed that Mr. Saffron had filed
     this answer, but that it was going to strike it because the answer had been entered "after the

27   default was entered" earlier that same day, and thus Mr. Saffron could "file an answer, but first
     you're going to successfully move the Court to set aside the Clerk's entry of default," ECF No.

28   65 (1/24/2020 Hrg.) at 21:13-22:20, which is the relief that Defendants seek here.

December, though far from elegant, challenges a number of facts alleged in the Complaint and asserts defenses to the claims made by the CFTC, including but not limited to how Defendants had settled some of the claims asserted by the CFTC in its Complaint, and the fact that "some [of the alleged] witnesses claim to have invested but did not invest."[17]

The CFTC also omits the other efforts made by Defendants to present evidence of a meritorious defense. In applying this consideration, some of the very cases cited by the CFTC stress that it is not an "extraordinarily heavy" burden. *TCI Group*, 244 F.3d 691 at 700 (citing *In re Stone*, 588 F.2d 1316, 1319 n. 2 (10th Cir. 1978), where the court explained how the movant needed only demonstrate facts or law showing the trial court that "a sufficient defense is assertible"). As the court in *TCI Group* explained:

> That is why, for example, we held in *Falk v. Allen* that the defendant had a meritorious defense to an unlawful detainer action when she alleged that her landlord repeatedly accepted her late rental payments. Under Guam law, this allegation was sufficient to raise the defense of waiver, and the question whether the factual allegation was true would be the subject of the later litigation.

*Id.* (citing *Falk*, 739 F.2d at 463). Besides challenging the fact of whether the alleged investors invested or already settled their claims, the declaration of Mr. Saffron that the CFTC references in its opposition challenges the number of alleged investors, whether they are properly considered investors, and disputes whether any of the transactions were, or could be, valued in U.S. currency or non-cryptocurrency, as everything filed by the CFTC asserts.[18] In fact, the CFTC's opposition raises additional grounds to *grant* Defendants motion, as it raises questions about the number of alleged investors whose claims it seeks to assert, among other things:[19]

> Since the filing of the CFTC's Complaint, the CFTC has obtained records and information that have revealed at least 165 additional pool participants, who provided at least $4.5 million to Defendants. Therefore, Defendants fraudulently solicited and accepted at least $15.8 million in funds from at least 179 participants. However, it is likely that the CFTC's participant and deposit totals are much lower than the actual numbers. Saffron admits in his

---

[17] This sentence refers to the answer that Mr. Saffron filed, entered December 23, 2019, Docket No. 43, that the Court ordered stricken pursuant to ECF No. 52.
[18] See ECF 68 & 68-2 (Saffron Declaration).
[19] ECF 69 at 12 & n.8.

most recent declaration filed with the Court that Defendants have "taken in a total of 6,884 Bitcoin from its clients," which has a current value in excess of $45.8 million.[20]

Here, Defendants ask: how can the CFTC seek a default judgment holding that "Defendants fraudulently solicited and accepted at least $15.8 million in funds from at least 179 participants," where that number is so much greater than the 14 alleged in the complaint and where Defendants have disputed those facts – e.g.,

- the number of "participants" alleged (is it "at least 14," as set forth in the Complaint, or "at least 179," as it now asserts?),

- the currency alleged to have been exchanged (Defendants assert that none of the alleged transactions at issue "involved any form of U.S. currency or non-cryptocurrency"),[21]

- the deposits alleged to have been received and at issue here,

- the value of assets alleged to be involved in those transactions,

- whether some of the claims at issue have already been settled;

and where the CFTC's own allegations about what Defendants did, why it was wrong, and how much it owes in damages *keep shifting*? Because of how the CFTC's case has evidently expanded – from 14 participants to "at least 179" – the CFTC's own opposition presents facts that corroborate Defendants' meritorious defense and the need to resolve this case on the merits, as the Ninth Circuit requires. "Crucially, … 'a case should, whenever possible, be decided on the merits.'" *Mesle*, 615 F.3d at 1091 (quoting *Falk*, 739 F.2d at 463).

