**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| Commodity Futures Trading Commission,<br><br>    Plaintiff<br><br>v.<br><br>David Gilbert Saffron a/k/a David Gilbert and Circle Society, Corp.,<br><br>    Defendants | Case No.: 2:19-cv-01697-JAD-DJA<br><br>**Order Denying Motion to Set Aside Default and Motion to Strike Motion to Set Aside Default**<br><br>[ECF Nos. 63, 67] |

Last November the Clerk of Court, on CFTC's motion, entered default against Circle Society.[1] Two months later I struck, also on CFTC's motion, the answer that Saffron had belatedly filed on his own behalf.[2] I struck Saffron's answer because it was filed after the Clerk of Court had entered default against him.[3] I advised Saffron that, if he wanted to defend against the CFTC's claims, he needed to file a motion under Rule 55(c) of the Federal Rules of Civil Procedure to set aside the default and show good cause to do so.[4] I gave Saffron until February 13, 2020, to file that motion.[5]

Twenty-five days after that deadline expired and with no motion to set aside default forthcoming, the CFTC filed a motion for default judgment against both defendants.[6] Defendants did not respond to that motion but, ten days later, they moved to set aside the

---

[1] ECF Nos. 20 (motion for entry of default), 21 (entry of default against Circle Society).
[2] ECF No. 52.
[3] *Id.*; *see* ECF Nos. 42 (entry of default against Saffron), 43 (answer).
[4] ECF No. 52 at 2.
[5] *Id.*
[6] ECF No. 61 (motion for default judgment).

defaults that had been entered against them.[7]  Defendants do not mention the tardiness of their motion in any of their briefs,[8] let alone seek leave of court to extend the deadline or show that their delay was the product of excusable neglect.[9]  The CFTC opposes defendants' motion on its merits and moves to strike that motion because it was filed late and without court approval.[10]  I begin with CFTC's motion to strike defendants' motion to set aside default.

**I.    CFTC's motion to strike [ECF No. 67]**

The CFTC moves to strike defendants' motion to set aside default because it was filed 35 days after the court-imposed deadline for filing that motion expired and without a showing of excusable neglect for its tardiness.[11]  "It is well established that '[d]istrict courts have inherent power to control their docket.'"[12]  "This includes the power to strike items from the docket as a sanction for litigation conduct."[13]  At their zenith, "inherent powers permit a district court to go

---

[7] ECF Nos. 63 (motion to set aside default), 71 (response to CFTC's motion to strike), 72 (reply in support of motion to set aside default).  The motion was filed on behalf of defendants by Nevada attorney Michael Van, who had previously moved for and been granted leave to withdraw as Circle Society's counsel.  ECF Nos. 28 (motion to withdraw), 29 (order granting motion).  Joining Van on the motion is Utah attorney Marcus Mumford.  Mumford had not then applied to practice in this court and has since died.  *See* ECF No. 74 (Letter from CFTC).

[8] Although the deadline to file a motion to set aside default applied only to Saffron, when Magistrate Judge Albregts permitted Circle Society's counsel to withdraw, he ordered that defendant to inform the court by December 23, 2019, if it would retain new counsel.  ECF No. 29.  Circle Society blew past that deadline; the March 20, 2020, motion to set aside default was Circle Society's first filing since Judge Albregts's order.

[9] *See* L.R. IA 6-1 (a) (providing that requests to extend time made after the deadline expired "will not be granted unless the movant or attorney demonstrates that the failure to file the motion before the deadline expired was the result of excusable neglect").

[10] ECF Nos. 67 (motion to strike motion to set aside), 69 (response to motion to set aside).

[11] ECF No. 67; *see* L.R. IA 6-1(a) (requiring movant to show excusable neglect to enlarge an expired deadline).

[12] *Ready Transp., Inc. v. AAR Mfg., Inc.*, 627 F.3d 402, 404 (9th Cir. 2010) (quoting *Atchison, Topeka & Santa Fe Ry. v. Hercules, Inc.*, 146 F.3d 1071, 1074 (9th Cir. 1998)).

[13] *Id.* (collecting cases).

2

so far as to dismiss entire actions to rein in abusive conduct."[14] So "[i]t necessarily follows that, as part of its power to 'manage [its] own affairs,' a district court can use less drastic measures [like] striking documents from the docket to address litigation conduct that does not warrant outright dismissal."[15]

Typically, striking a late motion or brief is an appropriate means to correct course when a litigant or attorney proceeds according to his own timetable and not the one set by the court and the rules of procedure. But the late motion here seeks to set aside entries of default, so striking it could be a more drastic measure. In fact, because defendants did not respond to the CFTC's motion for default judgment, striking their late motion could result in default judgment being entered against them without the court considering their explanations for the defaults. Though the fault for that circumstance would be defendants' alone, in the interest of justice, I deny the CFTC's motion to strike and consider defendants' motion to set aside default on its merits.

