Danielle E. Karst (D.C. Bar No. 481881)
Timothy J. Mulreany (Maryland Bar No. 8812160123)
**COMMODITY FUTURES TRADING COMMISSION**
Three Lafayette Centre
1155 21st Street, N.W.
Washington, D.C. 20581
Telephone:   (202) 418-6158 (Karst)
Telephone:   (202) 418-5306 (Mulreany)
Facsimile:    (202) 418-5523
dkarst@cftc.gov
tmulreany@cftc.gov

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEVADA**

| | |
|---|---|
| COMMODITY FUTURES TRADING COMMISSION,<br><br>Plaintiff,<br><br>v.<br><br>DAVID GILBERT SAFFRON a/k/a DAVID GILBERT and CIRCLE SOCIETY, CORP.,<br><br>Defendants. | Case No.  2:19-cv-1697-JAD-DJA<br><br>**PLAINTIFF CFTC'S OPPOSITION TO JAMES DAMIEN SCOTT'S MOTION TO QUASH SUBPOENA (ECF NO. 86)** |

Plaintiff Commodity Futures Trading Commission ("Commission" or "CFTC") respectfully submits its opposition to James Damien Scott's ("Scott") motion to quash the CFTC's subpoena *duces tecum* to JP Morgan Chase Bank ("Motion to Quash," ECF No. 86). The CFTC issued a judicial subpoena to JP Morgan Chase Bank ("JPMC") on November 9, 2020 ("November 9, 2020 Subpoena"), seeking documents and information regarding an account in the name of Scott in accordance with the Right to Financial Privacy Act, 12 U.S.C. §§ 3401-22 (2018) ("RFPA"), Fed. R. Civ. P. 26 and 45, and pursuant to the October 29, 2020 Court Order authorizing expedited third-party discovery (Order, ECF No. 80).

The Motion to Quash, which appears to be an attempt to hide relevant bank records and activity, is meritless and fails to attach an affidavit or sworn statement as required by 12 U.S.C.

1

§ 3410(a) (2018).  Because of Defendants David Saffron and Circle Society's refusal to produce any business records and comply with the asset freeze imposed by the Court, the CFTC sought and obtained leave from the Court for expedited discovery (Order, ECF No. 80).[1]  Pursuant to the Court's Order, the CFTC issued a third-party subpoena to JPMC for the records of Scott, a close associate and reported financial "handler" of Saffron.  The CFTC has strong reason to believe that Scott may be acting as an intermediary to Saffron by accepting, holding, and/or dispersing customer funds on Saffron's behalf.  As discussed in detail below, the subpoenaed information is relevant to Defendants' fraudulent conduct and ongoing contempt of the Court's prior orders and is reasonably calculated to lead to the discovery of admissible evidence.  For these reasons, and as described more fully herein, the Motion to Quash should be denied.

## I. BACKGROUND

**A.  November 9, 2020 Subpoena**

The records sought via discovery are relevant to Defendants' fraudulent conduct and ongoing contempt of the Court's Temporary Restraining Order dated October 3, 2019 ("TRO," ECF No. 9), Preliminary Injunction Order ("PI Order," ECF No. 31), and Contempt Order (ECF No. 51), proportional to the needs of this case given Defendants' contemptuous conduct, and their production presents little, if any, burden to Scott.  The TRO, PI Order, and Contempt Order directed Defendants to, among other things, produce all of their business records to the CFTC and provide the CFTC with an accounting of the disposition of all pool participant assets and Defendants' assets.  TRO, ECF No. 9; PI Order, ECF No. 31; Contempt Order, ECF No. 51.  The

---

[1] The CFTC's motion for expedited discovery identified the bank accounts it sought to discover by bank, account holder, and account number.  *See* Ex. 1 to Motion for Expedited Discovery, ECF No. 79-1 at 4.  Scott's bank account was specifically identified therein as one of the accounts the CFTC sought to discover.  *Id*.

TRO and PI Order also freeze Defendants' assets and prohibit Defendants from further violating the Commodity Exchange Act. Because Defendants have repeatedly refused to abide by the previous court orders, the CFTC sought and obtained leave from the Court to engage in expedited discovery and issue third-party subpoenas to specific individuals and entities, including Scott. The CFTC issued the November 9, 2020 Subpoena to JPMC for Scott's bank records based on information it has obtained suggesting that Scott may be, or has been, accepting, holding, and/or dispersing customer funds or other assets on behalf of Saffron and in violation of the Court's previous orders.

