Danielle E. Karst (D.C. Bar No. 481881)
Timothy J. Mulreany (Maryland Bar No. 8812160123)
**COMMODITY FUTURES TRADING COMMISSION**
Three Lafayette Centre
1155 21st Street, N.W.
Washington, D.C. 20581
Telephone:   (202) 418-6158 (Karst)
Telephone:   (202) 418-5306 (Mulreany)
Facsimile:    (202) 418-5523
dkarst@cftc.gov
tmulreany@cftc.gov

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEVADA**

| | |
|---|---|
| COMMODITY FUTURES TRADING COMMISSION,<br><br>Plaintiff,<br><br>v.<br><br>DAVID GILBERT SAFFRON a/k/a DAVID GILBERT and CIRCLE SOCIETY, CORP.,<br><br>Defendant. | Case No.  2:19-cv-1697-JAD-DJA<br><br>**SUPPLEMENTAL DECLARATION OF GEORGE H. MALAS IN SUPPORT OF PLAINTIFF'S OPPOSITION TO QUASH SUBPOENA ISSUED ON NOVEMBER 9, 2020 TO JP MORGAN CHASE BANK, N.A.** |

I, George H. Malas, hereby declare as follows:

### I.     INTRODUCTION

1. I have worked as a Futures Trading Investigator for Plaintiff Commodity Futures Trading Commission ("Commission" or "CFTC") since September 2009, and am the Futures Trading Investigator assigned to assist in the investigation of David Gilbert Saffron ("Saffron") and Circle Society, Corp. ("Circle Society") (collectively, "Defendants").

2. I have personal knowledge of the following facts and, if called as a witness, could and would testify competently thereto.

3. I submit this Declaration pursuant to 28 U.S.C. § 1746, in support of the CFTC's

1

opposition to James Damien Scott's ("J.D. Scott") motion to quash the subpoena issued by the CFTC to JP Morgan Chase Bank, N.A. ("JPMC") on November 9, 2020.

## II.   RECORDS REVIEWED

4. In preparation of this declaration, I reviewed and analyzed the following documents:

    a. Certification of Registration documents provided by the National Futures Association ("NFA") regarding the registration history of J.D. Scott, Bedrock Protection Agency, LLC ("BPA"), Kinetic Marketing Systems, Inc. ("Kinetic"), and Susan Lee Scott ("S. Scott"), copies of which are attached hereto as Exhibit A.

    b. Certification of corporate registration records provided by the Nevada Secretary of State concerning BPA and Bedrock Special Projects Group ("BSPG"), copies of which are attached hereto as Exhibit B.

    c. Certification of corporate registration records provided by the Utah Secretary of State concerning BPA and BSPG, copies of which are attached hereto as Exhibit C.

    d. Certification of corporate registration records provided by the Wyoming Secretary of State concerning Kinetic, copies of which attached are hereto as Exhibit D.[1]

    e. Information and documents produced to the Commission by BPA in response to the March 21, 2019 investigative subpoena the Commission issued to BPA, copies of which are attached hereto as Exhibit E.

    f. Account records produced to the Commission by digital currency exchange Gemini Trust Company, LLC ("Gemini") including, but not limited to, account opening

---

[1] The Commission has requested additional certified records from the Wyoming Secretary of State regarding Kinetic; however, those documents have yet to arrive as of the date of this filing. As such, only pages 1-11 of this Exhibit are currently certified and copies of the additional certified Kinetic records can be made available for review upon request.

2

documents and account statements for Gemini account ****5697 in the name of Defendant Saffron, and account ****1298 in the name of J.D. Scott, copies of which are attached hereto as Exhibit F.

g.   Information and documents obtained during the course of the investigation regarding Defendant Saffron's employment history with Kinetic.

h.   Information made available through, and documents obtained from, the website for BSPG, www.bedrockspecialprojects.com, a copy of which is attached hereto as Exhibit G.

i.   Information obtained from the LinkedIn profile of J.D. Scott, a copy of which is attached hereto as Exhibit H.

j.   Transcript of Defendant Circle Society's former registered agent and Defendant Saffron's former attorney, Preston Sterling Kerr ("Kerr"), Testimony Under Oath February 28, 2019.[2]

k.   Information and documents produced to the Commission by Kerr, copies of which are attached hereto as Exhibit I.

