Danielle E. Karst (D.C. Bar No. 481881)
Timothy J. Mulreany (Maryland Bar No. 8812160123)
**COMMODITY FUTURES TRADING COMMISSION**
Three Lafayette Centre
1155 21st Street, N.W.
Washington, D.C. 20581
Telephone: (202) 418-6158 (Karst)
Telephone: (202) 418-5306 (Mulreany)
Facsimile: (202) 418-5523
dkarst@cftc.gov
tmulreany@cftc.gov

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEVADA**

| | |
|---|---|
| COMMODITY FUTURES TRADING COMMISSION,<br><br>Plaintiff,<br><br>v.<br><br>DAVID GILBERT SAFFRON a/k/a DAVID GILBERT and CIRCLE SOCIETY, CORP.,<br><br>Defendants. | Case No. 2:19-cv-1697-JAD-DJA<br><br>**PLAINTIFF CFTC'S THIRD MOTION FOR AN ORDER TO SHOW CAUSE AS TO WHY DEFENDANTS SHOULD NOT BE HELD IN CIVIL CONTEMPT FOR VIOLATIONS OF THE COURT'S ASSET FREEZE (ECF NOS. 9, 31)** |

Plaintiff Commodity Futures Trading Commission ("Commission" or "CFTC") respectfully moves the Court to issue an order for Defendants David Saffron ("Saffron") and Circle Society, Corp. ("Circle Society") (collectively, "Defendants") to show cause why they should not be held in contempt of court and subject to the sanctions described herein for their violations of the Court's asset freeze provisions in the October 3, 2019 Temporary Restraining Order ("TRO," ECF No. 9) and December 6, 2019 Order of Preliminary Injunction ("PI Order," ECF No. 31), and in support thereof, states as follows.

This is the CFTC's third show-cause motion in connection with Defendants' contempt.[1]

---

[1] *See* CFTC's Motion for Order to Show Cause as to Circle Society for Failure to Provide Access to Documents in Violation of TRO ("CFTC's Show Cause Mot. I," ECF No. 24); CFTC's Motion for Order to Show Cause as to Defs. for Violations of PI Order ("CFTC's Show Cause Mot. II," ECF No. 40).

1

As a result of Defendants' knowing and intentional refusal to comply with the Court's multiple orders and the CFTC's inability to obtain Defendants' business records, the CFTC sought and obtained leave of court to issue certain third-party subpoenas. *See Order Granting CFTC's Motion for Leave to Engage in Limited Third-Party Discovery* ("October 29, 2020 Order," ECF No. 80). Through these subpoenas, the CFTC obtained evidence confirming that Saffron has transferred funds to and from two accounts at Wells Fargo Bank in complete disregard of the asset freeze, including withdrawing more than $731,948 from just these two accounts plus $64,962 from a personal digital currency account as set forth below and described in the attached declaration of George H. Malas dated Feb. 16, 2020 ("Malas Decl. V," submitted herewith as Exhibit 1).[2]

There is good cause to believe that failure to enforce the asset freeze will result in immediate and irreparable damage to the Court's ability to grant effective final relief, including restitution to customers, disgorgement, and a civil monetary penalty. For the reasons set forth below, the CFTC seeks an order holding Defendants in civil contempt and ordering: (1) Defendants' immediate compliance with the PI Order and Contempt Order(s) in all respects, including the production of business records, an accounting of all customer funds, and payment of the $1,000 daily fines for failure to comply with the Court orders, now totaling $750,000;[3] (2) Defendants' repayment of the $796,910 unlawfully transferred or disposed of in violation of the

---

[2] It is highly likely that Defendants are using accounts at additional financial institutions and/or digital currency exchanges in addition to the three accounts identified by the CFTC and discussed herein. *See* Malas Decl. V. ¶ 14 (based on independent forensic analyses conducted by CipherTrace, Saffron received deposits of 9,705 Bitcoin during the period February 2017 through December 2020, which is worth approximately $465 million based on the Feb. 15, 2021 closing price of Bitcoin).

