# Exhibit 1

Declaration of George H. Malas in Support of Plaintiff's Third Motion for an Order to Show Cause as to Defendants

Danielle E. Karst (D.C. Bar No. 481881)
Timothy J. Mulreany (Maryland Bar No. 8812160123)
**COMMODITY FUTURES TRADING COMMISSION**
Three Lafayette Centre
1155 21st Street, N.W.
Washington, D.C. 20581
Telephone:   (202) 418-6158 (Karst)
Telephone:   (202) 418-5306 (Mulreany)
Facsimile:    (202) 418-5523
dkarst@cftc.gov
tmulreany@cftc.gov

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEVADA**

| | |
|---|---|
| COMMODITY FUTURES TRADING COMMISSION,<br><br>Plaintiff,<br><br>v.<br><br>DAVID GILBERT SAFFRON a/k/a DAVID GILBERT and CIRCLE SOCIETY, CORP.,<br><br>Defendants. | Case No.  2:19-cv-1697-JAD-DJA<br><br>**SUPPLEMENTAL DECLARATION OF GEORGE H. MALAS IN SUPPORT OF PLAINTIFF'S THIRD MOTION FOR AN ORDER TO SHOW CAUSE AS TO WHY DEFENDANTS SHOULD NOT BE HELD IN CIVIL CONTEMPT FOR VIOLATIONS OF THE COURT'S ASSET FREEZE** |

I, George H. Malas, hereby declare as follows:

## I.     INTRODUCTION

1.  I have worked as a Futures Trading Investigator for Plaintiff Commodity Futures Trading Commission ("Plaintiff" or "CFTC") since September 2009, and am the Futures Trading Investigator assigned to assist in the investigation and litigation of David Gilbert Saffron ("Saffron") and Circle Society, Corp. ("Circle Society") (collectively, "Defendants").

2.  I have personal knowledge of the following facts and, if called as a witness, could and would testify competently thereto.

3.  I submit this Declaration pursuant to 28 U.S.C. § 1746, in support of the CFTC's Third Motion for Issuance of Order to Show Cause as to Defendants.

1

## II.   RECORDS REVIEWED

4. In the preparation of this Declaration, I reviewed and analyzed the following documents:[1]

   a. Documents produced by Wells Fargo Bank ("WFB"), and JP Morgan Chase Bank ("JPMC") in response to subpoenas issued by the CFTC pursuant to the Court's October 29, 2020 Order granting the CFTC's Motion for Leave to Engage in Limited Third-Party Discovery (ECF No. 80).

   b. Information obtained during the course of this investigation and litigation regarding Saffron's personal digital currency account.

   c. Documents and information produced by CipherTrace to the CFTC, a digital currency intelligence and blockchain analytical company.

   d. Information produced by multiple customers to the CFTC.

## III.   SUMMARY

5. The documents listed in Section II above disclosed numerous violations of the Court's asset freeze orders entered on October 3, 2019 (TRO, ECF No. 9), and December 6, 2019 (PI Order, ECF No. 31), and the Court's Civil Contempt Order entered on January 30, 2020 (Civil Contempt Order, ECF No. 51). Specifically, my analysis of the documents noted above revealed multiple asset transfers and deposits executed by Saffron as described below.

**Saffron's Transfer of Funds to/from Personal Bank Accounts**

6. The CFTC received documents from WFB in response to a subpoena, issued pursuant to the Court's October 29, 2020 Order (ECF No. 80), for one account in Saffron's name, account

---

[1] These documents and bank records are voluminous and therefore are not attached to this Declaration, but rather summarized herein. All documents can be made available for review upon request. Personal identifying information, such as account numbers and Social Security numbers, have been redacted in accordance with Fed. R. Civ. P. 5.2 and L.R. 5-4.3.2 and 5.2-1.

