David Gilbert Saffron
3600 Barham Blvd
Unit X111
Toluca Lake 90068
Ovetsite2019@gmail.com

Plaintiff In Pro Per



# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

| | |
|---|---|
| COMMODITY FUTURES TRADING COMMISSION, | Case No. 21-cv-01697 JAD-DIA |
| Plaintiff, | **MOTION TO AMEND OR ALTER THE JUDGMENT UNDER RULE 59(e), OR IN THE ALTERNATIVE TO CORRECT ERRORS ARISING FROM OVERSIGHT OR OMISSION PURSUANT TO RULE 60(a)** |
| vs. | |
| DAVID GILBERT SAFFRON A/K/A DAVID GILBERT AND CIRCLE SOCIETY, CORP. | |
| Defendants. | |

1

**TO THE COURT, ALL PARTIES, AND THEIR COUNSEL OF RECORD:**

NOTICE IS HEREBY GIVEN THAT ON Defendant David Gilbert Saffron ("Saffron), in pro per, will and does hereby move this Court to amend or alter the Final Judgment of Disgorgement, Civil Penalty, Restitution, and Permanent Injunction, and the Judgment thereon, both entered on March 29, 2021. In the alternative, Saffron moves to correct errors that perhaps arose from oversight or omission pursuant to Rule 60(a).

Pursuant to Local Rule 1-4, Movant wrote to the Plaintiff to meet and confer, prior to filing this Motion, offering to stipulate to amend and clarify the Court's Final Judgment. The meet and confer process occurred by email from Movant to the CFTC counsel on 4/23/2021The CFTC has not agreed to the relief requested.

This Motion is based on this Notice, the attached Memorandum of Points and Authorities, the matters of which this Court may take judicial notice, and such further argument and matters as may be offered at the time of the hearing.

Dated: April 25, 2021

By: */s/ David Gilbert Saffron, in Pro Per*

## **MEMORANDUM OF POINTS AND AUTHORITIES**

### I.　　**INTRODUCTION**

Pursuant to Rule 59(e) of the Federal Rules of Civil Procedure, Saffron moves to "alter or amend" the Final Judgment of Disgorgement, Civil Penalty, Restitution, and Permanent Injunction ("Final Judgment"), and the Judgment thereon, both entered on March 29, 2021. (Docket Nos. 112 and 113.) In the alternative, Saffron moves, pursuant to Rule 60(a) of the Federal Rules to correct errors that perhaps resulted from mistake or oversight.

The relief sought is based on the fact that the Final Judgment, as written and entered, is inconsistent with the Court's stated remarks at the hearing held on [need date]. Further, the Final Judgment itself indicates that the Court "articulated [its] findings and conclusions on the record, the transcript of the hearing serves as the record of [its] ruling." However, the written Final Judgment is contrary to the conclusions made by the Court in the transcript. Accordingly, Saffron requests this Court to "amend or alter" the Final Judgment such that it is actually consisted with the Court's articulated remarks.

Finally, the Final Judgment is overbroad in two critical ways: First, as written, it prohibits Saffron from holding, owning, buying or selling "commodities" for his personal use or his own accord. Second, the order binds a whole host of persons who never received any notice of this proceeding, and violates their due process

1

rights, and effectively bars Saffron from doing business, banking, hiring counsel or even a dry cleaner who happens to own, sell or trade in "commodities" on their own accord. This cannot be what the Court intended, and Saffron submits that a minor clarification will correct these oversights.

Prior to providing the Court the full legal basis for the Motion, Saffron advises the Court that he does intend to satisfy the monetary elements of the Judgment in full if he is able. This would require him to recover property that was stolen, absconded or held by third parties. Saffron intends to provide the CFTC or the Court with the proceeds of the property recovered in order to satisfy the monetary aspects of the Judgment should he obtain that recovery. The issues that arose that resulted in the default judgment arose directly from the CFTC's untenable position that Saffron was unable to hire counsel, pay counsel or even borrow money to pay counsel. Nevertheless, Saffron intends to make good on the Judgment to the extent that he succeeds in recovering his stolen property.

