FILED _____   _____ RECEIVED
_____ ENTERED   _____ SERVED ON
COUNSEL/PARTIES OF RECORD

APR 26 2021

CLERK US DISTRICT COURT
DISTRICT OF NEVADA
BY:_____ DEPUTY

JOHN H. GUTKE
Nevada Bar No. 10062
JOHN P. WITUCKI
Nevada Bar No. 10800
**GUTKE LAW GROUP**
552 E. Charleston Blvd.
Las Vegas, Nevada 89104
Phone/Fax: 702.766.1212
jgutke@gutkelaw.com
jwitucki@gutkelaw.com

Attorneys for Defendants
DAVID GILBERT SAFFRON and
CIRCLE SOCIETY, CORP.

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEVADA

| | |
|---|---|
| COMMODITY FUTURES TRADING COMMISSION, <br><br> Plaintiff, <br> v. <br><br> DAVID GILBERT SAFFRON, a/k/a DAVID GILBERT, and CIRCLE SOCIETY, CORP., <br><br> Defendants, | Case Number 2:19-cv-1697-JAD-DJA |

### DECLARATION OF CRIS ARMENTA, ESQ.

I, Cris Armenta, Esq., hereby declare under oath the following:

1. I am over the age of 18 years and have personal knowledge of the facts stated herein, except for those stated upon information and belief and, as to those facts, I believe them to be true. I am competent to testify as to the facts stated herein in a court of law and will so testify if called upon.

1

2. I make this Declaration in connection with <u>Defendants' Motion to Set Aside Defaults</u> in the above-captioned case. I am a licensed attorney and a member in good standing of the State Bar of California.

3. I am a shareholder in the firm Armenta & Sol, PC. The firm, formerly known as The Armenta Law Firm APC, represented David Saffron ("Saffron") from late 2018 through April 1, 2019, when the firm terminated the engagement with Saffron.

4. On June 6, 2019, the firm sued Saffron in Los Angeles Superior Court on a breach of contract action for failure to pay for legal services rendered. On October 31, 2019, the Los Angeles Superior Court entered a Judgment in the firm's favor in the amount of $226,217.12. Our firm has been extremely hesitant to collect on the Judgment, despite our clear legal right to do so, as a direct result of the communications to us from the attorneys representing the Commodities Futures Trading Commission ("CFTC").

5. On October 19, 2019, well after our representation of Saffron had ended, Investigator Malas of the CFTC wrote to inform me of, and provide me with, a copy of the sealed TRO entered in this case. A true and correct copy of Mr. Malas' letter to me dated October 4, 2019 is attached hereto as **Exhibit 1**.

6. I responded to Mr. Malas that same day by stating that my firm did not presently represent Saffron and that my firm did not possess any of his assets. A true and correct copy of my email to Mr. Malas dated October 4, 2019 in response to his email placing me "on notice" of the TRO is attached hereto as **Exhibit 2**.

7. Despite his confirmed receipt of my email, on October 7, 2019, Mr. Malas <u>again</u> emailed me, this time informing me that the TRO applied even to books and records. I immediately responded to Mr. Malas and informed him that the firm's client file for Saffron would be maintained for successor counsel. It is our legal duty to maintain and protect the attorney-client privilege with respect to those files and communications. Our firm also maintains a work product privilege and has no intention of waiving it to the detriment of our former client. A true and correct copy of my October 7, 2019, and my response thereto, is attached hereto as **Exhibit 3**.

2

8.      On October 16, 2019, the CFTC wrote me <u>again</u>, stating I was "hereby on notice" of the TRO. I immediately informed the CFTC <u>once more</u> that the firm was not Saffron's counsel, that it held none of his assets, and asked to be removed from the CFTC's service list. A true and correct copy of my October 16, 2019 email exchange with the CFTC is attached hereto as **Exhibit 4**.

9.      On October 21, 2019, the CFTC wrote me <u>yet again</u>, this time with a "high importance" email designation, asking me to confirm if I was representing Saffron in this case. I responded that I had "indicated twice in writing already" that my firm was not representing Saffron in any capacity. A true and correct copy of my October 21, 2019 email exchange with the CFTC is attached hereto as **Exhibit 5**.

