Danielle E. Karst (D.C. Bar No. 481881)
Timothy J. Mulreany (Maryland Bar No. 8812160123)
**COMMODITY FUTURES TRADING COMMISSION**
Three Lafayette Centre
1155 21st Street, N.W.
Washington, D.C. 20581
Telephone:   (202) 418-6158 (Karst)
Telephone:   (202) 418-5306 (Mulreany)
Facsimile:    (202) 418-5523
dkarst@cftc.gov
tmulreany@cftc.gov

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEVADA**

| | |
|---|---|
| COMMODITY FUTURES TRADING COMMISSION,<br><br>　　　　　　　Plaintiff,<br><br>v.<br><br>DAVID GILBERT SAFFRON<br>a/k/a DAVID GILBERT and<br>CIRCLE SOCIETY, CORP.,<br><br>　　　　　　　Defendants. | Case No.  2:19-cv-1697-JAD-DJA<br><br>**PLAINTIFF CFTC'S RESPONSE IN OPPOSITION TO DEFENDANT SAFFRON'S MOTION TO AMEND OR ALTER THE FINAL JUDGMENT** |

　　　　Plaintiff Commodity Futures Trading Commission ("Plaintiff" or "CFTC") submits this opposition to Defendant David Saffron's[1] "Motion to Amend or Alter the Judgment under Rule 59(e), or in the Alternative to Correct Errors Arising from Oversight or Omission Pursuant to Rule 60(a)" ("Mot. to Amend," ECF No. 115),[2] and in support thereof states as follows.

---

[1] Saffron's motion fails to comply with the Court's Local Rules, including failing to provide his complete address with a proper city name in the caption and misspelling his email address in violation of L.R. IA 3-1.  He also failed to properly serve the CFTC with his motion or provide proof of service in violation of L.R. I.C. 4-1(c)(5) and L.R. 5-1.  Although courts may give *pro se* litigants added flexibility and procedural protections, they "are not entitled to a general dispensation from the rules of procedure," particularly where a *pro se* litigant has "access to some legal counsel."  *Jones v. Phipps*, 39 F.3d 158, 163 (7th Cir 1994).

[2] Although Saffron's Motion is date-stamped as April 26, 2021 within the 28-day deadline to file a Rule 59(e) motion, he failed to serve the CFTC via paper copy, electronic mail, or

1

After failing to defend this action or comply with any of the Court's orders,[3] Saffron now requests that the Court alter, amend or vacate the Permanent Injunction provisions of the March 29, 2021 Final Judgment enjoining Saffron from trading in the commodities markets and registering with the CFTC. Final Judgment, ECF No. 112. Without citing to any portion of the March 19, 2021 hearing transcript, Saffron incorrectly argues that this Court's Final Judgment is "inconsistent with the Court's stated remarks" and "contrary to the conclusions made by the Court" at the March 19, 2021 hearing on the merits. He does not articulate, let alone demonstrate, any appropriate grounds for the extraordinary remedy of altering, amending or vacating the Final Judgment. As discussed below, Saffron's cursory and deficient allegations do not meet the heavy burden of establishing the existence of "highly unusual circumstances" necessary to warrant his request for such extraordinary relief. He fails to meet the stringent requirements for reconsideration under Fed. R. Civ. P. 59(e) such as establishing manifest errors of law or fact, or presenting newly-discovered evidence. He also fails to show that the Permanent Injunction is a "mistake arising from oversight or omission" entitling him to relief under Fed. R. Civ. P. 60(a).

Instead, Saffron improperly uses the motion as an improper vehicle to relitigate the merits of the case and rehash many of the same irrelevant arguments and grievances previously rejected

---

otherwise in violation of L.R. 5-1. The CFTC had no notice of the Motion until it received the "Notice of Electronic Filing," on **April 28, 2021**, at 2:58 pm EST. The response deadline was nevertheless set for May 10, 2021, providing the CFTC with only twelve days to respond.

[3] In addition to his failures to comply with the Preliminary Injunction (ECF No. 31) and Civil Contempt Order (ECF No. 51), Saffron has failed to comply with the Court's March 19, 2021 on-the-record order to produce Defendants' business records by March 23, 2021 at 3:00 pm. See Tr. Mot. Hearing Mar. 19, 2021 at 49:13-21; CFTC's Notice of Non-Compliance (ECF No. 111).