The CFTC cites *Franchise Holding II* to argue that a "mere general denial without facts to support it" is not enough to justify vacating a default. But that case illustrates the opposite of the facts presented here, as the party moving to set aside default in that case had already "conceded the question of liability, which went 'a long way to suggesting that at least as to liability the defendant has no meritorious defense.'" *Franchise Holding II*, 375 F.3d at 926. The CFTC also cited *Franchise Holding* to argue that Defendants have likewise presented "only conclusory statements that a dispute existed," *Id*. Yet, as demonstrated above, Defendants in this case have

---

[20] ECF No. 69 at 12 n.8 (citations omitted).
[21] See ECF No. 68-2 at ¶ 1.

explained the specific factual items that are disputed and challenged. The CFTC may want more specifics, but it fails to acknowledge or identify the shifting nature of the facts of its own case, where it is now seeking relief on behalf of 179 alleged participants, which are not fully identified, and whose transactions are not fully identified, and where the CFTC previously alleged only 14 participants. "As a general rule, default judgments are disfavored; cases should be decided upon their merits whenever reasonably possible." *Westchester Fire Ins. Co. v. Mendez*, 585 F.3d 1183, 1189 (9th Cir. 2009).

Finally, the CFTC's opposition admits that Defendants have raised issues concerning subject matter jurisdiction as part of their defenses. The CFTC argues this defense is "completely unfounded" as "[i]t is *well settled* that the CFTC has the authority to bring this matter."[22] As authority for this purportedly "well settled" holding, the CFTC only cites two cases from other jurisdictions, both of which acknowledge the unsettled nature of that question. One of those cases, *Commodity Futures Trading Comm'n v. My Big Coin Pay, Inc.*, 334 F. Supp. 3d 492, 497 (D. Mass. 2018), admitted how "scant" the "caselaw on this issue" was, and noted that it was only addressing the issue in the context of a Rule 12 motion to dismiss, where it must resolve any disputed issue in the CFTC's favor. The other case, *CFTC v. McDonnell*, 332 F. Supp. 3d 641, 651 (E.D.N.Y. 2018), involved a "particularly difficult" litigation brought by a pro se defendant whose primary contention was that the CFTC "ha[d] no power to proceed against him." But far from characterizing the issue of the CFTC's power to bring this case as "well settled," the court in *McDonnell* admitted there was at least one ruling from this Court's sister district in the Central District of California that "was aware of, and distinguished, this court's prior opinion finding that the [CFTC] had authority to bring the instant action against [the defendant]." *Id.* That case was *CFTC v. Monex Credit Co.*, 311 F. Supp. 3d 1173, 1189 n.12 (C. D. Cal. 2018),[23] which did not

---

[22] ECF No. 69 at 11 (emphasis added).

[23] On July 25, 2019, the Ninth Circuit reversed the ruling from *Monex*, on grounds that this Court may or may not find to be relevant to the CFTC's assertion of subject matter jurisdiction here. *See CFTC v. Monex Credit Co.*, 931 F.3d 966, 977 (9th Cir. 2019). That case involved the CFTC asserting jurisdiction over a precious metals broker accused of fraud for making margined sales of precious metals that were never actually delivered by the broker to its clients. The court

involve cryptocurrency transactions. For purposes of this Motion, it is significant that *McDonnell* acknowledged the *unsettled* nature of the subject matter jurisdiction issue and left it for appeal, noting that "[i]f the [CFTC] is ultimately found to be without jurisdiction and standing, this case should be dismissed." *McDonnell*, 332 F. Supp. 3d at 651. Far from "well settled," Defendants' potential subject matter defense is an issue that falls into the Ninth Circuit's preference to resolve matters on the merits.

**IV.      Setting Aside Entries of Default Here Does Not Unfairly Prejudice the CFTC.**

In its consideration of the last factor of the *Mesle* test, risk of prejudice to the non-moving party, the CFTC acknowledges that the prejudice in question must be more than "simply delaying resolution of the case," but argues that delays can constitute prejudice when they "result in tangible harm" to the non-moving party, "such as loss of evidence, increased difficulties of discovery, or greater opportunity for fraud or collusion." ECF No. 69 at 13 (citing *TCI Group*, 244 F.3d at 701). The holding from *TCI Group* is helpful here. There, the party moving to set aside default did so within a month of default judgment being entered – in contrast, default judgment has not even been entered against Defendants here. Defendants moved to set aside the clerk's entry of default within 11 days of the CFTC moving for default judgment.[24] The CFTC argues that was after the time set by this Court at the January 24th hearing, but the Court should take into account the totality of circumstances. Defendants have made the Court and the CFTC very aware of the difficulties they have encountered in this case, in both seeking to secure competent legal counsel and also to comply with the Court's preliminary orders.[25]

In *TCI Group*, the Ninth Circuit noted that "[i]t should be obvious why merely being forced to litigate on the merits cannot be considered prejudicial for purposes of lifting a default judgment":

> For had there been no default, the plaintiff would of course have had to litigate the merits of the case, incurring the costs of doing so. A default judgment gives the plaintiff something of a windfall by sparing her from

---

rejected, among other things, the broker's argument that would expand its ruling "to ordinary retail cash commodity sales" and was careful to limit its ruling to only the situation presented. *Id.*
[24] Compare ECF Nos. 61 and 64.
[25] *See* ECF Nos. 64 and 68.