**II.     Defendants' motion to set aside default [ECF Nos. 63, 64 (corrected)]**

Rule 55(c) of the Federal Rules of Civil Procedure authorizes a district court to set aside the entry of default upon a showing of "good cause." In determining a motion to set aside the entry of default, "a district court should consider the" three disjunctive factors delineated by the Ninth Circuit in *Falk v. Allen*.[16] The *Falk* factors ask whether (1) plaintiff will be prejudiced if default judgment is not entered, (2) defendant has a meritorious defense to plaintiff's claims, and (3) defendant's culpable conduct led to the entry of default.[17] The Ninth Circuit has repeatedly

---

[14] *Id.*

[15] *Id.* (quoting *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43 (1991)).

[16] *Brandt v. Am. Bankers Ins. Co. of Fla.*, 653 F.3d 1108, 1111 (9th Cir. 2011) (citing *Falk v. Allen*, 739 F.2d 461 (9th Cir. 1984)).

[17] *Falk*, 739 F.2d at 463.

cautioned that "'judgment by default is a drastic step appropriate only in extreme circumstances; a case should, whenever possible, be decided on the merits.'"[18]

### A. Prejudice

Defendants do not address the prejudice factor until their reply. The CFTC argues that if judgment is further delayed, "[d]efendants may continue their fraudulent behavior, including dissipating pool participants' funds and losing relevant evidence."[19] The CFTC supports its argument with a declaration from its investigator, George Malas, who testified that "Saffron is providing payouts in an apparent attempt to 'settle' with some participants outside of this litigation."[20] According to Malas, "[i]n recent weeks, the CFTC has heard from at least one participant who represented that she has decided to 'redact' her claim against Saffron" because she "'came to a settlement'" with him.[21] Malas also declares that "another participant reported that Saffron 'continues to message his customers . . . in the Telegram programs and has requested' that participants work with [him] to 'settle outside of the CFTC investigation.'"[22] Defendants do not address this evidence in their reply.

The CFTC also argues that delay may result in the loss of evidence. It supports this argument with Saffron's two declarations in which he provides ever changing but always vague reasons for why defendants have not provided their business records to the CFTC as required under the injunction.[23] Saffron first asserted that he's had to recreate business records because

---

[18] *U.S. v. Signed Personal Check No. 730 of Yubran S. Mesle*, 615 F.3d 1085, 1091 (9th Cir. 2010) (quoting *Falk*, 739 F.2d at 463)).
[19] ECF No. 69 at 13.
[20] ECF No. 61-1 at 5, ¶ 8.
[21] *Id.* at 5, n.3.
[22] *Id.*
[23] ECF No. 69 at 14.

"most of the data banks in question were stolen when the storage unit was broken into . . . ."[24] Six days later, Saffron asserted that he was unable to reconstruct more documents because his "website administrator, who is a critical part of helping to reconstruct the Company's records, has been under quarantine in Italy for over a month."[25]  The CFTC points out that Saffron has not provided whatever it is that he's using to "recreate" defendants' business records.  The CFTC correctly interprets this conduct as violating the injunction.

The CFTC has demonstrated that further delay in judgment would allow Saffron to dissipate assets and hide or destroy evidence, thus prejudicing the CFTC's ability to obtain relief for the pool participants.  Given that Saffron holds the literal keys to the cryptocurrency that participants allegedly provided him to invest and defendants have gone to significant lengths to conceal the records of their business activities, I seriously doubt this prejudice could be cured.  Defendants, in any event, provide no assurances or argument that it could be cured.

**B.    Meritorious defense**

For the second *Falk* factor, defendants argue that they have a meritorious defense to the CFTC's claims because it "simply misunderstands the workings and basis of [their] business" and lacks jurisdiction over transactions involving cryptocurrency.[26]  Defendants do not identify what the CFTC has misunderstood about the workings and basis of their business.  They do not explain any aspect of their business.  Nor do defendants provide any evidence to support their position that the CFTC has misconstrued their business activities.  Defendants also argue that they have a meritorious defense because Saffron, in his since-struck answer, alleged that he had

---

[24] ECF No. 64 at 12, ¶ 2.
[25] ECF No. 68-2 at 3, ¶ 4.
[26] ECF No. 63 at 6.

5

settled with some of the claimed participants and that some of the other claimed participants did not actually invest with defendants.[27]  Defendants don't identify what participants they've settled with or whom among that group did not actually invest.  Nor do defendants provide any evidence to support their position.  At best, these unsupported points go to the amount of damages but they do not negate that element of the CFTC's claims.

What remains is defendants' argument that the CFTC lacks jurisdiction over transactions involving cryptocurrency.  Defendants cite to the U.S. District Court for the Eastern District of New York's decision in *CFTC v. McDonnell* to support their argument that the CFTC's claims against them exceed its reach.[28]  But *McDonnell* stands for the opposite position.  The district court in *McDonnell* explained that, "[i]n extensive memoranda and orders," it had found that the CFTC "has standing and authority to bring this action for fraud involving virtual currencies . . . ."[29]  That court also explained that "[t]he CFTC was not seeking authority to regulate trading in virtual currencies.  It was seeking only to stop and prevent ongoing fraud."[30]  Like in *McDonnell*, the CFTC does not seek to regulate the trading of virtual currencies but to stop and prevent defendants' allegedly ongoing fraud involving virtual currencies.[31]

Defendants also rely on the U.S. District Court for the Central District of California's decision in *U.S. Commodity Futures Trading Commission v. Monex Credit Company* to support

---

[27] ECF No. 72 at 5–9.