The CFTC's November 9, 2020 Subpoena fully complies with the RFPA and the Federal Rules of Civil Procedure. Pursuant to the RFPA, the CFTC provided Scott with a copy of the Subpoena, notice that access to the financial records was sought in connection with a legitimate law enforcement inquiry, statement of customer rights, instructions and forms for challenging the release of the records, and notice that the records will be provided to the CFTC within ten days of service if a motion to quash is not filed. *See* Nov. 9, 2020 Subpoena and RFPA notice materials (attached as Ex. A to Mot. to Quash, ECF No. 86-1). The CFTC also advised JPMC not to release the records to the CFTC until such time as the CFTC provided the Bank with a certificate of compliance with the RFPA.

**B.     James Damien Scott and the Bedrock Entities**

Scott's motion fails to advise the Court of his history of association with Saffron, and fails to discuss his wife's association with Saffron and Saffron's business entities. As set forth below and in the Declaration of George H. Malas ("Malas Decl." attached hereto as Exhibit 1), Scott is a close associate of Saffron and the Chief Operating Officer of Bedrock Special Projects Group LLC ("BSPG"). Malas Decl. ¶ 5a, 7-8. According to its website, BSPG provides

"Bespoke Security, Intelligence and Protection for Corporations, Executives, Family Offices and High Net Worth Individuals." Malas Decl. ¶ 5c. Scott has been employed in senior positions with BSPG and Bedrock Protection Agency ("BPA") (collectively, "Bedrock entities") since 2014. Malas Decl. ¶ 5a. Although in a November 20, 2020 email to the CFTC Scott denies involvement in "BitCoin or any type of crypto-currency," Scott holds an account at Gemini Trust Company, LLC, a digital currency exchange, through which he has been moving funds. Malas Decl. ¶¶ 4f, 6; Ex. F to Malas Decl. (account opening documents for account ***1298 in the name of J.D. Scott) (SDKD-Gemini-0015); Ex. J to Malas Decl. (email from Scott to the CFTC dated Nov. 20, 2020) (SDKD-JDScott-1). The only way that the CFTC can determine where the money came from to purchase the digital assets in Scott's Gemini account is to review Scott's personal bank records.

    Scott's spouse, Susan Scott, is also closely associated with Saffron. Malas Decl. ¶¶ 5d, 5e. Susan Scott was the sole officer/director of Kinetic Marketing Systems, Inc. ("Kinetic") and an employee of BPA. *Id.* Upon information and belief, Kinetic was a corporate entity established by Scott for the purpose of Saffron using it "to do business." Malas Decl. ¶¶ 9-11; CFTC Transcript of P. Sterling Kerr's Testimony, Feb. 28, 2019 at 175:10-176:5; 177:7-178:2; 178:3-12. Defendant Saffron provided a JPMC bank account in the name of Susan Scott to open his own digital currency account at Gemini. Malas Decl. ¶ 13a; Ex. F to Malas Decl. (Saffron's Gemini account opening documents) (SDKD-Gemini-08).

    The CFTC has reason to believe that Scott and his wife may be handling Saffron's finances through the Bedrock entities and acting as pass-throughs on behalf of Saffron. Malas Decl. ¶¶ 7-13. The Subpoena directed to Scott is reasonably calculated to determine if Scott has sent or received any funds from Saffron, or Saffron business entities, during the time period

4

identified in the CFTC's Complaint.  For example, the CFTC has learned that Saffron sent over $1.8 million (mostly in the form of Bitcoin) to BPA during the period of March 2018 through March 2019.  Malas Decl. ¶ 8; Ex. E to Malas Decl. (retainer invoices of payments from Saffron to BPA) (BPALLC90).  The CFTC has obtained evidence that the likely source of at least some of those funds is Saffron's customers.  *See id*.

## II.     ARGUMENT

### A.    Legal Standard

Scott relies on the wrong standard of discoverability of information and relevance.  *See* Motion to Quash, ECF No. 86 at 3 (arguing that his records are not relevant to a "legitimate law enforcement inquiry" and are "facially irrelevant.").  The CFTC issued the judicial subpoena to JPMC pursuant to Fed. R. Civ. P. 45 and the Court's order for expedited discovery (ECF No. 80).  The scope of the discovery that can be requested through a subpoena under Rule 45 is the same as the scope under Rule 26(b).  *See* Fed. R. Civ. P. 45 Advisory Comm.'s Note (1970) ("[T]he scope of discovery through a subpoena is the same as that applicable to Rule 34 and other discovery rules."); Fed. R. Civ. P. 34(a) ("A party may serve on any other party a request within the scope of Rule 26(b)."); *Wells Fargo Bank NA v. Wyo Tech Investment Group LLC*, 385 F. Supp. 3d 863, 873 (D. Ariz. 2019) (the test for "relevance," in the context of a subpoena to a non-party, is no different than the test under the discovery rules). Fed. R. Civ. P. 26(b)(1) allows a party to obtain discovery concerning any nonprivileged matter that is relevant to any party's claim or defense.  Relevance within the meaning of Rule 26(b)(1) is considerably broader than relevance for trial purposes.  *See Oppenheimer Fund v. Sanders*, 437 U.S. 340, 351 (1978). For discovery purposes, relevance means only that the materials sought are reasonably calculated to lead to the discovery of admissible evidence.  *Id*. (finding that relevance under Fed. R. Civ. P. 26 "has been construed broadly to encompass any matter that bears on, or that reasonably could