### III.   SUMMARY

5. My analysis of the documents listed in Section II above, revealed the following information:

a.   **James Damien Scott** is a resident of American Fork, Utah and is the current Chief Operating Officer ("COO") for BSPG and has held multiple positions with BSPG and BPA since 2014 according to his LinkedIn profile. *See* J.D. Scott's LinkedIn profile, a copy of which is attached hereto as Exhibit H.  J.D. Scott has never been registered with the Commission

---

[2] A copy of Kerr's testimony transcript can be made available for review upon request.

in any capacity. *See* Certified Registration documents provided by the NFA, a copy of which is found at Exhibit A (SDKD-NFA-2-0018-19).

    b.  **Bedrock Protection Agency, LLC** is a Nevada limited liability company ("LLC") that was incorporated on June 25, 2015 as a foreign LLC with a purported office at 11135 South Eastern Avenue, Suite 150, Henderson, Nevada 89052. The company was also incorporated as a domestic LLC in Utah on April 1, 2013, with a purported office at 6076 South 900 East, Suite 100, Salt Lake City, Utah 84121. *See* Certified corporate registration records provided by the Nevada Secretary of State and Utah Secretary of State, copies of which are found at Exhibits B and C. BPA has never been never been registered with the Commission in any capacity. *See* Certified Registration documents provided by the NFA, a copy of which is found at Exhibit A (SDKD-NFA-2-0002-3).

    c.  **Bedrock Special Projects Group, LLC** is a Nevada LLC that was incorporated on March 29, 2018 as a foreign LLC with a purported office at 8985 South Eastern Avenue, Suite 100, Las Vegas, Nevada 89123. The company was also incorporated as an LLC in Utah on May 31, 2019, with a purported office at 1633 West Innovation Way, Suite 500, Lehi, Utah 84043. The company's registered agent is Shumway Van, who is also the former legal counsel to Defendants Saffron and Circle Society. *See* Certified corporate registration records provided by the Nevada Secretary of State and Utah Secretary of State, copies of which are found at Exhibits B and C. According to its website, BSPG provides "Bespoke Security, Intelligence and Protection for Corporations, Executives, Family Offices and High Net Worth Individuals." Among other things, BPSG provides "executive security," "cybersecurity," and "consulting." *See* BSPG website excerpt, a copy of which is found at Exhibit G (SDKD-CFTC-WEB-77).

4

d. **Susan Lee Scott** a resident of American Fork, Utah and is the spouse of J.D. Scott. S. Scott was the sole Officer/Director of Kinetic as of June 20, 2018, and is also listed as an employee of BPA. *See* BPA employee list produced by BPA, a copy of which is found at Exhibit E (BPALLC0000072). S. Scott has never been never been registered with the Commission in any capacity. *See* Certified Registration documents provided by NFA, a copy of which is found at Exhibit A (SDKD-NFA-2-0020-21).

e. **Kinetic Marketing Systems, Inc.** is a Wyoming corporation that was incorporated on May 26, 2015, with a purported office at 1712 Pioneer Ave., Suite 7000, Cheyenne, Wyoming 82001. As noted above in paragraph 5d, S. Scott was listed as the sole Officer/Director of Kinetic as of June 20, 2018. As of August 22, 2019, Kinetic's corporate status was listed as Inactive with a description of "Administratively Dissolved" as the company's registered agent appears to have resigned on or about June 14, 2019. *See* Certified corporate registration records provided by Wyoming Secretary of State, a copy of which is found at Exhibit D. Kinetic has never been never been registered with the Commission in any capacity. *See* Certified Registration documents provided by the NFA, a copy of which is found at Exhibit A (SDKD-NFA-2-0010-11).

**The Connection Between Defendant Saffron and J.D. Scott**

6. On November 20, 2020, J.D. Scott sent an email to the Commission, which states in pertinent part:

> 1) I am not currently connected by employment or association with David Saffron, the man the CFTC is investigating. I haven't ever been directly employed by David Saffron. I haven't spoken with that man since early 2019.
>
> 2) I don't have any business dealings with David Saffron or Circle Society. I'm not holding any BTC or Alt-Coins for him. I don't have anything like that or anything else of any value.

5

    3) I don't know the whereabouts of David Saffron.

    4) I am not a trader in BitCoin or any type of crypto-currency. I don't own any form of alt-coin investments.

    . . .

    6) I have nothing of investigative value to offer to the CFTC. Regardless, anything I might know or anything about my prior relationship with him during the course of my employment with Bedrock Protection Agency, LLC, is subject to attorney-client privilege and a detailed non-disclosure agreement. The attorney-client privilege has been voiced by one David Saffron's attorneys.