[3] *See* PI Order at pp. 6-8 (ECF No. 31) (ordering production of Defendants' books and records and accounting of assets within five business days following service of order); Contempt Order at ¶¶ 2-3 (ECF No. 51) (ordering production of Defendants' books and records and accounting of assets by no later than Feb. 7, 2020); Contempt Order at ¶¶ 5-6 (ECF No. 51) (ordering daily fines of $1,000 per day for each Defendant, beginning on Feb. 8, 2020, and lasting until such time as each Defendant has purged its contempt).

asset freeze to the Registry of the Clerk of the Court for safekeeping; (3) incarceration of Saffron until he purges himself of the contempt by fully complying with the PI Order and Contempt Order(s), paying the $750,000 in daily fines, and repaying the $796,910 unlawfully transferred or disposed of in violation of the asset freeze; and (4) defense counsel's identification of the source of all fees he has received in this matter from Defendants and the surrender of any fees accepted in violation of this Court's Orders to the Registry of the Clerk of the Court.  Pursuant to the Court's October 29, 2020 Order (ECF No. 80), the CFTC also seeks leave of Court to issue an additional third-party subpoena to Ternio, a cryptocurrency exchange, for Saffron's account records in order to fully identify the amount of assets in this account subject to the asset freeze and the scope of his asset freeze violations with respect to this account.

## I.   FACTS

### A.   The Asset Freeze Orders

The Court's TRO and PI Orders freeze all of Defendants' assets pending trial or further court order and prohibit any transfer of assets.  The TRO, which applies to Defendants, their agents and attorneys, provides in pertinent part:

> The defendants . . . and their officers, agents, servants, employees, and attorneys who receive actual notice of this order by personal service or otherwise are temporarily restrained from: 1. ***transferring, selling, alienating, liquidating, encumbering, pledging, leasing, assigning, concealing, dissipating, converting, withdrawing, or otherwise disposing of any assets***, directly or indirectly, wherever located and whenever acquired."

TRO at p. 15, ¶ 1 (ECF No. 9) (emphasis added).  The PI Order continued the asset freeze imposed by the TRO and provides in pertinent part:

> Saffron and Circle Society, their agents . . . are immediately ENJOINED from ***directly or indirectly transferring, selling, alienating, liquidating, encumbering, pledging, leasing, loaning, assigning, concealing, dissipating, converting, withdrawing, or otherwise disposing of any defendants' assets***, wherever located, including assets held outside the United States.

3

PI Order at p. 4, ¶ 1 (ECF No. 31) (emphasis added).  The PI Order defines assets broadly as "any legal or equitable interest in, right to, or claim to, any real or personal property, whether individually or jointly, directly or indirectly owned or controlled," including "bank accounts, brokerage accounts, and accounts at other financial institutions."  *Id.* at p. 4, n.1 (ECF No. 31).  The PI Order also enjoins Defendants from further violating the Commodity Exchange Act, including from "soliciting or accepting funds from members of the public."  *Id*. at p. 8, ¶ 1 (ECF No. 31).  Defendants have refused to comply with the TRO and the PI Order.

**B.    Saffron's Personal and Corporate Bank Account Records Reveal Numerous Violations of the Asset Freeze**

Among the subpoenas issued by the CFTC pursuant to the Court's October 29, 2020 Order included subpoenas to Wells Fargo for a personal bank account of Saffron and a corporate Runway Beauty account on which Saffron was a signatory.[4]  These bank account records show that Saffron transferred assets in and out of these two accounts in complete disregard of the asset freeze.  Malas Decl. V. ¶¶ 6-11.

**1.    Saffron Violated the Asset Freeze By Transferring Funds To/From His Personal Wells Fargo Account**

According to the records produced by Wells Fargo Bank for account ****3959, Saffron opened a personal bank account on December 8, 2019; he was the sole signatory on this account.  Malas Decl. V. ¶¶ 6-7.  Through this account, Saffron received $127,349 in deposits from December 8, 2019 through August 25, 2020, including $78,850 from attorney David Kagel and

---

[4] The CFTC only became aware of these Wells Fargo Bank accounts in August 2020 and immediately served a copy of the PI Order on Wells Fargo Bank in August 2020.  *See* Malas Decl. V. ¶¶ 7(a), 9(a).

4

his law firm[5] and $8,840 from potential customers. *Id*. ¶¶ 7(c), 7(f). Saffron withdrew $127,318 from this account, including transferring $53,800 to potential customers and $1,250 to existing customers. *Id*. ¶¶ 7(e), 7(g). Saffron also withdrew $45,829 for personal expenses[6] and transferred $17,250 to Vincent Mazzotta, a business partner through whom Saffron appears to be moving assets. *Id*. After the CFTC served Wells Fargo Bank with a copy of the PI Order in August 2020, Wells Fargo Bank reported to the CFTC on August 25, 2020 that it had frozen this account, which had a balance of $31.01. *Id*. ¶ 7(a).