****3959. *See* WFB documents for Saffron's personal account ****3959, excerpts of which are found at Exhibit A.[2]

7. Based upon my review of the WFB account documents for account ****3959, I determined that:

   a. Saffron opened the account on or about December 8, 2019.[3]

   b. Saffron is the sole signatory on the account.

   c. From the time the account was opened until the account was frozen on August 25, 2020, pursuant to the Court's TRO Order (ECF No. 9), Saffron received deposits totaling approximately $127,349.27.  Specifically, Saffron received a total of approximately $78,850 (or 62% of total deposits) from David Kagel ("Kagel"), an attorney with a longstanding relationship with Saffron, who provided assurances to many of Defendants' customers that Kagel had access to Bitcoin ("BTC") in an escrow account in the event that Saffron was unable to provide promised returns.

   d. Further, the CFTC has direct evidence that Kagel is moving funds for Saffron.  For example, the CFTC received documents from JPMC for a corporate bank account in the name of Kagel Law, a Professional Corporation, account ****6073, that revealed Kagel paid Saffron's legal fees to Defendants' former counsel, Shumway Van LLC ("SV").  Specifically, on July 2, 2020, Kagel wired $15,000 from his JPMC account ****6073 to a bank account in the name of SV IOLTA Trust Account with a memo stating 'Fbo David Saffron.'  *See* account documents for

---

[2] These documents are voluminous, and therefore only an excerpt is attached to this Declaration. A complete and full set of the documents can be made available to the Court upon request.

[3] The CFTC first became aware of account ****3959 in August 2020, and immediately served a copy of the Court's PI Order (ECF No. 31) on WFB.  On August 25, 2020, WFB reported to the CFTC that it had frozen Saffron's account ****3959, and that the account maintained a balance of $31.01.

JPMC account ****6073, a copy of which is found at Exhibit B.[4]

e. During the relevant time period noted above in ¶ 7c, Saffron withdrew a total of approximately $127,318.26. Specifically, he spent a total of approximately $45,829.27 on personal expenses including, but not limited to, $27,038 on Apple Cash;[5] and $2,407 on restaurants, groceries, and liquor as described below.

**Deposit of Funds**

f. During the period December 8, 2019 through August 25, 2020, a total of $127,349.27 was deposited into Saffron's personal account calculated as follows:

| From | Amount |
| --- | --- |
| David Kagel | $49,800.00 |
| Kagel Law, A Professional Corporation | $29,050.00 |
| Runway Beauty, Inc.- WFB *2409 | $31,900.00 |
| Potential Victims | $8,840.00[6] |
| Unknown Deposits | $3,200.00 |
| Cash | $2,590.00 |
| Miscellaneous | $1,015.98 |
| Venmo | $594.00 |
| Hello Digit Inc. | $359.29 |
| **TOTAL** | **$127,349.27** |

---

[4] These documents are voluminous and therefore only an excerpt is attached to this Declaration. A complete and full set of the documents can be made available to the Court upon request.

[5] Apple Cash is a service that's incorporated into the Apple Pay platform that allows users to send, receive, and request money from others through iMessages.

[6] Of the $8,840 deposited by potential customers, $3,500 is clearly attributed to a potential customer as the description of the relevant deposit on Saffron's monthly account statement states "Funds for Investment," and the remaining $5,340 appears to be from potential customers as the description of these deposits simply includes names of individuals.

**Withdrawal of Funds**

g. During the period December 8, 2019 through August 25, 2020, a total of $127,318.26 was withdrawn from Saffron's personal account calculated as follows:

| To | Amount |
| --- | --- |
| Potential Victims | $53,800.00 |
| Personal Expenses | $45,829.27 |
| Vincent Mazzotta | $17,250.00 |
| ATM & Cash Withdrawals | $7,300.00 |
| Known Victims | $1,250.00[7] |
| Genevieve Saffron (Defendant Saffron's Mother) | $1,000.00 |
| Fees | $485.00 |
| Uphold.com | $403.99 |
| **TOTAL** | **$127,318.26** |

**Saffron's Transfer of Funds to/from Runway Beauty, Inc. Bank Account**

8. The CFTC also received documents from WFB for one account in the name of Runway Beauty, Inc. ("RB"), account ****2409. RB is an Arizona registered corporation owned by Vincent Mazzotta ("Mazzotta"). Based on information and documentation obtained during the course of its investigation, the CFTC has reason to believe that Mazzotta is a current and/or former business partner of Saffron, as well as someone that Saffron may have lived with at some