## II. **STANDARD**

A motion filed pursuant to Rule 59(e) must seek to "alter or amend" the judgment. This means seeking a substantive change of mind by the court. See United States ex rel. Hoggett v. University of Phoenix, 863 F3d 1105, 1108 (9th Cir. 2017). To obtain relief under Rule 59(e), a party usually must show "either that new and important evidence, previously unavailable, has surfaced or that the original

judgment was premised on a manifest error of law or fact." Ira Green, Inc. v. Military Sales & Service Co., 775 F3d 12, 28 (1st Cir. 2014). A motion to alter or amend a judgment "may not be used to relitigate old matters, or to raise arguments or present evidence that could have been raised prior to the entry of judgment." Exxon Shipping Co. v. Baker, 554 US 471, 485 (2008). If the motion is filed within 28 days after the district court's entry of judgment, it is treated as a motion to alter or amend the judgment under Rule 59(e). Lee-Thomas v. Prince George's County Pub. Schools, 666 F3d 244, 247, fn. 4 (4th Cir. 2012).

But "clerical mistakes" in judgments arising from "oversight or omission" may be corrected at any time on the court's own initiative or on motion of any party. FRCP 60(a); Big Bear Lodging Ass'n v. Snow Summit, Inc. (9th Cir. 1999) 182 F3d 1096, 1106, fn. 7 (9th Cir. 1999); In re Walter (6th Cir. 2002) 282 F3d 434, 440 (6th Cir. 2002) ("basic purpose of ... rule is to authorize ... court to correct errors that are mechanical in nature that arise from oversight or omission"). A "substantive" motion (challenging judicial error) will be treated as a motion to alter or amend the judgment under Rule 59(e) if filed no later than 28 days after entry of the judgment. If filed thereafter, it will be treated as a motion for relief under Rule 60(b) Computerized Thermal Imaging, Inc. v. Bloomberg, L.P., supra, 312 F3d at 1296, fn. 3).

IV. **THE FINAL JUDGMENT SHOULD BE AMENDED TO ALLOW**

**SAFFROM TO EARN A LIVING, TO PAY LAWYERS AND TO HOLD COMMODITIES UNRELATED TO THE CONDUCT COMPLAINED OF BY THE CFTC**

At the hearing on March 19, 2021, the Court made clear that the remedy to address any perceived overbreadth of the judgment was to "come to the Court and you file a motion." The CFTC's harassing conduct has kept Saffron being able to hire an attorney – they have been incessant in their harassment of counsel. (See Declarations of Axelrod and Armenta).[1] Movant begs this Court to clarify the order – prohibiting *anyone* who deals with Mr. Saffron from holding commodities or Mr. Saffron from holding them, effectively, keeps him from ever being able to engage counsel or deal in the modern world. Cryptocurrency is essentially a modern form of currency – 33 million Americans hold cryptocurrency and more than 10% of Americans. Keeping Saffron and his attorneys and others from even holding or using it (even if it is completely unrelated to the conduct complained of in this action) cannot be correct. It would be akin to sentencing a bank robber that he/she can never hold dollar bills again.

V. **THE FINAL JUDGMENT IS OVERBROAD**

A. **The Final Judgment, as Written, Prohibits Saffron From Holding,**

---

[1] The Armenta Declaration was obtained by former counsel, a judgment creditor, in connection with the motion for default judgment, but it was never filed.

4

**MEMORANDUM OF POINTS AND AUTHORITIES**

**Owning, Buying or Selling "commodities" for his Personal Use or His Own Accord.**

In <u>Commodity Futures Trading Comm'n v. McDonnell</u>, the court concluded that Bitcoins are commodities that can be regulated by the Commodities Futures Trading Commission. 287 F. Supp. 3d 213, 228 (E.D.N.Y. 2018) ("Virtual currencies are 'goods' exchanged in a market for a uniform quality and value. They fall well-within the common definition of 'commodity' as well as the [Commodity Exchange Act]'s definition of 'commodities' as 'all other goods and articles ... in which contracts for future delivery are presently or in the future dealt in.' "). Accordingly, the Final Judgment, as written, prohibits Mr. Saffron from holding, owning, buying selling cryptocurrency even for his own personal use. Never before has any court entered an order that a person is prohibited from owning fiat (cash, paper bills) for instance. How can a Court ban Mr. Saffron from holding what is, in today's world, acknowledged, as a form of digital currency? Mr. Saffron acknowledges the Court's intent, as stated in its remarks, is to keep him from trading for others, accepting commodities from third parties or doing any of the things that the CFTC alleges he did. However, the notion that Mr. Saffron cannot for life, hold or own or sell his own cryptocurrency is massively overbroad.