10.     Despite numerous requests for the CFTC to stop contacting me, on October 31, 2019, the CFTC nonetheless emailed me another "high importance" email about the TRO issued in this case, and <u>yet again</u> on December 9, 2019 to advise me of the TRO being extended to a Preliminary Injunction, placing me on notice of this Court's orders again, and admonishing me that I was enjoined from certain actions related to Saffron. A true and correct copy of the October 31, 2019 email is attached hereto as **Exhibit 6**. A true and correct copy of the December 9 email and its accompanying letter from the CFTC is attached hereto as **Exhibit 7**.

11.     After the CFTC's December 9, 2019 email, I called Danielle Karst, Esq., the CFTC's counsel, to inquire why I was still receiving the CFTC's unsolicited and harassing emails despite several prior responses advising that I held no assets belonging to Saffron and despite several requests that they cease. Following what I would describe as a very unpleasant telephone call with Ms. Karst bearing an offensive and aggressive attitude towards a non-party (described below), I wrote an email to the CFTC reiterating once more that: (1) the firm was not currently representing Saffron; (2) the firm has no assets or things that belong to Saffron, nor in its trust account; and (3) the firm maintains its file from Saffron's prior representation and would continue to do so. A true and correct copy of my December 9, 2019 email to the CFTC is attached hereto as **Exhibit 8**.

3

12. My email then summarized my conversation with Ms. Karst as follows:

> I called today and spoke with Ms. Karst, whose position was that the CFTC is required by Court order to inform us (prior counsel?) as someone who might hold assets of Mr. Saffron. As I indicated previously, our firm does not hold any assets, either in trust or through any other means. I asked Ms. Karst to refer me to the portion of any order of record that suggests that the Court ORDERED the CFTC to continue to send these somewhat harassing, intimidating and threatening emails, and suggested that I did not believe that was an accurate representation of the record, as we briefly studied the available docket and did not see any such provision. If there is a provision, we would appreciate its receipt so that we may study it. Ms. Karst was unable or unwilling to identify any such provision so **and hung up on me** after I asked her for this seemingly benign information, with the closing shot "if you have a problem, you can take it up with the Court." I can only assume, given the few documents that we have seen, that Ms. Karst is not accurately representing the record or grew frustrated with the specificity of my inquiry.

See Exhibit 8 (emphasis originally in the quoted text).

13. It was at the time, and still is, my opinion that Ms. Karst's demeanor was abrasive, rude, and lacked the level of professionalism I expect from most counsel with whom I have interacted in my career.

14. The wholly unwarranted position taken by the CFTC with respect to me and my firm caused the firm to hesitate on pursuing collection efforts for our valid and final Judgment, lest we then be in the CFTC's crosshairs and obvious venom. These actions appear to be unwarranted and an interference with our firm's rights to collect. Despite having some brief conversations with Saffron about potentially representing him in the CFTC matter, our firm declined because it was clear to us that any attempt to represent Saffron or to assist him to obtain representation would result in direct harm to our firm by the CFTC's unreasonable position, and perhaps a lack of clarity in the TRO

as to Saffron's ability to retain counsel, even on borrowed funds. As a result, we declined the representation.

15. The CFTC's conduct toward me was not merely rude or otherwise trivial. It has in fact had real implications and has caused the Defendants to experience severe consequences and prejudice.

16. Notably, before on or about December 20, 2019, Saffron needed to file his response to the Complaint. Despite the fact that my firm had ceased representing Saffron in any manner at that time, had the CFTC not harassed me and implied that the firm and I would become defendants and targets of the CFTC if the firm undertook to represent Saffron, even on borrowed funds with proper conflict waivers in effect. The firm would have been willing to represent Saffron, but due to the aggressive and unwarranted position of the CFTC, we declined the representation. Because I have built the firm on my own over the last 17 years, am a single mom and the sole provider for two minors, I was not willing to place myself or my firm, or my ability to earn income at risk.

17. However, I was fully aware of the tension that the CFTC created to stymie Saffron's ability to retain counsel. In fact, I was confident that if the firm represented Saffron in this case, my firm and I would be walking into a trap with the CFTC and would become targets. Because of my justifiable concerns with the CFTC, I decided against representing Defendants or assisting Saffron with filing an answer to the Complaint so as to avoid a default during this time period of October through December 2019. In short, I firmly believe that the CFTC's threats and harassment toward counsel directly caused, or at the very least substantially contributed to, the defaults that were entered against Defendants.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Dated this 17th day of March, 2021.

CRIS ARMENTA, ESQ., Declarant