2

by the Court. In an effort to bolster his unsupported arguments, he relies on two attorney declarations interjecting irrelevant opinions and leveling libelous accusations. The CFTC requests that the Court strike these improper declarations and exclude them from consideration. It appears that Saffron simply disagrees with this Court's rulings, old and new, and such dissatisfaction is not a sufficient basis for the extraordinary relief he seeks. For all of these reasons, the CFTC respectfully requests that the Court deny Saffron's motion.

I.     BACKGROUND

A.     **The Court Carefully Considered And Articulated Its Reasoning For Entering Default Judgment And Imposing A Permanent Injunction Against Defendants During March 19, 2021 Hearing**

The Court held a March 19, 2021 hearing on the merits of the CFTC's motion for default judgment and articulated its findings and conclusions on the record. Transcript of Proceedings, ECF No. 114; Final Judgment at 1, ECF No. 112. During the hearing, the Court observed that throughout the litigation Defendants had engaged in "dilatory behavior" and "devious and deliberate conduct seeking to skirt the judicial process." *See* Tr. Mot. Hearing Mar. 19, 2021 at 27:21-23; 28:10-14 (ECF No. 114) (citing Order Granting Mot. to Strike Answer, ECF No. 52; Order Denying Mot. to Set Aside Default, ECF No. 77). Specifically, the Court recounted the following events leading up to the CFTC's motion for default judgment: (a) "Circle Society never answered the Complaint"; (b) "Saffron's answer was late and struck because he had already been defaulted"; (c) Saffron was "given a deadline to move under Rule 55(c) to set aside the default," but "blew that deadline by nearly a month"; (d) the Court considered Defendants' tardy motion to set aside the defaults on its merits but denied it based on the factors set forth by the Ninth Circuit in *Falk v. Allen*; and (e) "despite obtaining new counsel last December, defendants have not sought leave to file a response to the default judgment motion." *See id.* at

27:21-28:23; Order Denying Mot. to Set Aside Default at 9, ECF No. 77 (concluding "defendants have not demonstrated that good cause exists to set aside the defaults" where explanations for defaults "are overshadowed by evidence of their devious and deliberate conduct seeking to skirt the judicial process").

At the March 19, 2021 hearing, the Court concluded that a permanent injunction against Defendants was warranted based upon its consideration of the applicable factors including the egregiousness of the conduct, recurrent nature of the violations, and the degree of scienter involved. *See* Tr. Mot. Hearing Mar. 19, 2021 at 35:18-36:23.  The Court carefully considered the issue and articulated its reasoning for imposing a permanent injunction against Defendants, stating in relevant part:

> **And to ensure better future behavior by these defendants, I also grant the Commission request for a permanent injunction.**
>
> . . .
>
> **The Commission has demonstrated that defendants' violations were not isolated but occurred at least 179 times.  It provides evidence that Mr. Saffron enticed some participants with live demonstrations of his fake computer trading bots and automated bots/AI trading software and used attorneys to provide a veneer of legitimacy to the scheme.  These deceptions show that defendants intended to deceive, defraud, and manipulate their participants.**
>
> **There have been no believably sincere assurances against future violations or recognition . . . of the wrongful nature of this conduct, nor is there evidence that Mr. Saffron has legitimate employment that will steer him away of the opportunity to violate the Act in the future.  Thus, a permanent injunction under Title VII United States Code § 13a-1(a) and in the form requested by the Commission is warranted**.

*See* Tr. Mot. Hearing Mar. 19, 2021 at 35:18-20; 36:8-23 (emphasis added).

**B.    The Court's March 29, 2021 Final Judgment And Permanent Injunction Provisions Accurately Reflect The Court's Earlier Findings And Conclusions**

Consistent with the Court's findings at the hearing, the March 29, 2021 Final Judgment found that "the rehashed excuses that the defendants offered during the hearing for their

continued failure to comply with this court's orders, and their ongoing failure to offer any colorable defense to the Commission's claims, animate the Commission's default-judgment arguments and underlie [the Court's] conclusion that default judgment is warranted." Final Judgment at 2. With respect to the Permanent Injunction, the Court reiterated that the CFTC has "demonstrated that a permanent injunction . . . should be entered against both defendants," and "further established that there is a reasonable likelihood that Saffron and Circle Society will continue to violate the Act and Regulations unless they are permanently restrained and enjoined by this court." *Id*. at 2. The Court also concluded that "the intentional and egregious nature of [Defendants'] fraudulent conduct warrants permanent injunctive relief, including registration and trading bans." *Id*.