> litigating the merits of her claim because of her opponent's failure to respond; vacating the default judgment merely restores the parties to an even footing in the litigation.

*TCI Group*, 244 F.3d at 701 (citing *Bateman v. United States Postal Service*, 231 F.3d 1220, 1225 (9th Cir. 2000), to illustrate how there can be "no prejudice simply because a party loses a quick victory due to an opponent's procedural default and must litigate on the merits"). That is what Defendants are seeking with this Motion: to restore the parties to an even footing.

The CFTC essentially argues that Defendants have proven themselves unworthy of being restored to even footing because of the difficulties they have encountered in this case to date. But relevant case law suggests the opposite. In *TCI Group*, 244 F.3d at 699, for example, the court observed that default judgment should be set aside in cases "where a party unfamiliar with the legal system defaulted at a time of extreme personal difficulty." That observation applies here, where Defendants have described the personal and professional difficulties they have encountered in trying to comply with the unfamiliar procedural rules, including Mr. Saffron filing an answer later in the same day when the clerk entered default, while also trying to comply with the terms of the Court's preliminary orders.

The CFTC raises the specter of a possible loss of evidence, but it fails to recognize how much work and effort Defendants have been putting into their efforts to *reconstruct* the lost data, and produce it in a usable format for the CFTC.[26] The CFTC raises the specter of increased difficulties of discovery, but it seems to ignore the fact that Defendants have been seeking to provide information and documents in their efforts to comply with the Court's preliminary orders. The CFTC *should* be seeking to accommodate Defendants' discovery efforts instead of obstructing them.[27] Similarly, the CFTC contends that the delay has given Defendants the opportunity to commit greater fraud or collusion, but it again ignores the significance of the Court's preliminary orders: that is exactly why the Court entered its preliminary orders in this case, and the CFTC has not presented any evidence of Defendants seeking to violate those orders with a greater alleged fraud or collusion. The bottom line for this inquiry is: the question of prejudice "is whether

---

[26] ECF No. 65 at 11:3-7, 18:14-16.
[27] *See* ECF No. 68 at 4-7.

[plaintiff's] ability to pursue his claim will be hindered." *TCI Group*, 244 F.3d at 701 (citing *Falk*, 739 F.2d at 463). The CFTC's opposition fails to establish how its claims will be hindered if the Court sets aside the clerk's entries of default. Nor do the facts in this case evince an intent "to take advantage of the opposing party, interfere with judicial decisionmaking, or otherwise manipulate the legal process." *Mesle*, 615 F.3d at 1092. Rather, it is more like *Perfect Event*, where the moving party was "'merely attempting to navigate a none-too-intuitive labyrinth of procedural rules.'" *Perfect Event*, 2015 WL 13313488, at *5 (citing *Dassault Systemes SA v. Childress*, 663 F.3d 832, 841 (6th Cir. 2011), where the appellate court reversed the denial of a motion to set aside default).

## CONCLUSION

Accordingly, and for the reasons set forth above, this Court should grant Defendants' Motion, and set aside the defaults entered by the clerk against Defendants.

Dated this 6th day of April, 2020.

**SHUMWAY VAN**

By: */s/ Garrett R. Chase, Esq.*
    Michael C. Van, Esq.
    Nevada Bar No. 3876
    Garrett R. Chase, Esq.
    Nevada Bar No. 14498
    8985 South Eastern Avenue, Suite 100
    Las Vegas, Nevada 89123
    *Attorneys for David Gilbert Saffron and Circle Society, Corp.*

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**CERTIFICATE OF SERVICE**

Pursuant to FRCP 5, I hereby certify that I am an employee of SHUMWAY VAN, and that on the 6th day of April, 2020, I caused to be filed via CM/ECF a true and correct copy of this **REPLY MEMORANDUM IN FURTHER SUPPORT OF MOTION TO SET ASIDE ENTRIES OF DEFAULT (ECF NO. 64)**, with an automatic Notice of Filing to provide service of same to the parties listed on this matter's electronic service list pursuant to LR IC 4-1. Should the CM/ECF e-file notice report any failures in electronic service, counsel will serve this document by another means and will file a supplemental Certificate of Service.

*/s/ Garrett R. Chase*
An employee of Shumway Van