[28] ECF No. 63 at 6 (citing *CFTC v. McDonnell*, 332 F. Supp. 2d 641, 654 (E.D.N.Y. 2018)).

[29] *McDonnell*, 332 F. Supp. 2d 650–51.

[30] *Id.* at 654.

[31] ECF No. 1 at ¶¶ 46–79 (alleging claims for options fraud, fraud by a commodity pool operator, and failure to operate a commodity pool and act as a commodity pool operator consistent with requirements of the Commodity Exchange Act and its regulations).

their position.[32] But they concede in a footnote that the Ninth Circuit reversed the district court's decision in that case.[33] Although it is an exceptionally well written opinion interpreting provisions in the Commodity Exchange Act, the Ninth Circuit's *Monex* decision is not applicable here because the statutes that it interprets are not the same statutes under which the CFTC sues these defendants. Nor does *Monex* address whether the CFTC has jurisdiction to regulate fraud in cryptocurrency transactions. With a paucity of authority and analysis, defendants have not demonstrated that they have a meritorious defense to the CFTC's claims.

### C. Culpable conduct

The final *Falk* factor requires me to consider whether defendants were culpable in causing their default. The Ninth Circuit has "typically held that a defendant's conduct was culpable for purposes of the [good cause] factors where there is no explanation of the default inconsistent with a devious, deliberate, willful, or bad faith failure to response."[34] Defendants argue that their defaults were caused by "mistake" and "fail[ing] to respond appropriately" to the CFTC's complaint.[35] But defendants do not explain what they mistook or misunderstood. Nor do they provide any evidence to support either excuse. In fact, in the declaration that accompanies the motion to set aside default, Saffron does not offer any explanation or excuse for why his answer was late.[36] Rather, Saffron merely discusses his efforts to comply with the injunction's requirement that he provide the CFTC access to defendants' business records.[37]

---

[32] ECF No. 72 at 8–9 (citing *CFTC v. Monex Credit Company*, 311 F. Supp. 3d 1173, 1189 n.12 (C.D. Cal. 2018), *reversed and remanded*, 931 F.3d 966 (9th Cir. 2019)).

[33] *Id.* at 8, n.23.

[34] *Yubran S. Mesle*, 615 F.3d at 1092.

[35] ECF No. 63 at 5.

[36] *Id.* at 9–10.

[37] *Id.*

Defendants also argue that their defaults should be set aside because they experienced "issues" with "their efforts to engage adequate and experienced counsel . . . ."[38] Defendants argue that their neglect is excusable because they had been "attempting to secure adequate funds without taking any action that might be construed as violating the terms of the [c]ourt's preliminary orders."[39] Defendants are referring to the asset freeze that was part of the temporary restraining order[40] and is part of the preliminary injunction.[41] Defendants never sought to modify either order and have not provided argument or evidence to show what assets, if any, should be excluded from any freeze. Finally, defendants contend that there is "no indication" from the court's prior order "calling [their] good faith into question" and they insist that they have "begun responding to [the CFTC's] discovery requests."[42]

The only supported explanations that defendants offer are that they were unrepresented by counsel and their assets had been frozen by court order. Those excuses are established facts and I afford them great weight in my analysis. They are also inconsistent with culpable behavior. But, the CFTC argues, those excuses are not the true reason why default was entered. It contends that defendants are and have been intentionally acting dilatory so that they can interfere with the judicial process and retain possession of their business records (or lack thereof) and the cryptocurrency that they obtained from the participants.

To support its argument, the CFTC points to the inconsistency between statements that Saffron has made about the status and location of defendants' business records versus statements

---

[38] ECF No. 63 at 3, 10.
[39] *Id.* at 5–6.
[40] ECF No. 9 at 15–17.
[41] ECF No. 31 at 4.
[42] ECF No. 63 at 5.

that his attorneys have made on that subject.[43]  The CFTC also points to its evidence that Saffron has offered to "settle" with participants and has already "settled" with one.  Defendants do not address this evidence or its implications.[44]  The CFTC's unrefuted evidence that Saffron is trying to circumvent the judicial process by "settling" with participants is what tips the scale on this factor.  Defendants have good-faith explanations for their defaults, but those explanations are overshadowed by evidence of their devious and deliberate conduct seeing to skirt the judicial process.  I would be inclined to find that defendants had not acted culpably were it not for this evidence.  Based on the totality of circumstances, I conclude that defendants have not demonstrated that good cause exists to set aside the defaults entered against them.  Thus, I exercise my discretion to deny their motion for that relief.

**Conclusion**

IT IS THEREFORE ORDERED that defendants' motion to set aside default **[ECF No. 63]** and the CFTC's motion to strike defendants' motion to set aside default **[ECF No. 67] are DENIED**.

_____
U.S. District Judge Jennifer A. Dorsey
June 9, 2020

---

[43] *See* ECF No. 69 at 8–9.

[44] *See* ECF No. 72 at 3–5 (defendants' reply in support of their motion to set aside default).