lead to other matter that could bear on, any issue that is or may be in the case"); *WideVoice Comm., Inc. v. Qwest Comm. Co., LLC*, No. 2:12-cv-467, 2012 WL 1439071, at *4 (D. Nev. Apr. 26, 2012) ("For discovery purposes, relevance means only that the materials sought are reasonably calculated to lead to the discovery of admissible evidence."). Consequently, under the controlling standard, Scott's bank account records are plainly discoverable in this financial fraud case.

Moreover, the burden upon Scott for the production of the records sought to be discovered is minimal to non-existent. The CFTC's discovery subpoena is directed to JPMC, which will produce the bank records electronically. The Subpoena does not require Scott to undertake any burden of production.

**B.      Scott Has Failed to Meet His Burden to Show that the Requested Records Are Not Discoverable**

Under Fed. R. Civ. P. 45(d)(3), a court must grant a timely motion to quash or modify a subpoena that fails to allow reasonable time to comply, requires a person to comply beyond the geographical limits, requires disclosure of privileged or other protected matter, if no exception or waiver applies, or subjects a person to undue burden. The movant seeking to quash the subpoena bears the burden of persuasion. *See Green v. Baca,* 226 F.R.D. 624, 653-54 (C.D. Cal. 2005) ("'[T]he burden of persuasion in a motion to quash a subpoena issued in the course of civil litigation is borne by the movant.'") (quoting *Concord Boat Corp. v. Brunswick Corp.,* 169 F.R.D 44, 48-49 (S.D.N.Y. 1996)); *Paws Up Ranch, LLC v. Green*, No. 2:12-cv-1547, 2013 WL 6184940, at *2 (D. Nev. Nov. 22, 2013) ("It is . . . well established that the party [moving to quash a subpoena] bears the burden of showing why a discovery request should be denied.") (quoting *Painters Joint Comm. v. Employee Painters Trust Health & Welfare Fund*, No. 2:10–cv–01385, 2011 WL 4573349, at *4 (D. Nev. Sept. 29, 2011)). Scott fails to satisfy his burden

6

of showing why the Subpoena should be quashed and makes no claims regarding privilege or undue burden under Fed. R. Civ. P. 45(d)(3).  Not surprisingly, Scott fails to even address whether the Subpoena conforms to the requirements of the Federal Rules of Civil Procedure.  Instead, he makes generalized arguments concerning the RFPA in seeking to quash the Subpoena which all lack merit and are easily disposed of.

    1.   **The Customer Notice Complies with the RFPA**

  First, Scott claims that the customer notice "does not describe the legitimate law enforcement basis for the subpoena."  Mot. to Quash, ECF No. 86 at 3.  To the contrary, the Notice informs Scott that Defendants have been charged with specific violations of the Commodity Exchange Act and provides the authority and purpose for issuance of the Subpoena.  *See* Nov. 9, 2020 Notice, ECF No. 86-1 at 11.  Although the Notice does not "describe the involvement of Mr. Scott or his finances," (Mot. to Quash, ECF No. 86 at 3), it nevertheless substantially complies with the RFPA, 12 U.S.C. § 3405(2) (2018).  *See Sweeney v. Inspector General of U.S. Dep't of Agric.*, No. 14-mc-54, 2014 WL 5361968, at *4 (E.D. Cal. Oct. 21, 2014) (finding agency properly complied with the RFPA where notice informed movant of specific nature of investigation but did "not specifically reference that the investigation includes examining whether the Movant improperly received loan funds").  This Opposition and the attached Malas Declaration attest to the relevance of Scott's records, the connection between Scott's finances and Saffron, and the CFTC's efforts in ascertaining whether non-parties such as Scott improperly accepted or disbursed customer funds.  *See Rodriguez v. Federal Sav. & Loan Ins. Corp.*, 712 F. Supp. 159, 162 (N.D. Cal. 1989) (finding even where the consumer notice is deficient, information in the government's response to a consumer challenge states the nature of inquiry with sufficient specificity).  Scott's arguments regarding the RFPA notice therefore fail.