*See* mail from J.D. Scott to the Commission dated November 20, 2020 (SDKD-JDScott-1), a copy of which is found at Exhibit J. Although Scott states that he is "not a trader in BitCoin or any type of crypto-currency," he does in fact have an account at digital currency exchange Gemini Trust Company, LLC. *See* Exhibit F (account opening documents for account \*\*\*1298 in the name of J.D. Scott).

    7. Contrary to the representations made in J.D. Scott's email noted above, the Commission has obtained documents and information during the course of its investigation that reveal a close connection between Defendant Saffron and J.D. Scott. Further, the Commission has reason to believe that J.D. Scott may be accepting, holding, and/or dispersing customer funds on behalf of Defendant Saffron in violation of the Court's asset freeze order. For example, Defendant Saffron's former attorney, Kerr, represented the following to the Commission during his testimony under oath:

    a. "So Mr. Scott -- I met him in that initial meeting, I think, in MGM or one of the subsequent early meetings, and ***he indicated that, you know, he was the head of Bedrock Security Systems and that they basically were the handlers, so to speak, for David Saffron, that they would take care of all of his bills and everything***, and that they paid him --or pardon me -- ***that Saffron paid them to take care of that***." *See* CFTC Transcript of Kerr's Testimony Under Oath, February 28, 2019, at 103:24-104:7 (emphasis added);[3] and

---

[3] A copy of Kerr's testimony transcript can be made available for review upon request.

b. "I think -- as I understand it, from Damien Scott, back in late 2017 or early 2018, David got mugged or robbed or beat up or something like that, and then he subsequently, as a result -- and they stole his laptop and a bunch of Bitcoin that was on the laptop. And that's when, I guess, Bedrock was retained by David, and then they, according to Scott, started handling him. And if you understand what that term means, I mean, *I really think they were handling his financials. They were paying his bills. They were renting his homes for him, making sure he had – if he was traveling, they would handle that for him, and he would pay them substantial retainers, like six-figure retainers over and over*." *See* CFTC Transcript of Kerr's Testimony Under Oath, February 28, 2019, at 178:14-179:4 (emphasis added);

c. Moreover, Kerr represented that "one of the things that [Saffron] retained me to do, is buy real property -- or not buy it, but to do the paperwork, review the contracts." As such, Kerr contacted Conor Neu ("Neu") the "CEO" of a California Registered Investment Advisor to inquire if Neu was interested in "buying some Bitcoin wholesale" from Defendant Saffron. *See* CFTC Transcript of Kerr's Testimony Under Oath, February 28, 2019, at 99:24-100:12. As part of the Know Your Customer ("KYC") process related to the potential transaction between Neu and Defendant Saffron, Kerr spoke with J.D. Scott who in turn sent an email to Neu on August 6, 2018, which stated in pertinent part:

*Our firm has been providing comprehensive security and investigation services to David Saffron since January of 2018. We've had multiple opportunities to vet David and to verify the source of his funds (BitCoin)*.

In all of the time we have known him and throughout multiple spot checks, *we've never found any inconsistency in his "story", his background or identity*. We understand how he works with BTC and a few other alt currencies to produce a considerable expansion of his holdings.

We are aware of two primary websites providing false information about David and that these sites are to the very best of our knowledge, completely false. From these sites, there has been a viral transmission of "fake news" and that can be found all over the internet. Two persons are primarily responsible for these false claims: Ida Smith and Frank Calabro. Both persons have been attempting to extort our client for money in order to remove these claims.

David Saffron is not involved in any type of criminal activity. Our investigators would have uncovered something by now if he was.

*See* Email from J.D. Scott to Neu dated August 6, 2018, a copy of which is found at Exhibit I (SDKD-Kerr-5_0001) (emphasis added).

7

    d. Lastly, Kerr represented that Neu decided not to move forward in doing business with Defendant Saffron by stating: "And, in fact, I think Damien Scott was there the very first time I met David Saffron at the MGM, but -- and he was vouching for Saffron, but, ultimately, Conor decided not to go forward with the transaction with him because of his Internet reputation." *See* CFTC Transcript of Kerr's Testimony Under Oath, February 28, 2019, at 100:3-18.