### 2. Saffron Violated the Asset Freeze By Transferring Funds To/From His Runway Beauty Wells Fargo Account

According to the records produced by Wells Fargo Bank for account ****2409 in the name of Runway Beauty, an Arizona corporation owned by Saffron's business partner Vincent Mazzotta, Mazzotta opened the account on June 14, 2019, and added Saffron as a signatory on July 24, 2019. Malas Decl. V. ¶¶ 8-9.[7] Saffron remained a co-signatory on the Runway Beauty account until August 26, 2020. *Id*. ¶ 9(b). Through this account, Saffron and Mazzotta received $577,167 in deposits from October 3, 2019 through August 26, 2020,[8] including $127,806 in cash, $152,343 from potential customers, $120,000 from attorney David Kagel, and $59,114 from Saffron's brother. *Id*. ¶¶ 9(c), 10. During this same time period, Saffron and Mazzotta withdrew $604,630 from this account, including transferring $58,360 to Saffron, $48,980 to

---

[5] David Kagel, an attorney with a longstanding relationship with Saffron, provided assurances to many of Defendants' customers that Kagel had access to Bitcoin in an escrow account in the event that Saffron was unable to provide promised returns. *See* Malas Decl. V. ¶¶ 7(c)-7(d).

[6] These personal expenses included expenses for "Apple Cash," restaurants, groceries, and liquor. *See* Malas Decl. V. ¶ 7(e).

[7] As Mazzotta is subject to the TRO and PI Order as someone "acting in concert with the Defendant," and both individuals are signatories on the account, they are equally liable for any violations of the TRO and PI Order.

[8] The relevant time period for the CFTC's analysis of the Runway Beauty account begins with the date of the TRO and ends with the date Saffron was removed as a signatory on the account. *See* Malas Decl. ¶ 9(c).

Saffron's father and mother, $17,593 to potential customers, and $5,100 to existing customers. *Id.* ¶¶ 9(d), 11. Saffron and Mazzotta also withdrew $284,213 from this account for personal expenses including for restaurants, credit card payments, hotels and travel. *Id.* After the CFTC served Wells Fargo Bank with a copy of the PI Order in August 2020, Wells Fargo Bank reported to the CFTC on August 25, 2020 that it had frozen this account, which had a balance of $127.06. *Id.* ¶ 9(a).

### 3. Saffron Violated the Asset Freeze By Transferring Funds To/From His Personal Digital Currency Account

The Division has also become aware of information revealing a digital currency account at Ternio in Saffron's name. Malas Decl. V. ¶ 12. Upon information and belief, it appears that Saffron is using this account to accept, hold, and/or disperse customer funds. *Id.* Based upon information obtained by the CFTC regarding this account, Saffron received deposits of digital currency totaling $94,402 and withdrew funds totaling $64,962 from October 3, 2019 through January 2021.[9] *Id.* As part of this Motion, the CFTC is seeking leave of court to issue a subpoena to this digital currency exchange for the full production of Saffron's account records in accordance with the Court's October 29, 2020 Order (ECF No. 80). Ternio recently froze Saffron's account after the CFTC served Ternio with the Court's PI Order. *Id.* ¶ 13. Ternio subsequently advised the CFTC that Saffron thereupon contacted Ternio to complain that his account had been frozen. *Id.*

---

[9] The relevant time period for the CFTC's analysis of Saffron's personal digital currency account begins with the date of the TRO and runs through January 2021, the date through which the CFTC has information regarding this account. *See* Malas Decl. ¶ 12.