---

[7] Based on my analysis, these withdrawals consisted of $750.00 returned to one customer who provided approximately $74,000 to Saffron and was included in the CFTC's complaint against Defendants (Complaint, ECF No. 1), and $500.00 returned to another customer who was listed in Saffron's customer list that he produced to the CFTC on February 6, 2020 (*see* Karst Decl. in Support of Notice of Defs.' Non-Compliance with Civil Contempt Order ¶¶ 6-8, ECF No. 58-1).

point at a property in Los Angeles, California.  The relationship between Saffron and Mazzotta is further evidenced by the fact that Saffron was a signatory on the RB account ****2409 as described below.  *See* WFB documents for RB account ****2409, a copy of which is found at Exhibit C.[8]

9. Based upon my review of the WFB account documents for account ****2409, I determined that:

a. The RB account was opened on or about June 14, 2019.[9]

b. Mazzotta was the sole signatory on the account from inception until July 24, 2019, when he added Saffron as a co-signatory on the account.  Saffron was removed as co-signatory on the account on August 26, 2020.

c. During the period October 3, 2019 through August 26, 2020,[10] Saffron and/or Mazzotta received deposits totaling approximately $577,167.04.  Specifically, they received a total of approximately $127,806 in cash deposits, a total of $120,000 from Kagel (*see* ¶ 7c above), and a total of approximately $59,114 from Saffron's own brother as described below.

d. During the relevant time period noted above in ¶ 9c, Saffron and/or Mazzotta withdrew a total of approximately $604,630.02.  Specifically, Saffron and/or Mazzotta spent more than $284,000 on personal expenses including, but not limited to, $69,683 on Apple Cash; $34,233 on restaurants, groceries, and liquor; $20,896 on credit card payments; and $10,309 on hotels &

---

[8] These documents are voluminous and therefore only an excerpt is attached to this Declaration.  A complete and full set of the documents can be made available to the Court upon request.

[9] The Commission first became aware of account ****2409 in August 2020, and immediately served a copy of the Court's PI Order (ECF No. 31) on WFB.  On August 25, 2020, WFB reported to the Commission that it had frozen RB account ****2409, and that the account maintained a balance of $127.06.

[10] The relevant time period for the CFTC's analysis of the RB account begins with the date of the Court's October 3, 2019 TRO Order (ECF No. 9) and ends with the date that Saffron was removed as a signatory on the account, August 26, 2020.

6

travel. Moreover, Saffron and/or Mazzotta transferred approximately $48,980 to Saffron's mother and father as described below.

**Deposit of Funds**

10. During the period October 3, 2019 through August 26, 2020, a total of $577,167.04 was deposited into the RB account calculated as follows:

| From | Amount |
|---|---|
| Cash | $127,806.00[11] |
| Potential Victims | $152,343.00 |
| Kagel Law, A Professional Corporation | $120,000.00 |
| Miscellaneous | $31,213.20 |
| Adam Gilbert Saffron (Defendant Saffron's Brother) | $59,114.20 |
| Runway Beauty, Inc. | $33,917.52 |
| DHP Motorsports | $26,170.00 |
| David Saffron | $20,607.62 |
| Blueground U.S. Inc. | $3,080.00 |
| Vincent Mazzotta | $2,915.50 |
| **TOTAL** | **$577,167.04** |

**Withdrawal of Funds**

11. During the period October 3, 2019 through August 26, 2020, a total of $604,630.02 was withdrawn from the account calculated as follows:

---

[11] These cash deposits consist of ATM cash deposits and cash deposits made with a bank teller at a physical bank branch.