**B.     The Final Judgment, as Written, Is Overbroad as it Prohibits**

### Innocent Non-Parties From Dealing In Commodities

Where the interests of innocent non-parties are implicated, the balance of equities shifts with respect to the entry of an injunction. <u>Sato & Company LLC v. Kodiak Fresh Produce LLC</u>, 334 F. Supp. 3d 1023 (Jan. 20, 2017). If the record does not provide any evidence that an innocent third party received any tainted funds or commodities, and their interests are likely to be harmed by an overbroad injunction, equity weights against such an order. See <u>id.</u> at 1031.

The Final Judgment may suffer from a simple defect – it does not make clear that the agents or persons on notice of the order are restrained only insofar as they are engaged in "active concert" with Saffron. Such an interpretation would make sense, but unfortunately, it is not what the Final Judgment actually says. The Final Judgment lumps in the same restraints on anyone related to Mr. Saffron whether or not they are acting for, with, on behalf of or in active concert with him:

> "IT IS FURTHER ORDERED that David Gilbert Saffron a/k/a David Gilbert and Circle Society, Corp and <u>their agents</u>, holding companies, alter egos, including any of their successors, and <u>those persons in active concert or participation with them who received actual notice of this order</u> by personal service or otherwise, are **permanently restrained, enjoined, and prohibited from** directly or indirectly . . ."

Saffron proposes the Court change the opening paragraph as follows:

> "IT IS FURTHER ORDERED that David Gilbert Saffron a/k/a David Gilbert and Circle Society, Corp and holding companies, alter egos, including any of their successors ("Saffron Parties) and any persons in active concert with and on behalf of the Saffron Parties with respect to the conduct complained of in the Complaint, who have actual notice of this order are **permanently restrained, enjoined, and prohibited from** directly or indirectly . . . ."

Most significantly, the Final Judgment should make clear that innocent non-parties who are not acting in concert with or on behalf of Mr. Saffron may go about their routine business, whether that is holding cryptocurrency or other commodities on their own behalf or practicing law or business in behalf of <u>other</u> clients, wholly unrelated to Saffron, to do so. The Final Judgment appears to be unintentionally overbroad as written and should be corrected so that persons who happen to be Mr. Saffron's agents (i.e. banks, lawyers, accountants, etc) may go about their business as long as they do not dip into the world of the Saffron Parties vis-à-vis

commodities.

Dated: April 25, 2021

By: */s/ David Gilbert Saffron*

## DECLARATION OF BRAD LEE AXELROD

I, Brad Lee Axelrod, declare:

1. I am an attorney admitted to practice law in all Courts in the state of California and a member in good standing before the State Bar of California. I have had an attorney-client relationship with David Gilbert Saffron since approximately July 21, 2018.

2. I have never held cryptocurrency for Mr. Saffron, nor has Mr. Saffron ever traded in cryptocurrency on my behalf. Independently of Mr. Saffron, I do not currently own and hold cryptocurrency on my own personal account. This has nothing to do with Mr. Saffron and he has no ownership or other interests in my own personal assets. I hold no assets of, nor have I ever held any assets of Mr. Saffron, nor has he ever held any assets of mine; I have never traded for him and he has never traded for me.

3. I have read the Final Judgment of Disgorgement, Civil Penalty, Restitution and Permanent Injunction entered by this Court on March 29, 2021 ("Final Judgment"). I found the words in the Final Judgment to be disturbing and overbroad as they apply to me. For instance, in Section C, entitled "Permanent Injunction," the injunction states that it applies to Saffron and "their agents, holding companies, alter egos, including any of their successors, and those persons in active

concert or participation with them or who received actual notice of this order by personal service or otherwise." I have received notice of this order in my capacity as a legal advisor to Mr. Saffron. As a legal advisor and attorney to Mr. Saffron, I am necessarily his "<u>agent</u>." This does not mean that I intend to, have ever, or will deal in any commodities relative to Mr. Saffron. However, the manner in which the Final Judgment is worded, restrains me from doing the things listed in Section C.