Accordingly, the Final Judgment permanently enjoins Defendants from: (1) Engaging in conduct in violation of the provisions they were found to have violated (*id*. ¶ C.1); (2) "Trading on or subject to the rules of any registered entity as that term is defined in 7 U.S.C. § 1a(40)" (*id*. ¶ C2); (3) "Entering into any transaction involving 'commodity interests,' as that term is defined in 17 C.F.R. § 1.3(yy), for their own personal account or for any account in which they have a direct or indirect interest" (*id*. ¶ C3); (4) "Having any commodity interests traded on their behalf" (*id*. ¶ C4); (5) "Controlling or directing trading for or on behalf of any other person or entity . . . in any account involving commodity interests" (*id*. ¶ C5); (6) "Soliciting, receiving, or accepting any funds from any person for the purpose of purchasing or selling any commodity interests (*id*. ¶ C6); (7) "Applying for registration . . . with the Commission in any capacity" (*id*. ¶ C7); (8) Acting as a principal, as that term is defined in 17 C.F.R. § 3.1(a), agent, or any other officer or employee of any person registered" (*id*. ¶ C8); and (9) "Engaging in any business activities related to commodity interests" (*id*. ¶ C9).

## II. LEGAL STANDARD FOR MOTION TO ALTER OR AMEND JUDGMENT PURSUANT TO FED. R. CIV. P. 59(e) AND 60(a)

### A. Reconsideration Under Rule 59(e) Is An Extraordinary Remedy That Should Not Be Granted Absent Highly Unusual Circumstances

Saffron moves for reconsideration of the Final Judgment under Fed. R. Civ. P. 59(e). There are four grounds upon which a Rule 59(e) motion may be granted: (1) the motion is necessary to protect manifest errors of law or fact upon which the judgment is based; (2) the moving party presents newly discovered or previously unavailable evidence; (3) the motion is necessary to prevent manifest injustice; or (4) there is an intervening change in controlling law. *Turner v. Burlington N. Santa Fe R.R. Co.*, 338 F.3d 1058, 1063 (9th Cir. 2003); *Carroll v. Nakatani*, 342 F.3d 934, 945 (9th Cir. 2003). The showing required for Rule 59(e) presents a "high hurdle." *Weeks v. Bayer*, 246 F.3d 1231, 1236 (9th Cir. 2001). A judgment is not properly altered "absent highly unusual circumstances." *Kona Enters. Inc. v. Estate of Bishop*, 229 F.3d 877, 890 (9th Cir. 2000) (quoting *389 Orange St. Partners v. Arnold*, 179 F.3d 656, 665 (9th Cir. 1999)). Rule 59(e) is an "extraordinary remedy, to be used sparingly in the interests of finality and conservation of judicial resources." *Carroll v. Nakatani*, 342 F.3d at 945.

A Rule 59(e) motion "is not to serve as a vehicle to relitigate old matters or present the case under a new legal theory," nor is it meant to "give the moving party another 'bite at the apple' by permitting the arguing of issues and procedures that could and should have been raised prior to judgment." *Mincey v. Head*, 206 F.3d 1106, 1137 n.69 (11th Cir. 2000); *see also Zimmerman v. City of Oakland*, 255 F.3d 734, 740 (9th Cir. 2001) (holding motion to alter properly denied because it "repeated legal arguments made earlier and sought to introduce facts that were available earlier in the proceedings"); *Kona Enters. Inc. v. Estate of Bishop*, 229 F.3d

6

at 890-91 (holding motion to alter properly denied because it raised, for first time, choice-of-law argument that could have been raised earlier in litigation).