### 2. The Requested Bank Records Are Relevant to Defendants' Fraud, Violations of the Court's Prior Orders, and the Amounts of Damages for Which Defendants Maybe Be Liable

Second, Scott claims that he "does not have any relevant information related to this case," "no such connection exists" between him and Saffron, and the Subpoena "is seeking irrelevant information." Mot. to Quash, ECF No. 86 at 3. Despite his false claims regarding the lack of connection between himself and Saffron, Scott admitted in a carefully-worded November 20, 2020 email to the CFTC that:

> [A]nything I might know or anything about my prior relationship with [Saffron] during the course of my employment with Bedrock Protection Agency, LLC, is subject to attorney-client privilege and a detailed non-disclosure agreement. The attorney-client privilege has been voiced by one of David Saffron's attorneys.

Ex. J to Malas Decl. (email from Scott dated Nov. 20, 2020)[2] (SDKD-JDScott-1). Although Scott claims that he has no connection with Saffron, he then admits to being in contact with Saffron's attorneys and invokes a non-disclosure agreement and attorney-client privilege (presumably with Saffron) as the basis for non-disclosure of his purportedly irrelevant bank records.[3] Such arguments are not only facially contradictory, but at odds with the known facts concerning Scott's associations with Saffron.

Scott also vouched for Saffron's credibility and the source of Saffron's funds in an August 2018 email to an asset management firm conducting due diligence of Saffron: "Our firm has been providing comprehensive security and investigation services to David Saffron since

---

[2] Scott's November 20, 2020 email to the CFTC contains various false claims, including: (1) "I am not currently connected by employment or association with David Saffron"; (2) "I don't have any business dealings with David Saffron or Circle Society"; and (3) "I am not a trader in BitCoin or any type of crypto-currency." *See* Malas Decl. ¶¶ 4f, 6-11.

[3] The CFTC is unaware of any attorney-client relationship between Scott and Saffron, or the Bedrock entities and Saffron. The CFTC is also unaware of any legitimate basis for Scott's apparent claim of an attorney-client privilege protection for bank records.

8

January of 2018. We've had multiple opportunities to vet David and to verify the source of his funds (BitCoin)." Malas Decl. ¶ 7c; Ex. I to Malas Decl. (email from Scott dated Aug. 6, 2018) (SDKD-Kerr-5_0001). Further, while claiming in his email to the CFTC that he is "not a trader in BitCoin or any type of crypto-currency," Scott fails to disclose to the Court that he holds an account at Gemini from which he withdrew over $380,000 worth of digital currency from May 2018 through February 2019. Malas Decl. ¶¶ 4f, 6; Ex. F to Malas Decl. (account history spreadsheet for Gemini account ***1298 in the name of Scott) (SDKD-Gemini-25).

Scott's records are discoverable and relevant to the CFTC's claims herein and its efforts to trace the funds that Defendants fraudulently obtained, determine if Defendants or others have violated the Court's asset freeze, and identify the location of funds potentially subject to restitution and disgorgement. The CFTC has charged Defendants with violations of the Commodity Exchange Act in connection with a fraudulent scheme to solicit Bitcoin and United States Dollars from the public for participation in a commodity pool for trading binary options contracts on foreign currency and cryptocurrency pairs, among other things. Compl., ECF No. 1 at ¶ 1. Because Defendants have refused to produce any business records or an accounting to date in violation of the PI and Contempt Orders, the CFTC has been unable to ascertain the true scope and extent of Defendants' fraud. As a result, the CFTC has been forced to seek expedited discovery authority from this Court and to seek discoverable information directly from Saffron's associates. The CFTC has reason to believe that some of Defendants' customer funds are or were being held and/or dispersed in bank accounts associated with Scott. As Scott's records are likely to lead to the discovery of admissible evidence that may help the CFTC to trace the funds that Defendants fraudulently obtained, they are within the scope of permissible discovery.