**Defendant Saffron's Transfer of Funds to BPA**

8. Based upon my review of the documents the Commission received from BPA's legal counsel, Shumway Van, in response to a March 21, 2019 subpoena issued by the Commission, I determined that:

    a. During the period March 2018 through March 2019, Defendant Saffron sent approximately $1.8 million to BPA which included customer funds. For example, on June 5, 2018, Saffron received 1,000 BTC from customers (worth ~$7.6 million at the time), and just three days later on June 8, 2018, he transferred 140 BTC (worth ~$1.05 million at the time) to BPA. The $1.8 million Saffron transferred to BPA are believed to be retainer payments as previously reported by Kerr in paragraph 7b above ("he would pay them substantial retainers, like six-figure retainers over and over") and were calculated as follows:

| DATE | TRANSACTION | AMOUNT | NOTES |
|---|---|---|---|
| 3/26/2018 | Cash | $49,650.24 | Retainer: 5.86477616 BTC |
| 4/10/2018 | Check | $75,000.00 | BTC payment to Gemini- 11.07825 BTC @ $6850.02 |
| 4/19/2018 | Cash | $40,905.60 | 5 BTC @ $8222.22 |
| 4/25/2018 | Cash | $87,830.44 | 10 BTC @ $8739.52 |
| 4/30/2018 | Cash | $139,706.70 | 15 BTC @ $9313.78 - payment on 4/28 |
| 5/2/2018 | Cash | $27,300.81 | 3 BTC @ $9100.27 - received on May 2 |
| 5/7/2018 | Cash | $94,184.50 | 9.9 BTC @ $9513.58 |
| 6/8/2018 | Cash | $1,050,000.00 | 140 BTC @ $7500 - Part of 200 BTC retainer applied to Pacific Traveler Case. Remainder applied to Kinetic Traveler case. |

8

|  |  |  | This has been adjusted to 140 BTC retainer because of 60 BTC tied up in the bots |
|---|---|---|---|
| 8/31/2018 | Cash | $40,535.00 | 5.972 BTC @ $6260 |
| 8/31/2018 | Cash | $105,630.00 | 15 BTC @ 7042 |
| 9/7/2018 | Check | $115,740.00 | 18 BTC @ $6430 |
| 11/12/2018 | Cash | $15,000.00 | 2.35 BTC @ $15000 |
| 12/12/2018 | Check | $22,100.00 | Googe Management |
| 1/11/2019 | Cash | $5,000.00 | Deposit for vehicle received on January 11 |
| 3/22/2019 | Check | $5,000.00 | $5000 received from KMS deposited into Chase operating account |
|  | **TOTAL** | **$1,873.583.29** |  |

*See* Retainer invoices showing payments from Saffron to BPA, copies of which are found at Exhibit E (BPALLC000090).

**Connection Between Defendant Saffron and S. Scott / Kinetic**

9. As previously stated in paragraph 5d above, S. Scott is J.D. Scott's spouse, an employee of BPA, and the former sole Officer/Director of Kinetic. Based on these facts and the below information obtained during the course of its investigation, the Commission has reason to believe that S. Scott and/or Kinetic may be acting as an intermediary/pass-through to Defendant Saffron by accepting, holding, and/or dispersing customer funds on his behalf in violation of the Court's asset freeze order.

10. Although S. Scott was the sole Officer/Director of Kinetic from at least June 20, 2018 until August 22, 2019, the Commission has reason to believe that Kinetic was in fact established by S. Scott's husband, J.D. Scott, as a corporation to act as an intermediary for Defendant Saffron. This is evidenced by the following testimony of Defendant Saffron's former attorney, Kerr, who represented the following to the Commission during his testimony under oath:

9

> A. Well, the way I see it here is that this trading program – it's the program that's called Omicron Trust. I don't know why he called it that. As I said, I'm not privy to that. I didn't have anything to do with that, but I say that it's traded through -- that trading program is traded by Saffron, so, yeah, those are linked.
>
> Kinetic -- on June 15th, 2018, I did not know much about Kinetic -- right? – other than it was a corporation that David Saffron used to do business with. Subsequently, I learned additional information, but at that time, that's all I knew.
>
> Q. What did you subsequently learn?
>
> A. ***Just that it had been set up by Bedrock and that it was a -- under Damien Scott's control. I mean, he was the one controlling that.***
>
> Q. Who did you learn that from?
>
> A. Damien Scott.
>
> Q. He told you that?
>
> A. Yes.

*See* CFTC Transcript of Kerr's Testimony Under Oath, February 28, 2019, at 177:7–178:2 (emphasis added).

. . .