### C. Defendants' Counsel Refuses to Identify the Source of His Fees and May Be Accepting Frozen Funds in Violation of the Asset Freeze

The CFTC continues to have serious concerns as to whether Defendants have retained counsel using assets that have been frozen in violation of the Court's Orders. Although the CFTC respects Defendants' right to retain counsel, Defendants have no right to retain counsel with the use of frozen funds in violation of the Court's asset freeze. As part of the CFTC's obligation to ensure compliance with the Court's Orders, the CFTC served a copy of the PI Order on defense counsel prior to his entry of appearance and asked him to identify the sources of his fees. *See* Email from CFTC to J. Gutke dated Dec. 8, 2020 (ECF No. 95-1 at pp. 2-3). The CFTC also communicated its position that, in the event Defendants desired to pursue a carve out from the frozen assets for attorney's fees, such an application would need to be made with the Court prior to Defendants' retaining counsel. *See id.* To date, counsel has refused to identify the source of his fees, has not filed any fee application for the Court's consideration, and has not indicated that he has been retained on a *pro bono* basis. The CFTC, therefore, requests that the Court order defense counsel to identify the source of all fees he has received in this matter — either directly from Defendants or through third parties acting as "straw men" for Defendants — as set forth in the proposed order accompanying this Motion, and order that any fees accepted in violation of the Court's Orders be surrendered to the Registry of the Clerk of the Court.

## II.  ARGUMENT

### A.  The Court Has Inherent Authority to Enforce the Asset Freeze

This Court has the power to enforce Defendants' compliance with the asset freeze orders through civil contempt. *See California Dep't of Soc. Servs. v. Leavitt*, 523 F.3d 1025, 1033 (9th Cir. 2008) ("courts have inherent power to enforce compliance with their lawful orders through civil contempt") (quoting *Shillitani v. United States*, 384 U.S. 365, 370 (1996)). Courts have

7

often found parties, their counsel, and other non-parties in civil contempt when they violate or interfere with asset freeze orders.  *See, e.g., Waffenschmidt v. MacKay*, 763 F.2d 711, 718-719 (5th Cir. 1985) (affirming contempt order against non-parties who aided and abetted asset freeze violation by accepting funds from enjoined party and participating in dissipation of funds); *CFTC v. Forex Liquidity LLC*, No. 8:07-cv-1437, 2009 WL 2231684, at *6 (C.D. Cal. July 23, 2009) (finding CEO of defendant in contempt for refusing to turn over funds to receivership); *SEC v. Current Fin. Servs., Inc*., 798 F. Supp. 802, 808 (D.D.C. 1992) (finding defendants, their attorney, and a non-party trust in contempt for transferring company's assets back to its investors in violation of asset freeze).

**B.    Legal Standard for Civil Contempt**

In the Ninth Circuit, the "party alleging civil contempt must demonstrate that the alleged contemnor violated the court's order by 'clear and convincing evidence.'"  *United States v. Ayres*, 166 F.3d 991, 994 (9th Cir. 1999) (quoting I*n re Dual-Deck Video Cassette Recorder Antitrust Litig*., 10 F.3d 693, 695 (9th Cir. 1993)).  The "party petitioning the court for civil contempt does not have to establish that the respondent intended to violate, or willfully violated, the order."  *CFTC v. Emerald Worldwide Holdings, Inc*., No. 2:03-cv-8339, 2004 WL 3186580, at *2 (C.D. Cal. July 29, 2004) (citing *NLRB v. Ironworks Local 433*, 169 F.3d 1217, 1222 (9th Cir. 1999)).  Once the moving party establishes the violation, the burden shifts to the alleged contemnor to produce evidence justifying his non-compliance.  *FTC v. Affordable Media, LLC*, 179 F.3d 1228, 1241 (9th Cir. 1999) (citing *Stone v. City and County of San Francisco*, 968 F.2d 850, 856 n.9 (9th Cir. 1992)); *Emerald Worldwide Holdings*, 2004 WL 3186580, at *2.  This Court has clearly set forth this standard in its prior contempt order.  *See* Contempt Order at pp. 4-5 (ECF No. 51).

**C.    The Court Should Find Defendants in Contempt and Impose Sanctions Sufficient to Compel Compliance with the Asset Freeze**

As set forth in the CFTC's Show Cause Motions I and II, Defendants received service and actual notice of the TRO and PI Orders directly or through counsel. CFTC's Show Cause Motion I at p. 5 (ECF No. 24); CFTC's Show Cause Motion II at pp. 2-4 (ECF No. 40). Defendant Saffron, both individually and as the sole officer of the corporate Defendant, had knowledge of the Orders and was on notice that any transfer or dissipation of assets would violate the clear terms of the asset freeze. Indeed, the CFTC raised its concerns regarding potential asset freeze violations with Saffron face-to-face at the January 24, 2020 Contempt Hearing and with former and current defense counsel throughout the litigation. *See* Tr. Contempt Hearing Jan. 24, 2020 at 26:13-27:8 (ECF No. 65); Email from CFTC to J. Gutke dated Dec. 8, 2020 (ECF No. 95-1 at pp. 2-3). At the Contempt Hearing, the Court advised Saffron of his obligations, and Saffron stated on the record that he would comply. Despite being on notice of the asset freeze, and his representations to this Court, Saffron brazenly transferred funds in and out of his two Wells Fargo Bank accounts and his personal digital currency account in violation of the TRO and PI Order. Malas Decl. V. ¶¶ 6-13.