7

| To | Amount |
| --- | --- |
| Personal Expenses | $284,213.43 |
| David Saffron | $58,360.00 |
| Vincent Mazzotta | $52,185.56 |
| Blueground U.S. Inc. | $49,294.50 |
| Runway Beauty, Inc. | $55,053.59 |
| ATM & Cash Withdrawals | $30,419.45 |
| Alan Saffron (Defendant Saffron's Father) | $36,980.00 |
| Potential Victims | $17,592.90 |
| Genevieve Saffron (Defendant Saffron's Mother) | $11,999.99 |
| Known Victims | $5,100.00[12] |
| Fees | $3,430.60 |
| **TOTAL** | **$604,630.02** |

**Saffron's Personal Digital Currency Account**

12. In addition to the two WFB accounts referenced above in ¶¶ 6-11, the CFTC obtained information during the course of its litigation that revealed a digital currency account held at Ternio, LLC ("Ternio") in Saffron's name.[13]  Based upon my discussions with Ternio's Compliance Officer, it appears that Saffron may be accepting, holding, and/or dispersing customer funds via his Ternio digital currency account.  For example, during the period October

---

[12] Based on my analysis, these withdrawals were returned to one customer who provided approximately $74,000 to Saffron.  The CFTC's Complaint included this customer's deposits as part of Defendants' fraud (Complaint, ECF No. 1), as previously noted in Footnote 7 above.

[13] Ternio is a global fintech company based in Charlotte, NC and Atlanta, GA.  Its website states, among other things, that its platform "connects traditional enterprise, fintech, banking, systems with blockchain infrastructure giving real world utility to digital assets" (*Source:* https://ternio.io).

8

3, 2019 through January 2021,[14] Saffron received deposits of digital currency totaling approximately $94,402, and withdrew funds totaling approximately $64,962.

13. Further, Ternio recently froze Saffron's digital currency account after the CFTC served Ternio with a copy of the Court's PI Order (ECF No. 31). Ternio subsequently represented to the CFTC that Saffron thereupon contacted Ternio to complain that his account had been frozen.

**Forensic Analyses of Saffron's Digital Currency Addresses and Transactions**

14. The CFTC retained CipherTrace for the purpose of conducting a forensic investigation regarding digital currency addresses and transactions believed to be associated with Saffron. Based on the information and analyses provided by CipherTrace, the CFTC has reason to believe that:

   a. Saffron is associated with more than 1,900 BTC addresses.

   b. Saffron received deposits of approximately 9,705 BTC during the period February 2017 through December 2020. As of February 15, 2021, these 9,705 BTC are worth approximately $465 million based on the closing price of BTC (47,945.06).[15]

**Saffron's Payouts to Victims**

15. Based on information provided to the CFTC by several customers, Saffron is providing payouts in an apparent attempt to "settle" with some customers outside of this litigation as described in the examples below.

   a. On November 25, 2020, a customer reported to the CFTC that he received .12 BTC (worth ~ $2,247 at the time) from Saffron, and that Saffron was "trying to get [customer] to take

---

[14] The relevant time period for the CFTC's analysis of Saffron's personal digital currency account begins with the date of the TRO and runs through January 2021, the date through which the CFTC has information regarding this account.

[15] *Source:* https://coinmarketcap.com/currencies/bitcoin/historical-data/.

9

down [his] telegram channel by paying [him] off." Moreover, the CFTC recently obtained information confirming that a portion of the BTC (0.0852) related to this .12 BTC transaction was actually deposited back into Saffron's personal digital currency account referenced above in ¶ 12.

b. On February 10, 2020, a customer reported to the CFTC that she has decided to "redact" her claim against Saffron. This customer reported that she and Saffron have "came [sic] to a settlement." *See* Malas Decl. in Support of CFTC's Motion for Default Judgment at ¶ 8, ECF 61-1.

**Saffron's Continual Visits to Las Vegas Casinos**

16. Lastly, the CFTC recently obtained information that Saffron visited a Las Vegas casino as recent as January 3, 2021, after being banned on October 14, 2019 from all gaming activity in casinos owned or operated by the casino's parent company. During Saffron's recent visit, he used $3,600 in cash to play table games until casino security and table games management escorted him to the casino cage to redeem his winnings of approximately $7,200 and reminded him that he is not allowed to stay at any of the hotels or gamble at any of the properties owned by the casino's parent company.

I declare under penalty of perjury that the foregoing is true and correct.

                                            *George H. Malas*
                                            George H. Malas
                                            Futures Trading Investigator

Executed in Washington, D.C. on February 16, 2021