4. The remedy may be as simple as inserting a few commas, as it is the wording on lines 13-17 that do not limit the barred persons to those "in active concert" with Mr. Saffron. If this is an error in drafting, as simply as correcting it with a few Oxford comma's, then it should be corrected.

5. Section C states that I may not engage in "trading on or subject to the rules of any registered entity, as that terms is defined in 7 U.S.C. § 1a(40). Essentially, this provision, as applied to me, means that **for life**, I am disabled and barred from trading in commodities. I would not be able to trade on any commodities exchanges, on my own behalf (and as completely unrelated to Mr. Saffron) on the Chicago Board Options Exchange, the Chicago Board of Trade, the Chicago Mercantile Exchange, COMEX, the Kansas City Board of Trade, the Minneapolis Grain Exchange, the North American Derivatives Exchange, New York Mercantile Exchange, New York Board of Trade, OneChicago. This cannot be what the Court intended. I also object to this Final Judgment even applying to

me, as I was never served nor given notice that such a Final Judgment would be entered that would affect my lifetime rights.

6. Section C, subparagraph 3, states that the enjoined persons are prohibited from "[e]ntering into any transaction involving "commodity interests," as that term is defined in 17 C.F.R. § 1.3(yy), <u>for their own personal use or for any account in which they have a direct or indirect interest.</u>"  Again, as written, this language appears to bar me personally or any trusts, companies or entities in which I have a direct or indirect interest from trading in "commodity interests," even if those transactions are completely unrelated to Mr. Saffron.  This cannot be what the Court intended.

7. Section C, subparagraph 4, states that the enjoined persons are prohibited from "[h]aving any commodity interests traded on their behalf." Even though I do not own any cryptocurrency – as written, this provision appears to bar me from ever selling the cryptocurrency I might have already owned through cryptocurrency exchanges!  This cannot be what the Court intended.

8. Section C, subparagraph 5, states that the enjoined persons are prohibited from "[c]introlling or directing trading for on or behalf of any other person or entity."  As written, this language appears to bar me from trading for my own family members or even my children.  This cannot be what the Court intended.

9. Section C, subparagraph 6, states that the prohibited persons are barred

from "[s]oliciting, receiving, or accepting any funds from any person for the purpose of purchasing or selling any commodity interests." As written, this language appears to bar my and my law practice from engaging in what could be the normal course of business – fulfilling directions of a client in a variety of transactions or settlement contexts, in contexts that are completely unrelated to Mr. Saffron. Again, this cannot be what the Court intended.

10. Section C, subparagraphs 7 and 8 state that the prohibited persons are barred from what would otherwise be routine aspects of engaging in registration or activity subject to CFTC regulation. Again, this cannot be what the Court intended, at least, insofar as any contemplated conduct is separate, apart and wholly unrelated to Mr. Saffron or his businesses.

11. Section C, subparagraph 9, states that the prohibited persons are barred from "[e]ngaging any business activities related to commodity interests." This paragraph is the most overbroad and most onerous. Read plainly, I am already in violation of this order, by, for instance, simply owning any commodity, interests that are, wholly unrelated to Mr. Saffron.

12. "Commodity interests" are defined in 17 C.F.R. § 1.3(yy) and means: (1) Any contract for the purchase or sale of a commodity for future delivery; and (2) Any contract, agreement or transaction subject to Commission regulation under section 4c or 19 of the Act. This includes futures, forex and/or swaps. This also

includes bitcoin or other forms of cryptocurrency. Matthew Kluchenek, Bitcoin and Virtual Currencies: Welcome to Your Regulator, Harv. Bus. L. Rev., at 2 (2016). It is onerous, if not completely draconian, to impose such an order upon me or upon other persons related to Mr. Saffron, provided I am not and they are not engaging in these activities with or on behalf of Mr. Saffron. I object to this Final Judgment and its wording, insofar as its plain language appears to apply to me and a host of entities and persons who might do business or act as his "agents" in matters unrelated to commodities.

13. If relief is not granted, I will file my own motion or lawsuit or retain competent Nevada counsel, however, I have attempted to avoid that as I am just recovering from serious cervical spinal surgery and am doing my best to recover and use my limited economic resources towards my health at this time.

I declare under the penalty of perjury under the laws of the United States of America that the foregoing is true and correct and that I executed this Declaration on April 25, 2021 in Los Angeles, California.

Brad Lee Axelrod,
Declarant