  **B.**  **Reconsideration Under Rule 60(a) Is Limited To Correct Clerical Mistakes Or Errors Arising From Oversight Or Omission**

In the alternative, Saffron moves "to correct errors that perhaps resulted from mistake or oversight" and improperly invokes Fed. R. Civ. P. 60(a) to amend or vacate the Permanent Injunction. Mot. to Amend at 1. Pursuant to Rule 60(a), "[t]he court may correct a clerical mistake or a mistake arising from oversight or omission whenever one is found in a judgment, order, or other part of the record." An error arises from oversight or omission whenever "the thing spoken, written or recorded is *not what the person intended* to speak, write or record." *Id*. (quoting *Allied Materials Corp. v. Superior Products Co.,* 620 F.2d 224, 226 (10th Cir.1980) (emphasis in original)). "In determining whether a mistake may be corrected under Rule 60(a), '[the Ninth Circuit] focuses on what the court originally intended to do.'" *Tattersalls, Ltd. v. DeHaven*, 745 F.3d 1294, 1297 (9th Cir. 2014) (quoting *Blanton v. Anzalone*, 813 F.2d 1574, 1577 (9th Cir. 1987)). This limits the use of Rule 60(a) to correct errors in oversight or omission, which are "blunders in execution." *Blanton v. Anzalone*, 813 F.2d at 1577 n.2. Rule 60(a) "is limited to correcting errors 'arising from oversight or omission' and cannot be used to correct more substantial errors, such as errors of law." *Waggoner v. R. McGray, Inc.*, 743 F.2d 643, 644 (9th Cir. 1984).

**III.**  **ARGUMENT**

**A.**  **Saffron Has Failed To Articulate, Let Alone Demonstrate, Any Grounds For The Extraordinary Remedy He Seeks Under Rule 59(e)**

Saffron does not claim or meet any of the potential grounds warranting a Rule 59(e) motion because there were no errors of law or fact, there is no newly-discovered evidence, there

is no injustice, and there is no change in controlling law.  Rather, Saffron is simply displeased with the judgment and Permanent Injunction entered against him.  As addressed in detail below, he complains that the Permanent Injunction is "massively overbroad" and claims that it prevents him from "earning a living," "engaging counsel, or deal[ing] in the modern world."  Mot. to Amend at 4-6.  Saffron's motion amounts to a "mere disagreement" with the Permanent Injunction, which "does not support a Rule 59(e) motion."  *See United States ex rel. Becker v. Westinghouse Savannah River Co.,* 305 F.3d 284, 290 (4th Cir. 2002); *Oto v. Metropolitan Life Ins.*, 224 F.3d 601, 606 (7th Cir. 2000) ("A 'manifest error' is not demonstrated by the disappointment of the losing party.").

       **1.**     **Saffron's Recycled Arguments—Previously Considered and Rejected by the Court—Are Not Grounds For Altering The Judgment**

Throughout the litigation, Saffron has blamed the CFTC for his own failures to defend this action and comply with any of the Court's orders.  He recycles these same arguments in his Motion to Amend, complaining that "[t]he issues that arose that resulted in the default judgment arose directly from the CFTC's untenable position that Saffron was unable to hire counsel, pay counsel or even borrow money to pay counsel."  Mot. to Amend at 2; *see also id.* at 4 ("The CFTC's harassing conduct has kept Saffron [sic] being able to hire an attorney — they have been incessant in their harassment of counsel.") (citing declarations).

Saffron's longstanding argument that he has been deprived of counsel by the CFTC is plainly contradicted by the record.  Saffron has been represented by no fewer than three counsel throughout the litigation, including at the March 19, 2021 hearing.  He also has access to other counsel as evidenced by the multiple attorney declarations submitted with his court filings.  Therefore, such arguments made by him and his various counsel appear to be a strategic tactic to shift responsibility and deflect from the real issues.  The Court has already considered and

rejected these arguments.[4] Pursuant to the exacting Rule 59(e) standard, it is not enough for a party to take "umbrage with the court's ruling and rehash[] old arguments." *Oto*, 224 F.3d at 606. But that is exactly what Saffron's Motion to Amend does. Courts in this District have recognized that a motion to amend is properly denied on this basis. *See, e.g., Bundorf v. Jewell*, 142 F. Supp. 3d 1133, 1137 (D. Nev. 2015) (denying motion for reconsideration because it "primarily rehashes the same arguments" they "raised—or could have raised—in the earlier summary judgment briefing"). The Court should also deny any effort by Saffron to litigate the merits of this case because a Rule 59(e) motion "does not require the Court to rescue parties from the consequences of their own choices." *Zarcone v. United States*, No. 04-cv-1428, 2004 WL 2196560, at *2 (N.D. Cal. Sept. 27, 2004) (denying motion to vacate judgment).