In addition to being relevant to Defendants' liability, Scott's records are relevant to

9

Defendants' ongoing obligation to comply with the PI and Contempt Orders and may lead to the discovery of admissible evidence that will allow the CFTC to determine if Defendants or others have violated the Court's asset freeze orders. ECF No. 31 at 4-5 (freezing Defendants' assets "pending trial or further court order"; requiring any financial institution or person receiving actual notice of the PI Order to hold and retain and prohibit withdrawal, removal, or other disposal of any asset of any Defendant). The CFTC has reason to believe that Defendants have already provided "payouts" to some customers in an apparent attempt to "settle" with them outside of this litigation and in violation of the asset freeze.[4]

Scott's records are also relevant to the discovery of admissible evidence concerning the amount of damages for which Defendants are potentially liable. In its continuing litigation, the CFTC seeks full restitution to defrauded customers, disgorgement of ill-gotten gains, and civil monetary penalties. *See* Mot. for Default Judgment, ECF No. 61 at 20-23.[5] Scott's records may also help to identify the location of funds potentially subject to restitution and disgorgement.

Accordingly, Scott has failed to meet his burden of establishing that the bank records sought by the CFTC are not discoverable, and the Motion to Quash should be denied.

### 3. The Subpoena Is Not Overbroad

Finally, Scott argues that the Subpoena is "overbroad" because it "demand[s] JP Morgan Chase Bank produce all of Mr. Scott's personal financial records without any limitation on time period, type of transaction, or counterparty." Mot. to Quash, ECF No. 86 at 4. Scott's argument

---

[4] *See* Declaration of George H. Malas in Support of Plaintiff's Motion for Default Judgment dated March 9, 2020 at ¶ 8, ECF No. 61-1.

[5] Congress has explicitly authorized the CFTC to seek equitable remedies, including an order that Defendants pay restitution and disgorge their ill-gotten gains. 7 U.S.C. § 13a-1(d)(3)(A)-(B) (2018). 7 U.S.C. § 13a-1(d)(1)(A) (2018) authorizes the imposition of a civil monetary penalty equal to the higher of triple Defendants' monetary gain from each violation of the Act or Regulations, or $185,242 per violation pursuant to 17 C.F.R. § 143.8(b)(1) (2020).

is not supported by any explanation and conflicts with the plain wording of the Subpoena. The scope of the Subpoena is limited by the relevant period, which is defined in the Subpoena as "January 1, 2017 through the present" and does not seek documents which may exist at JPMC for any other period. *See* Schedule A to Nov. 9, 2020 Subpoena, ECF No. 86-1 at 9. Although the Subpoena seeks "all documents" during the relevant period "in the name, under the control, or for the benefit of" Scott, Scott fails to explain how the universe of potentially responsive documents would be at all voluminous or burdensome for him as the account holder. Indeed, Scott is not obligated to produce anything; JPMC will produce discoverable records directly to the CFTC. The Subpoena's request is not an overly broad or oppressive request because it is limited to all documents within the control of JPMC which relate only to bank accounts in the name of, or for the benefit of, Scott. Notably, JPMC did not object to the breadth of the Subpoena. The Subpoena also identifies the typical and generally non-voluminous categories of electronic customer records the Bank is likely to have in its possession and can easily produce. *See* Schedule A to Nov. 9, 2020 Subpoena, ECF No. 86-1 at 10.

## CONCLUSION

For the foregoing reasons, the Court should deny, in its entirety, the Motion to Quash the JPMC Subpoena. In the event the Court deems it appropriate to hold a hearing on the relief requested herein, the CFTC is available to participate in person or telephonically at the Court's earliest convenience.

Dated:  December 7, 2020                          Respectfully submitted,

By: /s/ Danielle E. Karst
Danielle E. Karst
Timothy J. Mulreany
**COMMODITY FUTURES TRADING COMMISSION**
Three Lafayette Centre
1155 21st Street, N.W.

11

Washington, D.C. 20581<br>Telephone: (202) 418-5000

## **CERTIFICATE OF SERVICE**

I certify that on December 7, 2020, I filed a copy of *Plaintiff CFTC's Opposition to James Damien Scott's Motion to Quash Subpoena, attached Declaration and Exhibits*, with the Clerk of the Court using the CM/ECF system. I also certify that on December 7, 2020, I sent hard copies of the same to Defendants and counsel for James Damien Scott via United Parcel Service overnight mail and electronic mail at the following addresses:

**David Gilbert Saffron**
1037 S. Cloverdale Ave.
Los Angeles, CA 90019
davidsaffron@live.com; oversight2019@gmail.com

**Circle Society, Corp.**
c/o David Saffron
2450 St. Rose Parkway, Suite 120
Henderson, NV 89074
davidsaffron@live.com; oversight2019@gmail.com

**William O. Kimball (counsel for James Damien Scott)**
Pia Hoyt, LLC
136 E. South Temple, Suite 1900
Salt Lake City, UT 84111
bkimball@piahoyt.com

/s/ Danielle E. Karst
Danielle E. Karst