> Q. [T]he first sentence of the first page states, We have acted as counsel to Kinetic Marketing Systems, Inc., a Wyoming corporation (Client) in connection with that certain trading program known as Omicron Trust (Omicron traded through consultant, David Saffron) consultant. Why is Saffron separated out from Omicron Trust? From a facial reading of it, it appears that there's just two different entities.
>
> A. Well, Saffron is an individual. Omicron Trust, I don't know what it is. It's what he called the Web business that he had, and ***Kinetic was his corporation, David's corporation that he used to do business***.
>
> Q. So Kinetic Marketing Systems is Saffron, Omicron Trust is Saffron, and, of course, the consultant is Saffron, so -- is that correct?
>
> A. Yeah, but I -- as we sit here today, Kinetic Marketing Systems, I don't know anything about that other than it is an entity that David is the shareholder of and controls.

*See* CFTC Transcript of Kerr's Testimony Under Oath, February 28, 2019, at 175:10–176:5

10

(emphasis added).

. . .

> Q. Okay. ***Did you form Kinetic Marketing Systems, Inc.***?
> A. No.
> Q. ***Do you know who did***?
> A. ***I think it is Damien Scott with Bedrock***.

*See* CFTC Transcript of Kerr's Testimony Under Oath, February 28, 2019, at 141:25–142:4 (emphasis added).

> Q. Did he ever write you that, or is this all oral communications?
> A. I don't think I really communicated with him by e-mail or writing, but, I mean, I had no reason to -- ***I wouldn't have learned about Kinetic Marketing Systems but for either David or Damien.  And I'm 99 percent sure what I learned was from Damien, who, I believe, if I ask the guy the question, he set it up for David.  Bedrock had set it up.***

*See* CFTC Transcript of Kerr's Testimony Under Oath, February 28, 2019, at 178:3-12 (emphasis added).

11. In a May 18, 2018 draft opinion letter written by Kerr, Defendant Saffron signs his name on behalf of Kinetic.  *See* Signature Page of May 2018 Kerr letter, a copy of which is found at Exhibit I (SDKD-Kerr-1_0005).

12. Moreover, as stated in paragraphs 7b and 8a above, Defendant Saffron paid approximately $1.8 million in retainer fees to BPA for the services they provided to him, and the invoices produced to the Commission by BPA evidencing these payments further solidifies that Kinetic, S. Scott, and/or J.D. Scott may have acted as an intermediary/pass-through to Defendant Saffron as all of the invoices show "Kinetic Marketing Systems LLC" as the "Client." *See* Retainer invoices, copies of which are found at Exhibit E (BPALLC000090).

13. Lastly, as stated in paragraph 7b above, the Commission has reason to believe that J.D. Scott, BPA, and/or BSPG are "handling [Defendant Saffron's] financials" which is further evidenced by the following.

   a. Defendant Saffron listed a JPMC bank account in ***S. Scott's name*** in his own account

11

opening documents for Saffron's Gemini digital currency account. *See* 'Bank' section of Defendant Saffron's Gemini account opening documents, a copy of which is found at Exhibit F (SDKD-Gemini-0000000007-8) (emphasis added).

    b.   Further, the Commission obtained information during the course of its investigation that revealed a JPMC bank account in the name of Kinetic that included the following **BPA/BSPG employees** as authorized signatories: (1) Jeffrey T. McGuire, President of BSPG; (2) Benjamin W. Beckes; and (3) Robert Lamm. *See* BPA organizational chart, a copy of which is found at Exhibit E (BPALLC000003), and BPA employee list, a copy of which is found at Exhibit E (BPALLC000012; BPALLC000047; BPALLC000054).

    c.   Saffron's former attorney, Kerr, represented the following to the Commission during his testimony regarding bank accounts associated with J.D. Scott and Defendant Saffron:

> Q. *Are you aware that Mr. Scott holds signatory authority on any bank accounts associated with Mr. Saffron*?
>
> A. *I think he does*.
>
> Q. Okay. And can you identify the financial institutions where such accounts are located?
>
> A. I cannot. I don't know them –
>
> Q. Okay.
>
> A. -- *but I think he does in connection with Kinetic Marketing Systems*.
>
> Q. Okay. Are you able to describe without violating any privilege how that arrangement came to be?
>
> A. Yeah, because *what I'm telling you is what I heard from Mr. Scott*, not from my client.

*See* CFTC Transcript of Kerr's Testimony Under Oath, February 28, 2019, at 103:8-22 (emphasis added).

I declare under penalty of perjury that the foregoing is true and correct.

                                        *George H. Malas*
                                        George H. Malas
                                        Futures Trading Investigator

Executed in Washington, D.C. on December 7, 2020.