    **1.    The Court Should Require Saffron to Repay Funds Transferred or Disposed of in Violation of Asset Freeze to Restore the Status Quo**

In order to halt Saffron's ongoing dissipation of funds, restore the status quo, and preserve assets for injured customers, the Court should require Saffron to repay the frozen funds he transferred or disposed of into the Registry of the Clerk of the Court for safekeeping until the entry of a final judgment. *See, e.g., CFTC v. Am. Metals Exchange Corp.,* 991 F.2d 71, 77 (3d Cir. 1993) (an asset freeze "is designed to preserve the status quo by preventing the dissipation

and diversion of assets"); *CFTC v. Morgan, Harris & Scott, Ltd.*, 484 F. Supp. 669, 678 (S.D.N.Y. 1979) (order freezing assets "is often necessary to ensure that the assets will be available to compensate public customers"). Indeed, had Saffron complied with the TRO and PI Order by identifying his assets, the CFTC would have immediately frozen the assets through service of the orders on the relevant financial institutions. To enforce its freeze order, to prevent Saffron from squandering his remaining assets, and to protect what assets remain for any future customer restitution, the Court should order the repayment of the frozen funds. The Court has the authority and discretion to require Saffron to remedy his asset freeze violations by repaying the funds he spent. *See, e.g., CFTC v. Co Petro Marketing Grp., Inc.*, 700 F.2d 1279, 1282-83 (9th Cir. 1983) (finding district court had authority to order return of funds taken in violation of asset freeze to receiver notwithstanding bankruptcy action); *SEC v. Amerifirst Funding Inc.*, 3:07-cv-1188, 2008 WL 282275, at *18 (N.D. Tex. Feb. 1, 2008) (holding that where defendant violated asset freeze the proper contempt sanction was to order the return of funds expended and explaining that "[t]he sanctions that the court will impose are intended to restore the status quo before the transaction"), *aff'd in part*, *vacated and remanded in part on other grounds sub nom. Whitcraft v. Brown,* 570 F.3d 268 (5th Cir. 2009).

### 2. The Court Should Order Incarceration of Saffron Until He Fully Complies with All of the Court Orders and Repays Misspent Frozen Funds

Defendants have refused to abide by any of the Court orders to date, including refusing to provide any business records or an accounting and refusing to obey the asset freeze. The Court's January 30, 2020 Civil Contempt Order (ECF No. 51), warnings of more severe sanctions for non-compliance, and the imposition of $1,000 daily fines upon each Defendant, have all failed to coerce Defendants' compliance. Defendants have refused to pay any of the daily fines, totaling $750,000 as of the date of this filing, and these fines have proven wholly insufficient to coerce

Defendants to comply with the Court's Orders. Incarceration is the only remaining sanction that will compel Defendants' compliance with this Court's Orders.