**2.   Saffron's Supporting Declarations Do Not Provide Any Grounds For Altering The Judgment And Should Be Struck By The Court**

In support of his baseless allegations against the CFTC and unsupported interpretations of the Final Judgment, Saffron submits irrelevant and libelous third-party declarations authored by two of his current or former attorneys. *See* Decls. of Axelrod and Armenta, ECF Nos. 115, 115-1. Saffron has demonstrated a pattern of submitting such irrelevant declarations of questionable

---

[4] *See, e.g.*, Tr. Mot. Hearing Mar. 19, 2021 at 24:3-7 ("[I]t's just a history of a year and a half in this where it's . . . we really wish we had another opportunity and, no, we didn't do a thing to try to protect the defendants' rights here. The defendant didn't do a thing to protect his rights here."); *id*. at 28:19-23 ("Indeed, despite obtaining new counsel last December, defendants have not sought leave to file a response to the default judgment motion or clarified [the Court's] perception about their behavior or move to reconsider, modify, alter, or amend any of my prior orders in this case."); Order Denying Mot. to Set Aside Default, ECF No. 77 (citing evidence of Defendants' "devious and deliberate conduct seeing to skirt the judicial process").

9

veracity with the Court.[5]  The Court should strike the declarations and exclude them from consideration because the declarants' opinions and inflammatory accusations are irrelevant to the issues germane to the instant Motion and improper at this stage.  *See Alvarez v. NBTY, Inc.*, No. 1:17-cv-567, 2020 WL 42767, at *1-2 (S.D. Cal. Jan. 3, 2020) (striking declaration submitted with Rule 59(e) motion where declarant seeks to "clarify [] existing opinions" and "correct the Court's misapprehension of what he said and explain how the Court erred"); *Garner v. Arvin Inds. Inc.*, 77 F.3d 255, 258-59 (8th Cir. 1996) (declining to consider affidavits attached to Rule 59(e) motion where affidavits were not submitted prior to entry of summary judgment). Nevertheless, since Saffron has submitted them as evidence in support of his Motion to Amend the CFTC will respond briefly to each of the declarations below.

      **a.**      **Axelrod Declaration (ECF No. 115)**

In his declaration, attorney David Axelrod[6] claims, among other things that he: (1) "never held cryptocurrency for Mr. Saffron, nor has Saffron ever traded in cryptocurrency on my behalf"; (2) "doe[s] not currently own and hold cryptocurrency"; (3) "hold[s] no assets of, nor have I ever held any assets of Mr. Saffron, nor has he ever held any assets of mine"; and (4) "never traded for [Saffron] and he [Saffron] has never traded for me."  Axelrod Decl. ¶ 2, ECF No. 115.  Despite his disavowal of any involvement with Saffron as it relates to cryptocurrency, trading, or presumably the conduct in the CFTC's complaint for which the Court found

---

[5] *See* Decls. of Vincent Mazzotta (ECF No. 101-2), David Kagel (ECF No. 101-3), and John Gutke (ECF No. 101-4), submitted in support of Defs.' Resp. to Mot. for Order to Show Cause; CFTC's Reply in Support of Order to Show Cause at 3-11, ECF No. 105.

[6] The CFTC provided notice to Axelrod, along with other individuals and financial institutions, of the Court's Temporary Restraining Order (ECF No. 15) and Preliminary Injunction Order (ECF No. 31), including the asset freeze provisions of those orders.