Civil contempt sanctions must be either "compensatory or designed to coerce compliance" and may include incarceration. *See In re Dyer*, 322 F.3d 1178, 1192 (9th Cir. 2003). Incarceration under a civil contempt order pending compliance with court orders is clearly within the Court's authority. *See Shillitani v. United States*, 384 U.S. 365 at 370-72; *FTC v. Kutzner*, 8:16-cv-00999, 2017 U.S. Dist. LEXIS 182569, at *8-9 (C.D. Cal. June 12, 2017) ("Another civil contempt sanction option is imprisonment, which is 'not inflicted as a punishment, but is intended to be remedial by coercing the defendant to do what he had refused to do.'") (quoting *United States v. Yates*, 107 F.Supp. 412, 414 (S.D. Cal. 1952)); *In re Count Liberty, LLC*, 370 B.R. 259, 286 (C.D. Cal. Bankr. 2007). Incarceration is this context is not punitive but rather coercive in nature because the party "carries the keys of his prison in his own pocket." *Int'l Union v. Bagwell*, 512 U.S. 821, 828 (1994) (*quoting Gompers v. Bucks Stove & Range Co.*, 221 U.S. 418, 442 (1911)). Courts have ordered incarceration as a remedy for civil contempt in similar circumstances as the case here. *See, e.g.*, *SEC v. Elmas Trading Corp.*, 824 F.2d 732, 733 (9th Cir. 1987) (holding that district court did not abuse its discretion in adjudging party in civil contempt and ordering him incarcerated until he produced specified documents); *CFTC v. Emerald Worldwide Holdings, LLC*, No. 2:03-cv-8339, 2005 WL 77048, at *1 (C.D. Cal. Jan. 3, 2005) (granting application for arrest warrant of defendant who violated prior court order imposing civil contempt and fining defendants on daily basis until they made records available to CFTC); *SEC v. KL Group, LLC*, No. 9:05-cv-80186, 2006 U.S. Dist. LEXIS 85588 (S.D. Fla. Nov. 27, 2006) (holding defendant in contempt for violating asset freeze order and ordering him incarcerated until he restores dissipated funds); *SEC v. Bankers Alliance Corp.*, 881

11

F. Supp. 673, 684 (D.D.C. 1995) (imposing civil contempt sanctions against defendants that included fines and incarceration for failing to provide an accounting of assets pursuant to a preliminary injunction order).

The sole purpose of the CFTC seeking the incarceration of Saffron is to coerce Defendants' compliance with the Court's Orders. Saffron admitted on the record to possessing business records and is the only person who can identify, and has custody and control over, the assets covered by the asset freeze. *See* CFTC's Mot. for Additional Sanctions at 5-6 (ECF No. 62). Saffron, therefore, can avoid or end incarceration by simply complying with all of the Court's Orders in this case and repaying the frozen funds to the Registry of the Clerk of the Court. Accordingly, any incarceration would be solely coercive and not punitive. Given that Defendants have been in violation of the Court's Orders for more than one year, have refused to produce business records and an accounting of assets in that period, have intentionally and repeatedly violated the Court's asset freeze, incarceration is now the sole option remaining to coerce any compliance with the Court's Orders.

### III.   CONCLUSION

For the foregoing reasons, the CFTC respectfully requests the Court to hold Defendants in contempt of Court for violating the PI Order and Contempt Order and order the following:

1. Defendants' immediate compliance with the PI Order and Contempt Order in all respects, including the production of business records and an accounting to the CFTC, along with payment of $1,000 daily fines for failure to comply with the Court orders, now totaling $750,000;

2. Defendants' repayment of $796,910 transferred or disposed of in violation of the asset freeze to the Registry of the Clerk of the Court;

3. Incarceration of Saffron until he purges himself of the contempt by fully complying with the PI Order and Contempt Order(s), paying the $750,000 in daily fines, and repaying the $796,910 in funds transferred or disposed of in violation of the asset freeze; and

4. Defense counsel's identification of the source of all fees he has received in this matter from Defendants and surrender of all fees accepted in violation of the Court's Orders to the Registry of the Clerk of the Court.

The CFTC also moves the Court to permit it to issue a third-party subpoena to Ternio, a digital currency exchange, pursuant to the Court's October 29, 2020 Order (ECF No. 80). In the event the Court deems it appropriate to hold a hearing on the relief requested herein, the CFTC is available to participate in person or telephonically at the Court's earliest convenience.

Dated: February 16, 2021

Respectfully submitted,

By: /s/ Danielle E. Karst
Danielle E. Karst
Timothy J. Mulreany
**COMMODITY FUTURES TRADING COMMISSION**
Three Lafayette Centre
1155 21st Street, N.W.
Washington, D.C. 20581
Telephone: (202) 418-5000

### CERTIFICATE OF SERVICE

I certify that on February 16, 2021, I filed a copy of *Plaintiff CFTC's Third Motion for an Order to Show Cause As to Why Defendants Should Not Be Held in Civil Contempt for Violations of the Court's Asset Freeze*, with the Clerk of the Court using the CM/ECF system, which will serve notice to counsel of record below.

**John H. Gutke**
**John P. Witucki**
Gutke Law Group, PLLC
552 E. Charleston Blvd.
Las Vegas, Nevada 89104
(Counsel for Defendants David Gilbert Saffron and Circle Society, Corp.)

/s/ Danielle E. Karst
Danielle E. Karst

13