Defendants liable,[7] Axelrod objects to every single provision of the Permanent Injunction and offers his irrelevant opinion that he "found the words in the Final Judgment to be disturbing and overbroad." *Id*. ¶ 3. His theories that the Permanent Injunction "for life . . . disable[s] and bars" him from "trading in commodities" (*id*. ¶ 5) or for his "family members" or "children" (*id*. ¶ 8) are unsupported and contrary to the plain wording of the Permanent Injunction's limited application to "***those persons in active concert or participation with***" Defendants. Final Judgment, Section C (emphasis added). Axelrod appears to have adduced hypothetical situations and overbroad interpretations of the Permanent Injunction as a means of challenging the Permanent Injunction on his own and/or on Saffron's behalf. The Court should reject his attempts to interject his irrelevant opinions of the Permanent Injunction.

          **b.**      **Armenta Declaration (ECF No. 115-1)**

The declaration of attorney Armenta, dated March 17, 2021, is flawed and questionable on its face. The Declaration appears on the letterhead of Saffron's former counsel John Gutke and is provided "in connection with Defendants' Motion to Set Aside Defaults," which was

---

[7] Axelrod's declaration conveniently omits pertinent facts related to his involvement with Saffron and Circle Society. For instance, the CFTC has been contacted by multiple pool participants who had conversations with Axelrod regarding Saffron's offer to provide payouts in an attempt to "settle" outside of this litigation. *See generally* Malas Decl. in Support of Pl.'s Mot. for Default Judgment dated March 9, 2020 at ¶ 8, ECF No. 61-1. Further, in a March 2020 email to the CFTC, Axelrod claimed that he did not represent Defendants and directed the CFTC to discredited attorney David Kagel, claiming that Kagel "is in possession of thumb drives/cold storage devices which hold, collectively 6,500 Bitcoin (BTC)." *See* CFTC's Reply in Support of Mot. for Order to Show Cause at 4-6 (ECF No. 105) (discussing Kagel). Finally, Axelrod is listed as "Legal Counsel" of "Runway," which is owned and operated by Saffron associate Vincent Mazzotta. *See* CFTC's Reply in Support of Mot. for Order to Show Cause at 8 (ECF No. 105) (discussing Mazzotta and launch of virtual coin with Saffron); Ex. 3 to Malas Decl. (ECF No. 105-4).

11

denied by the Court on June 9, 2020, more than eleven months ago.[8]  Armenta Decl. ¶ 2.  In addition to these facial defects, Armenta uses her declaration to level false and libelous accusations against the CFTC and its counsel.[9]  *See id.* ¶¶ 5-17.  The Court should strike from the record this inflammatory and prejudicial declaration whose sole purpose and intent appear to be geared toward undermining the CFTC and its counsel.  *See e.g., id*. ¶ 17 (alleging that "the CFTC's threats and harassment toward counsel directly caused, or at the very least substantially contributed to, the defaults that were entered against Defendants").  More importantly, Armenta's accusations against the CFTC and opinions regarding the entry of defaults or Final Judgment are not relevant to the disposition of the Motion to Amend.

**B.     Saffron Has Failed to Establish That The Court's Imposition Of A Permanent Injunction Is A "Mistake Arising From Oversight Or Omission" Justifying Relief Under Rule 60(a)**

Rule 60(a) is not the proper vehicle to alter or amend the Permanent Injunction.  The Court's Permanent Injunction does not constitute a "mistake arising from oversight or omission." *See, e.g., Lyons v. Cox*, No. 2:14–cv–778–APG–CWH, 2015 WL 149798, at *1 (D. Nev. Jan. 12, 2015) (denying motion to amend because the "court has not made any clerical mistake or any mistake arising from an oversight or omission").  Even assuming that Rule 60(a) applies here,

---

[8] Saffron claims in a footnote that the Armenta Declaration "was obtained by former counsel, a judgment creditor, in connection with the motion for default judgment," (Mot. to Amend at 4 n.1).  However, Defendants never filed a response to the CFTC's Motion for Default Judgment.  Armenta states that her March 2021 declaration is made in connection with Defendants' Motion to Set Aside Defaults, but that Motion was filed by previous counsel Garrett Chase of Shumway Van on March 20, 2020 (ECF No. 63).

[9] The CFTC provided notice to Armenta of the Court's Temporary Restraining Order (ECF No. 15) and Preliminary Injunction Order (ECF No. 31), including the asset freeze provisions of those orders.  The CFTC complied with Armenta's strident demands for the CFTC to remove her from its service list in early-December 2019 and has had no contact or communications with her since that time.

12

Saffron fails to demonstrate that the Permanent Injunction is inconsistent with the Court's actual intentions. *See Tattersalls, Ltd. v. DeHaven*, 745 F.3d at 1297 (stating the Ninth Circuit focuses on what the court originally intended to do in determining whether a mistake may be corrected under Rule 60(a)). The Court clearly articulated its intentions in imposing a permanent injunction against Saffron, including trading and registration bans, at the March 19, 2021 hearing as discussed above.

**C.     The Court Has Appropriately Entered An Injunction Permanently Barring Saffron From Trading In The Commodities Markets And Registering With The CFTC**

Saffron's contention that the Permanent Injunction is "overbroad" and "contrary to the conclusions made by the Court in the transcript" is unsupported by the record. *See supra*. I.A. The Court carefully considered the permanent injunction factors at the hearing. *See* Tr. Mot. Hearing Mar. 19, 2021 at 35:24-36:23. Pursuant to 7 U.S.C. § 13a-1(a) (2012), permanent injunctive relief is appropriate where a violation of the Commodity Exchange Act or Commission Regulations has occurred and there is a reasonable likelihood of future violations. *See* Mot. for Default Judgment at 19, ECF No. 61 (citing *CFTC v. Driver*, 877 F. Supp. 2d 968, 981 (C.D. Cal. 2012)). As the Court appropriately recognized, "once a violation is demonstrated, the moving party need show only that there's some reasonable likelihood of future violations." *See* Tr. Mot. Hearing Mar. 19, 2021 at 35:20-23. The Court then applied the standard articulated in *SEC v. Ginsburg*, 362 F.3d 1292, 1304 (11th Cir. 2004), and found: (1) "defendants' violations were not isolated but occurred at least 179 times"; (2) "defendants intended to deceive, defraud, and manipulate their participants"; (3) "[t]here have been no believably sincere assurances against future violations or recognition . . . of the wrongful nature of this conduct"; and (4) there is no "evidence that Mr. Saffron has legitimate employment that will steer him away of the opportunity to violate the Act in the future." *See id*. at 36:8-20 (citing *Ginsburg*).

In asking the Court to amend or strike portions of the Permanent Injunction, Saffron does not contend that the Court committed manifest errors of law or fact, but rather posits that the prohibition against trading and commodity-related activities should not stand because "[k]eeping Saffron and his attorneys and others from even holding or using it (even if it is completely unrelated to the conduct complained of in this action) cannot be correct." Mot. to Amend at 4. Saffron does not cite any case law to support his request to strike an injunction that is predicated on the appropriate application of controlling precedent.[10]

Here, the Court appropriately applied the standard set forth in *SEC v. Ginsburg* and found that a permanent injunction "in the form requested by the Commission"[11] was warranted in light of Saffron's past violations, which were willful and establish a more than likelihood of future violations. See Tr. Mot. Hearing Mar. 19, 2021 at 36:8-23. Saffron's serious and pervasive fraudulent conduct poses a threat to the integrity of the markets regulated by the CFTC. Accordingly, the Court's Final Judgment permanently bans Saffron from any of the markets regulated by the CFTC, including enjoining him from trading for his own personal account (Final Judgment ¶ C3) and from having any such trades made on his behalf (*id*. ¶ C4), controlling trading accounts for himself or other persons (*id*. ¶ C5), soliciting or accepting payments from persons for trading in their commodity interests (*id*. ¶ C6), applying for registration with the CFTC or engaging in any activity requiring such registration (*id*. ¶ C7), and engaging in any business activities related to commodity interests (*id*. ¶ C9).

---

[10] *See Oto*, 224 F.3d at 606 (affirming denial of motion to reconsider that "merely took umbrage with the court's ruling and rehashed old arguments" and "did not demonstrate that there was a disregard, misapplication or failure to recognize controlling precedent").

[11] The Final Judgment reflects the language provided in the CFTC's Proposed Default Judgment Order submitted with the Court and served on Defendants. ECF No. 61-4 at ¶ 57.

The broad permanent injunction is warranted here given the egregious, intentional violations of the Act, high degree of scienter involved, Saffron's failure to accept responsibility, and a lack of constraints on future misconduct using virtual currencies. As found by the Court, there is no evidence that Saffron "has legitimate employment that will steer him away of the opportunity to violate the Act in the future" (*id*. at 36:18-20). He has demonstrated that he cannot be trusted to hold or use virtual currencies in any way because they are the instrumentality of his fraud, permitting him to easily solicit and accept funds and to transfer and hide assets.[12] *See* Compl. ¶¶ 22-34 (ECF No. 1); Mot. for Order to Show Cause at 3-7, ECF No. 98 (providing evidence of asset freeze violations based on responses to third-party subpoenas). Indeed, the Court's asset freeze was ineffective because Saffron refused to comply with any of the Court's multiple orders, including the Civil Contempt Order requiring him to identify the public and private keys for his virtual currency addresses. *See* Contempt Order at 6-7 (ECF No. 51). The situation to which he objects is of his own making, and there is no basis to set aside the Permanent Injunction. A comprehensive permanent injunction is necessary to prevent additional fraud by Saffron in the future and is consistent with case law precedent imposing similar or identical permanent injunctions in the virtual currencies realm. *See CFTC v. Reynolds*, No. 1:19-cv-5631, 2021 WL 796683, at *6-7 (S.D.N.Y. Mar. 2, 2021) (imposing nearly identical permanent injunction including on Bitcoin where individual operated fraudulent Bitcoin trading scheme) (default judgment); *CFTC v. McDonnell*, 332 F. Supp. 3d 641, 726 (E.D.N.Y. 2018)

---

[12] Because virtual currencies are the instrumentalities he uses to commit fraud, Saffron's attempt to equate fiat currencies with virtual currencies is flawed. *See* Mot. to Amend at 4-5. He contends, for example, that the Permanent Injunction is "akin to sentencing a bank robber that he/she can never hold dollar bills again" (Mot. to Amend at 4), but a closer analogy would be preventing a bank robber from possessing a firearm.

(imposing nearly identical permanent injunction including on virtual currencies where "defendant has shown that he is susceptible to the inducement of fraud involving virtual currencies; he cannot be trusted to operate only on his own behalf in a lawful and honest way");[13] *CFTC v. Gelfman Blueprint, Inc.*, No. 1:17-cv-7181, 2018 WL 6320656, at *9 (S.D.N.Y. Oct. 16, 2018) (imposing nearly identical permanent injunction including on Bitcoin for fraudulent Bitcoin Ponzi scheme) (default judgment against corporation).[14]

## CONCLUSION

For the foregoing reasons, Plaintiff CFTC respectfully requests that the Court deny Saffron's Motion to Amend or Alter the Judgment and strike the Declarations submitted with the Motion.

Dated:  May 10, 2021                               Respectfully submitted,

By: /s/ Danielle E. Karst
Danielle E. Karst
Timothy J. Mulreany
**COMMODITY FUTURES TRADING COMMISSION**
Three Lafayette Centre
1155 21st Street, N.W.
Washington, D.C. 20581
Telephone:  (202) 418-5000

---

[13] *See also CFTC v. McDonnell*, 2018 WL 5004681, at *1-2 (S.D.N.Y. Aug. 23, 2018) (Final Judgment and Order of Permanent Injunction, Restitution, and Civil Monetary Penalties Against Defendants).

[14] Prior to the final judgment by default against the corporate defendant, the Court entered a consent order for final judgment against the individual defendant, including a permament injunction.  *See CFTC v. Gelfman Blueprint, Inc.*, 2018 WL 6320653, at *5-6 (S.D.N.Y. Oct. 2, 2018).

16

## CERTIFICATE OF SERVICE

I certify that on May 10, 2021, I filed a copy of *Plaintiff CFTC's Response in Opposition to Motion to Amend or Alter the Judgment*, with the Clerk of the Court using the CM/ECF system. I also certify that on May 10, 2020, I sent hard copies of the same to Defendants David Gilbert Saffron and Circle Society, Corp. via United Parcel Service mail at the following address:

**David Gilbert Saffron**
3600 Barham Blvd.
Unit X111
Los Angeles, CA 90068

**Circle Society, Corp.**
c/o David Saffron
3600 Barham Blvd.
Unit X111
Los Angeles, CA 90068

/s/ Danielle E. Karst
Danielle E. Karst